UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    )  07-CR-550-3
                               )
     vs.                    )
                               )
KABONI SAVAGE, a/k/a JOSEPH  )
AMILL, a/k/a BONNIE, a/k/a   )
YUSEF BILLA,              )  Philadelphia, PA
                             )  September 30, 2010
             Defendant.     )  3:06 p.m.


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Government:         DAVID E. TROYER, ESQUIRE
                           CHRISTINE SYKES, ESQUIRE
                           ASSISTANT UNITED STATES ATTORNEYS
                           UNITED STATES ATTORNEY'S OFFICE
                           615 Chestnut Street, Suite 1250
                           Philadelphia, PA  19106


For the Defendant:          CHRISTIAN J. HOEY, ESQUIRE
                           RUBINO & HOEY, LLC
                           50 Darby Road
                           Paoli, PA  19301


                           TIMOTHY J. SULLIVAN, ESQUIRE
                           BRENNAN, SULLIVAN & McKENNA, LLP
                           6305 Ivy Lane, Suite 700
                           Greenbelt, MD  20770


Audio Operator:             MICHAEL FINNEY

Transcribed by:             DIANA DOMAN TRANSCRIBING SERVICES
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           E-mail:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

<u>I N D E X</u>

| <u>ARGUMENTS</u>: | | <u>PAGE NUMBER</u> |
|---|---|---|
| Reference: | Colloquy regarding letter from Defendant indicating ineffective assistance | 3 |
| Reference: | Motion for continuance | |
| | By Mr. Hoey | 4 |
| Reference: | Motion for relief from Special Administrative Measures | |
| | By Mr. Hoey | 6, 22 |
| | By Mr. Troyer | 12 |

| <u>RULING BY THE COURT</u>: | | <u>PAGE NUMBER</u> |
|---|---|---|
| Reference: | Colloquy regarding letter from Defendant indicating ineffective assistance | |
| | By Judge Surrick | 4 |
| Reference: | Motion for continuance | |
| | By Judge Surrick | 5 |

| <u>EXHIBITS</u>: | | <u>IDENT</u> | <u>EVID</u> |
|---|---|---|---|
| D-1 | 02/09/07 document notifying the imposition of SAMs while at USP Atlanta | 35 | 36 |
| D-2 | 06/23/08 notification of modification of SAMs and renewal notice | 35 | 36 |
| D-3 | 05/15/09 notification of extension of SAMs | 35 | 36 |
| D-4 | 02/01/10 notification of extension of SAMs | 35 | 36 |
| D-5 | admission and orientation packet received upon arrival at MCC | 35 | 36 |
| D-6 | 08/26/04 two page request for administrative remedy form submitted FDC | 35 | 36 |
| D-7 | habeas corpus petition filed in Atlanta | 35 | 36 |
| D-8 | Central Office administrative remedy appeal filed in ADX Colorado, and 07/07/08 order from Harold Watts | 35 | 36 |
| D-9 | civil action filed in US District Court of Colorado; petition to proceed in forma pauperis; order dismissing civil action | 35 | 36 |
| D-10 | administrative remedy filed at MCC New York | 36 | 36 |

1          (The following was heard in open court at 3:06 p.m.)

2          THE COURT:  Please have a seat.  All right, we have

3    the case of the United States versus Kaboni Savage.  It's

4    number 7-550.  Counsel, please identify yourselves.

5          MR. TROYER:  Good afternoon, Your Honor, David

6    Troyer and Christine Sykes, Assistant US Attorneys for the

7    Government, and we're accompanied today at counsel table of

8    course by FBI Special Agent Kevin Lewis.

9          MS. SYKES:  Good afternoon, Your Honor.

10          THE COURT:  Good afternoon.

11          MR. HOEY:  Good afternoon, sir, Christian Hoey and

12    Timothy Sullivan on behalf of Kaboni Savage, here as well with

13    one of Mr. Sullivan's associates.

14          THE COURT:  All right.

15          MR. SULLIVAN:  Good afternoon, Your Honor.

16          THE COURT:  Good afternoon.  Counsel, we're here --

17    there are three matters that we need to address.  The first

18    matter, Mr. Hoey, I received a letter from your client and I

19    sent a copy of that letter to you.  We're treating it as a

20    motion.  He registered some concern about the representation

21    he was getting.  Have you had a chance to talk to your client

22    about this?

23          MR. HOEY:  Yes, sir.  I have received it from the

24    Court.  I reviewed it personally as well with my client.  My

25    client has indicated that he wishes to withdraw that motion

 1    today, Your Honor.

 2                THE COURT:  Is that correct, Mr. Savage?

 3                THE DEFENDANT:  Yes.

 4                THE COURT:  You're satisfied with Mr. Hoey's

 5    representation?

 6                THE DEFENDANT:  Yes.

 7                THE COURT:  Mr. Sullivan's representation?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  All right.  And you want to -- you want

10    the Court to mark this motion withdrawn?

11                THE DEFENDANT:  Yes, sir.

12                THE COURT:  All right, we will do that.  The next

13    item of business, there has been a joint motion to continue

14    filed in this matter.  The defendants requested that this case

15    be continued.  It's scheduled now for trial in March and there

16    are other dates already on the schedule for different

17    deadlines.  Mr. Hoey, you're requesting an extension or a

18    continuance for 180 days, is that -- is that what you're

19    requesting --

20                MR. HOEY:  It is, Your Honor.

21                THE COURT:  -- of all the deadlines?

22                MR. HOEY:  Yes, joint through the other attorneys

23    for the other defendants, yes.  We have reviewed that concept

24    with Mr. Savage, Mr. Sullivan and I that is, and he is in

25    agreement with that as with me, Your Honor, and we'd have no

1  objection to the Court issuing an order extending the

2  deadlines and continuing the case.

