IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550-04 |
| ROBERT MERRITT | : | |

**SURRICK, J.**  JANUARY __8__, 2013

### MEMORANDUM

Presently before the Court are Defendant Robert Merritt's Motion *in Limine* to Exclude Evidence of Cell Block Conversations recorded on January 5, 2005 (ECF No. 576) and Motion to Suppress Evidence of Cell Block Conversations Recorded on January 5, 2005 (ECF No. 609). For the following reasons, Defendant's Motions will be denied.

**I. BACKGROUND[1]**

On October 9, 2004, six people, including four children, died as a result of arson at a home located at 3256 North Sixth Street, Philadelphia, Pennsylvania. (Fourth Superseding Indictment 22 ECF No. 480.) The Government contends that co-Defendants Kaboni Savage and his sister, Kidada Savage, solicited and directed Lamont Lewis and Defendant Robert Merritt to set fire to the home of Eugene Coleman, a former associate of Kaboni Savage. Kaboni Savage believed that Coleman was cooperating with the Government and planned to testify against him

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

in his 2005 federal drug conspiracy trial.[2] The firebombing took the lives of Coleman's mother, infant son, and four other relatives. The Government intends to show at trial that the firebombing was ordered by Kaboni Savage in order to intimidate Coleman and prevent him from testifying at the drug conspiracy trial.

On January 5, 2005, Defendant was placed in the Special Housing Unit ("SHU") at the Federal Detention Center ("FDC") located at 700 Arch Street, Philadelphia, Pennsylvania. (Gov't's Resp. 4, ECF No. 591.) On the basis of an order entered by Judge Michael Baylson, federal officials had previously placed wiretaps within the prison cell of Kaboni Savage and the surrounding access spaces, including in the vent between his cell and that of Dawud Bey. (*Id.*; *see also* Def.'s Mot. Suppress 2, ECF No. 609; Oct. 22, 2012 Hr'g Tr. 22 (on file with Court).) Through these wiretaps, the Government obtained recordings of conversations between Savage, Bey, and Defendant, which occurred between October 26, 2004 and January 5, 2005. (Gov't's Resp. 5; Def.'s Mot. Suppress 2.) Transcripts of these recordings were generated by law enforcement officials. (Gov't's Resp. Exs. A-D.)[3]

On April 8, 2009, a federal grand jury returned a twenty-six count Superseding Indictment ("Superseding Indictment") charging Defendant with: conspiracy to participate in the

---

[2] Kaboni Savage, Steven Northington, and four other co-defendants not charged in the instant Indictment were prosecuted in the 2005 drug conspiracy case before the Honorable Mary A. McLaughlin. After a seven-week trial, Kaboni Savage was found guilty of conspiracy to manufacture and distribute cocaine, money laundering, firearms possession, witness retaliation and other crimes. Coleman testified at that trial. Kaboni Savage received a sentence of thirty years in prison on these convictions.

[3] In a separate memorandum of law, we perform an analysis of the accuracy, authenticity, proper preservation, and other related issues pursuant to Federal Rule of Evidence 901 and the Third Circuit Court of Appeals' guidance in *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975).

affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); six counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 10-15); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Superseding Indictment.) In the Superseding Indictment, Defendant was charged along with three co-Defendants, Kaboni Savage, Steven Northington, and Lamont Lewis. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant, Kaboni Savage, and Steven Northington. (ECF Nos. 196, 197, 198.)

On August 21, 2012, Defendant filed a Motion *in Limine* to Exclude Evidence of Cell Block Conversations Recorded on January 5, 2005. (Def.'s Mot. Exclude, ECF No. 576.) The Government filed its Response to Defendant's Motion *in Limine* on September 7, 2012. (Gov't's Resp.) On September 27, 2012, Defendant filed a Motion to Suppress Evidence of Cell Block Conversations Recorded on January 5, 2005. (Def.'s Mot. Suppress.)

We held a hearing on the pretrial motions on October 22, 2012, at which time the parties presented additional argument on the instant Motions. Trial is scheduled for January 28, 2013. (ECF No. 877.)

