IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 |
| KABONI SAVAGE | : | |
| ROBERT MERRITT | : | |
| STEVEN NORTHINGTON | : | |
| KIDADA SAVAGE | : | |

**SURRICK, J.**                                                                                                                             **JANUARY 23, 2013**

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion to Suppress Physical Evidence Seized From the Village of Stoney Run Apartment and Defendant's 1997 Mercury Villager and Request for a *Franks* Hearing. (ECF Nos. 404, 418.)[1] For the following reasons, the Motion will be denied.

## I. BACKGROUND[2]

### A. Procedural History

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging moving Defendant Kaboni Savage with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-

---

[1] We refer to the full version of this Motion (ECF No. 418) throughout this Memorandum.

[2] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds (ECF No. 374) and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

7, 10-15), conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9), retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.)[3] Defendant was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant, Merritt and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada.

On February 21, 2012, Defendant filed the instant Motion. (ECF No. 398.) Defendant refiled this Motion, accompanied by a Memorandum of Law, on February 22, 2012. (Def.'s Mot., ECF No. 418; Def.'s Mem., ECF No. 418.) The Government has submitted an Omnibus Response, which addresses the Motion. (Gov't's Resp., ECF No. 466.) A suppression hearing was held on June 11 and June 12, 2012. (Min. Entries, ECF No. 516, 519.)

   B.   **Factual Background**

In September 1999, Defendant was wanted for the murder of Kenneth Lassiter. (Gov't's Resp. 6.) An arrest warrant had been issued for Defendant, who could not be located. On August 20, 1999, Defendant, using the alias "Joseph Amill," rented Apartment 46C at the "Village of Stoney Run," in Maple Shade, New Jersey.[4] Defendant had paid a security deposit

---

[3] Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties. (ECF No. 855.)

[4] Defendant's connection to the alias "Joseph Amill" is extensive. Defendant has conceded that he and "Joseph Amill" are the same person. (*See* June 11, 2012 Hr'g Tr. 219-20

2

for the apartment and was paying the monthly rent. (Notice of Occupancy, ECF No. 417-2 at 009280.)

At 8:00 am on September 10, 1999, Detective Nicholas Giannini of the Maple Shade Police Department ("MSPD") received a telephone call from Agent Ed Frimel of the Federal Bureau of Investigation ("FBI"). Agent Frimel informed Det. Giannini that "he had received information that [Defendant]" was hiding in the Village of Stoney Run, in Apartment 46. (Uniform Investigation Report, ECF No. 417-1 at 009240-41.) Agent Frimel told Detective Giannini that Defendant was using the alias "Joseph Amill" and was driving a white 1997 Mercury Villager motor vehicle, registered to Amill in Pennsylvania under state vehicle registration number BZL9205 ("Villager").

Agent Frimel and Det. Giannini spoke with the rental management office at the Village of Stoney Run, and confirmed that Defendant, using his alias, had in fact rented Apartment 46C. Agent Frimel, Detective Giannini, members of MSPD and FBI agents went to Apartment 46C, announced their presence, and were admitted into the apartment by the occupants. (*Id*. at 009241.)

Four individuals were present in Apartment 46C at the time. In addition to Defendant, who was discovered hiding under a pile of clothes in the bedroom, officers encountered Jasmine Vadell, Tramaine Westbrooke, and Eugene Coleman Jr. (*Id*. at 009240-41.) The officers observed, in plain view, a variety of items of drug paraphernalia commonly used in the production, packaging and distribution of controlled substances. (*Id*. at 09241.) These items included "numerous bags, baggies, packaging materials, cutting agents, scales, hydraulic

---

(on file with Court).)

3

presses," and other paraphernalia. (Search Warrant App. 6, ECF No. 417-1 at 009254.)

