IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 07-550 |
| KABONI SAVAGE | : |
| ROBERT MERRITT | : |
| STEVEN NORTHINGTON | : |
| KIDADA SAVAGE | |

SURRICK, J.                                                                                           JANUARY 23, 2013

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion to Suppress Physical Evidence Seized from Devon Self Storage and Request for a *Franks* Hearing. (Def.'s Mot., ECF No. 405.)[1] For the following reasons, the Motion will be denied.

## I. BACKGROUND[2]

### A. Procedural History

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging moving Defendant Kaboni Savage (hereinafter "Defendant") with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15), conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9), retaliating against a witness, in violation of 18 U.S.C. §

---

[1] Defendant's co-Defendants have joined this Motion to the extent they have standing. (*See* ECF No. 495 (granting motions to join all co-Defendants' motions).)

[2] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds (ECF No. 374) and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

1513(a) (Count 16), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.)[3] Defendant was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Defendant Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant, Merritt and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada Savage.

On February 21, 2012, Defendant filed the instant Motion. (Def.'s Mot., ECF No. 405) The Government has submitted an Omnibus Response. (Gov't's Resp., ECF No. 466.) A suppression hearing was held on June 11 and June 12, 2012. (Min. Entries, ECF No. 516, 519.) Trial of all defendants is scheduled for February 4, 2013.

B. **Factual Background**

On September 10, 1999, pursuant to a warrant issued by the Honorable Marvin Schlosser of the Superior Court of New Jersey, agents of the Federal Bureau of Investigation (FBI) and the Maple Shade Police Department (MSPD) conducted two searches in Maple Shade, New Jersey ("Maple Shade searches"). Law enforcement officers searched Apartment 46C in the Village of Stoney Run Apartment complex ("Apartment 46C") and a 1997 Mercury Villager ("Villager"). The search warrants were issued after FBI agents and MSPD officers arrested Defendant inside Apartment 46C. When the officers entered Apartment 46C they observed drug paraphernalia in plain view. Defendant was arrested pursuant to a valid warrant on homicide charges. (Def.'s Mot.

---

[3] Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties. (ECF No. 855.)

¶ 19.)  Apartment 46C was rented and the Mercury Villager was registered to "Joseph Amill," a known alias of Defendant.[4]  Defendant challenged the constitutionality of these searches in a motion to suppress.  (ECF Nos. 404, 418.)

While conducting the search of the Villager, MSPD officers found a receipt for self-storage locker #105 ("Unit #105") at Devon Self-Storage ("Devon"), which is located at 12005 Roosevelt Boulevard, Philadelphia, Pennsylvania.  Detective Linda Hughes of the Philadelphia Police Department spoke with Devon's manager, Anne Ketterer, who told Detective Hughes that Joseph Amill had rented Unit #105 on August 2, 1999.  (Affidavit ¶ 11, Def.'s Mot. Ex. A.)  Ketterer also provided Detective Hughes with a photocopy of Amill's Pennsylvania driver's license, which was identical to the driver's license recovered during the Maple Shade searches.  (*Id.*)

Special Agent Kevin Lewis of the FBI thereafter completed a sworn affidavit ("Affidavit"), describing Defendant's involvement in drug trafficking and his connections to Devon.  United States Magistrate Judge Charles B. Smith issued a search warrant on September 17, 1999, authorizing FBI agents to search Unit #105.  (Search Warrant, Def.'s Mot. Ex. A.)  The search was conducted the same day.  As a result of the search, agents seized cocaine presses and other materials related to the processing of controlled substances.  (June 11 Hr'g Tr. 217.)  Defendant seeks suppression of all items recovered as a result of the search.  (Def.'s Mot. 2.)

---

[4] Defendant's connection to the alias "Joseph Amill" is extensive.  Defendant has conceded that he and "Joseph Amill" are the same person.  (*See* June 11, 2012 Hr'g Tr. 219-20 (on file with Court).)  Documents found during these searches include a Pennsylvania driver's license and other identification containing Defendant's photograph and the name "Joseph Amill."

