IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550 - 03 |
| ROBERT MERRITT | : | NO. 07-550 - 04 |
| STEVEN NORTHINGTON | : | NO. 07-550 - 05 |
| KIDADA SAVAGE | : | NO. 07-550 - 06 |

**SURRICK, J.**                                                                          **JANUARY 23, 2013**

## MEMORANDUM

Presently before the Court is Defendants' Joint Defense Motion to Compel Access to Witnesses (ECF No. 779), and the Government's response thereto (ECF No. 880).[1] For the following reasons, Defendants' Motion will be granted in part and denied in part.

### I. BACKGROUND[2]

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendants Kaboni Savage, Robert Merritt, Steven Northington, and Kidada Savage with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1) and other related crimes. (Fourth Superseding Indictment, ECF No. 480.)[3] In addition to the RICO charge, Savage was

---

[1] The Motion was filed by Defendant Kidada Savage on behalf of all Defendants.

[2] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

[3] The First Superseding Indictment was filed on April 8, 2009. (ECF No. 51.) The Second Superseding Indictment was filed on June 22, 2011. (ECF No. 229.) The Third Superseding Indictment was filed on September 7, 2011. (ECF No. 284.)

charged with twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8)[4]; conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (*Id.*) In addition to the RICO conspiracy count, Merritt was charged on Counts 9 through 17; Northington was charged on Counts 5, 7 and 8; and Kidada was charged on Counts 10 through 17. (*Id.*)[5] On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Savage, Merritt, and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada.

The charges against Defendant relate to a long-standing RICO conspiracy involving drug trafficking, murder, and witness intimidation. The Government alleges that all four Defendants were members of a regional criminal organization, which was based in North Philadelphia and was known as the Kaboni Savage Organization ("KSO"). From late 1997 through April 2010, members of the KSO conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. It is alleged that the KSO was committed to maintaining, preserving, protecting and expanding its power, territory, and profits by tampering with and retaliating against Government witnesses and their

---

[4] Count 8 has been dismissed pursuant to an agreement between Defendants and the Government. (*See* ECF No. 855.)

[5] Lamont Lewis was originally charged in the First Superseding Indictment. However, the charges against Lewis were disposed of by guilty plea on April 21, 2011.

families through the use of threats, intimidation, violence, and murder.

On December 3, 2012, Kidada Savage filed the instant Joint Defense Motion to Compel Access to Witnesses on behalf of all Defendants. (Defs.' Mot., ECF No. 779.) On January 4, 2013, the Government filed a response in opposition to the Motion. (Gov't's Resp., ECF No. 880.) Trial is presently scheduled for February 4, 2013. (*See* ECF No. 877.)

**II. DISCUSSION**

Defendants request that the Court compel the Government to make twelve Government witnesses available for interviews by defense counsel. (Defs.' Mot. 2.)[6] Although it is not entirely clear, it appears that these twelve witnesses are all currently in protective custody.[7] To the extent that any of the witnesses are not in the custody of the Government, Defendants request that the witnesses' last known address be disclosed to defense counsel. (Defs.' Mot. 2.) The Government advised defense counsel that the witnesses do not wish to be interviewed. (*Id*. at Ex. 2.) Nevertheless, Defendants argue that "[t]he Government cannot invoke this individual right and must make the witnesses available for defense counsel to make an inquiry of the prospective witness." (*Id*. at 3.) Defendants contend that they have due process rights to access the witnesses to determine if they are amenable to an interview and that the Government "has

---

[6] Defense counsel informally requested that the witnesses be made available for interviews on September 20, 2012. (Defs.' Mot. 2.) Counsel again requested that the witnesses be made available by a letter to counsel for the Government dated November 25, 2012. (*Id*. at 2 and Ex. 1.) Defense counsel includes in the November 25 letter the names of the twelve witnesses with whom interviews are requested. (*Id*. at Ex. 1.)

[7] The Government states in its Response that "[a]s to protected witnesses, whom counsel addressed specifically in the letter she sent on Sunday November 26 [sic], 2012, the government has never 'refused to make available' anyone who wished to be interviewed." (Gov't's Resp. 2.) We understand this language to mean that each of the twelve witnesses listed in the November 25 letter are currently in protective custody.

3

obstructed prospective witnesses from communicating with defense counsel" in this regard. (*Id*. at 3.)

The Government responds, again, that the witnesses do not wish to be interviewed, and that there is no authority to support an order compelling them to be interviewed. (Gov't's Resp. 2.) The Government advises that, contrary to defense counsel's contentions, it has never "'discourage(d) or obstruct(ed) communication between prospective witnesses and defense counsel.'" (*Id*. at 3 (citing ABA Criminal Justice Section Standards, Part I, Standard 3-3.1).)

