IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| ROBERT MERRITT | : | NO. 07-550-04 |

**SURRICK, J.**                                                              **JANUARY 31, 2013**

**MEMORANDUM**

Presently before the Court is Defendant Robert Merritt's Motion to Preclude Evidence of Prior Bad Acts. (ECF No. 354.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.      BACKGROUND[1]**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); six counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 10-15); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.) In the Indictment, Defendant was charged along with three co-defendants, Kaboni Savage, Steven Northington, and Savage's sister, Kidada Savage. Lamont

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

Lewis, Defendant's cousin, was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant, Savage, and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada.

On October 9, 2004, six people, including four children, died as a result of arson at a home located at 3256 North Sixth Street, Philadelphia, Pennsylvania. The Indictment alleges that Savage and Kidada solicited and ordered Defendant and Lewis to set fire to the home of Eugene Coleman, a former associate of Savage. (Indictment 21-23.) Savage believed that Coleman was cooperating with the Government and planned to testify against Savage in his 2005 federal drug conspiracy trial.[2] The firebombing took the lives of Coleman's mother, infant son, and four other relatives. The Government intends to show at trial that the firebombing was ordered by Savage and carried out by Defendant and Lewis in order to intimidate Coleman and prevent him from testifying against him at the 2005 drug conspiracy trial.

Defendant has filed a Motion to Preclude Evidence of Prior Bad Acts. (Def.'s Mot., ECF No. 354.) The Government has filed a response. (Gov't's Resp., ECF No. 461.) Defendant has also filed a Reply. (Def.'s Reply, ECF No. 472.) We held a hearing on the pretrial motions. At that hearing, the parties presented additional argument on the Motion.

---

[2] Savage, Northington, and four other co-defendants not charged in the instant Indictment were prosecuted in the 2005 drug conspiracy case before the Honorable Mary A. McLaughlin. After a seven-week trial, Savage was found guilty of conspiracy to manufacture and distribute cocaine, money laundering, firearms possession, witness retaliation and other crimes. Coleman testified at that trial. Savage received a sentence of thirty years imprisonment on these convictions.

## II. DISCUSSION

### A. Parties' Contentions

Defendant seeks to prohibit the Government from introducing evidence of uncharged prior bad acts and prior convictions, arguing that such evidence is only intended to prove conformity therewith and would be unfairly prejudicial. (Def.'s Mot. 2-7.) In particular, Defendant requests that the Court prohibit the Government from introducing evidence of four specific prior acts: (1) Defendant's threats to kill Eric Satterthwaite, A.W., and Y.D.[3] in relation to Defendant's participation in the murder of Norman Simon; (2) evidence that Defendant threatened a potential witness at gunpoint in a state prosecution and attempted to abduct that witness in an automobile[4]; (3) evidence that, on three occasions, Defendant sold illegal drugs on Jerome Street in Philadelphia; and (4) evidence that Defendant stole and later possessed a firearm. (Def.'s Mot. 1.) In its Response, the Government argues that it will restrict some of the aforementioned evidence to the sentencing phase of the trial and that the remaining acts consist of prior convictions, which constitute intrinsic evidence committed in furtherance of the RICO conspiracy. (Gov't's Resp. 2.)

---

[3] A.W. and Y.D. are acronyms for two individuals allegedly threatened by Defendant. (Indictment 13.) Because of the history of witness intimidation and witness retaliation in this case, the Government has attempted to protect the identity of a number of potential witnesses and individuals involved.

[4] From the parties descriptions of the first and second set of prior acts Defendant seeks to preclude from admission into evidence, it appears that the events are interrelated. Accordingly, we address them together *infra*.

**B.     Legal Standards**

The admissibility of evidence at the guilt phase of the trial is governed by the Federal Rules of Evidence. Specifically, when considering the admission of prior bad acts, Rules 404(b) and 403 apply. *See United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (applying Rules 404(b) and 403 and finding that district court's decision to admit evidence of prior uncharged conspiracy was proper and not unduly prejudicial).

