IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |
| ROBERT MERRITT | : | NO. 07-550-04 |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |
| KIDADA SAVAGE | : | NO. 07-550-06 |

**SURRICK, J.**                                                                               **FEBRUARY 1, 2013**

### MEMORANDUM

Presently before the Court is the Government's Motion *in Limine* to Admit Lay Testimony Pursuant to Federal Rules of Evidence 104 and 701. (ECF No. 755.) For the following reasons, the Government's Motion will be granted.

**I.**     **BACKGROUND[1]**

On May 9, 2012,[2] a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Kaboni Savage with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. §

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

[2] The First Superseding Indictment was filed on April 8, 2009. (ECF No. 51.) The Second Superseding Indictment was filed on June 22, 2011. (ECF No. 229.) The Third Superseding Indictment was filed on September 7, 2011. (ECF No. 284.)

1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.)[3] Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Defendant Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Savage, Merritt and Northington. (ECF Nos. 196, 197, 198.)

On November 26, 2012, the Government filed a Motion *in Limine* to Admit Lay Testimony Pursuant to Federal Rules of Evidence 104 and 701. (Gov't's Mot., ECF No. 755.) Merritt filed a Response on December 5, 2012. (Merritt's Resp., ECF No. 783.) On December 26, 2012, Kidada Savage filed an Objection to the Government's Motion. (Kidada's Resp., ECF No. 858.) The Government has filed a reply. (Gov't's Reply., ECF No. 917.)

The Government asks the Court to permit the Government to elicit the lay opinion and perceptions of FBI Special Agent Kevin Lewis with regard to his understanding of coded conversations between Defendants captured on recordings and to provide context and clarification where the subject matter of those conversations is ambiguous. (Gov't's Mot. 1-3.) Merritt does not object to Special Agent Lewis testifying with regard to the meaning of certain coded terms used by individuals involved in the sale of drugs, but seeks to prohibit testimony about terms purportedly identifying certain individuals and about his understanding of generic terms in the recordings. (Merritt's Resp. 2.) Kidada Savage asks the Court to deny the

---

[3] Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties. (ECF No. 855.)

Government's Motion *in Limine* and objects to Special Agent Lewis being permitted to provide expert testimony about taped conversations while being characterized as a lay person. (Kidada's Resp. 5.)

II.  DISCUSSION

   A.  Admission of Testimony Pursuant to Federal Rule of Evidence 701

Federal Rule of Evidence 104 provides: "[t]he court must decide any preliminary questions about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). Under Federal Rule of Evidence 701, a lay witness may provide opinion testimony if it is "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). In 2000, subsection (c) was added to Rule 701 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee notes to the 2000 Amendment.[4]

Courts may permit lay witnesses to testify with regard to their understanding of "code-like" conversations if it will assist the fact-finder to understand the testimony of the witness on the stand. *See United States v. O'Grady*, 280 F. App'x 124, 130 (3d Cir. 2008) (citing *United States v. De Peri*, 778 F.2d 963, 977-78 (3d Cir. 1985)). Furthermore, "where conversations are only clear to the speaker and his intended audience, lay opinion testimony stating the witness'

---

[4] Federal Rule of Evidence 702 governs testimony by an expert witness.

3

understanding of the testimony may be admitted pursuant to Rule 701." *United States v. Kruckel*, No. 92-611, 1994 WL 774645, at *21 (D.N.J. May 5, 1994).

1. Rule 701(a)

Under Rule 701(a), a lay witness may only offer opinions "rationally based on [his or her] perception." Fed. R. Evid. 701(a). "[T]his foundational requirement goes to the admissibility of evidence, not merely its weight, because a 'witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'" *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (quoting Fed. R. Evid. 701 advisory committee notes on the 1972 proposed rules).

