IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |

**SURRICK, J.**                                                                                        **MARCH 20, 2013**

## MEMORANDUM

Presently before the Court is Defendant Steven Northington's Motion *in Limine* to Redact Portions of Cell Block Recording 655-2. (ECF No. 1125.) For the following reasons, Defendant's Motion will be denied.

**I.**     **BACKGROUND**[1]

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Steven Northington with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); two counts of murder in aid of racketeering, in violation of 18 Pa. Cons. Stat. § 2502(a), 306, and in violation of 18 U.S.C. § 1959(a)(1), (2) (Counts 5, 7); and tampering with a witness, in violation of 18 U.S.C. § 1512(a)(1)(A) (Count 8). (Fourth Superseding Indictment, ECF No. 480.)[2] Defendant was charged along with three co-defendants, Kaboni Savage, Robert Merritt, and Savage's sister, Kidada Savage. Lamont Lewis was also charged in the First

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

[2] Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties. (ECF No. 855.)

Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011.

The charges against Defendant arise out of a long-standing RICO drug conspiracy that was supported by murder and witness intimidation. The Government alleges that all four Defendants were members of a regional criminal organization, which was based in North Philadelphia and was known as the Kaboni Savage Organization ("KSO"). (Indictment 5.) The Government alleges that from late 1997 through April 2010, the members of this racketeering enterprise conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. (*Id.* at 6-8.) The KSO packaged, prepared and distributed cocaine, crack and phencylclidine ("PCP") throughout the greater Philadelphia area, and collected drug proceeds in exchange. The KSO operated drug distribution centers, also known as "drug corners," throughout North Philadelphia and maintained control of these drug corners through a pattern of threats, intimidation, violence and murder. (*Id.* at 5.) The KSO was also committed to maintaining, preserving, protecting and expanding its power, territory, and profits. (*Id.* at 6.) It did this by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder. (*Id.*)

On October 9, 2004, six people, including four children, died as a result of arson at a home located at 3256 North Sixth Street, Philadelphia, Pennsylvania. The Indictment alleges that Kaboni Savage and Kidada Savage solicited and directed Lewis and Merritt to set fire to the home of Eugene Coleman, a former associate of Savage. (*Id.* at 21-23.) Kaboni Savage believed that Coleman was cooperating with the Government and was going to testify against him in his

2005 federal drug conspiracy trial.[3] The firebombing took the lives of Coleman's mother, his infant son, and four others. The Government intends to show at trial that the firebombing was ordered by Savage in order to intimidate Coleman and prevent him from testifying at the 2005 drug conspiracy trial.

The Indictment further alleges that, in support of the KSO, Defendant murdered Barry Parker on February 26, 2003. (Indictment 14.) On April 27, 2007, Defendant was found guilty of this murder in the Court of Common Pleas of Philadelphia County, and was sentenced to life in prison. (ECF No. 428.) On February 26, 2004, Savage allegedly directed Defendant, and Dawud Bey, a fellow co-conspirator, to arrange for the murder of Tybius Flowers in order to prevent Flowers's attendance and testimony at Kaboni Savage's trial in the Philadelphia County Court of Common Pleas for the murder of Kenneth Lassiter. (Indictment 18.) On March 1, 2004, Defendant is alleged to have murdered Flowers. (*Id.*)

On March 5, 2013, Defendant filed a Motion *in Limine* to preclude the playing of a portion of a taped cell block conversation (labeled L655-2) between Kaboni Savage and Dawud Bey recorded on December 13, 2004. (Def.'s Mot., ECF No. 1125.) The Government filed a response to Defendant's Motion on March 9, 2013. (Gov't's Resp., ECF No. 1148.)

## II. DISCUSSION

The Government intends to play the entire taped conversation between Savage and Bey. Defendant requests that the Court exclude the following portion of conversation L655-2:

> DB: Ask "Dollar Bill," because "Dollar Bill" and "Reef" were together. Because "Dollar Bill" first showed me how they were pumping it up all about "boy."

---

[3] Kaboni Savage, Northington, and four other co-defendants not charged in the instant Indictment were prosecuted in the 2005 drug conspiracy case. *See United States v. Savage*, No 04-269 (E.D. Pa.), at ECF No. 448. After a seven-week trial, Savage was found guilty of conspiracy to manufacture and distribute cocaine, money laundering, firearms possession, witness retaliation and other crimes. *Id*. at ECF No. 847. Coleman testified at that trial. Savage received a sentence of thirty years in prison on these convictions.

3

> KS: Yeah.
> DB: I didn't even know, ya know.
> KS: Yeah.
> DB: I guess I was running back and forth out of town or something.
> KS: Yeah. Yeah.
> DB: I didn't even know that he was...that he boxed and all that.
> KS: Yeah.
> DB: So I wasn't thinking like it was that big of a shit.
> KS: Yeah.
> DB: After I read that mother fucker, us three was together and I said, "Yup, we going to jail."
> (DB & KS laugh)
> DB: I said, "Damn." I sunk down in my seat and shit and I was like "Damn, yup." I said, "We going to jail."
> KS: (Laughs)

(Def.'s Mot. 1-2.)