3          THE COURT:  This matter was declared complex.  There

4  is a great deal of work that is going to go into preparing

5  this case for trial.  Mr. Troyer, does the Government have any

6  position with regard to that?

7          MR. TROYER:  No, we have no objection to the

8  granting of the motion.

9          THE COURT:  All right.  Mr. Savage, we've been

10 talking about this request for continuance.  Your attorney --

11 your attorneys have asked for an extension of time, another

12 180 days to get this case ready for trial.  It's scheduled for

13 trial in March now, they want to move that trial to September.

14 You've talked to them about that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You're in agreement with that request?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Even though that request delays the

19 trial, you think it's in your own best interest to do that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  Counsel, we will grant that

22 joint motion for a continuance and we will enter an order

23 scheduling the matter in accordance with that motion.

24         Okay, finally there is a motion for relief from the

25 Special Administrative Measures.  Mr. Hoey and Mr. Sullivan,

1    you filed this motion, the Government has responded to it and

2    I will hear whatever you wish to present with regard to that

3    motion.

4         MR. HOEY:  Yes, Your Honor.  If the Court pleases,

5    in terms of presenting the argument, I would ask the Court to

6    consider a couple of different things.  If I may approach?

7         THE COURT:  Yes.

8         MR. HOEY:  With respect to the precedent already

9    involved in this case in terms of modifying terms of

10   confinement, I would argue the first issue that's on the table

11   today is whether or not this case is in the right place in

12   front of the right Judge and under the right circumstances,

13   quite frankly.

14        The Government has argued in their response that the

15   defendant has not exhausted his administrative remedies

16   through the ARP process which is outlined in the regulations

17   and that this matter is not ripe, nor should it be before Your

18   Honor and it should be summarily dismissed.

19        I think that is the first issue that I would like to

20   discuss with the Court.  I think there is a case history

21   involving this Court and Mr. Savage and the conditions of

22   confinement that establishes somewhat of a precedent that this

23   Court can rely on in terms of agreeing to handle this

24   particular issue or issues that we've presented in this

25   motion.

1           Particularly, Your Honor, the defendant, as you may

2    recall, was transferred from ADX, Colorado to The Metropolitan

3    Correctional Center at the request of former counsel.  The

4    request essentially was based upon former counsel's inability

5    to get the Colorado and effectively prepare for trial, and I

6    believe that upon application to this Court, that condition of

7    confinement -- meaning his situation in Colorado, was altered

8    to allow him to go to New York, closer to counsel, Mr. Warren,

9    in order for him to effectively prepare.  So that is one

10   condition that's already been modified, so to speak.

11          The second condition, the Court will recall Mr.

12   Sullivan's request to allow personal contact with Mr. Savage

13   in terms of preparing for trial and this Court modified

14   further the conditions of confinement to allow Mr. Savage to

15   come from MCC in New York down to the FDC two days per month

16   for personal contact visits which would enable counsel and the

17   defendant to exchange paperwork and have meaningful

18   communications.

19          The third element of modification, if you will, I

20   think was really done orally at the request of Mr. Sullivan

21   back in February of this year wherein Mr. Sullivan had

22   discovered that various pieces of communication and

23   correspondence that he had sent to Mr. Savage had been opened

24   by prison officials outside the presence of the inmate,

25   despite the fact that the envelope and the letters were

1  conspicuously marked with the proper language required by the

2  BOP that this was in fact attorney correspondence, that it

3  should be opened in front of the inmate, and none of those

4  steps were taken.

5          This Court admonished the Bureau to follow the

6  guidelines and not to open mail outside the presence of the

7  inmate.  So there exists already a history within this case,

8  Your Honor, of modification of the terms of confinement that I

9  would argue that establishes enough precedent for this Court

10 to adopt this particular petition, and then hear the

11 substantive elements of it in an evidentiary hearing.

12         So that's the first response that we would have to

13 the Government's position that it should be dismissed without

14 hearing on the merits.

15         The second argument concerns simply the law, Your

16 Honor, and the law we believe in this particular case happens

17 to fall -- this particular case happens to fall squarely

18 within well-established precedent in the Southern District of

19 New York in several different cases, clearly establishing a

20 precedent where a defendant waiting trial can challenge the

21 terms of his confinement and challenge those terms with his

22 Trial Judge in the particular district for which he's being

23 prosecuted.

24         In Basciano, the Eastern District of New York

25 decided in 2008, heard a petition that was filed by the

1    defendant in that particular case challenging -- making

2    similar challenges to what Mr. Savage is challenging in this

3    particular case.  Mr. Basciano, the defendant in that matter,

4    challenged his ability to contact counsel.  He made First

5    Amendment arguments in his petition and the District Judge

6    hearing his underlying criminal case actually adopted that

7    particular motion that was filed within that criminal case and

8    heard it, heard the substantive elements of it.

9           Therefore, we would ask the Court to consider that

10   holding, which again is a 2008 holding.  The same district in

11   Hashmi was another matter which we've cited in our brief, is

12   another case where the District Judge adopted a motion filed

13   within the criminal prosecution by Defendant Hashmi and

14   although it was not couched in terms of a 1983 action or under

15   any type of civil complaint, he filed it directly as a motion

16   within the criminal complaint -- the criminal case.  The Court

17   heard it.

18          The Court got over the first step of has the

19   defendant exhausted his remedies -- his administrative

20   procedure remedies, has the defendant properly placed the

21   matter before the Trial Judge and in Hashmi, the Court

22   concluded that there is no exhaustion prerequisite, similar to

23   the way the Basciano Court ruled that there is no exhaustion

24   requirement, the matter is ripe automatically and that that

25   Court had heard that case without requiring the defendant to

1   exhaust any administrative remedy procedures.