## II. DISCUSSION

Defendant requests that the Court exclude the audiotape of the January 5, 2005 cell block conversations. (Def.'s Mot. Exclude 3.)[4] In the alternative, Defendant requests that the Court hold an evidentiary hearing to determine whether the conduct of officials at the FDC violated the Sixth Amendment.[5]

### A. Confrontation Clause

Pursuant to the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. Until recent years, an unavailable witness' out-of-court statements were admissible insofar as they had adequate "indicia of reliability," which meant that they fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). In *Crawford v. Washington*, 541 U.S. 36, 53 (2004), the Supreme Court found that the Sixth Amendment was primarily concerned with "testimonial hearsay," i.e., testimony at a preliminary hearing, in front of a grand jury, or at a prior trial, and statements made during police interrogations. To admit testimonial hearsay into evidence, the Sixth Amendment requires that the declarant be unavailable and that the accused have had a prior opportunity for cross-examination. *Id.* at 59.

---

[4] Although he was not involved in each portion of the recorded conversation, Defendant seeks to suppress the entirety of the January 5, 2005 interceptions. (Gov't's Resp. n.2.)

[5] We have discretion to conduct an evidentiary hearing to determine if there has been a violation of Defendant's Sixth Amendment right to counsel. *See United States v. Brink*, 39 F.3d 419, 425 (3d Cir. 1994) (requiring a hearing where the defendant made a colorable claim that his constitutional rights were violated). Claims are "colorable" if they "consist of more than mere bald-faced allegations of misconduct." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). At a *Massiah* hearing, Defendant would examine Corrections Officer Gillan and other prison guards who were present at the FDC on January 5, 2005. (*See* Def.'s Mot. Exclude 9.)

In subsequent decisions, the Supreme Court has refined the meaning of testimonial hearsay and confirmed the ruling in *Crawford*. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."); *Michigan v. Bryant*, 131 S. Ct. 1143, 1167 (2011) (addressing the "ongoing emergency" inquiry developed in *Davis* and finding that the "'primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency'") (quoting *Davis*, 547 U.S. at 822); *Whorton v. Bockting*, 549 U.S. 406, 417 (2007) (finding that *Crawford* overruled *Roberts* and created a non-watershed new procedural rule not to be applied retroactively). Presently, in the Third Circuit, "where nontestimonial hearsay is concerned, the Confrontation Clause has no role to play in determining the admissibility of a declarant's statement." *United States v. Berrios*, 676 F.3d 118, 126 (3d Cir. 2012). Accordingly, there is a two-part inquiry: first, we are to determine whether the statements were testimonial; and if the statements are non-testimonial, we are to review the admissibility of the hearsay evidence under the Federal Rules of Evidence. *Id.* at 127, 129.

Defendant argues that the admission of the January 5, 2005 audiotapes would violate his Sixth Amendment right to confront the witnesses against him. (Def.'s Mot. Exclude 6.) Defendant contends that because Dawud Bey is unavailable, he will not be able to cross-examine Bey regarding the accuracy and truthfulness of his out-of-court-statements. (*Id.*) The Government responds that the statements are non-testimonial and may be properly admitted as

statements in furtherance of an ongoing conspiracy. (Gov't's Resp. 19.) It is undisputed by the parties that Dawud Bey is unavailable to testify at trial.[6]

### 1. Non-Testimonial Statements

Defendant contends that introducing the January 5, 2005 wiretap recordings into evidence violates his Sixth Amendment right to confront Dawud Bey. (Def.'s Mot. Exclude 6.) The Government contends that the wiretap recordings are inherently non-testimonial. (Gov't's Resp. 11.) In *United States v. Hendricks*, 395 F.3d 173, 180-81 (3d Cir. 2005), the Third Circuit compared Title III recordings to circumstances highlighted by the Supreme Court, which were deemed to be definitively testimonial, and found that "the surreptitiously monitored conversations and statements . . . [were] not 'testimonial' for purposes of *Crawford*." Similarly,