Detective Giannini completed an affidavit and search warrant application based on the drug paraphernalia observed in plain view. (*Id*.) Det. Giannini's affidavit describes, with particularity, the premises of Apartment 46C and the Villager and the evidence that MSPD officers sought to seize as part of the search. (*Id*.)

The Honorable Marvin Schlosser of the Superior Court of New Jersey issued a search warrant on September 10, 1999, authorizing MSPD officers to search Apartment 46C and the Villager. (Search Warrant, ECF No. 417-2 at 009265.) The warrant permitted the seizure of eleven categories of items, including controlled substances and drug paraphernalia, as well as documents and records related to illegal drug activities. (*Id*.) Detective Giannini and other MSPD officers conducted a search pursuant to the search warrant on September 10. The search yielded "drug manufacturing and distribution" equipment, including packaging materials, chemicals used to alter narcotics, numerous cell phones and pagers, and a cereal box containing cocaine. (Return of Search Warrant, ECF No. 417-1 at 009233-48.) A wallet which contained several documents, including multiple pieces of identification belonging to Joseph Amill and which contained Defendant's photograph, was also recovered from the scene. (*Id*. at 009248.) Defendant seeks suppression of all items recovered as a result of the search.

## II. LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be

seized." *Id.*; *see also United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982). Evidence obtained in violation of the Fourth Amendment is generally not admissible at trial. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 139-40 (2009) (explaining history of exclusionary rule). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## III. DISCUSSION

### A. Defendant's Capacity to Challenge Search

Considering first whether Defendant has "standing" to raise a Fourth Amendment claim, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). A defendant can show the reasonableness of such expectation by referring to "'concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id*. (quoting *Rakas*, 439 U.S. at 143 n. 12). A defendant need not show that he had a possessory interest in the property in order to establish standing.

The plain text of the Fourth Amendment indicates that an individual has the capacity to challenge a search conducted in his own home. U.S. Const. amend. IV; *see also Payton v. New York*, 445 U.S. 573, 589 (1980) ("In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home.") Similarly, the owner or renter of an automobile has a reasonable expectation of privacy in that automobile, although an individual borrowing or merely riding in a car may not. *See United States v. Baker*, 221 F.3d 438, 441-42 (3d Cir. 2000).

Defendant's use of an alias in renting Apartment 46C and registering the Villager does not negate his standing to challenge this search. *See, e.g.*, *United States v. Watson*, 950 F.2d 505, 508 (8th Cir. 1991) (defendant had standing to challenge search when he had rented home under alias); *United States v. Pitts*, 322 F.3d 449, 459 (7th Cir. 2003) (defendant had standing to challenge search of mail sent to alias); *United States v. Newbern*, 731 F.2d 744, 748 (11th Cir. 1984) (defendant had standing to challenge search of hotel room rented to alias). Defendant had rented Apartment 46C several weeks prior to his arrest and the subsequent search of the apartment. (Notice of Occupancy.) Defendant was, by all accounts, residing in Apartment 46C at the time of his arrest. Similarly, the Villager was registered to Defendant's alias and was sitting in front of the apartment. Accordingly, Defendant has standing to challenge the search of Apartment 46C and the Villager.[5]

### B. Defendant's Substantive Fourth Amendment Claims

Defendant raises three principal challenges to the constitutionality of the searches of Apartment 46C and the Villager. First, Defendant claims that in executing the original arrest warrant, officers failed to "knock and announce" their presence. (Def.'s Mot. 5.) Next, Defendant claims that there exist no facts as to the reliability of the information underlying Agent Frimel's arrest warrant. (*Id.*). Finally, Defendant argues that there is no language in the search warrant application which suggests that the Villager would contain evidence of narcotics trafficking. (*Id.*)

---

[5] Defendant's co-Defendants have joined this Motion to the extent they have standing. (*See* ECF No. 495 (granting motions to join all co-Defendants' motions).) We are satisfied that none of the co-Defendants have standing. There is no reason to believe that Merritt, Northington, or Kidada Savage ever had a reasonable expectation of privacy in either Apartment 46C or the Villager. Accordingly, the Motion is denied as to all co-Defendants.