## II. LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *Id.*; *see also United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982). Evidence obtained in violation of the Fourth Amendment is not admissible at trial. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 139-40 (2009) (explaining history of exclusionary rule). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## III. DISCUSSION[5]

### A. Defendant's Substantive Fourth Amendment Claims

Defendant raises three principal challenges to the constitutionality of the Devon search. First, Defendant claims that the search warrant was invalid because the underlying information was obtained in violation of the "fruit of the poisonous tree" doctrine. (Def.'s Mot. 9.) Defendant also claims that there was a lack of probable cause to justify the search. (*Id.* at 10.) Finally,

---

[5] The Government does not contest Defendant's standing to challenge this search. An individual generally has a reasonable expectation of privacy in a rented storage unit. *See Rakas*, 439 U.S. at 150 (establishing that an individual must demonstrate a reasonable expectation of privacy in an area searched in order to challenge the search under the Fourth Amendment). Northington, Merritt, and Kidada Savage have articulated no reason why they have standing to challenge the constitutionality of this search, and we are aware of no information which would suggest that they might have a reasonable expectation of privacy in Unit #105. Accordingly, the Motion is denied as to Northington, Merritt, and Kidada Savage.

Defendant argues that the use of unreliable confidential informants casts doubt upon the warrant's validity. (*Id*. at 11.)

### 1. "Fruit of the Poisonous Tree" Doctrine

The "fruit of the poisonous tree" doctrine precludes the admission of evidence obtained as a result of prior illegal government action. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Defendant claims that the Maple Shade searches were conducted in violation of the Fourth Amendment. (Def.'s Mot. 9.) Consequently, Defendant argues, the Devon Self-Storage receipt discovered in his automobile was invalid for purposes of establishing probable cause to search Unit #105. (*Id.*)

Clearly, the search of the Devon storage locker resulted from the discovery of the receipt in Defendant's vehicle. (*See id*.) However, we have already determined that the searches of Apartment 46C and the Villager were constitutional. There was no constitutional violation. Accordingly, Defendant's "fruit of the poisonous tree" argument fails.

### 2. Probable Cause Claim

Defendant claims that the Affidavit "lacks the necessary probable cause to justify a search of the storage locker." (*Id.* at ¶ 52.) He also argues that "the supporting affidavit fails to establish any connection between the Defendant's alleged drug dealing activities and the storage locker." (*Id*. at ¶ 54.) Defendant is wrong on both points.

In issuing a search warrant based upon probable cause, a magistrate must determine that there is a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (citing *United States v. Jones*, 362 U.S. 257, 271 (1960)). The warrant must also describe the things to be seized with sufficient particularity and be "no broader

than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1991).

When faced with a challenge to a magistrate's probable cause determination, our role is not to conduct a *de novo* review, but simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *United States v. Kepner*, 843 F.2d 755, 762 (3d Cir. 1988). Although this "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions," *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983), "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Defendant also argues that "the information provided within the four corners of the affidavit fails to establish a sufficient nexus between the alleged criminal activity and the storage locker." (Def.'s Mot. 20.) Courts may inquire into whether there is probable cause as to "the nexus between the crime and the place to be searched." *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993). Such a nexus can "be established by direct observation or by normal inferences." *United States v. Martinson*, 811 F. Supp. 1097, 1102 (E.D. Pa. 1993) (citations omitted).