Generally, "witnesses belong neither to the defense nor to the prosecution" and "both must have equal access to witnesses before trial." *United States v. Bryant*, 655 F.3d 232, 238 (3d Cir. 2011) (internal quotation marks omitted); *see also United States v. Medina*, 992 F.2d 573, 579 (6th Cir. 1993) ("Witnesses are neither the property of the government nor of the defendant."). A defendant's due process rights are violated "[i]f the prosecution impermissibly interferes with the defense's access to a witness" such that the conduct "undermines the fundamental fairness of the proceeding." *Bryant*, 655 F.3d at 238. However, "'[n]o right of a defendant is violated when a potential witness freely chooses not to talk; a witness may of his own free will refuse to be interviewed by either the prosecution or the defense." *Id*. at 239 (quoting *Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981)); *see also United States v. Bittner*, 728 F.2d 1038, 1041 (8th Cir. 1984) ("Although the prosecution and the defense have an equal right to interview witnesses in a criminal proceeding, the defendant's right of access is not violated when a witness chooses of her own volition not to be interviewed."); *Medina*, 992 F.2d at 579 ("[A] defendant's right to access is tempered by a witness' equally strong right to refuse to say anything.").

We may easily dispose of Defendants' request to compel the Government to make the witnesses available for interviews. There is no constitutional guarantee granted to a defendant to interview a witness. *See United States v. Tipton*, 90 F.3d 861, 889 (4th Cir 1996) (stating that "there is no right to have witnesses compelled to submit to interview"); *United States ex rel. Jones v. DeRobertis*, 766 F.2d 270, 274 (7th Cir. 1985) ("The inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence."); *United States v. Pepe*, 747 F.2d 632, 655 (11th Cir. 1984) ("It is clear that the government had no duty, absent a court order, to present its witnesses for interviews."); *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir. 1980) (finding no error in district court's refusal to compel the government to produce a government informant for a pretrial interview); *United States v. Morean*, No. 93-40, 1983 U.S. Dist. LEXIS 12622, at *5 (D. Del. Oct. 18, 1983) (stating that "the constitution does not give defendants the right to an actual interview").

Counsel for the Government advise that the twelve witnesses do not wish to speak to defense counsel. (Gov't's Resp. 2; Defs.' Mot. Ex. 2.) This is perhaps not surprising. Allegations in this case include: (1) the murder of a witness in order to prevent his testimony at a murder trial; (2) the arson murder of a witness' family in order to intimidate the witness from testifying against Savage at the 2005 drug conspiracy trial; and (3) threats of violence and death against numerous other individuals suspected to be cooperating with the Government. (Fourth Superseding Indictment.) Under these circumstances, one can imagine that prospective witnesses in this case may not wish to be interviewed by, let alone, communicate with, Defendants or their counsel. Indeed, many of the Government's witnesses are currently in protective custody for

5

security reasons. In any event, the right to accept or deny an invitation to be interviewed belongs to the witness. *See United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985); *Kines*, 669 F.2d at 9. This Court cannot compel a witness to submit to an interview with defense counsel.

The cases cited by Defendants simply do not in any way support their argument that the Court may compel the Government to provide witnesses in protective custody to defense counsel for an interview. For example, in *United States v. Mendez-Rodriguez*, 450 F.2d 1, 5 (9th Cir. 1971), the Ninth Circuit held that a defendant's right to due process is violated where the prosecution deports a witness before the defendant had the opportunity to question or interview the witness and elicit potentially favorable evidence. *Mendez-Rodriguez* was later overturned by the Supreme Court in the case *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982), a case also cited by Defendants. *See United States v. Marquez-Amaya*, 686 F.2d 747, 747-48 (9th Cir. 1982) (noting that *Mendez-Rodriguez* was overturned by *Valenzuela-Bernal*). In *Valenzuela-Bernal*, the Supreme Court held that a defendant's right to due process is violated when witnesses are deported prior to being interviewed by the defendant, but "only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Id*. at 873. We are not dealing with deportations here. There has been no showing that any witness in this case risks deportation.

Moreover, Defendants have not made a showing here that the Government has in any way acted improperly in communicating defense counsel's request to the witnesses. Certainly, the Government is not permitted to instruct a witness not to speak to defense counsel or otherwise artificially restrict a defendant's access to a witness. *See United States v. Agostino*, 132 F.3d

6

1183, 1191 (7th Cir. 1997). There is no evidence in the record that the Government has done this. The Government is well aware of its obligations and indeed, advised the Court that it has never discouraged or obstructed communication between defense counsel and witnesses. (Gov't's Resp. 3.) Accordingly, we deny Defendants' request for an order compelling the Government to make the twelve prospective witnesses available for interviews.