*1.     Rule 404(b)*

Under the Federal Rules of Evidence, "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose . . . ." Fed. R. Evid. 404(b). Parties may not introduce "evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). The spirit of Rule 404(b) is inclusionary and, as such, the Rule favors admissibility. *See United States v. Long*, 574 F.2d 761, 765-66 (3d Cir. 1978) (discussing "exclusionary" and "inclusionary" approaches of different circuits prior to adoption of Rule 404(b)). The purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence." *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (internal citation omitted).

If the evidence to be admitted is deemed extrinsic under Rule 404(b), we must determine whether the evidence satisfies a four-part standard for admissibility. *See United States v. Green*,

617 F.3d 233, 239-245 (3d Cir. 2010) (providing comprehensive history of treatment of bad character evidence in British and American legal systems); *see also United States v. Butch*, 256 F.3d 171, 175-76 (3d Cir. 2001) (citing *United States v. Mastrangelo*, 172 F.3d 288, 294 (3d Cir. 1999). To be admissible under Rule 404(b), evidence must: (1) have a proper evidentiary purpose; (2) be relevant under Federal Rule of Evidence 402[5]; (3) contain a probative value that outweighs its prejudicial effect under Federal Rule of Evidence 403 (discussed *infra*); and (4) be accompanied by an appropriate limiting instruction.[6] *See Huddleston*, 485 U.S. at 691-92; *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (applying *Huddleston* four-part test in the Third Circuit).

This analysis need not be performed for evidence that is intrinsic to, or part and parcel of, the charged offenses. *Id.* at 245; *see also United States v. Haas*, 184 F. App'x 230, 234 (3d Cir. 2006) (noting that intrinsic evidence is exempt from a Rule 404(b) analysis).[7] Most Circuits define intrinsic evidence as evidence that is "inextricably intertwined" with the charged offense.

---

[5] Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the United States Constitution, a federal statute, these rules, or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.

[6] Federal Rule of Evidence 105 provides that "[i]f the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury." Fed. R. Evid. 105.

[7] In practice, there are only two differences between intrinsic and extrinsic evidence — intrinsic evidence does not require advanced notice of the acts to be admitted into evidence to be provided to the defense and the court need not issue a limiting instruction to ameliorate the taint of the evidence. *Green*, 617 F.3d at 247-48. Intrinsic evidence still must, however, be relevant, survive a Rule 403 balancing test, and be probative of something other than the defendant's criminal propensity. *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)).

*See, e.g.*, *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012); United *States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009); *United States v. DeGeorge*, 380 F.3d 1203, 1219-20 (9th Cir. 2004); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *Bowie*, 232 F.3d at 927-29. The Third Circuit Court of Appeals has renounced the "inextricably intertwined" standard, finding it "vague, overbroad, and prone to abuse . . . ." *Green*, 617 F.3d at 249.

In the Third Circuit, evidence is intrinsic if it fits into either of two narrow categories. First, evidence is intrinsic, and a Rule 404(b) analysis is unnecessary, if the evidence directly proves the charged offense. *Id.* (citing *Cross*, 308 F.3d at 320; *United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999); *see also United States v. Benjamin*, 125 F. App'x 438, 441 (3d Cir. 2005) (affirming district court ruling regarding intrinsic nature of uncharged evidence of fraud). Evidence of uncharged misconduct, which directly proves the charged offense is not evidence of some "other" crime. *Green*, 617 F.3d at 249 (citing *Gibbs*, 190 F.3d at 218). Second, evidence is intrinsic if it constitutes "'uncharged acts, which are committed contemporaneously with the charged crime' that 'facilitate the commission of the charged crime.'" *United States v. Shelow*, No. 10-0037, 2011 WL 6130974, at *3 (E.D. Pa. Dec. 9, 2011) (quoting *Green*, 617 F.3d at 249).