Lay opinion testimony based on a witness' own perceptions is permissible where the witness was a participant in the recorded conversation. *See, e.g.*, *United States v. Estrada*, 39 F.3d 772, 773 (7th Cir. 1994) (permitting confidential informant's testimony as a participant in the conversation with the defendant); *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991) (permitting FBI agent to testify about his conversations with defendant, which were vague and partially incomprehensible); *De Peri*, 778 F.2d at 977-78 ("To the uninitiated listener, [defendant] speaks as if he were using code. [The witness'] opinions are based upon his direct perception of the event, are not speculative, and are helpful to the determination of [defendant's] involvement in the protection scheme . . . ."); *United States v. Georgiou*, 742 F. Supp. 2d 613, 631 (E.D. Pa. 2010).

Even where a lay witness was not a participant in the conversation, he may provide interpretive testimony clarifying unclear, coded, or ambiguous portions of a recording. *See United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) ("We have never held that a lay

4

witness must be a participant or observer of a conversation to provide testimony about the meaning of coded language used in the conversation. We have allowed a lay witness to base his opinion testimony on his examination of documents even when the witness was not involved in the activity about which he testified."); *United States v. Rollins*, 544 F.3d 820, 830-33 (7th Cir. 2008) (finding no error where district court permitted an FBI agent to testify about his impressions of recordings as testimony was rationally based on, *inter alia*, his extensive experience in the investigation, his review of every intercepted conversation, and his ability to confirm his interpretation based on surveillance and interviews of witnesses); *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) ("When a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred."); *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995) (finding no abuse of discretion where district court permitted cooperating witness to testify about recorded conversation in which he did not participate as witness "had knowledge of the terms being used . . . [and] personal knowledge of [defendant's] behavior and speech"); *United States v. Flores*, 63 F.3d 1342, 1359 (5th Cir. 1995) (finding no error where district court permitted co-conspirators to provide interpretation of recorded conversation as the co-conspirators were familiar with the events being discussed and the conversations were disguised with coded terms and vague references such that the witnesses' testimony "was helpful, if not essential, to the jury's understanding of this evidence"); *United States v. Garcia*, 994 F.2d 1499, 1507 (10th Cir. 1993) (finding district court did not abuse its "broad discretion" in permitting an FBI language specialist to testify to his understanding of the

5

term "your old man" and other coded terms based on his experience within the case having listened to the conversations between the co-conspirators).

Here, the Government maintains that Special Agent Lewis's lay opinion testimony will be based upon his perception as the case agent and lead investigator in this case. (Gov't's Mot. 4.) On June 11, 2012, the parties presented evidence and argument with regard to a number of pretrial motions. (Min. Entry, ECF No. 516.) During that hearing, Special Agent Lewis testified about his thirteen years of experience as the case agent investigating the Kaboni Savage Organization ("KSO"). (June 11, 2012 Hr'g Tr. 10 (on file with Court).) Special Agent Lewis prepared the affidavits for all seven of the Title III wiretaps in the investigation. (*Id.* at 11, 17.) Throughout his involvement in the investigation, Special Agent Lewis met with numerous individuals involved in or knowledgeable about the KSO and its members, including twenty-four confidential informants and confidential witnesses (*id.* at 40-41, 59), Eugene Coleman (*id.* at 36, 62), Kareem Bluntly (*id.* at 52-53, 60), Craig Oliver, (*id.* at 113), and Kaboni Savage (*id.* at 56-57), participated in controlled buys of drugs (*id.* at 64), and conducted physical surveillance of a number of locations (*id.* at 64). In addition, Special Agent Lewis participated in a special group within the FBI that targeted violent drug dealers in drug areas such as those used by the KSO. (*Id.* at 48.) Detective Thomas Zielinski, Special Agent Lewis's partner, was on the task force as part of a detail from the Philadelphia District Attorney's Office. (*Id.* at 48-49.)