The Government contends that the challenged portion of the conversation includes a discussion between Bey and Savage about a *Philadelphia Inquirer* newspaper article concerning the Flowers murder. (Gov't's Resp. 3.) During the conversation, Bey indicated he was out of town and did not realize the press had taken interest in the murder until Defendant brought his attention to the significant press coverage of the incident. (*Id*.) Bey stated that when he read the article he was with Defendant and expressed his dismay at the likelihood that he and Defendant would be incarcerated for their involvement with the murder. (*Id*.) Later on in the conversation, Bey and Savage discussed how the notoriety from the murder would benefit the KSO by intimidating potential cooperators and by assisting in the collection of debts. (*Id*. at 2.) Defendant argues that this excerpt of the cell block conversation between Savage and Bey is inadmissible hearsay as the statements were not made "in furtherance of the conspiracy" as required by Federal Rule of Evidence 801(d)(2)(E). (Def.'s Mot. 3.)

Out-of-court co-conspirator statements do not constitute hearsay and may be admitted into evidence pursuant to Rule 801(d)(2)(E) under the following conditions: "(1) there must be

independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it; (2) the statement must have been made in furtherance of the conspiracy; and (3) it must have been made during the course of the conspiracy." *United States v. Ammar*, 714 F.2d 238, 245 (3d Cir. 1983).[4] In addition, the statements at issue must have been made to someone involved in the conspiracy. *United States v. Provenzano,* 620 F.2d 985, 1000-01 (3d Cir. 1980).[5]

The Third Circuit has recognized that the "in furtherance" requirement is construed broadly. *United States v. Weaver*, 507 F.3d 178, 183 (3d Cir. 2007) ("[T]he in furtherance requirement is usually given a broad interpretation.") (internal quotation marks omitted); *see also United States v. Garcia-Torres*, 280 F.3d 1, 5 (1st Cir. 2002) ("So long as the statement is made during the conspiracy, the "in furtherance" requirement is administered flexibly.") "Idle chatter" or "casual conversation" are not construed as statements made in furtherance of the conspiracy. *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984). However, "statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy" satisfy the "in furtherance" requirement. *Ammar*, 714 F.2d at 252; *see also United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005) (internal quotation marks omitted) ("[S]tatements in furtherance of a conspiracy can take many forms, such as keeping co-conspirators advised . . . . The statement may also be susceptible [to] alternative interpretations.").

---

[4] We will only address the "in furtherance" factor as Defendant stated that "[f]or purposes of this Motion, it should be assumed that the prosecution will present evidence on the first and third prongs of the test prior to seeking to admit the questioned declarations." (Def.'s Mot. 3.)

[5] We have previously ruled that Dawud Bey was a co-conspirator in the KSO. (*See* ECF No. 886.)

Defendant claims that the challenged statements constitute "a casual and humorous conversation" about a past news article, and as such, were not made "in furtherance" of the alleged conspiracy. (Def.'s Mot. 6.) The Government maintains that Bey was keeping Savage apprised of the events impacting the conspiracy and thus these statements further the ends of the alleged conspiracy. (Gov't's Resp. 5.)

Given that the "in furtherance" requirement is broadly construed, we are satisfied that the challenged statements do not, as Defendant contends, constitute a mere humorous exchange, or idle chatter. These statements further the goals of the conspiracy by keeping its members abreast of the ongoing conspiracy.

A fundamental purpose of the alleged conspiracy was the protection of the members of the KSO through tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder. Indeed, the Indictment is replete with allegations of witness intimidation and threats. Certainly the murder of Flowers, an individual who was going to testify against a member of the racketeering enterprise, was an important and significant event in the ongoing conspiracy. In the contested portion of the conversation, Bey informed Savage about the current status of an important event in the conspiracy—the press coverage of a murder allegedly perpetrated by members of the racketeering enterprise. *See United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993) ("We think it is common ground-and common sense-that the reporting of significant events by one coconspirator to another advances the conspiracy.") Moreover, as Bey later indicated, the notoriety from this substantial media exposure would further the ends of the conspiracy in its debt collection efforts and in its intimidation efforts.

The Government has established that the challenged portion of the recorded conversation was made in furtherance of the conspiracy and is admissible pursuant to Rule 801(d)(2)(E).[6]

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* must be denied.

An appropriate Order will follow.

**BY THE COURT:**


*/s/R. Barclay Surrick*
**U.S. District Judge**

---

[6] The Government also contends that the statements are admissible pursuant to 804(b)(3) as statements against the declarant's penal interest. Since this portion of the recording is properly admitted under Rule 801(d)(2)(E) as co-conspirator statements, we need not address whether this exception applies.