2           Finally, in <u>US versus Lopez</u>, Your Honor, a similar

3   case raised within the confines of the criminal case, that

4   Court found that the PLRA exhaustion requirements were not

5   related to a motion filed by the defendant in a criminal case.

6   So I think within this particular case this Court has

7   established a precedent of modifying terms of conditions.

8           Secondly, there is well-established precedent where

9   criminal defendants have filed motions within their criminal

10  cases and have been heard directly by their Trial Judges in

11  the three cases that we've mentioned, all of which are cited

12  in our brief.

13          And finally, Your Honor, I think it's an interesting

14  point to note but should be noted nonetheless, and that is

15  that the administrative remedies that are found in 28 CFR

16  501.3 and later in 28 CFR 542.10 and the following subsections

17  of that all suggest that this is not -- this concept of

18  exhaustion is not a prerequisite to getting this matter before

19  a Judge.

20          Quite frankly, they also suggest in 501.3(e), Your

21  Honor, that the affected inmate may seek review of the terms

22  of confinement through this ARP process.  It doesn't make it

23  mandatory, it doesn't say shall or must proceed in that

24  manner.  These administrative remedy procedures are simply

25  available to an inmate such as Mr. Savage.

1         We'll get into the steps that he did take to

2    challenge the terms of confinement, but there is this idea

3    that the Court is being asked to accept that the defendant

4    should somehow exhaust these remedies and these procedures

5    prior to being heard by this Court and I don't think that

6    that's correct.

7         I think most importantly, Your Honor, the Court

8    should understand clearly that despite these procedures

9    existing and outlined in 542.10 and the subsequent sections,

10   the Attorney General is the only person that can modify the

11   terms of confinement upon a request made by the inmate, that

12   this procedure that the Bureau of Prisons has established

13   through the regulations is a road to nowhere.

14        In essence, the inmate is being required to file

15   petition after petition after petition to various people

16   within the BOP where the BOP is essentially telling Mr. Savage

17   in various responses, hey look, even if we felt these

18   suggestions had merit, there's nothing we can do about it

19   anyway.  The Attorney General is the only person that can

20   modify the SAMs.

21        And despite those requirements and despite the

22   suggestion to the Court that he is to exhaust this

23   administrative remedy procedure, there's really no hope within

24   that procedure for Mr. Savage.  Even if there are merits to

25   his complaints, this process that's in place goes nowhere for

1   him.  So for all of those reasons, I would ask the Court

2   simply on argument to find that it does have jurisdiction over

3   the substantive element of Mr. Savage's petition.

4            THE COURT:  All right.

5            MR. HOEY:  If the Court wishes testimony in

6   evidence, we're prepared to present that but I think the

7   argument, I'd like to lay out first, Your Honor.

8            THE COURT:  Mr. Troyer?

9            MR. TROYER:  Yes, thank you, Your Honor.  Your

10  Honor, there's a statute, the Prisoner -- Prison Litigation

11  Reform Act, which requires inmate plaintiffs to exhaust their

12  administrative remedies with the Bureau of Prisons before

13  seeking redress from the Courts.

14            This is not a road to nowhere, I think is somewhat

15  of a -- well, it's not a correct argument and the proof is in

16  the pudding because we've had instances in this -- in this

17  case where redress has been sought informally and with our

18  office being involved and with the Bureau of Prisons being

19  involved -- the regional office.

20            We have made -- we have made changes to the

21  implementation of the SAMs, we have made changes to the

22  conditions of confinement so it's hardly a road to nowhere.

23  It is in fact something which is required.  I mean, the Act

24  clearly states, "No action shall be brought with respect to

25  prison conditions under Section 1983 of this Title or any

1    other Federal law by a prisoner confined in any jail, prison

2    or other correctional facility until such administrative

3    remedies as are available are exhausted." And again, that's

4    Title 42, Section 1997e, subsection (a).

5            Mr. Savage of course is a pretrial detainee. He's

6    also a sentenced prisoner. He's already been convicted of

7    witness tampering crimes -- he's -- as well as drug

8    trafficking crimes. Those convictions were recently confirmed

9    on appeal by the United States Court of Appeals for the Third

10   Circuit.

11           Of course there are some cases -- Mr. Hoey has set

12   forth a few cases -- District Court cases where District

13   Courts came to the conclusion that an exhaustion of remedies

14   -- exhaustion of administrative remedies was not required,

15   however, there are many more cases including Third Circuit

16   case law that says that in fact the PLRA does have to be

17   upheld, that a prisoner does have to exhaust administrative

18   remedies.

19           And of course I've set them out in my -- in my

20   response. I won't go through each one but the -- we have the

21   Eastern District of Virginia in United States versus Ali, the

22   Southern District of New York in United States versus Elmari

23   (phonetic), United States versus Troya -- that's T-R-O-Y-A --

24   from the Southern District of Florida, and the United States

25   versus Antonelli, which is a Seventh Circuit case.

1           In the Seventh Circuit case, the defendant there did

2    something similar -- not exactly the same but similar to what

3    Mr. Savage is doing which is instead of filing a civil action

4    or seeking redress under 1983, he filed it under a criminal

5    case.  The only difference there -- and I'll admit, there is a

6    difference -- was that the criminal case then was at that time

7    dormant.

8           But he filed it in the criminal case hoping to avoid

9    this whole exhaustion of remedies.  The Seventh Circuit told

10   him he can't do that.  In fact, the Seventh Circuit, there's

11   an interesting quote from that opinion at page 362 of that

12   opinion where they say, "Prisoners who play games to avoid the

13   PLRA should not expect Courts to cooperate," and indeed,

14   that's -- that's really the situation here.