---

[6] Without support, Defendant maintains that "all parties recognize [that] the declarant in question is an inherently unreliable and manipulative individual." (Def.'s Mot. Exclude 9.) The Government responds that attacking a co-conspirator's reliability has been rejected as a ground for challenging the admission of non-testimonial hearsay. (Gov't's Resp. n.6. (citing *Berrios*, 676 F.3d at 126).) In addition, the Government argues that Bey's statement was accurate insofar as it described Merritt's arrest and interaction with law enforcement officials and that Defendant has failed to highlight any inaccuracies or reasons to find Bey unreliable. (Gov't's Resp. n.6.) Finally, citing Federal Rule of Evidence 806, the Government points out that Defendant can collaterally attack the declarant's credibility even though the co-conspirator does not appear as a witness. (*Id.*)
  We agree with the Government. Defendant has not proffered any evidence suggesting that Bey is "inherently unreliable." At the time, in context, Bey's statements accurately reflected the state of affairs in the ongoing investigation. Moreover, if Defendant wishes to attack Bey's credibility, he is free to do so at trial. *See United States v. Wuagneux*, 683 F.2d 1343, 1357 (11th Cir. 1982) (admitting rebuttal testimony to impeach unavailable declarant's credibility).
   In addition, Defendant contends that admitting Dawud Bey's "summary and interpretation of what purports to be a written message from another inmate would constitute" inadmissible hearsay. We disagree. The fact that the statements are attributed to Defendant by Bey have no impact on their admissibility pursuant to relevant exceptions to the hearsay rule. As discussed *infra*, we find the wiretap recordings admissible pursuant to Rule 801(d)(2)(E), which renders statements made by co-conspirators during the life and in furtherance of the conspiracy non-hearsay.

in *Berrios*, the Third Circuit found Title III recordings non-testimonial as they "[bore] none of the characteristics exhibited by testimonial statements." *Berrios*, 676 F.3d at 128. The court was persuaded that there was no indication that the defendant or his co-defendant knew they were being recorded or that they intended to incriminate any of the defendants at trial, and that the recordings reflected "'casual remark[s] to an acquaintance.'" *Id.* (quoting *Crawford*, 541 U.S. at 51); *see also United States v. Johnson*, 119 F. App'x 415, 419 (3d Cir. 2005) (affirming district court decision to admit wiretap recordings as "[n]one of the statements contained in the recordings at issue in this case were testimonial"); *United States v. Claville*, No. 07-50097, 2008 WL 914490, at *2 (W.D. La. Apr. 1, 2008) (finding *Crawford* inapplicable to the Title III recordings to be introduced into evidence).

Moreover, statements made by co-conspirators during the course of a conspiracy are non-testimonial. *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006) (finding that the admission of recorded statements did not violate the Confrontation Clause where the out-of-court statements were recorded and either made by co-conspirators or not offered for the truth of the matter asserted); *United States v. Jones*, 372 F. App'x 343, 344 (3d Cir. 2010) (finding no violation of the Confrontation Clause where recordings of conversations of co-conspirators were admitted into evidence); *United States v. Robinson*, 367 F.3d 278, 292 n.20 (5th Cir. 2004) ("[T]he statement challenged as hearsay was made during the course of the conspiracy and is non-testimonial in nature."); *United States v. Reyes*, 362 F.3d 536, 541 n.4 (8th Cir. 2004) ("[C]o-conspirator statements are nontestimonial.").