1. *Failure to "Knock and Announce"*

The "principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006). This "knock and announce" rule has been recognized by the Supreme Court as required by the Fourth Amendment, although the Court has noted that there exist situations where officers are permitted to forgo the "knock and announce" formality. *Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995) (affirming "knock and announce" as part of Fourth Amendment law); *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) (officers may conduct "no-knock" entry if announcing themselves would be dangerous or futile or might otherwise hamper the investigation).

Defendant offers no evidence whatsoever contradicting Detective Giannini's credible account of the September 10 arrest. Detective Giannini's statement that law enforcement officers announced their presence and were voluntarily admitted to Apartment 46C is uncontroverted, except by the conclusory statements in Defendant's brief.

There is no reasonable basis on which to dispute that the officers were lawfully in Apartment 46C when they saw drug paraphernalia in plain view. There is no basis to challenge the legality of Detective Giannini's sworn statements to that effect in the search warrant application. There was no violation of the Fourth Amendment here. Accordingly, Defendant's first argument is without merit.

2. *Information in Arrest Warrant*

Defendant next challenges the search warrant, based upon the fact that the affidavit does not explain from where Agent Frimel obtained information as to Defendant's whereabouts. This

claim is frivolous. Defendant was arrested for the murder of Kenneth Lassiter. The arrest was based upon a valid arrest warrant. Agent Frimel received information that Defendant was at the Village of Stoney Run Apartments. He confirmed that information with the manager of the apartment complex. Agent Frimel and members of the MSPD then went to Defendant's apartment where they found Defendant and drug paraphernalia. The search warrant affidavit contained all of this information.

Since the arrest and the officers' presence in Apartment 46C were legal, the fact that the affidavit for the search warrant did not include information with regard to how Agent Frimel actually learned of the whereabouts of Defendant is not the basis for a challenge to the validity of the search warrant that contains more than sufficient probable cause. Detective Giannini was legally present in Apartment 46C to assist in the execution of an arrest warrant. He observed items suggestive of narcotics trafficking in plain view and went to a magistrate to obtain a search warrant. That search warrant was valid. Defendant's claims do not undermine Judge Schlosser's finding of probable cause. Defendant has offered nothing to undermine the credibility of the search warrant affidavit or the validity of the search of Apartment 46C. Defendant's Motion to Suppress evidence seized in the search will be denied.

### 3. *Sufficiency of Application for Villager Search*

Defendant next claims that the search warrant application includes no facts that justify a search of the Villager. Again, we disagree. In issuing a search warrant based on a finding of probable cause, a judge must determine that there is a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (quoting *United States v. Jones*, 362 U.S. 257, 271 (1960)). The warrant must also describe the things to

be seized with sufficient particularity and be "no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1991).

The search warrant application contained sworn statements by a law enforcement officer that he had observed the Defendant, a fugitive wanted on homicide charges, hiding in an apartment with a clear connection to drug activity. The Villager was registered to Defendant's known alias and it was parked near the apartment.

Even if one were to somehow conclude that the search warrant for the Villager was erroneously issued, the fruits of the Villager search would be admissible under the good-faith exception to the exclusionary rule. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Even if a warrant lacks probable cause, "the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Id*. at 142 (quoting *Leon*, 468 U.S. at 922).

There are "four limited circumstances" in which a police officer's reliance on a warrant will not be considered "objectively reasonable":

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010) (citations omitted). The present situation fits none of these limited circumstances. There is no evidence to suggest that any part of the affidavit was "deliberately or recklessly false." There is no reason to suspect that Judge Schlosser failed to properly perform his judicial responsibility to be "neutral and detached." The warrant was sufficiently particular, specifying the items to be seized and providing descriptions of both Apartment 46C and the Villager in considerable detail. Finally, given Defendant's connections to the Villager, his physical presence in an apartment being used for purposes of packaging and trafficking illegal drugs, and the outstanding arrest warrant on homicide charges, the belief of the officers that probable cause existed was entirely reasonable. Accordingly, Defendant's request to suppress the fruits of the Villager search will be denied.