Special Agent Lewis's Affidavit was more than sufficient to establish probable cause to believe that Unit #105 was linked to the drug trafficking crimes in which Defendant was a suspect at the time. The Affidavit notes that the receipt was seized from Defendant's vehicle. (Affidavit ¶ 9.) It notes that the search of Apartment 46C—in front of which the Villager was parked—yielded illicit controlled substances and equipment used for processing cocaine. (*Id*. at ¶ 8.) It further describes conversations with Anne Ketterer at Devon, which yielded evidence that Defendant, using his alias, had rented Unit #105. Finally, the Affidavit notes, based on Special Agent Lewis's

training and experience, that "individuals who distribute controlled substances frequently use storage facilities" for illegal purposes. (*Id*. at ¶ 13.) The experience of an affiant can assist a magistrate in determining that probable cause exists. *See, e.g.*, *United States v. Price*, 558 F.3d 270, 282-83 (3d Cir. 2009) (finding probable cause to search defendant's home where the affiant stated in the affidavit that based on his experience, individuals who engage in drug trafficking often keep drugs, money and other contraband in their homes). The Affidavit clearly establishes that Defendant was connected to illegal drug activities, and that Defendant was connected to Unit #105. We are satisfied that Judge Smith had more than a sufficient basis upon which to determine that there existed probable cause to issue the Devon search warrant.

### 3. Use of Informants

Defendant claims that the Affidavit "does not contain any evidence regarding the reliability of Confidential Informants #1 and #2." (Def.'s Mot. 11-12.) Defendant argues that "the issuing magistrate could not reasonably assess the reliability of said confidential informants" (*id*. at 12), and that as a consequence all such information "must be excised from the search warrant affidavit" (*id*.).

"Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Adams v. Williams*, 407 U.S. 143, 147 (1972). Nevertheless, "a magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010); *see also Gates*, 462 U.S. at 230-31 (stating that the "totality of the circumstances" should be examined when considering confidential informants' statements in the context of a probable cause determination). A magistrate who has a "'substantial basis for crediting'" an informant's statement "because the tip was corroborated in

7

significant part by independent police investigation," can find probable cause and issue a warrant on that basis. *Stearn*, 597 F.3d at 556 (quoting *Gates*, 462 U.S. at 245). This is especially true when the crime under investigation is drug distribution. *See Stearn*, 597 F.3d at 558-60 (noting the fluid nature of probable cause determinations in narcotics cases).

The Affidavit refers to Confidential Informants #1 and #2 (hereinafter, "CI-1" and "CI-2") for background information about Defendant's drug trafficking activities. (Affidavit ¶¶ 14-15.) CI-1 told Special Agent Lewis that Defendant "has been supplying multiple kilograms of cocaine to drug dealers in the Philadelphia area" from an apartment on Clark Street in Philadelphia, and had "recently moved his drug operation . . . to an apartment in Maple Shade[.]" (*Id*. at ¶ 14.) CI-1 also stated that Defendant "had numerous hydraulic press frames, molds and jacks used to package/repackage the kilograms of cocaine." (*Id*.) CI-2 confirmed CI-1's information, stating that Defendant "had recently moved his drug operation from an apartment in Philadelphia to an apartment in Maple Shade," and that Defendant "would purchase kilograms of cocaine" and reprocess them in order to increase his sales. (*Id*. at ¶ 15.)

Although Special Agent Lewis did not identify these informants or describe the nature of their past cooperation, their statements are easily corroborated. For example, items recovered in the Maple Shade searches offer concrete evidence that, as both informants claimed, Defendant possessed an array of equipment used in the processing of cocaine. Defendant's arrest in Apartment 46C, and the presence of drug processing equipment and drugs in the apartment, confirmed the reliability of both informants' statements that Defendant had moved his drug operations from Philadelphia to Maple Shade, New Jersey. There is simply no reason to question the veracity of the informants' contentions that Defendant was involved in drug trafficking and had removed his drug operations from Philadelphia to Maple Shade. The information offered by

8

CI-1 and CI-2 is relevant primarily for background purposes. Even without this information, a neutral and detached magistrate would certainly connect Defendant, drug trafficking, and Unit #105. There is simply no basis on which to conclude that the search warrant was defective because of Special Agent Lewis's reference to CI-1 and CI-2 in the Affidavit.