Turning next to Defendants' request to "access the witnesses to determine if they will be interviewed" (Defs.' Mot. 4), compelling an interview and providing defense counsel with a means of access in order to determine if an interview is agreeable are two entirely different things. The law is clear that a defendant is entitled to "access" a witness. *See Medina*, 992 F.2d at 579; *see also United States v. Scott*, 518 F.2d 261, 268 (6th Cir. 1975) ("A defendant is entitled to have *access* to any prospective witness although such right of access may not lead to an actual interview.") (emphasis in original); *Morean*, 1983 U.S. Dist. LEXIS 12622, at *5-6 (recognizing that defendants have a right to determine whether any of the witnesses will consent to an interview even though defendants do not have a right to an actual interview); *United States v. Felice*, 481 F. Supp. 79, 84-86 (N.D. Ohio 1978) (finding that the prosecution has no right to deny access to a witness in protective custody and noting that "any desire of [the witness] to decline . . . an interview should be conveyed directly to counsel for [the defendant, either by [the witness] or through his counsel and not via counsel for the government"). However, the law is not clear with respect to the contours of the right of access. Defining this right becomes even more complicated in the context of witnesses placed in protective custody where a defendant has been effectively deprived of any means of contacting the witness. *See United States v. Walton*, 602 F.2d 1176, 1179 (4th Cir. 1979) ("We are most concerned with the possible prejudice which

7

might occur to a defendant when a government witness is placed in protective custody and no arrangements are made to enable defense counsel to have access to that witness.").

Some courts have concluded that a defendant's access to government witnesses in protective custody may be delayed when the witnesses are in obvious danger. *See Tipton*, 90 F.3d at 889 (noting that the delay in defendant's access to the witness was justified because the threat of violence was "palpable"); *Medina*, 992 F2d at 579 (holding that where there is an interest in security, the trial court's delay of defendant's access to a government witness until after the witness' direct testimony, was not a denial of the defendant's right to a fair trial); *Pepe*, 747 F.2d at 655 (denying the defendant's pretrial motion to interview witnesses in protective custody due to security concerns because the witnesses would be available at a pretrial hearing and at trial, either before or after the government placed the witness on the stand); *United States v. Murray*, 492 F.2d 178, 194-95 (9th Cir. 1973) (ruling that, in light of security concerns, "the district court acted circumspectly in permitting [the witnesses in protective custody] to remain out of reach until shortly before the trial").

Other courts have crafted procedures that permit defense counsel to contact the witnesses in protective custody and request an interview, albeit not in person. *See, e.g.*, *Morean*, 1983 U.S. Dist. LEXIS 12622, at *8-10 (setting up procedure where witnesses in custody and defense counsel meet in a "physical environment controlled by the United States Marshal's Office" where defense counsel is permitted to ask whether witness will consent to an interview); *United States v. Brown*, 555 F.2d 407, 425 (5th Cir. 1977) (holding that defendants were not denied a fair trial when district court arranged a system where defense attorneys wishing to contact a witness in protective custody could do so only by calling a deputy clerk who in turn would contact the

witness and advise him that he had the right to grant or refuse the interview); *United States v. Hubbard*, 474 F. Supp. 64, 84-85 (D.D.C. 1979) (permitting defense counsel to file with the court a request to interview a witness, after which the court would direct the United States Marshal's Service to forward the request to the witness).

These cases make clear that, whether access is delayed, or whether access is achieved by a procedure orchestrated by the court, a defendant is afforded some means of accessing witnesses in protective custody in order to determine the witnesses' willingness to submit to an interview. *See Walton*, 602 F.2d at 1180 (noting that when witnesses are placed in protective custody, "it becomes the duty of the trial court to ensure that counsel for defense has access to the secluded witness under controlled arrangements").

In this case, security issues are of concern and the risk of witness intimidation and harassment appears to be significant. The Indictment is replete with allegations about threats and violence directed towards prospective witnesses and their families. Under these circumstances, we do not believe that it is appropriate to have defense counsel access these witnesses in person in order to determine whether the witnesses will consent to an interview. Recognizing, however, that Defendants are entitled to access, we believe that the better approach is to permit defense counsel to submit written requests for interviews to each of the witnesses in custody.[8] The

---

[8] The written request shall substantially conform to the following:

Dear [name of witness]:

I represent [name of Defendant] in the case captioned *United States v. Kaboni Savage, et al.*, No. 07-550. As you may know, trial is scheduled to commence on February 4, 2013. On behalf of [Defendant], I am requesting to speak with you prior to the start of the trial in order to gather information about [Defendant's] case. You should understand that you are under no legal obligation to accept this invitation or

9

written requests shall first be submitted to the Court. When the Court approves the written requests, it will direct the United States Marshal's Service to deliver the requests to the twelve witnesses in custody. The requests shall contain a separate form on which the witness shall indicate whether or not he or she will consent to an interview and an envelope addressed to the Court. The Marshal's Service shall return these envelopes to the Court. Upon receipt of these forms, the Court will notify defense counsel about the witnesses' willingness to be interviewed. We are satisfied that this approach strikes the appropriate balance between Defendants' right to access the witnesses and the heightened concerns about the witnesses' safety.

## III. CONCLUSION

For the foregoing reasons, Defendants' Joint Defense Motion to Compel Access to Witnesses will be granted in part and denied in part.

An appropriate Order will follow.

**BY THE COURT:**

*/s/R. Barclay Surrick*
**U.S. District Judge**

---

to deny it.

Please indicate on the enclosed form whether or not you are willing to submit to an interview with legal counsel for the defense, and sign the form on the line where your name appears. The Marshal's Service will then return the form to the Court.

Sincerely,
[Name]