In the context of a conspiracy case, "acts are intrinsic when they directly prove the charged conspiracy." *Cross*, 308 F.3d at 320. Specifically, in the RICO context, "[s]ince proof of a pattern of racketeering activity (i.e., proving two or more racketeering acts) is necessary to establish a RICO violation, evidence of co-conspirators in a predicate conspiracy constitutes direct evidence of the charged offense and it is therefore admissible to prove the charged RICO violation." *United States v. Irizarry*, 341 F.3d 273, 296 (3d Cir. 2003) (internal citations omitted); *see also Gibbs*, 190 F.3d at 217 (finding that district court did not abuse its discretion

in permitting evidence of uncharged acts of violence, which furthered a cocaine conspiracy); *Cross*, 308 F.3d at 320 (finding that appellant's involvement in price-fixing scheme was outside the civil rights conspiracy and subject to a Rule 404(b) analysis); *United States v. Morrow*, No. 04-355, 2005 WL 3159572, at *26-28 (D.D.C. Apr. 7, 2005) (finding "inextricably intertwined" intrinsic evidence admissible in RICO conspiracy prosecution).

  2. *Rule 403*

As discussed above, regardless of whether prior act evidence is deemed extrinsic or intrinsic, to be admissible, it must survive a Rule 403 analysis. *Bowie*, 232 F.3d at 927. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts are empowered with broad discretion to determine whether evidence should be excluded under Rule 403. *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994). In performing its analysis, the court is to "appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." *Id.* (quoting *Gov't of the Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993)). The prejudice that the court is to measure is "unfair prejudice . . . based on something other than [the evidence's] persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (alteration in original) (quoting *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003)).

  3. *Federal Death Penalty Act and Evidence in Sentencing*

7

Pursuant to the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, *et seq.*, during the sentencing portion of a capital case, the Government is required to introduce evidence of a statutorily-based aggravating circumstance that warrants the penalty of death. 18 U.S.C. § 3592. Once the fact-finder determines beyond a reasonable doubt that one of the statutory aggravating factors applies, the Government may introduce evidence of non-statutory aggravating factors. *United States v. Regan*, 228 F. Supp. 2d 742, 749 (E.D. Va. 2002).[8] In the sentencing phase, the Federal Rules of Evidence do not apply. *See* 18 U.S.C. § 3593(c); *see also United States v. Pepin*, 514 F.3d 193, 207 (2d Cir. 2008) (18 U.S.C. § 3593(c) governs the admissibility of evidence during the sentencing phase of a capital trial); *United States v. Roman*, 371 F. Supp. 2d 36, 43 (D.P.R. 2005) ("A greater quantum of information is thus admissible under the FDPA than the Federal Rules of Evidence."). Therefore, in assessing whether evidence is appropriately introduced at sentencing, the Court does not perform a standard Rule 404(b) and Rule 403 analysis as it would in the guilt phase. Evidence supporting aggravating factors must meet a "strikingly high level of relevance and reliability." *United States v. Bin Laden*, 126 F. Supp. 2d 290, 302 (S.D.N.Y. 2001); *see also United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) (discussing "heightened reliability" standards for capital sentencing hearings enunciated in *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)); *United States v. Cooper*, 91 F. Supp. 2d. 90, 106, 108 (D. D.C. 2000) (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

At sentencing hearings, the Government may admit evidence of unadjudicated criminal activity. *See United States v. Corley*, 519 F.3d 716, 724 (7th Cir. 2008) ("[W]e join those

---

[8] In response, the defendant may introduce mitigation evidence in an attempt to persuade the fact-finder that a sentence of death is unwarranted. 18 U.S.C. § 3593(c).

circuits in recognizing that it is not inherently unconstitutional for a jury, in assessing the aggravating factor of future dangerousness, to consider unadjudicated criminal conduct."); *see also Cooper*, 91 F. Supp. 2d at 106-07 (discussing overwhelming federal and state precedent permitting the admissibility of prior unadjudicated acts in capital sentencing hearing); *United States v. Gilbert*, 120 F. Supp. 2d 147, 151-52 (D. Mass. 2000) (collecting cases upholding use of uncharged criminal conduct in sentencing phase of capital cases).

In conjunction, evidence of prior uncharged crimes and the heightened reliability standard for evidence supporting aggravating factors create an "increased danger of unfair prejudice . . . ." *United States v. Corley*, 348 F. Supp. 2d 970, 973 (N.D. Ind. 2004) (precluding hearsay testimony at pre-sentencing phase "reliability" hearing where the Government intended to introduce evidence of a prior unadjudicated murder perpetrated by the defendant); *see also United States v. Pitera*, 795 F. Supp. 546, 565 (E.D.N.Y. 1992) ("The heightened standard applicable to capital proceedings may . . . demand further indicia of reliability before a court can say that the probative value of any such hearsay outweighs its prejudicial potential."); *United States v. Jacques*, *aff'd* in relevant part, 684 F.3d 324, 327-28 (2d Cir. 2012) (excluding uncharged allegations of sexual misconduct as events occurred twenty-two to thirty-two years before litigation).