At the *Starks* hearing, Special Agent Kevin Lewis testified with regard to the audio recordings and transcripts generated by the Government. He described the different types of recordings the Government obtained during the investigation of the KSO, including: (1) "prison calls" or telephone calls made by inmates in the FDC in Philadelphia and the United States

Penitentiary ("USP") in Atlanta; (2) "body wires" or phone recordings involving confidential witnesses; (3) "consensual body wires" or recordings made in person with a witness using a concealed recorder; and (4) the wiretaps or "bugs" of the visiting room and visiting booths at the FDC, Kaboni Savage's prison cell, the Special Housing Unit ("SHU"), and the cellular telephones of Kaboni Savage, Kidada Savage, Gerald Thomas, and Wendell Mason. (Oct. 22, 2012 Hr'g Tr. 6-22 (on file with Court).)

Special Agent Lewis testified that he later listened to recordings of conversations he had live monitored. (*Id.* at 10, 25.) In live monitoring conversations and listening to recordings obtained thereafter, Special Agent Lewis was able to identify Defendants' and other participants' voices based on personal interactions with them and from hearing them on the wiretaps. (*Id.* at 12, 42.) Special Agent Lewis and his partner prepared the transcripts and later compared them to the recordings after dozens of listens to ensure that they were fair and accurate representations of the conversations. (*Id.* at 12-14, 31, 33, 35-36, 39.) These same procedures were followed for each of the different types of recordings the Government intends to admit during trial, including prison calls involving Kaboni Savage, the January 5, 2005 cell block wiretaps, and the wiretap recordings from the cellular phone taps. (*Id.* at 14, 39-42, 49-50.) In addition, Special Agent Lewis testified that he was familiar with Robert Merritt's voice from approximately ten conversations with him. (Oct. 22 Hr'g Tr. 12). After Merritt was arrested on January 5, 2005, Special Agent Lewis personally spoke with him about cooperating in their investigation. (*Id.* at 86-87, 114.) Upon listening to the January 5, 2005 recordings, Special Agent Lewis recognized Merritt's voice. (*Id.* at 66-67.)

7

Kidada Savage argues that Special Agent Lewis's testimony identifying certain individuals will be based upon "a hunch" or "hearsay." (Kidada's Resp. 6.)[5] Special Agent Lewis's experience in the case, including the live-monitoring of recorded conversations, observation of drug corners and individuals, personal interactions with cooperating witnesses, confidential informants, and Defendants all support a finding that he has personal knowledge of the KSO, the individuals involved in the enterprise, and the subject matters they discussed. *See Rollins*, 544 F.3d at 831-32. Accordingly, his lay opinions about the recordings the Government intends to introduce at trial satisfy Rule 701(a). They are not based on "a hunch" or "hearsay."

      2.  *Lay Testimony Helpful to Clear Understanding of Issues of Fact*

"To satisfy the helpfulness requirement, the portion of the conversation interpreted must be coded, abbreviated, or otherwise unclear. Interpretation of clear conversations is not admissible." *United States v. Primavera Oil, Inc.*, No. 88-00028, 1988 WL 92863, at *3 (E.D. Pa. Sept. 2, 1988). Conversations are unclear where terms and phrases employ jargon or technical terms. *Georgiou*, 742 F. Supp. 2d at 630. An agent's testimony interpreting

---

[5] Kidada Savage notes an objection to the foundation for Special Agent Lewis's opinions as being testimonial hearsay evidence. (*Id.* at 6 n.1.) Lay opinion testimony based on inadmissible hearsay evidence is itself inadmissible. *See United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007) ("If [the detective] relied upon or conveyed hearsay evidence when testifying as a lay witness or if [he] based his lay testimony on matters not within his personal knowledge, he exceeded the bounds of properly admissible testimony.").
  We note that "surreptitiously monitored conversations and statements . . . [are] not 'testimonial' for purposes of *Crawford*." *United States v. Hendricks*, 395 F.3d 173, 180-81 (3d Cir. 2005). To the extent Special Agent Lewis will rely on information he learned from live-monitoring conversations or listening to recordings in providing interpretive testimony, that foundational information would not constitute testimonial hearsay. The Government submits that they have no intention of eliciting hearsay testimony from Special Agent Lewis. (Gov't's Reply 5.)
  At trial, Defendants are free to cross-examine Special Agent Lewis with regard to the bases of the foundation for his knowledge of the investigation.