15          Mr. Savage has some very distinct issues that he has

16   raised, and I'm not saying that all of those issues don't need

17   to be entertained, because they do.  Each and every one should

18   be listened to and they should -- but they should be listened

19   to and entertained through the administrative process first.

20   Mr. Savage is well aware of this process.

21          Before I get to that, I just want to -- I don't want

22   to forget to mention the Third Circuit case law in this which

23   is well established, it goes back at least to 1988 in Lyons

24   versus U.S. Marshals.  The Third Circuit specifically ruled

25   that a pretrial detainee litigant who was under SAMs

 1   restrictions must exhaust his administrative remedies unless

 2   the prisoner is seeking only money damages, which of course is

 3   not the case in this instance.  So there's Third Circuit case

 4   law that is I think directly on point and controlling in this

 5   case.

 6          I recognize the Hashmi decision that was a District

 7   Court opinion in the Southern District of New York in 2008,

 8   however, I also pointed out in our response that there's some

 9   question about the viability of that decision.  Nowhere in

10   Hashmi did they discuss the Nagy situation -- the Nagy

11   decision from 1996 which is a Second Circuit decision where

12   the Court applied the PLRA to a motion filed by a criminal

13   defendant and explained that what constitutes a "civil action"

14   for the purposes of the PLRA depends on the substance of the

15   prisoner's claims.

16          Plus, if he's seeking comparable relief to what

17   might be afforded in a traditional suit under 1983 the PLRA

18   still applies, and that's really what this is.  This is

19   undoubtedly -- this is all about conditions of confinement.

20   Mr. Savage has some arguments about the conditions of his

21   confinement and how they impact some of his other

22   constitutional rights, specifically his Sixth Amendment right

23   to counsel in preparing for trial.

24          But, they are nevertheless conditions of confinement

25   arguments and he has to go through that exhaustion of

1  administrative remedies.   Now, what I'd like to do at this

2  point is to kind of focus or crystallize the issue because --

3  and I don't know that I did that appropriately in my response

4  because Mr. Savage has filed -- has taken different steps at

5  different times and he has filed different pleadings in

6  different forums.

7         And what he has done, there was a previous request

8  to -- for BOP to eliminate or lift the SAMs conditions.   He

9  did file that.   He filed that request for administrative

10 remedies when he was in ADMAX in Colorado and he appealed

11 that, the denial of his request, to the local warden and he

12 appealed the denial of that request to the Regional Office of

13 the Bureau of Prisons.

14        And once that was denied, he appealed it to the

15 Central Office of the Bureau of Prisons, after which he filed

16 a suit.   That suit was dismissed.   It was dismissed without

17 prejudice, but it was dismissed.   So he's familiar with the

18 requirements of exhausting administrative remedies.   He has

19 fulfilled -- in that case he fulfilled those requirements.

20        What we have here though before us today I submit is

21 really something a little bit different.   What he is filing

22 now today is he's asking for lifting of the SAMs restrictions,

23 but he's also -- he's asking for it for specific reasons and

24 he's asking for specific redress for specific instances which

25 didn't even exist back when he filed his suit in Colorado, so

1    and for those, he has not exhausted his administrative

2    remedies.

3            And again, just so the record is clear -- and all of

4    these I believe are in the submissions given mostly by defense

5    counsel who did file a rather comprehensive submission to the

6    Court, but just for clarity purposes, April 28th, 2010, Mr.

7    Savage filed a request -- a somewhat informal request for

8    administrative remedies regarding his so-called dry cell in

9    FDC Philadelphia.

10           Basically that was a complaint that when he was

11   brought down for his April 21st, 2010 meeting with counsel --

12   contact visit with counsel that he was placed in a cell that

13   Mr. Savage felt was not adequate for his needs.  There is a

14   response filed to that request on May 20th, 2010.

15           Mr. Savage then sought an appeal of that and he

16   filed a formal request for administrative remedies at MCC New

17   York on May 27th, 2010, and on June 15th, 2010, he received a

18   response from the Warden of MCC New York.  With regard to

19   that, that is where Mr. Savage's pursuit of those issues

20   ended.  Mr. Savage never filed any appeal with the Regional

21   Office of BOP, never followed up, never sought any appeal

22   anywhere.

23           Of course Mr. Savage again is well aware of the

24   procedures because he followed the procedures in his previous

25   suit in Colorado.  He knew that he could file an appeal with

1   the BOP Regional Office and if that was denied, he could file

2   an appeal to the Central Office.  Indeed, again, he had done

3   those before.  In this case, he did not do these.  Essentially

4   to crystallize the issue, Your Honor, defense can't have it

5   both ways.

6          Either this is the same complaint he listed in

7   Colorado in which case his complaint was dismissed and if he

8   wishes to, he could follow up and try to re-file it in the

9   District of Colorado, or it's a different complaint, and I

10  submit that it probably -- admittedly probably is a different

11  complaint.  And if it's a different complaint for different

12  specific perceived transgressions and for specific different

13  remedies, then he has to file the administrative remedies.

14         And now counsel, again, referred to this road to

15  nowhere.  It's a somewhat -- not only is it a somewhat

16  insulting argument, but it's really not accurate and again,

17  this case is a good example of how it's not accurate.  You

18  know, Mr. Hoey has -- or rather Mr. Savage placed in his

19  motion, you know, certain -- you know, certain complaints and

20  one of those complaints involved for instance his legal mail.