7

Here, the Title III recordings from January 5, 2005 that Defendant seeks to suppress involve Kaboni Savage, Dawud Bey, and, at a later point, Defendant. (Gov't's Resp. 4-5 & Exs. A-D.) Similar to *Berrios*, the transcripts reflect that the parties did not know they were being recorded, there was no effort by any of the declarants to incriminate a fellow defendant, and the conversation was casual in nature. (*See id.*)

In addition, each of the participants on the Title III recording was a co-conspirator in the KSO. Defendant argues that Bey is not alleged to have conspired with Defendant. (Def.'s Mot. Exclude 7.) The Government responds that Bey was a fellow co-conspirator in the KSO, named in the Indictment. (Gov't's Resp. 4 n.1 (citing Indictment 17-20, 26-28, 32).) The Indictment places the conspiracy from as early as late 1997 to on or about April 21, 2010 and makes a number of references to Bey's involvement in the KSO. Kaboni Savage, Defendant, and Bey's January 5, 2005 conversations took place within the lifetime of the conspiracy and related to the conspiracy.

Because "'co-conspirator portions' of disputed tape recordings are 'nontestimonial,'" admitting the January 5, 2005 wiretap recordings of Defendant, Kaboni Savage, and Dawud Bey into evidence does not violate the Confrontation Clause of the Sixth Amendment. *Bobb*, 471 F.3d at 499 (quoting *Hendricks*, 395 F.3d at 183-84).

   2.   *Co-Conspirator Exception to the Hearsay Rule*

Having determined that the Title III recordings were non-testimonial based on the nature of the conversation and involvement of co-conspirators, we turn to the second part of the inquiry: whether the statements are admissible under the Federal Rules of Evidence. Statements by co-conspirators may be admitted into evidence as exceptions to the general prohibition on hearsay

8

pursuant to Rule 801(d)(2)(E) under three conditions: first, "there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it"; second, "the statements must have been made in furtherance of the conspiracy"; and third, the statements "must have been made during the course of the conspiracy." *United States v. Ammar*, 714 F.2d 238, 245 (3d Cir. 1983) (citing *United States v. Perez*, 658 F.2d 654, 658 (9th Cir. 1981)); *Jones*, 372 F. App'x at 344-45.

> [T]he existence of a conspiracy can be inferred "from evidence of related facts and circumstances from which it appears as a reasonable inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding."

*United States v. McGlory*, 968 F.2d 309, 327 (3d Cir. 1992) (quoting *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986); *see also United States v. Ellis*, 595 F.2d 154, 160 (3d Cir. 1979) (finding sufficient evidence of defendant's participation in conspiracy based, in part, on recorded conversations).

Moreover, in determining whether a statement is exempted from the general prohibition of hearsay evidence based on the existence of a conspiracy, "trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case." *Bourjaily v. United States*, 483 U.S. 171, 180 (1987). A trial court's determination that a conspiracy existed for the purposes of Rule 801(d)(2)(E) need only be supported by "slight" evidence. *United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir. 1980). In complex trials, courts are permitted to admit statements pursuant to Rule 801(d)(2)(E) subject to later confirmation by the preponderance of independent evidence that the conspiracy existed. *See*

9

*United States v. De Peri*, 778 F.2d 963, 981 (3d Cir. 1985); *Ammar*, 714 F.2d at 245-47 (upholding admission of co-conspirator statements subject to later confirmation).

We considered and denied Defendant Kaboni Savage's Motion to Exclude Co-Conspirators' Statements (ECF No. 391). *See United States v. Savage*, No. 07-550, 2012 WL 5866068, at *3 (E.D. Pa. Nov. 12, 2012). Savage's motion was a broad request seeking an order excluding all statements made by co-conspirators or, in the alternative, a hearing pursuant to *United States v. James*, 576 F.2d 1121 (5th Cir. 1978) *modified en banc*, 590 F.2d 575 (5th Cir. 1979). In part, we denied Savage's motion based upon the existence of ample additional evidence demonstrating the existence of a conspiracy independent of the co-conspirators' statements. *Savage*, 2012 WL 5866068, at *4. This evidence includes: co-conspirator testimony from the 2005 trial; seized controlled substances and paraphernalia; records of financial dealings showing the laundering of drug proceeds; phone records; forensic evidence from homicide scenes; photographs showing the Defendants together; and correspondence seized from jail and residences. *Id.*

We now have the benefit of reviewing the transcripts of a portion of the co-conspirator statements the Government intends to introduce at trial. (*See* Gov't's Resp. Exs. A-D.) Upon inspection, the statements strongly reflect the existence of a conspiracy, as the participants discuss law enforcement officials involved in the investigation, the nature of the investigation, potential cooperating witnesses, and efforts by Kaboni Savage to provide supplies and assistance to Defendant. (*Id.*) The recorded statements clearly reveal communications in furtherance of a then-existing conspiracy. *See, e.g.*, *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011)

(upholding district court determination that recorded statements were in furtherance of a conspiracy).