    **C.**    *Franks* **Hearing**

Finally, Defendant requests that we conduct a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), "to determine the validity of [the] warrant." (Def.'s Mem. 19.) Defendant lists several "intentional and reckless misrepresentations" which he alleges "amount[] to a material misrepresentation within the affidavit," and "likely had a profound effect" on Judge Schlosser's probable cause determination. (*Id*. at 18.) The Government contends that the "information in the affidavit contained no material misrepresentations nor omissions." (Gov't's Resp. 14.)

The Supreme Court in *Franks* stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

10

*Franks*, 438 U.S. at 155-56. If a defendant can make a "substantial preliminary showing" to overcome the affidavit's presumption of validity, the defendant must ultimately prove, by a preponderance of the evidence, that the affiant's statements were material to a finding of probable cause and were made knowingly and intentionally, or with reckless disregard for the truth. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171-72). If the defendant meets this burden, "the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (quoting *Franks*, 438 U.S. at 156).

To make a substantial preliminary showing, a defendant must raise "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Franks*, 438 U.S. at 171. The Third Circuit has set out a standard "to identify what constitutes 'reckless disregard for the truth' regarding both misstatements and omissions." *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006).

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000) (citations omitted).

Defendant cites several alleged omissions. First, Defendant claims that the "affidavit states no facts to indicate the reliability, truthfulness or source of knowledge for the 'information' received by Agent Frimel as to Defendant's whereabouts." (Def.'s Mot. ¶ 61.) Next, Defendant

11

argues that the affidavit misrepresented, or omitted, the alleged fact "that [Det. Giannini] and other officers forcibly entered [Apartment 46C] without obtaining consent." (*Id*.) Finally, Defendant states that the arresting officers did not actually see drug paraphernalia in plain view, but instead "performed a more intrusive search of the apartment" which was "unconstitutional." (*Id*.)

Defendant's first claim is meaningless. Where Agent Frimel obtained his information as to Defendant's whereabouts has no bearing on whether there was a basis for a finding of probable cause to search Apartment 46C. There is little doubt as to the "reliability" of that information, given the fact that Defendant was in fact found in Apartment 46C. Even if there were reason to doubt the reliability of that information, however, the basis for the search warrant was not Defendant's presence in the apartment but rather the arresting officers' discovery of a number of items of drug paraphernalia suggestive of illegal narcotics activity. The alleged "omission" is simply irrelevant.

Defendant's next two contentions—that MSPD officers entered Apartment 46C without consent and that their search was "more intrusive" and "unconstitutional"—are baseless and conclusory. Defendant does not offer any basis for concluding that MSPD officers entered Apartment 46C without consent. In fact, the evidence is to the contrary. The record reflects that the officers announced their presence and were permitted to enter the apartment.

Similarly, Defendant's claim that MSPD officers conducted a "more intrusive" search is without any basis. Defendant has not offered any evidence which supports this contention or permits us to conclude that he can make a substantial preliminary showing that would justify a

*Franks* hearing. MSPD officers and FBI agents entered Apartment 46C in search of a fugitive wanted for murder, and observed drug paraphernalia in plain view.

Defendant cannot make a substantial showing that would justify a *Franks* hearing. The Affidavit does not contain material omissions or representations that undermine the search warrant's probable cause. Accordingly, Defendant's request for a *Franks* hearing will be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Physical Evidence Seized From the Village of Stoney Run Apartment and Defendant's 1997 Mercury Villager and Request for a *Franks* Hearing will be denied. An appropriate Order follows.

**BY THE COURT:**

*/s/R. Barclay Surrick*

**U.S. District Judge**