    4.  "Good Faith" Exception

Even if one were to determine that the search warrant was defective, the items seized during the search would be admissible under the good-faith exception to the exclusionary rule. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Even if a warrant lacks probable cause, "the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Id.* at 142 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

There are "four limited circumstances" in which a police officer's reliance on a warrant will not be considered "objectively reasonable":

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010) (citations omitted). The present situation fits none of these limited circumstances. There is no evidence to suggest that any part of the affidavit was "deliberately or recklessly false." There is no reason to suspect that Magistrate

Judge Smith failed to properly perform his judicial responsibility to be "neutral and detached." Moreover, the Affidavit is not so lacking in probable cause that the agents should have recognized that it was defective and it was not deficient in failing to particularize the place to be searched and the things to be seized. The good-faith exception to the exclusionary rule would clearly apply here.

### B.     *Franks* Hearing

Finally, Defendant requests that we conduct a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), "to determine the validity of [the] warrant." (Def.'s Mot. 22.) Defendant lists several "intentional and reckless misrepresentations" which he alleges "amount[] to a material misrepresentation within the affidavit," and "likely had a profound effect" on Judge Smith's probable cause determination. (*Id*. at 23.) The Government contends that the "information in the affidavit contained no material misrepresentations nor omissions." (Gov't's Resp. 14.)

The Supreme Court in *Franks* stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56. If a defendant can make a "substantial preliminary showing" to overcome the affidavit's presumption of validity, the defendant must ultimately prove, by a preponderance of the evidence, that the affiant's statements were material to a finding of probable cause and were made knowingly and intentionally, or with reckless disregard for the truth. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171-72). If the defendant meets this burden, "the Fourth Amendment requires that . . . the fruits of the search

[must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (quoting *Franks*, 438 U.S. at 156).

To make a substantial preliminary showing, a defendant must raise "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Franks*, 438 U.S. at 171. The Third Circuit has set out a standard "to identify what constitutes 'reckless disregard for the truth' regarding both misstatements and omissions." *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006). "In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (citations omitted).

Defendant cites several alleged omissions. First, Defendant claims that the "affidavit provides no information to indicate the reliability, truthfulness or source of knowledge for Confidential Informant #1 and Confidential Informant #2," suggesting that Special Agent Lewis "intentionally omitted these important facts from" the Affidavit. (Def.'s Mot. 14-15.) Next, Defendant argues that the affidavit misrepresented the alleged fact "that affiant and other officers forcibly entered [Apartment 46C] without obtaining consent." (*Id*.) Finally, Defendant states that the arresting officers did not actually see drug paraphernalia in plain view, but instead "performed a more intrusive search of the apartment," which was "unconstitutional." (*Id*.)

Defendant's contentions all lack merit. With regard to the lack of information pointing to the confidential informants' reliability, this is not a material omission. It bears no relevance to the

11

credibility of the Affidavit. There existed ample evidence in the Affidavit of both Defendant's links to a criminal narcotics trafficking enterprise and to Devon. As mentioned above, even if the two paragraphs relating to information gleaned from CI-1 and CI-2 were stricken from the Affidavit, the Affidavit would still contain sufficient information for a magistrate to determine that probable cause existed for this search.

Defendant's next two contentions—that officers entered Apartment 46C without consent and that their search was "more intrusive" and "unconstitutional"—are baseless. Defendant does not offer any basis for concluding that law enforcement entered Apartment 46C without consent. As we noted in our Memorandum denying Defendant's motion to suppress the fruits of the Maple Shade searches, there is simply no evidence to support this argument. The only evidence in the record is that the officers had a valid arrest warrant for Defendant and they were invited into Apartment 46C.

Similarly, Defendant's claim that MSPD officers conducted a "more intrusive" search is wholly baseless. Defendant has offered nothing to support this contention.

Defendant has not made the substantial showing that would justify a *Franks* hearing. Accordingly, Defendant's request for a *Franks* hearing will be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Physical Evidence Seized from Devon Self Storage and Request for a *Franks* Hearing is denied. An appropriate Order follows.

**BY THE COURT:**

*/s/R. Barclay Surrick*
**U.S. District Judge**