## III. LEGAL ANALYSIS

We turn now to address the prior bad acts, some of which are prior convictions, and all of which are charged by the grand jury in the Indictment.[9]

---

[9] The federal grand jury found probable cause to charge Defendant with threatening to kill Eric Satterthwaite, A.W., and Y.D. related to their potential testimony about the murder of Norman Simon (Indictment 13), threatening a potential witness at gunpoint in a state prosecution

**A.    2002 Threats and Attempted Abduction Related to the Murder of Norman Simon**

As an initial matter, the Government concedes that it will not introduce evidence at the "guilt" or "guilt/innocence" phase of the trial with regard to the threats issued by Defendant related to the murder of Norman Simon. (Gov't's Resp. 5-6; *see also* June 12, 2012 Hr'g Tr. 43 (on file with Court).) The Government seeks to preserve its right to introduce evidence that Defendant threatened and intimidated three witnesses regarding the murder of Simon at the penalty phase of the trial. (*Id.*) Defendant argues that Simon was murdered by Eric Satterthwaite, who was tried and convicted for the crime in the Philadelphia Court of Common Pleas in 2002, and that any attempts to link Defendant to the murder of Simon "will essentially be in disguise, another murder trial . . . ." (*Id.* at 32.)

In dealing with the threats and attempted abduction in the penalty phase of the trial, there are two issues to address: (1) whether evidence of the threats and intimidation related to the Simon murder meets the heightened reliability standard for sentencing hearings; and (2) whether the proffered evidence supports the non-statutory aggravating factor of future dangerousness.

*1.    Probative Nature of the Evidence*

In accordance with the heightened reliability standards, the court must fulfill its role as the "gatekeeper of constitutionally permissible information, and must accordingly exclude any unreliable or prejudicial information that might render a trial fundamentally unfair." *United States v. Catalan-Roman*, 368 F. Supp. 2d 119, 121 (D.P.R. 2005) (citing *United States v. Fell*,

---

and attempting to abduct that witness in an automobile (*id.* at 13), selling illegal drugs on Jerome Street in Philadelphia on three occasions (*id.* at 10, 11), and stealing and later possessing a firearm (*id.* at 19).

360 F.3d 135, 145 (2d Cir. 2004)); *see also United States v. Beckford*, 964 F. Supp. 993, 1000 (E.D. Va. 1997) ("[I]t is Constitutionally essential to assure that the principle of heightened reliability serves as a meaningful limit to the admission of 'all relevant evidence' in order to prevent the less stringent concept of relevance from predominating over the cardinal principle of reliability.").

The Government seeks to preserve its ability to introduce evidence of uncharged criminal behavior, including threats to and intimidation of witnesses, and the attempted abduction of one witness.[10] The Government contends that threats and intimidation "were a hallmark of both Merritt and the KSO enterprise." (Gov't's Resp. 6.) Defendant has failed to argue, let alone establish, why the evidence of threats and intimidation alone is prejudicial such that it would not meet the heightened reliability standard.

2. *Evidence as Support for Future Dangerousness*

Evidence of the uncharged crime must support one of the statutory or non-statutory aggravating circumstances alleged by the Government in its notice of intent to seek the death penalty. *See United States v. Frank*, 8 F. Supp. 2d 253, 279 (S.D.N.Y. 1998). In its Response,

---

[10] It is less clear as to whether the Government intends to introduce evidence regarding responsibility for the murder of Simon.
>
> Well, indeed, oftentimes in death penalty cases, in the penalty phase at least, evidence put forth where people committed other murders . . . And so that's why we would offer it . . . Given the fact that we do not intend to offer those until the penalty phase of the trial, he will have more than enough time to read those, digest those and deal with whatever issues come up with regard to the Simon murder.