"peculiarly coded conversation" is especially helpful to a jury "from the investigator who became intimately familiar with the unusual manner of communicating used by the[ ] conspirators." *Rollins*, 544 F.3d at 831; *see also United States v. El-Mezain*, 664 F.3d 467, 514 (5th Cir. 2011) ("Agents Burns and Miranda were extensively involved in the investigation of HLF, and we conclude that their testimony was either descriptive or based on their participation in, and understanding of, the events in *this* case.") (emphasis in original).

In *United States v. Dicker*, 853 F.2d 1103, 1110 (3d Cir. 1988), the Third Circuit found that the district court committed error in permitting an undercover agent to interpret portions of a transcript, as the undercover agent "simply ascribed his own, illicit meaning to straightforward, potentially legitimate statements . . . and was not helpful to a clear understanding of the testimony." In *United States v. De Peri*, the lay opinion testimony was acceptable because "the trial court vigorously policed the government's examination of [the witness] to ensure that he was not asked to interpret relatively clear statements." 778 F.2d at 978.

The clarity of the recorded conversation is a subjective determination based on the circumstances of the case and the nature of the dialogue. In *Primavera Oil*, the court permitted a witness, Ronald Musser, Jr., to testify about his interpretation of conversations with Dean and Robert Clayton. *Primavera Oil*, 1988 WL 92863, at *3. The court found that the terms "the fellows," "we," "Jim," "all their guys," and "Liberty" "do not have a clear meaning that the jury would understand but rather have a particular meaning to the participants in the conversation." *Id.* (internal quotation marks omitted). In providing interpretive testimony, Musser, Jr. "spoke of his perception, not whom Dean Clayton meant, and this perception was based on his direct involvement in the sequence of events surrounding the conversation and was not speculative."

9

*Id.* Similarly, in *United States v. Hoffecker*, the Third Circuit found that the district court did not abuse its discretion in permitting interpretive testimony where "deliberately guarded responses . . . which were not clear to the uninitiated observer were akin to 'coded words.'" 530 F.3d 137, 171 (3d Cir. 2008) (internal quotation marks omitted).

Merritt objects to Special Agent Lewis's potential testimony about identifying and generic terms. (Merritt's Resp. 2.) Specifically, Merritt identifies the terms "main man," "what-you-call-him," and "jawn" as the type of identifying terms that "contain no 'intrinsic code'" and argues that any interpretive testimony by Special Agent Lewis would be unhelpful to the jury. (*Id.* (citing *United States v. Gibbs*, 190 F.3d 188, 212 (3d Cir. 1999)). In *Gibbs*, the Third Circuit upheld the district court's decision to permit a government agent's testimony about the meaning of coded words in specific contexts, while finding that the court abused its discretion in permitting the agent to explain the meaning of terms like "tonight's the night." *Id.* at 211-12.[6] "It was the function of the jury, which heard all of the relevant tape recordings, to determine what these phrases meant in the context of the surrounding sentences." *Id.* at 213.

Significantly, the *Gibbs* court specifically permitted the agent to testify about his understanding of the term "jawn," which the court acknowledged had different meanings in different contexts. *Id.* at 211. Considering the amorphous nature of the term "jawn," we conclude that Special Agent Lewis's testimony would be helpful to the jury in understandings its

---

[6] Notably, the Third Circuit's decision in *Gibbs* related to the testimony of an FBI agent as an expert pursuant to Federal Rule of Evidence 702 rather than as a lay person pursuant to Federal Rule of Evidence 701. *Gibbs*, 190 F.3d at 210. As discussed *infra*, the Government's Motion *in Limine* requests that Special Agent Lewis be permitted to testify about his understanding of conversations as a lay person with intimate knowledge of the investigation, rather than as an expert retained to provide opinions based on knowledge, skill, experience, training, or education. (*See also* Gov't's Reply 5.)