21         There was some arguments that his legal mail had

22  either been opened or had been returned to counsel.  I don't

23  know of any situations where it was opened, however, there

24  were admittedly when I viewed what was given to us by Mr. Hoey

25  in the appendix or attachment, I saw that certain things had

1    been returned to counsel which at least to me looked like they

2    were attorney -- attorney-client envelopes that should have

3    been delivered to Mr. Savage.

4         We followed up with this.  We followed up with the

5    head of the SAMs Unit in MCC New York, Mr. Haas, who is

6    extremely -- you know, communicative and extremely involved in

7    this case and has been very receptive to both input from the

8    Government and defense counsel, and we followed up with the

9    Regional Office of the BOP and as a result, we obtained some

10   changes to this.

11        In fact, I just received this week advice that they

12   are going to relax some of their standards.  Now, if the Court

13   were to look at these -- and I don't suggest that the Court

14   really needs to delve into the minutia of this, in fact,

15   obviously we're arguing that you don't because he hasn't

16   exhausted the administrative remedies.

17        But this is a good example of why he should exhaust

18   administrative remedies and why a lot of these things could be

19   handled either informally or through the Bureau of Prisons

20   administratively and don't have to essentially -- pardon the

21   expression -- bother the Court with these matters, is that --

22   you know, some of the envelopes that were sent, say for

23   instance from Mr. Hoey's office, one of -- some of -- a couple

24   of those envelopes didn't have Mr. Hoey's name on it, didn't

25   have a law office name, it simply had the address.

1          I think it's 50 Darby Road, Paoli, PA.  That was

2     obviously an oversight by somebody and I'm not suggesting --

3     certainly not suggesting Mr. Hoey did it on purpose.  He

4     probably gave it to a legal assistant, she probably put it in

5     an envelope and sent it out without really looking at it.  So

6     when somebody receives the mail at MCC New York, they don't

7     know who this is coming from and so they sent it back.

8          That's actually legitimate, and Mr. -- you know,

9     defendant's counsel do have some obligation to make sure that

10    things that are sent to their clients in the institutions are

11    correctly marked.  They should be marked either legal mail or

12    special mail, they should be marked with their law office or

13    the fact that they're attorneys at law.

14         There were a couple of other instances I will tell

15    you where it appeared -- especially I think there were a

16    couple of things from Mr. Sullivan's office where it appeared

17    that they really should have gone through and been given to

18    Mr. Savage.  We had that discussion.

19         I don't bring this out to air the dirty laundry and

20    I certainly don't bring it out to criticize MCC New York and I

21    certainly don't bring it out so that we can pat ourselves on

22    the back or that I can congratulate -- you know, BOP Regional

23    Office for assisting.

24         My point is that this could easily -- this didn't

25    require a one-inch thick pleading with a one-inch thick or a

1   half-inch thick pleading with a one-inch thick attachment.

2   All it required was basically a phone call saying hey Dave,

3   this stuff isn't getting through, can you help us, or, even a

4   call to Mr. Haas or to Regional with counsel saying hey, we're

5   having some issues about the mail being delivered correctly,

6   can you intervene and make sure that this gets done.  Had that

7   happened, it would have gotten done.

8           If for some reason all of us were either asleep at

9   the switch or not -- not doing our jobs correctly at that

10  point, certainly Mr. Savage could have asked for

11  administrative remedies.  Had he done that and had it gone to

12  the BOP Regional Office, that matter would have been

13  corrected, so it's a perfect example of how this is not a road

14  to nowhere and how if Mr. Savage just simply followed the

15  procedures of which he is well aware, we wouldn't be in this

16  position.

17          What Mr. Savage is asking for -- and I know the

18  Judge -- Your Honor doesn't necessarily want to get to the

19  merits of this, we want to deal with the exhaustion issue

20  first, but essentially Mr. Savage has some very limited and

21  specific complaints which might require or at least if he's to

22  be believed, limited and specific actions by somebody.

23          However, it certainly doesn't require the lifting of the

24  SAMs motion and in this case, the SAMs motion is issued by the

25  Attorney General, just to address I think counsel's last

1    point.  However, it's issued by the Attorney General to be

2    implemented by the Bureau of Prisons and there is some rather

3    considerable latitude of discretion within the Bureau of

4    Prisons as to how that SAMs is implemented and the example I

5    just gave the Court I think is a perfect example of how the

6    Bureau of Prisons does have discretion and can adequately deal

7    with whatever issues concerning conditions of confinement that

8    the defendant raises.

9            THE COURT:  All right.  Mr. Hoey?

10           MR. HOEY:  Your Honor, in response, I think that the

11   letter -- the correspondence concern is something that's kind

12   of vital to our ability to actively and effectively defend our

13   client and I think it's important that it was brought up

14   because quite frankly, when I was in the MCC last week I

15   received -- or I saw my client receive a letter that was

16   completely obvious to be legal mail through the slot in his

17   door, which was opened.

18           And I got the letter from him and I brought it

19   today, and that letter is postmarked September 3rd of 2010 and

20   it says on there, "Special mail, open in the presence of the

21   inmate, Timothy J. Sullivan, Esquire," who is clearly on

22   record at the prison as being co-counsel in the case.  That is

23   the fifth piece of mail that Mr. Sullivan has so marked that

24   has been opened in advance of being distributed to my client,

25   and my client did informally challenge that when I left the

1    prison that day, two weeks ago.

2          And when he asked the person who delivered the mail

3    to him why it was that they were invading the -- the

4    communications between counsel and himself, he was told by the

5    gal at the prison that this is the way we do it at the MCC and

6    you're going to have to deal with it.