Accordingly, we are satisfied that the statements recorded on January 5, 2005 were co-conspirator statements and constitute an exception to the general prohibition of the introduction of hearsay evidence.[6]

**B.     *Massiah***

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In *Massiah v. United States*, 377 U.S. 201, 206 (1964), the Supreme Court held that a defendant is denied the basic protections of his Sixth Amendment right to counsel when agents of the Government deliberately elicit statements from him. In *United States v. Henry*, 447 U.S. 264 (1980), the Court held that federal agents deliberately elicited information by contacting a known informant and giving him instructions to pay attention to statements by the accused, but not to ask questions, about a robbery for which the defendant had been indicted. *Id.* at 270-71. Agents deliberately elicited these statements"[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel . . . ." *Id.* at 274.

---

[6] The Government argues that a number of other hearsay exceptions apply, including that the statements were made by a party opponent, pursuant to Rule 801(d)(2)(A), that the statements were adoptive admissions, pursuant to Rule 801(d)(2)(B), and that the statements were statements against the declarant's penal interest, pursuant to Rule 804(b)(3). (Gov't's Resp. n.13.) Defendant argues that the statements are not present sense impressions. (Def.'s Mot. Exclude 8.) Because we find that the recordings are properly admitted pursuant to Rule 801(d)(2)(E) as co-conspirator statements, we need not resolve the question of whether these other exceptions apply.

11

The Third Circuit informs that there are three basic requirements for finding a Sixth Amendment violation: "(1) the right to counsel must have attached at the time of the alleged infringement; (2) the informant must have been acting as a 'government agent'; and (3) the informant must have engaged in 'deliberate elicitation' of incriminating information from the defendant." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999) (internal citations omitted).

        *1.*       *Attachment of Sixth Amendment Right to Counsel*

As an initial matter, "the Sixth Amendment right to counsel is not triggered until some action is taken constituting the initiation of criminal proceedings against the defendant." *United States v. Henry*, No. 06-33, 2007 WL 419197, at *2 (E.D. Pa. Feb. 2, 2007) (quoting *Ammar*, 714 F.2d at 260). "[I]t is clear from the Supreme Court's statements that the Sixth Amendment right to counsel, as enunciated in *Massiah* and *Henry*, does not extend to the pre-indictment period . . . ." *Ammar*, 714 F.2d at 261. Criminal proceedings include the "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972); *see also United States v. Gouveia*, 467 U.S. 180, 187 (1984).

"The Sixth Amendment right [to counsel] . . . is offense specific . . . [and] cannot be invoked once for all future prosecutions . . . ." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). In *Texas v. Cobb*, 532 U.S. 162 (2001), the Court put to rest any notion of an exception to the "offense-specific" nature of an accused's Sixth Amendment right to counsel for crimes that are "factually related" or "inextricably intertwined." *See United States v. Mills*, 412 F.3d 325, 329 n.1 (2d Cir. 2005) ("Prior to *Cobb*, some lower courts had held that the right to counsel attached to uncharged crimes that were 'factually related' to a specifically charged offense. *Cobb* rejected

12

this approach.") (internal citations omitted).  Applying the analysis from *Blockburger v. United States*, the Court discussed how it has "recognized in other contexts that the definition of 'offense' is not necessarily limited to the four corners of a charging instrument." *Cobb*, 532 at 172-73 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).[7]  Acknowledging the complex nature of concurrent prosecutions and investigations, the Court held that "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Cobb*, 532 U.S. at 173.  The Court noted:  "[i]n this sense, we could just as easily describe the Sixth Amendment as 'prosecution specific,' insofar as it prevents discussion of charged offenses as well as offenses that, under *Blockburger*, could not be the subject of a later prosecution.  And, indeed, the text of the Sixth Amendment confines its scope to 'all criminal *prosecutions*.'" *Id.* at 173 n.3 (emphasis in original).

Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 299; *see also Albernaz v. United States*, 450 U.S. 333, 337 (1981).  In applying *Blockburger*, "a court looks to the statutory elements of the crime charged to determine if there is any overlap." *United States v. Rigas*, 605 F.3d 194, 204 (3d Cir. 2010) (quoting *United* States *v. Chorin*, 322 F.3d 274, 281 (3d Cir. 2003)).

---

[7] In *Cobb*, the Court found that the Sixth Amendment right to counsel did not attach to a subsequent indictment where "[a]s defined by Texas law, burglary and capital murder are not the same offense under *Blockburger*. *Cobb*, 532 U.S. at 173; *see also Philmore v. McNeil*, 575 F.3d 1251, 1258 (11th Cir. 2009) (Sixth Amendment right to counsel had not attached where suspect had been charged with armed trespass and bank robbery, but not for murder).

13

With respect to the attachment of Defendant's Sixth Amendment rights, Defendant argues that his Sixth Amendment right to counsel attached when he was arrested [and arraigned] on charges pertaining to possession of a firearm as the federal adoption of that charge was a subterfuge to interrogate Defendant about the arson murders. (Oct. 22 Hr'g Tr. 181.) In doing so, Defendant contends that because the firearm charge is charged as an overt act committed in furtherance of the RICO enterprise, his Sixth Amendment right to counsel attached by January 5, 2005. (*Id.* at 193.) The Government responds that Defendant had only been incarcerated based on a gun possession charge at the time he made his statements, thus his Sixth Amendment right to counsel for the arson charges had not attached. (Gov't's Resp. 6.)

In discussing this issue in the context of double jeopardy, we concluded that the prior prosecution of Kaboni Savage related to a drug conspiracy did not inhibit a subsequent RICO conspiracy prosecution where the drug activities are used as evidence of the existence of a racketeering enterprise and the racketeering activities of such enterprise. *United States v. Savage*, No. 07-550, 2012 WL 1994736, at *7 (E.D. Pa. June 1, 2012). Relying on *United States v. Grayson*, 795 F.2d 278 (3d Cir. 1986), we noted that the Third Circuit determined that it was Congress' intention to allow for the separate prosecution and punishment of predicate offenses and subsequent RICO offenses. *Savage*, 2012 WL 1994736, at *7. In *Grayson*, the Third Circuit reasoned that "[a] RICO offense is not, in a literal sense, the 'same' offense as one of the predicate offenses," and that RICO offenses and separately charged predicate offenses are "intended to deter two different kinds of activity — 'racketeering' on the one hand and narcotics violations on the other." *Grayson*, 795 F.2d at 283; *see also United States v. Bennett*, 44 F.3d 1364, 1373 (8th Cir. 1995) ("[W]e conclude, as have other circuits, that Congress intended to

14

permit separate prosecutions for drug conspiracy offenses under sections 846 and 848 and for substantive RICO and RICO conspiracy offenses.").

Accordingly, the gun possession charge, which serves as a RICO predicate, and the current RICO conspiracy, constitute two separate crimes under *Blockburger*. In light of *Cobb*, where the Supreme Court noted that "[w]e see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel," *Cobb*, 532 U.S. at 173, we conclude that Defendant's right to counsel had not attached for the current RICO conspiracy investigation at the time of Defendant's incarceration for the gun possession charge. Because Defendant's Sixth Amendment right to counsel had not attached at the time the statements in question were made, introducing those statements into evidence will not constitute a violation of *Massiah* and we need not conduct a hearing to supplement the record.