(*See* June 12 Hr'g Tr. 44.) Defendant is under the impression that the Government intends to introduce such evidence. (Def.'s Mot. 3.)

If, in fact, the Government intends to introduce evidence linking Defendant to the murder of Simon in an effort to establish that the uncharged murder in-and-of itself supports the charged aggravating factors, the Court will need to be made aware so as to conduct a reliability hearing as in *Corley*, 348 F. Supp. 2d at 973.

the Government clarifies that evidence of intimidation and threats to witnesses supports the non-statutory aggravating factor of future dangerousness. (Gov't's Resp. 6.; *see also* Notice of Intent, 4.)[11] Future dangerousness is a permissible non-statutory aggravating factor. *See United States v. Llera Plaza*, 179 F. Supp. 2d 464, 487-88 (E.D. Pa. 2001); *Bin Laden*, 126 F. Supp. 2d at 303-04 (collecting cases). When the only alternate punishment to death is a sentence of life imprisonment, there is a general consensus that the evidence that may be admitted in support of the future dangerousness aggravator must pertain to the context of prison. *United States v. Basciano*, 763 F. Supp. 2d 303, 352 (E.D.N.Y. 2011); *United States v. O'Reilly*, 545 F. Supp. 2d 630, 638 (E.D. Mich. 2008); *United States v. Diaz*, No. 05-00167, 2007 WL 656831, at *23 (N.D. Cal. Feb. 28, 2007) ("[T]he parties agree that evidence of defendants' future dangerousness should be limited to that which shows their potential for dangerousness *while* incarcerated.") (emphasis in original); *Llera Plaza*, 179 F. Supp. 2d at 487-88; *Gilbert*, 120 F. Supp. 2d at 154 ("The proposed information lacks any substantial relevance to defendant's dangerousness in a prison setting."); *Cooper*, 91 F. Supp. 2d at 111-12.

At this point, it is unclear how threats to and the alleged attempted abduction of potential witnesses in an uncharged murder impact the future dangerousness of Defendant in the prison context. Courts have recognized that, if proven, a defendant's history of threatening and

---

[11] At the Suppression Hearing, the Government argued: "[f]or the penalty phase, the relevance of [the evidence], I think, is rather obvious, and we're talking about a future dangerousness as well as other statutory aggravating factors, that it is, of course, extremely relevant to." (June 12 Hr'g Tr. 43-44.) On the contrary, it is not wholly clear as to what other statutory aggravating factors the witness intimidation and attempted abduction evidence supports and the Government has failed to clarify as such.

intimidating potential witnesses would have little "bearing on defendant's dangerousness in prison, where [he] would be under lock and key." *Gilbert*, 120 F. Supp. 2d at 155.

If the Government intends to present evidence regarding Defendant's threats to witnesses and attempted abduction of one witness in relation to the Simon murder, the Government may provide additional briefing on how witness threats, intimidation, and the attempted abduction of a witness related to Simon's murder would be probative in establishing Defendant's future dangerousness in the prison setting or would satisfy one of the other aggravating factors.

### B. Prior Convictions for Sale of Controlled Substances and Possession of a Stolen Firearm[12]

With regard to the three convictions for distribution of illegal drugs, defense counsel concedes that the first two were based on plea bargains, but contests the third, which involved the testimony of Officer Jeffrey Cujdik, who counsel contends has been under federal investigation. (June 12 Hr'g Tr. 34.) Defendant maintains that there is an insufficient connection between these drug-sale convictions and the KSO to allow the prior convictions into evidence. (Def.'s Mot. 5.)

---

[12] Defendant made substantially similar arguments in his motion to strike surplusage. (ECF No. 355.) We denied Defendant's motion and found that the allegations pertaining to Defendant's threats to kill witnesses, attempted abduction of a witness, dealing of illegal drugs, and stealing and possessing a firearm were charged by the federal grand jury in establishing Defendant's connection to and participation in the RICO enterprise. (*See* ECF No. 924.) We observed that the grand jury had previously concluded that Defendant's prior arrests for possession of controlled substances and felon in possession of a firearm were related to Defendant's involvement in the KSO, were part of the charged RICO conspiracy, and were neither irrelevant nor prejudicial. (*Id.*) We also addressed Defendant's requests for discovery noting that the Government has provided voluminous discovery on a rolling basis. (*Id.*) We concluded that Defendant's requests for discovery were insufficiently specific and advised Defendant to file specific requests for additional discovery. (*Id.*) In a separate Order on the Government's motion *in limine* to introduce Defendants' prior convictions during the guilt phase of the trial, we directed the Government to produce any *Brady* material directly related to Merritt stemming from the federal investigation of Officer Cujdik, were such material to arise.