meaning. With regard to interpretive testimony involving identifying terms, we agree with the court's findings in *Primavera Oil*. The terms identified by Merritt, including "main man" and "what-you-call-him" do not have an intrinsically clear meaning. In light of his constant involvement throughout the course of this investigation, which began in 1998 and lasted until 2009, Special Agent Lewis's opinion about these identifying terms will assist the jury in understanding the recordings to the extent the jury credits Special Agent Lewis's interpretation. The recordings played for the Court during the *Starks* hearing for the purposes of authentication reflected ambiguous conversations involving numerous parties employing slang, the frequent use of monikers, and intentionally unclear dialogue.[7]

### 3. Rule 701(c)

Kidada Savage argues that if permitted to testify as the Government requests, Special Agent Lewis will essentially provide expert testimony, which will permit him to "parrot the government's theory of the case." (Kidada's Resp. 3-5.) We disagree. In *Rollins*, a case involving similar case agent testimony on dozens of recordings from a narcotics investigation, the Seventh Circuit rejected a similar line of reasoning. *Rollins*, 544 F.3d at 832.

> Thus, Agent McGarry's impressions testimony was not based on any specialized knowledge gained from his law enforcement training and experience in narcotics trafficking generally. Rather, his understanding of these conversations came only as a result of the particular things he perceived from monitoring intercepted calls, observing drug transactions of these conspirators, and talking with the cooperating conspirators about this drug operation as the investigation rolled into the trial preparation phase. He had become intimately familiar with each voice on the calls, particular mannerisms of the speakers and the habits of the conspirators.

---

[7] The examples highlighted by the parties in their filings evince this very point. (*See* Gov't's Mot. 8 ("The short light-skinned one, the crazy one"); Merritt's Resp. 2 ("main man," "jawn"); Kidada's Resp. 5 ("Dark skin tall one?").)

*Id.*; *see also El-Mezain*, 664 F.3d at 514 (finding that officers' testimony was properly admitted under Rule 701 as it was based on experience in case investigation and not on the officers' general training and experience as law enforcement officials); *United States v. Eiland*, No. 04-379, 2006 WL 2844921, at *5 (D.D.C. Oct. 2, 2006) ("[A] witness may still testify as a lay opinion witness as to his interpretation of the conversation, provided the foundation for such testimony is limited to the knowledge of the facts surrounding the case at issue held by the witness, *qua* investigator.").

According to the Government, Special Agent Lewis's interpretive testimony about the context and unclear language used in the recordings to be admitted into evidence at trial will be based upon his experience as the case agent investigating the KSO rather than his experience as a law enforcement official in general. (Gov't's Mot. 4.) At trial, Defendants will be able to both cross-examine Special Agent Lewis about his opinions and their bases and to introduce witnesses who may provide alternate interpretations of the terms in dispute. The jury will then be free to credit either interpretation. While there are risks in having a case agent provide lay opinion testimony, *see Freeman*, 498 F.3d at 902-03,[8] such risks are mitigated by vigorous policing of the Government's questioning, *De Peri*, 778 F.2d at 978, to ensure Special Agent Lewis does not testify about clear statements or provide speculative opinions outside the realm of his rational perception. Special Agent Lewis will be permitted to testify about his impressions of recorded

---

[8] In particular, the *Freeman* court addressed the difficulties that arise at trial when a case agent is admitted as an expert for the purpose of de-coding technical jargon and then testifies as a layperson for the purpose of interpreting ambiguous statements in a recording based on general knowledge of the investigation. *Freeman*, 498 F.3d at 902-03 (citing *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003)). This is not a concern here because Special Agent Lewis is being offered to provide lay opinions, not as an expert witness. (*See* Gov't's Reply 5.)

conversations and to interpret the meaning of words used in conversation; he will not be permitted to summarize the conversations or to testify about commonly used terms. *See Rollins*, 544 F.3d at 833.

## III. CONCLUSION

For the foregoing reasons, Government's Motion *in Limine* to Admit Lay Testimony Pursuant to Federal Rules of Evidence 104 and 701 will be granted.

An appropriate Order will follow.

**BY THE COURT:**

*/s/R. Barclay Surrick*
**U.S. District Judge**