7          And I can't conceive of a more egregious misstep and

8    more egregious amount of arrogance in a facility that's

9    housing somebody in conditions that are deplorable, quite

10   frankly, to open their mail, stiff-arm them and tell them that

11   that's the way it's going to be in a capital case where he's

12   facing the death penalty, dealing with two separate counsel,

13   the taxpayers are footing the bill, and now I have lost all

14   confidence in the ability to communicate with my client

15   through the mail because I have no idea what they're doing to

16   my mail prior to delivering it to my client.

17         And quite frankly, Your Honor, it's in affront to

18   our ability to represent him effectively, and it is not

19   getting better and this mirage that exists through this

20   administrative remedy procedure is exactly that.

21         THE COURT:  Well, let's -- let's cut through it, Mr.

22   Hoey.  With regard to that administrative remedy procedure,

23   will you agree that it has not been exhausted?  I mean, we can

24   get to the merits of the situation in a few minutes, but it

25   seems clear to me --

1              MR. HOEY:  Here's how I would address --

2              THE COURT:  -- it seems clear to me that the

3       argument that you're making is it's an exercise in futility,

4       not that it was pursued.

5              MR. HOEY:  No, in fact, I'm not, Your Honor.  What

6       I'm saying, and I think the Government would agree that at one

7       point in time when Mr. Savage was housed at ADX in Colorado,

8       he did exhaust his administrative remedies.  Now, it's -- it's

9       kind of interesting to say well, we slightly tweaked the SAMs

10      when he went to New York, so you know what?  This guy's got to

11      start the whole process all over again because we're now

12      allowing him to get a newspaper every third week.

13             THE COURT:  Are you suggesting that what happened in

14      Colorado will take care of all problems in the future?

15             MR. HOEY:  Well, I think what happened in Colorado

16      is important because the core SAMs restrictions on Mr. Savage

17      have never changed.  In fact, 99 percent of the SAMs

18      restrictions never changed when he went from Colorado to New

19      York.

20             THE COURT:  Well, did you in Colorado make

21      objections to counsel's ability to communicate with him?

22             MR. HOEY:  I was not counsel of record at that

23      point, Your Honor.  I --

24             THE COURT:  Well, did anyone?

25             MR. HOEY:  I -- yes, I think Mr. Warren, the

1   previous attorney.

2                THE COURT:  And that went through the administrative

3   process all the way to the end?

4                MR. HOEY:  I don't think it did.  I think what my

5   client had raised there in Colorado was simple concepts that

6   are again contained in his petition for the Court such as his

7   ability to communicate with counsel, ability to communicate

8   with his family, First Amendment concerns.

9                But this concept of look, if we tweak SAMs and we

10  transfer him and just when he gets to the top of the hill

11  we're going to tweak it and he's got to start the whole thing

12  over again is indicative of this moving target that goes

13  nowhere.

14               THE COURT:  All right.  So the bottom line is that

15  there has not since he's been in New York been a complete

16  exhaustion of the administrative remedies?

17               MR. HOEY:  I think we'd like to put some evidence on

18  to that effect, Your Honor, and I would -- I think the answer

19  is yes, quite frankly, that he has exhausted those.

20               THE COURT:  Well, tell me what he did.  Did it go

21  all the way to the end of the line?

22               MR. HOEY:  Under -- under 542.10, Your Honor, 13, 14

23  and 15, he first starts with what's called an informal request

24  to staff.

25               THE COURT:  That's right, the informal request to

1    staff, then to the Warden --

2                MR. HOEY:  Under a BP-9.

3                THE COURT:  -- then to the Regional Director, then

4    to General Counsel.  Did you go that --

5                MR. HOEY:  Yeah, if I could confer with my --

6                THE COURT:  -- did you go that route?  If you went

7    that route that's one thing.  If you didn't go that route,

8    it's quite another.

9                MR. HOEY:  If I could stand down, Your Honor, I want

10   to just make sure I'm speaking correctly on what -- because

11   there are so many filings in the case, because he has been in

12   several different facilities, I think it's important for me to

13   get the facts straight, Judge.

14               THE COURT:  I think it is too.

15               MR. HOEY:  Yes.  May I have a moment, Your Honor?

16               THE COURT:  Certainly.

17               (Off the record)

18               (Recording turned on after counsel starts speaking)

19               MR. HOEY:  -- deps taken and we have some documents

20   to support it.  While he's at MCC, New York, Your Honor, he

21   filed the BP-8, which was ultimately denied.  He then filed an

22   administrative remedy to the Warden.  He did not receive his

23   response from the Warden denying his request within the 20

24   days that he needed to file the appeal to the next level which

25   would be the Regional Director under a BP-10, therefore,

1   because they're holding his mail for a period of time that's

2   extended at MCC New York, he's not getting the mail in a

3   timely fashion and he's not able to appropriately and timely

4   appeal any adverse decision, and that -- that is actually

5   confirmed by what was taking place in Colorado.

6         He filed a <u>Bivens</u> action in Colorado and requested

7   of the Court leave to proceed in forma pauperis.  When he made

8   that request he submitted his financial picture to the Court

9   to support his in forma pauperis petition.  He received from

10  the Court ten days too late the permission to do that and

11  unfortunately, the order that granted him permission to

12  proceed in forma pauperis was time sensitive.

13        Because he received it late, he could not in time

14  file the necessary paperwork and pay the necessary fees and

15  ultimately his <u>Bivens</u> action was dismissed.  That's just

16  illustrating how the time sensitive materials that he's

17  getting and not getting in time quite frankly is hampering his

18  ability to pursue the process appropriately.

19        So the short answer is no, he has not exhausted the

20  administrative remedies in New York.  The long answer is

21  there's a reason and that's because the time sensitive

22  materials he's supposed to be getting in time aren't getting

23  to him in time, so I think that -- that would be the answer to

24  that, Your Honor.