### 2. *Agents of the Government*

Even if Defendant's Sixth Amendment right to counsel had attached, Defendant would have to establish that the statements at issue were made to agents of the Government. "At a minimum, this requires some evidence, express or implied, that an agreement existed between the informant and the government at the time the incriminating statements were made." *Pursell v. Horn*, 187 F. Supp. 2d 260, 337 (W.D. Pa. 2002) (citing *Matteo*, 171 F.3d at 893.) In making a determination as to whether such an agreement existed, the Third Circuit has identified a number of relevant inquiries, including: (1) whether the informant was "acting under instructions" from the government; (2) whether there was a "quid pro quo—in which the informant receive[d] some type of benefit, even if nonpecuniary, in exchange for assisting the authorities"; (3) whether there was "a past agency relationship between the informant and the

Government"; (4) whether the informant was "ostensibly a mere fellow inmate" masking the true nature of the relationship between the accused and the cooperator; (5) whether the defendant was "in custody at the time" and subject to "subtle influences that [would] make him particularly susceptible to the ploys of undercover Government agents"; and (6) whether the informant was a "trusted friend . . . more likely to [obtain] incriminating statements" from the defendant. *Wallace v. Price*, 265 F. Supp. 2d 545, 565-66 (W.D. Pa. 2003) (internal quotation marks and citations omitted).

Defendant argues that Corrections Officer Gillan and other FDC prison guards were acting as agents of the Government when they engineered an encounter between Savage and Merritt. (Def.'s Mot. Exclude 8-9.) In considering the *Wallace* factors, we find that Defendant has failed to establish that any of the individuals identified were agents of the Government.

With respect to the communications secured from the FDC on January 5, 2005, the only parties involved were Savage, Dawud Bey, who is not a cooperating witness, and Defendant. While the Government initially sought to obtain Defendant's cooperation in the investigation into the arson murders, at the time the statements were made, he was, like Savage, merely a suspect. (*See* Oct. 22 Hr'g Tr. 114-115 (Q: "Now it was your hope that you would secure [Merritt's] cooperation, correct?" A: "Yes." Q: "In fact, that's the reason why you adopted the gun case to start with, correct?" A: "We adopted the case, yes, to get his cooperation in the arson . . . .").) Clearly, Defendant is not a cooperator in the present action. While the FDC employees may be considered agents of the Government based on the instructions received by Captain Matevousian at the FDC and from Special Agent Lewis and their ensuing conduct, as discussed *infra*, we find

16

their involvement in the events on January 5, 2005 minimal and insufficient to constitute a violation of Defendant's Sixth Amendment right to counsel.

Ultimately, the statements recorded on January 5, 2005 were made voluntarily by individuals who were not agents of the Government. No individuals involved were subject to an agreement with law enforcement officials related to the current investigation or any investigation for that matter. *See Brink*, 39 F.3d at 423 ("An inmate who voluntarily furnishes information without instruction from the government is not a government agent, even if the informant had been an agent in the past.").

### 3. Deliberate Elicitation

Defendant must also make a threshold showing that the statements at issue were deliberately elicited by an agent of the Government. In *Kuhlmann v. Wilson*, 477 U.S. 436 (1986), the Supreme Court held that the defendant failed to establish deliberate elicitation where an informant agreed to aid the police in obtaining information about the accused's accomplices and was placed in the defendant's cell with instructions to "keep his ears open" and act as a "listening post." *Id.* at 439, 459. The accused divulged information to the informant spontaneously without inquiry by the informant. *Id.* at 459. The Court advised that "a defendant does not make out a violation of [the Sixth Amendment] simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police." *Id.*

Defendant argues that FDC officials intentionally placed Merritt in a cell across from Kaboni Savage to elicit incriminating statements from the two Defendants related to the ongoing investigation. (Def.'s Mot. Suppress 3.) Defendant maintains that the entire interaction between

Savage and Merritt was orchestrated, with a prison guard, Corrections Officer Gillan, warning Savage of the presence of an "[important person coming in]." (Oct. 22 Hr'g Tr. 155.) According to Defendant, Corrections Officer Gillan's warning to Savage – "Get ready, he's coming" – and other attempts to get Savage and Bey riled up, amounted to an effort to "stimulate Savage's interest in Merritt's arrival, knowing that Savage was likely to initiate a conversation with Merritt that would be recorded," and constituted an unlawful interrogation outside the presence of counsel. (Def.'s Mot. Suppress 3-4.) In Defendant's analysis, Savage was unfamiliar with Defendant and it was only by Corrections Officer Gillan's informing Savage that the new prisoner was "somebody of interest" that he made incriminating statements recorded by the wiretaps. (*Id.* at 6.)