In response, the Government argues that each drug deal took place at the same location, on the 1300 block of Jerome Street in Philadelphia, which was part of a neighborhood controlled by the KSO. (June 12 Hr'g Tr. 45.) Moreover, the Government argues that Defendant was selling crack-cocaine, a drug distributed by the KSO, and that he was doing so far from his home, in the KSO's territory. (*Id.*) The Government further contends that "the timing of [Defendant]'s drug possessions, and the amounts he possessed, are entirely consistent with being part of the racketeering conspiracy." (Gov't's Resp. 7.)

With regard to the felon in possession of a stolen firearm prior conviction, defense counsel contends that there is no nexus between this conviction and the KSO organization. (Def.'s Mot. 6; June 12 Hr'g Tr. 36.) The Government responds that Defendant possessed the stolen firearm at the corner of Eighth and Venango, an intersection used by the KSO for drug distribution. (Gov't's Resp. 49.) In addition, the grand jury alleged that members of the KSO used firearms during the commission of violent crimes on behalf of the organization. (Indictment 19, 21.)

With respect to a Rule 404(b) analysis on these prior convictions, the Indictment alleges that the KSO engaged in a RICO conspiracy, which involved, among other things, dealing in controlled substances and violent retaliation against potential witnesses. (*Id.* at 3-4, 7-8.) As the grand jury alleged, the prior convictions for distribution of controlled substances and felon in possession of a firearm relate to Defendant's involvement with the KSO. (*Id.* at 8.) We are satisfied that based on the location and the conduct underlying the convictions as well as the nature of the KSO drug distribution organization, the Indictment appropriately alleges a nexus between the two. The prior convictions are predicate acts in furtherance of the RICO conspiracy.

14

Accordingly, a Rule 404(b) analysis is unnecessary. The convictions for possession of controlled substances and felon in possession of a firearm directly prove the charged RICO conspiracy. *Cross*, 308 F.3d at 320.[13]

As for a Rule 403 analysis, Defendant fails to argue how the evidence is at all prejudicial. In addition, we follow the guidance of the Third Circuit Court of Appeals in finding that "Rule 404(b) evidence is especially probative when the charged offense involves conspiracy . . . [and] the Government has broad latitude to use 'other acts' evidence to prove a conspiracy." *Cross*, 308 F.3d at 324 (citing *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2006)) (internal citations omitted). Since the underlying conduct occurred within Philadelphia during the pendency of the KSO's control over areas of North Philadelphia, and the conduct was in support of the objectives of a drug organization, the evidence is highly probative. "When evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *United States v. Lewis*, No. 07-258, 2009 WL 1307458, at *13 (W.D. Pa. May 8, 2009) (citing *Cross*, 308 F.3d at 323).

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Preclude Evidence of Prior Bad Acts will be denied in part.

(1) The Motion to preclude testimony regarding the sale of controlled substances will be denied.

---

[13] Any objection to Defendant's third prior conviction for drug distribution related to the credibility of Officer Cujdik is an issue to be argued before the fact-finder at trial or in post-conviction habeas relief. As we observed in a separate Order on the Government's motion *in limine* to introduce Defendants' prior convictions during the guilt phase of the trial, the Government has advised the Court that Officer Cujdik will not be a witness in this case. (*See* ECF No. 996.)

(2) The Motion to preclude testimony regarding Defendant's prior conviction for possession of a firearm will be denied.

(3) The Government may provide supplemental briefing to explain how the proffered evidence of threats and intimidation of three witnesses and the attempted abduction of a witness support any of the charged aggravating factors.

An appropriate Order will follow.

**BY THE COURT:**


*/s/R. Barclay Surrick*
**U.S. District Judge**