25        I think there's also the way I see it possibly some

1   confusion between the PLRA requirements and the requirements

2   necessary to file a direct motion in the criminal case such as

3   what we've done here.  The cases that are cited by the

4   Government are very -- it's a very important distinction, Your

5   Honor.  The Lyons case, Yousef versus Reno, and Nagy are all

6   cases that were originally filings undertaken by the defendant

7   -- the prisoner that is, under the Bivens Act, under the

8   Bivens case, Your Honor.

9         These were civil suits filed in a separate Court

10  with a separate Judge, thus implicating the judicial economy

11  concept.  But for instance, Nagy is a case where the

12  Government says you know, Judge, you should rely on this

13  holding.  In Nagy, the Second Circuit, which would have an

14  impact on Hashmi and the other matter that we discussed, the

15  Basciano case -- Nagy rectifies all this.

16        Nagy doesn't rectify anything.  Nagy -- in Nagy, the

17  defendant filed a writ of mandamus simply seeking to get an

18  answer about recusing his Trial Judge.  He filed it under --

19  couched it in a Bivens complaint which was ultimately

20  dismissed because the Court there said he didn't exhaust his

21  remedies and this particular request wasn't a Bivens type of

22  request.

23        Nowhere in that case does it say any defendant in

24  any criminal case cannot file a direct complaint in a motion

25  in the criminal case unless he's exhausted his remedies.  It

1   doesn't say that at all.  The only controlling cases that deal

2   with this concept directly are those that we've cited in our

3   brief.  <u>Hashmi</u> is right on point, <u>Basciano</u> is right on point.

4   I think there is a very clear distinction between a prisoner's

5   Litigation Reform Act case filed under <u>Bivens</u> in a civil case

6   -- civil setting, versus a criminal defendant raising this

7   issue directly within his case.

8              I think the primary bottom line is the judicial

9   economy argument.  Most of the Courts agree with that.  I

10  think finally, Your Honor, in the <u>Yousef</u> case cited by the

11  Government, the Court in that case says the Bureau of Prisons

12  does not have authority to modify SAMs.  They recognize that

13  so why would an administrative remedy procedure be relevant?

14             THE COURT:  All right.  Mr. Hoey, I'll take a look

15  at that issue and we'll deal with it ultimately.

16             MR. HOEY:  Yes, Your Honor.

17             THE COURT:  I think at this juncture we ought to

18  move forward and get into the issues that you've raised in the

19  petition that was filed, specifically the First Amendment --

20  the Sixth Amendment issues and the other issues that you have

21  raised.

22             MR. HOEY:  Yes, Your Honor.  May I confer with

23  counsel a moment?

24             THE COURT:  Yes, indeed.

25             (Pause in proceedings)

1          MR. HOEY:  May we see you at sidebar, Judge?

2          THE COURT:  Certainly.

3          (Sidebar discussion as follows:)

4          MR. HOEY:  Your Honor, I would ask the Court allow

5   us to break for today based on our telephone conference of

6   last week where we discussed kind of the issues that you

7   wanted to hear today.

8          My thought was that today was designed specifically

9   to determine whether or not this Court would hear the

10  substantive element of the petition, whether it was in a

11  position to do so and legally if it could and whether there's

12  been enough evidence on the record or through the briefs or

13  through argument that would allow -- you know, convince the

14  Court one way or the other.  We were not prepared to put the

15  substantive element of the case on today.

16         THE COURT:  Ms. Sykes, was that your understanding

17  as well?

18         MS. SYKES:  Yes, Your Honor, that we would take this

19  sort of as phase one and determine whether or not there was an

20  exhaustion.

21         THE COURT:  Well, we need to get to phase two very

22  quickly.  There's no question about that.

23         MR. TROYER:  Indeed.  And one of the issues that

24  comes up is that I know Mr. -- I know it's Mr. Hoey's stated

25  the intent to have an evidentiary hearing where he'll call

1    witnesses.  It's the Government's position and in that

2    conference call we made it rather clear that it's our position

3    that there's no need to call a lot of witnesses, that there's

4    plenty of submissions, there's plenty of a record for the

5    Court to make a determination, and that it's not necessary to

6    have live testimony and a full evidentiary hearing.

7              MR. HOEY:  We may reach that conclusion.  I mean, we

8    may reach that conclusion, Judge.  I don't think we're ready

9    to do that today.  We're certainly going to have to confer

10   with Mr. Savage on that.  I don't want to in any way affect

11   his desire to testify if he wants to and put these things into

12   the record himself.

13             Of course he -- you know, we understand the exposure

14   element of that but if we could somehow reach an agreement by

15   way of stipulations or submissions to the Court that would

16   present this to you in a package as opposed to a full day of

17   testimony or what have you, that might be a better way.

18             THE COURT:  Well, I certainly will permit you to

19   talk with the US Attorney and determine what you are able to

20   do with regard to the situation.  Getting back to the issue

21   that is before the Court, is there any -- I kind of cut you

22   off and to move forward, the question I have is do you have

23   anything else --

24             (Sidebar interrupted)

25             PERSON IN GALLERY:  I think something's wrong with

Colloquy                                                                    32

1    my brother.  Somebody check him.  Get medical attention.

2    Something's wrong.  Something's not right.  I know him.

3    Something's not right.  Give him medical attention.  Listen --

4    you're not listening to me.  I know he needs medical

5    attention.

6            MR. SULLIVAN:  Your Honor, can we have permission to

7    have Mr. Savage taken back for medical reasons?

8            THE COURT:  Certainly.

9            MR. SULLIVAN:  Do you want some water?  Here's some

10   water.

11           MR. HOEY:  Yeah, he's sweating pretty bad.  He's

12   sweating.