During his testimony, Special Agent Lewis conceded that he alerted FDC personnel to expect Defendant's arrival and provided instructions as to where he would be placed. (Oct. 22 Hr'g Tr. 115.) Special Agent Lewis testified that correctional officers were "obviously alerted because the captain told them to do certain things so they were aware of that. But, no, we didn't instruct anybody to do any sort of investigation on – from the prison's perspective, other than put him in the cell." (*Id.* at 121-22.) In light of the Government's admitted participation in arranging the placement of the inmates, Defendant claims that the resulting statements were not obtained by luck or happenstance. *See Moulton*, 474 U.S. at 176 ("[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached."). We disagree.

Certainly, Special Agent Lewis and the FDC officials' actions facilitated communication. As the Supreme Court has noted, however, "the identity of the party who instigated the meeting

18

at which the Government obtained incriminating statements was not decisive or even important to our decisions in *Massiah* or *Henry*." *Id.* at 174. In facilitating conversation between Defendant, Savage, and Bey, it may have been foreseeable that incriminating statements might be made. However, the foreseeability of disclosure is not the same as deliberate elicitation in the *Massiah* context. *See United States v. Jacques*, 684 F.3d 324, 331 (2d Cir. 2012) ("Therefore, it is not enough to show a foreseeability that [defendant's] friendship with [the informant] would lead [defendant] to say things he would not say to someone identified as a law enforcement agent. To prove a violation of the Sixth Amendment, [defendant] must also show that [the informant] took actions amounting to an 'indirect and surreptitious [interrogation]' of [defendant] with regard to the kidnaping/rape/murder offenses." (quoting *Kuhlmann*, 477 U.S. at 458)). The inevitability of incriminating statements becomes problematic insofar as "the State 'must have known' that *its agent* was likely to obtain incriminating statements from the accused." *Moulton*, 474 U.S. at 176 n.12 (emphasis added) (quoting *Henry*, 447 U.S. at 271). Here, Defendant has failed to establish that any agent of the Government was likely to obtain incriminating statements or that any such agent engaged in interrogation. Clearly, "[w]hen prison authorities place an informant in close proximity to a defendant, even when expecting the defendant to divulge incriminating information, the Sixth Amendment is not violated unless the informant actively elicits statements that are incriminating with regard to the charged crimes." *Jacques*, 684 F.3d at 332 (citing *Kuhlmann*, 477 U.S. at 456, 459). That did not happen here.

Moreover, the actions taken by the Government are easily distinguished from those involving active engagement with informants to induce statements from criminal suspects. For example, in *Brink*, the Third Circuit found that the defendant raised a colorable claim of a

violation of his Sixth Amendment right to counsel where an informant, trained by the Government and subject to a tacit agreement involving an exchange of information for a possible reduced sentence, was placed in a cell with the accused. *Brink*, 39 F.3d at 424. With respect to the January 5, 2005 recordings, there was no informant, let alone any individual with whom the Government had struck a deal to exchange information for a reduced sentence.

Accordingly, Defendant has failed to make a colorable claim that any agents of the Government deliberately elicited statements.

### III. CONCLUSION

For the foregoing reasons, Defendant Robert Merritt's Motion in Limine to Exclude Evidence of Cell Block Conversations recorded on January 5, 2005 (ECF No. 576) and Motion to Suppress Evidence of Cell Block Conversations Recorded on January 5, 2005 (ECF No. 609) must be denied.

An appropriate Order will follow.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**