13           MR. SULLIVAN:  Yeah.

14           MR. HOEY:  Are you all right?

15           MR. SULLIVAN:  No, he's not breathing right either.

16           MR. HOEY:  Pull him back from the table.

17           MR. SULLIVAN:  Can you hear me?

18           THE DEFENDANT:  What?  I can hear you.

19           MR. HOEY:  Are you all right?

20           THE DEFENDANT:  I'm all right.

21           MR. HOEY:  Why don't you just go back for a second

22   and --

23           THE DEFENDANT:  I'm all right.  I'm all right.

24           THE COURT:  Mr. Hoey and Mr. Sullivan, we're going

25   to recess --

1              THE DEFENDANT:  No, go ahead, I'm all right.

2              THE COURT:  Mr. Savage, we'll give you a couple of

3    minutes.

4              MR. HOEY:  He's like sweating profusely.

5              THE COURT:  We can take a recess.  It's no

6    imposition.

7              MR. HOEY:  He's not breathing right.

8              THE COURT:  We'll reconvene in ten minutes, okay?

9              MR. SULLIVAN:  Thank you, Your Honor.

10             THE DEFENDANT:  I'm all right.

11             (Recess taken, 3:52 p.m. to 4:16 p.m.)

12             THE COURT:  All right, Mr. Hoey and Mr. Sullivan,

13   are we in a position to go forward?

14             MR. HOEY:  We are, Your Honor.

15             THE COURT:  All right.

16             MR. HOEY:  I have provided the Government a copy of

17   each of the exhibits I intend to submit today.  There will no

18   live testimony, but we would admit several documents into the

19   record.  Counsel has those.  We'd ask the Court to consider

20   them in making a decision on this first issue that we

21   presented to the Court today.

22             THE COURT:  All right.  Mr. Troyer, do you have

23   anything further?

24             MR. TROYER:  Well, I certainly have no objection to

25   what counsel has shared with us and what he expects to

1    present.  The Government will also place -- we have a package

2    from the -- request for administrative remedy and the

3    documents that came from that including the last document

4    which is the response to the request from Warden Suzanne R.

5    Hastings of MCC New York dated June 15th, 2010.  I've given a

6    copy of that to counsel and so the Government will submit that

7    as well.

8              I also have -- I also have an email from Mr. Haas to

9    Ms. Sykes and myself with a number of people CC'd on this

10   concerning the issue of the legal mail dated September 28th,

11   2010.

12             THE COURT:  Why don't you give the exhibits -- both

13   of you, Mr. Hoey and Mr. Troyer, give the exhibits to Mr.

14   Finney.  You can mark the exhibits Government's exhibits and

15   defendant's exhibits.

16             MR. HOEY:  Judge, I have had an opportunity to

17   review those exhibits and documents.  I have no objection to

18   the Court receiving them and reviewing them.

19             THE COURT:  All right.  And have you given your

20   documents to Mr. Finney to mark?

21             MR. HOEY:  I haven't, Your Honor.

22             THE COURT:  All right.

23             MR. HOEY:  May I identify those on the record?

24             THE COURT:  Yes, indeed.

25             MR. HOEY:  Your Honor, Defense Exhibit 1 would be a

1    two page document dated February 9 of 2007 notifying Mr.

2    Savage of the imposition of SAMs while he was an inmate at USP

3    Atlanta.  Exhibit 2 would be the June 23, 2008 notification

4    modification of SAMs and renewal notice as well.  Exhibit 3 is

5    the May 15th, 2009 notification of extension of SAMs.

6            Exhibit 4 is  the February 1, 2010 notification of

7    extension of SAMs.  Number 5 is an admission and orientation

8    packet received by Mr. Savage upon his arriving at the

9    Metropolitan Correctional Center.  The next exhibit is a two

10   page request for administrative remedy form that Mr. Savage

11   submitted to the Warden here at the Federal Detention Center

12   on August 26th, 2004.

13           THE COURT:  That's D-6.

14           MR. HOEY:  Yes, Your Honor.

15           THE COURT:  All right.

16           MR. HOEY:  Number 7 is the habeas corpus petition

17   filed by Mr. Savage in Atlanta.  Exhibit 8 is a Central Office

18   administrative remedy appeal filed by Mr. Savage in ADX

19   Colorado, along with page two, which is the July 7th, 2008

20   order from Harold Watts, Administrator of the National Inmate

21   Appeals Unit.

22           The next document is a package of material, Your

23   Honor, which is essentially Mr. Savage's civil action that he

24   filed in United States District Court for the District of

25   Colorado, along with his petition to proceed in forma pauperis

1    and an order dismissing the civil action for failure to comply

2    with the in forma pauperis order.  The final exhibit is the

3    single page document -- the request for administrative remedy

4    filed by Mr. Savage in MCC New York, Your Honor.

5            THE COURT:  All right, they're admitted.  All right,

6    anything further, counsel?

7            MR. HOEY:  Nothing, Your Honor.

8            MR. TROYER:  No, Your Honor.

9            THE COURT:  All right.  I will take a look at the

10   record and we'll hand down an appropriate decision.

11           Mr. Finney, would you please speak with Mr. Hoey,

12   Mr. Sullivan and Mr. Troyer and Ms. Sykes and get a date for

13   another hearing in this matter?  We need to address some

14   things and it should be done within the next two weeks.

15           COURTROOM DEPUTY:  I will, Judge.

16           THE COURT:  All right?  All right, recess.

17           (Proceedings concluded, 4:22 a.m.)

18                          * * *

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

       I, Diane Gallagher, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____    October 5, 2010

DIANE GALLAGHER

DIANA DOMAN TRANSCRIBING