IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 - 06 |
| KIDADA SAVAGE | : | |

**SURRICK, J.**                                                                   **SEPTEMBER 11, 2013**

## MEMORANDUM

Presently before the Court is the Government's Motion for a Hearing and Findings Regarding Mr. Chris Phillips's Prior Employment and His Current Representation of Defendant Kidada Savage (ECF No. 1220), and Defendant Kidada Savage's Motion for Mistrial (ECF No. 1273). For the following reasons, the Government's Motion will be granted, and Defendant's Motion will be denied.

### I.    BACKGROUND

On May 13, 2013, a jury found Defendant Kidada Savage guilty of conspiring to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), six counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), retaliating against a witness, in violation of 18 U.S.C. § 1513(a), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1). (Verdict Sheet, ECF No. 1330 (filed under seal).) Defendant was tried along with three co-Defendants: her brother, Kaboni Savage; Steven Northington; and Robert Merritt. Defendant now moves for a mistrial on grounds that Christopher Phillips, Esquire, one of her two court-appointed trial attorneys, was laboring under a conflict of interest during his representation of her. Phillips had previously been employed as an Assistant District Attorney in the City of Philadelphia. During his time as an Assistant District Attorney, he was briefly

assigned to prosecute Anthony Mitchell for the murder of Kenneth Lassiter. Kaboni Savage was also separately charged with the Lassiter murder. The two cases were ultimately consolidated for trial.[1] The Lassiter murder was charged as a predicate act in the instant RICO conspiracy. Defendant contends that the fact that Phillips had been assigned to the Mitchell prosecution while an Assistant District Attorney in Philadelphia constituted an unwaivable conflict of interest. Defendant demands that this Court grant her a mistrial.

### A. Procedural History

Upon the discovery of Phillips's potential conflict of interest, the Government, on April 5, 2013, filed a Motion for a Hearing and Findings Regarding Mr. Chris Phillips's Prior Employment and His Current Representation of Defendant Kidada Savage. (Gov't's Mot., ECF No. 1220.) The Court appointed Lawrence J. Fox, Esquire as independent counsel to represent Defendant with respect to the issues raised in the Government's Motion. (*See* ECF No. 1243.)

On April 26, 2013, Defendant filed the instant Motion for a Mistrial. (Def.'s Mot., ECF No. 1273.)[2] Samuel C. Stretton, Esquire was appointed to represent Phillips with respect to the alleged conflict of interest. (*See* ECF No. 1285.) On May 17, 2013, an Order was entered (1) setting a deadline for the filing of responses to the Government's Motion and Defendant's Motion, and (2) scheduling a hearing on the Motions. (*See* ECF No. 1375.) On May 30, 2013, Phillips filed an Answer to the Motions, together with a Memorandum of Law. (Phillips's Resp., ECF No. 1414.) Phillips filed a Supplement to the Answer on June 3, 2013. (Phillips's Supp. Resp., ECF No. 1423.) On September 10, 2013, The Government filed a Supplemental Memorandum in Opposition to Defendant's Motion for Mistrial. (ECF No. 1528.)

---

[1] The trial resulted in an acquittal when one of the Commonwealth's primary witnesses was murdered on the eve of trial. Phillips was not involved in that trial.

[2] The Motion for a Mistrial was filed by Fox, and not by Defendant's trial counsel.

2

On June 17, 2013, a hearing was held on the conflict-of-interest issues raised in the Motions. (*See* Min. Entry, ECF No. 1471; *see also* June 17, 2013 Hr'g Tr., ECF No. 1525.) Defendant and Phillips both testified at the hearing. On June 19, 2013, Defendant filed a Supplemental Brief in support of her Motion. (Def.'s Supp. Br., ECF No. 1486.)

### B. The Indictment, Trial, and Conviction

The seventeen-count Fourth Superseding Indictment was returned on May 9, 2012, charging Defendant and her co-Defendants with various crimes relating to a long-standing RICO conspiracy involving drug trafficking, murder, and witness intimidation. Defendants were members of a regional criminal organization based in North Philadelphia referred to as the Kaboni Savage Organization ("KSO"). The Indictment alleged that from late 1997 through April 2010, this racketeering enterprise conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. In addition to its drug trafficking activities, the KSO was committed to maintaining, preserving, protecting and expanding its power, territory, and profits by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder.

Some of the overt acts listed in the RICO conspiracy count are also charged as separate crimes. One of the overt acts relates to the 1998 murder of Kenneth Lassiter. Kaboni Savage was charged separately in Count 2 of the Indictment with that murder. The Government has never alleged that Kidada Savage was involved in the Lassiter murder.

Jury selection on the Fourth Superseding Indictment began on November 7, 2012. Testimony began on February 4, 2013, and lasted for approximately fourteen weeks. On May

3

13, 2013, the jury found Defendant guilty on all counts charged against her in the Indictment. These included the RICO conspiracy and six counts of murder in aid of racketeering.[3] The Government did not seek the death penalty against Defendant. Defendant is scheduled to be sentenced by the Court on September 16, 2013.[4]

### C. The Discovery and Disclosure of Phillips's Potential Conflict of Interest

Christopher Phillips has practiced law since 1988, and is currently in private practice. (June 17 Hr'g Tr. 10.) He was employed as a prosecutor in the Philadelphia County District Attorney's Office from September of 1989 until September of 2004. (*Id*.) Prior to leaving the District Attorney's Office, Phillips was assigned to the Homicide Unit. (*Id*.) On March 18, 2013, six weeks after this trial began, the Government received the Commonwealth's file on the state court prosecution of the murder of Kenneth Lassiter. (Gov't's Mot. 2.) Upon review of that file, the Government discovered an internal District Attorney's Office Memorandum dated

---

[3] The six murder convictions relate to the firebombing of the home of Eugene Coleman, a former associate of Kaboni Savage. Suspicious that Coleman was cooperating with the Government, Kaboni Savage, together with Defendant, solicited and ordered Lamont Lewis and Merritt to set fire to Coleman's home. Lewis was charged in the First Superseding Indictment; however, the charges against Lewis were disposed of by guilty plea on April 21, 2011. The firebombing took the lives of Coleman's mother, infant son, and four other relatives. At trial, the Government established that the firebombing was ordered by Kaboni Savage, with the assistance of Kidada Savage, in order to intimidate Coleman from testifying against him at a 2005 drug conspiracy trial.

[4] Kaboni Savage was also found guilty on all counts: RICO conspiracy; twelve counts of murder in aid of racketeering; conspiracy to commit murder in aid of racketeering; witness retaliation; and using fire to commit a felony. (Verdict Sheet.) After a penalty phase hearing, the same jury that determined his guilt sentenced Kaboni Savage to death on June 3, 2013. (*See* Min. Entry, ECF No. 1443; Savage Penalty Verdict, ECF No. 1434.) Robert Merritt was found guilty of the RICO conspiracy count, but found not guilty on the remaining counts charged against him. (*Id*.) Because Merritt was acquitted on all of the death-eligible counts, he did not proceed to a sentencing hearing. Merritt's sentencing has not yet been scheduled. Northington was found guilty of RICO conspiracy and two counts of murder in aid of racketeering. (Verdict.) On June 19, 2013, after a penalty phase hearing before the same jury that determined his guilt, Northington was sentenced to life in prison without the possibility of release. (*See* Min. Entry, ECF No. 1485; Northington Penalty Verdict, ECF No. 1466.)

4

October 28, 2003 in which the case of *Commonwealth v. Anthony Mitchell* was assigned to Phillips (the "Assignment Memo"). (June 17 Hr'g Tr. Ex. 1.) As stated above, ultimately, the Commonwealth's case against Mitchell was consolidated with the case against Kaboni Savage.

The Assignment Memo was a standard template that is given to an Assistant District Attorney who is assigned a file. It contained no substantive facts about the matter to which it related. (*Id.* at 21, 42.) The Assignment Memo instructed the prosecutor to: (1) notify the family members of the deceased victim of the prosecutor's assignment and all trial listings in the case; (2) "closely review all the evidence"; (3) notify and meet with the medical examiner; and (4) confirm that the trial date does not conflict with the prosecutor's trial schedule. (*Id.* at 21 & Ex. 1.) Phillips did not take any action on this Memo. (*Id.* at 43.) The Assignment Memo also advised that a pretrial conference was scheduled in Anthony Mitchell's case before Judge Benjamin Lerner on October 28, 2003. (*Id.* at 15.) Phillips did not attend that conference. (*Id.* at 16.) The conference was attended by another Assistant District Attorney. (*Id.* at 26.) Phillips would only have appeared before Judge Lerner "if there was going to be something of substance going on," such as "a motion or plea." (*Id.*) Phillips testified that, as an Assistant District Attorney in the Homicide Unit, he was assigned a number of cases at any given time. He would not become actively involved in a case in the case's infancy, such as when the case was assigned to a pretrial conference, since he would have been busy on other cases that were being tried or approaching a trial date. (*Id.* at 47.)

The top right hand corner of the Assignment Memo contains the handwritten notation "Kaboni Savage 2/23/04." (*Id.* at 17 & Ex. 1.) The notation is in Phillips's handwriting. (*Id.* at 17.) Although Phillips recognized the handwriting to be his, he has no recollection of making the notation. (*Id.*) Phillips also does not recall where he obtained this information. (*Id.* at 50.)

5

He presumes that either someone had informed him about the trial date or that he obtained the date from the Homicide Unit's database. (*Id*.) When the case was first assigned to Phillips, it was only for the prosecution of Anthony Mitchell. If Phillips's had kept the file, he would have joined the two cases, but he did not remain on the case. (Phillips's Supp. Br. 1; *see also* June 17 Hr'g Tr. 40, 50.)

On November 6, 2003, the *Mitchell* case was reassigned to Anthony Voci, Esquire, another Assistant District Attorney. This was only nine days after the case had been assigned to Phillips. (June 17 Hr'g Tr. 22 & Ex. 2.) During his brief assignment, Phillips never reviewed the discovery, never met with witnesses, did not contact the victim's family, filed no motions, and engaged in no plea negotiations. (*Id*. at 18, 24, 41.) Phillips never discussed strategy or the case generally with anyone during or after his brief assignment. (*Id*. at 18.) Phillips "took no action to prepare the case for trial in the nine days that [he] had it." (*Id*. at 25.) Phillips never even retrieved the file.[5] Except for Phillips's handwritten notation on the Assignment Memo, there is no indication on the file showing that Phillips had any involvement in the state court prosecutions of Anthony Mitchell or Kaboni Savage. (June 17 Hr'g Tr. 23.)

When Phillips was appointed to represent Defendant in this case, he had no recollection of his prior nine-day assignment to the Anthony Mitchell prosecution. (*Id*. at 23.) It was not until March of 2013 when the Government informed him of the existence of the Assignment Memo, that Phillips became aware of the prior assignment. (*Id*.) On March 19, 2013, the day after the Government informed Phillips of its discovery of the Assignment Memo, Phillips discussed the matter with Defendant. (*Id*. at 25.) Phillips did not discuss waiver with Defendant.

---

[5] Phillips testified that when an Assistant District Attorney is assigned to handle a case, he or she is provided with an assignment memorandum, but not the actual file. (June 17 Hr'g Tr. 32.) It is the responsibility of the attorney to retrieve the file. (*Id*.) Although he had access to the Mitchell file, Phillips was never in possession of it. (*Id*.) Each Assistant District Attorney in the Homicide Unit has access to every file that is handled in the office. (*Id*. at 33.)

(*Id*. at 34.) Phillips advised Defendant that he would stay on as her attorney, but that she should have all future conversations with co-counsel, Teresa Whalen, Esquire, regarding the matter. (*Id*. at 13, 35.)[6] Phillips also informed his client that the Court would appoint another attorney "that she could consult with if she had any issues about [Phillips's] involvement in the Lassiter file." (June 17 Hr'g Tr. 35.)

Phillips was a credible witness.

## II. DISCUSSION

### A. The Parties' Contentions

After discovering the Assignment Memo, the Government notified the Court, and out of an abundance of caution, requested that the Court schedule a hearing and make findings regarding the nature and extent of Phillips's prior assignment to prosecute Mitchell for the murder of Lassiter. (Gov't's Mot.) The Government indicated that it was primarily concerned with possible ethical and constitutional implications of Phillips's current representation of Defendant in light of his prior assignment, referencing the Sixth Amendment and various Pennsylvania Rules of Professional Responsibility. At the hearing, the Government took the position that a mistrial was not necessary since the testimony revealed that Phillips had no memory about the District Attorney's case against Mitchell and Savage, did not obtain confidential information related to that prosecution, and had taken no action on the file during his nine-day assignment.

Defendant makes two principle arguments in support of her request for a mistrial. First, Defendant contends that a mistrial is justified because Phillips's prior assignment on the Lassiter

---

[6] Whalen was originally retained as Defendant's learned death penalty counsel. After the Government determined that it was not going to seek the death penalty, Whalen was permitted to remain as co-counsel to represent Defendant in the case. (June 13 Hr'g Tr. 13; *see also* Order, ECF No. 268.) Whalen was actively involved in the representation of Defendant during the pretrial phase and during the trial itself. It has not been suggested that she has a conflict.

7

murder case constitutes a "serious, likely unwaivable conflict of interest" that violates Rule 1.7(a) of the Pennsylvania Rules of Professional Responsibility. (Def.'s Br. 1, 3-4.) Defendant contends that a conflict of interest exists even though (1) Phillips does not remember being assigned to the case, (2) the assignment occurred many years ago, and (3) the assignment lasted only nine days. (Def.'s Supp. Br. 2.) Second, Defendant argues that another conflict of interest arose by virtue of Phillips opposing Defendant's Motion for a Mistrial and taking the position that he provided effective assistance of counsel, and that this conflict violates Rule 1.7(a). (*Id*. at 2-3; June 17 Hr'g Tr. 80.) Referred to by the parties as the "new conflict," this conflict of interest, according to Defendant, is a reflection and confirmation of the earlier conflict and arose during trial at the moment Phillips began contemplating his response to Defendant's request for a mistrial. (Def.'s Supp. Br. 2.) Defendant contends that she was prejudiced by the mere fact that her attorney took a position adverse to hers by opposing her Motion for a Mistrial, and for failing to recognize his professional responsibilities. (June 17 Hr'g Tr. 68.)

Phillips opposes Defendant's request for a mistrial, and argues that no conflict of interest arose as a result of his brief assignment to the Anthony Mitchell file. (Phillips's Resp. 3.)[7] Phillips contends that although he was "briefly inserted as counsel" for the Lassiter murder case, he did not obtain any confidential information or perform any substantive work on the file, and the file was ultimately transferred to another District Attorney who actually prepared the case for trial and tried the case. (Phillips's Resp. 3-4.) Phillips strongly refutes the suggestion that his representation of Defendant in this case violated the Pennsylvania Rules of Professional

---

[7] At the hearing, Phillips testified that he did not wish to oppose Defendant's Motion, but that it was strongly advised that he do so by his attorney. (June 17 Hr'g Tr. 48-49, 69.) Phillips did not believe that his opposition to the Motion created a conflict of interest because the basis for his opposition was to correct erroneous factual allegations in the Motion. (*Id*. at 49.) Phillips further testified that prior to filing an opposition to Defendant's Motion for a Mistrial, he did not advise his client that he intended to oppose her Motion, nor did he offer to withdraw as counsel. (*Id*. at 37.)

8

Conduct, compromised Defendant's Sixth Amendment rights, or otherwise constituted ineffective assistance of counsel. (*Id*. at 4-9.) In particular, Phillips argues that Defendant is unable to demonstrate that the alleged conflict of interest prejudiced her in any way. (*Id.* at 10-11.)

**B.     Legal Standard**

A district court has the power to declare a mistrial prior to the conclusion of the presentation of evidence. *United States v. Wecht*, No. 06-26, 2008 U.S. Dist. LEXIS 34957, at *20 (W.D. Pa. Apr. 29, 2008) (citing *United States v. Scott*, 437 U.S. 82, 92 (1978)). A mistrial may be requested by a criminal defendant, by the Government, or granted *sua sponte* by the Court. *United States v. Rivera*, 384 F.3d 49, 55 (3d Cir. 2004). District courts have sound discretion to declare a mistrial. *United States v. Giampa*, 904 F. Supp. 235, 301 (D.N.J. 1995). However, "[t]he power to declare a mistrial 'ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Rivera*, 384 F.3d at 55 (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)).

**C.     Analysis**

*1.     Phillips's Prior Assignment*

The parties dispute the framework within which the potential conflict should be examined. Defendant suggests that relief is appropriate by exclusive reference to the Pennsylvania Rules of Professional Conduct. She rejects Sixth Amendment Supreme Court jurisprudence entirely, arguing that it should play no part in the Court's consideration since the conflict was raised at trial and not on habeas review. Phillips argues to the contrary. Citing Sixth Amendment standards applicable to attorney conflicts, Phillips contends that the inquiry

9

centers on whether he violated his obligations under the Sixth Amendment by providing inadequate representation, and not whether disciplinary action under ethical rules is called for.

The right to effective assistance of counsel, as guaranteed by the Sixth Amendment, not only includes "the right to adequate representation by an attorney of reasonable competence," but also, "the right to the attorney's undivided loyalty free from conflict of interest." *United States v. Stout*, 723 F. Supp. 297, 303 (E.D. Pa. 1989) (citing *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir. 1984)); *see also Wood v. Georgia*, 450 U.S. 261, 271 (1981) (noting that the Sixth Amendment guarantees a defendant to legal counsel unfettered by conflicts of interest); *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). In *Cuyler v. Sullivan*, which involved a petition for habeas corpus, the Supreme Court held that "a defendant who raised no objection at trial must demonstrate [on collateral review] that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. 335, 348 (1980). An actual conflict of interest is a conflict that affected counsel's conduct at trial, "as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). If a defendant can prove that an actual conflict existed, then prejudice will be presumed. *Id*. at 173. Under the *Cuyler* standard, "[a]n actual conflict of interest is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *Gambino*, 864 F.2d at 1070 (internal quotation marks and citations omitted). In addition, "the conflict must cause some lapse in representation contrary to the defendant's interests . . . [which] can be demonstrated not only by what the attorney does, but by what he refrains from doing." *Id*. (internal quotation marks and citations omitted).[8] A defendant may

---

[8] The Third Circuit has determined that "in a conflict of interest case, non-conformance with the rules of professional responsibility by an attorney representing a criminal defendant shall guide [the court's] examination of whether or not that defendant's Sixth Amendment rights

10

waive a conflict of interest, so long as the waiver is knowing, voluntary, and intelligent. *United States v. Quinones*, 613 F.2d 47, 49 (3d Cir. 1980).

The parties' disagreement as to the appropriate standard derives in part from the timing of when the conflict was discovered and when it was addressed by the Court. Defendant objected to Phillips's representation mid-trial, but the hearing addressing the alleged conflict was not held until after the verdict was returned.[9] Had the parties learned about Phillips's prior assignment before trial began, Defendant could have requested substituted counsel, or the Government could have sought disqualification. *See, e.g.*, *United States v. Kolodesh*, No. 11-464, 2012 U.S. Dist. LEXIS 49169, at *10-13 (E.D. Pa. Apr. 5, 2012); *United States v. Puryear*, 719 F. Supp. 2d 571, 576 (W.D. Pa. 2010). If the parties learned of the conflict after the verdict was returned, or opted to preserve the argument for appeal or collateral review, then the Sixth Amendment standard set forth in *Cuyler* would apply. *See United States v. Camiel*, 519 F. Supp. 1248, 1251 (E.D. Pa. 1981) (observing that the *Cuyler* standard applies only when a defendant fails to object to the conflict of interest at trial).

We agree with Defendant that it would be unfair to impose upon her the burden associated with appellate and collateral review of conflicts issues when she raised her concern during the trial and not in post-trial pleadings. We will not require Defendant to establish a

---

were infringed." *Gambino*, 864 F.2d at 1083 (citing *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)).

[9] As noted above, this very complex, multi-defendant, multi-capital count RICO trial began in early November 2012 with jury selection. Testimony began in early February 2013. This conflict issue arose in the third week of March 2013. The Court then appointed independent counsel to represent the respective parties and counsel were advised to submit briefs on the various issues. The trial continued while counsel was briefing the issues. This conflict issue arose six weeks after trial began, and after the case had already demanded a significant amount of time from jurors, the parties, counsel, witnesses, and the Court. It would have made little sense to adjourn the trial to deal with this issue. The only reasonable course was to continue with the trial and address the conflict issue after the jury had reached its verdict. The hearing on these Motions was held on June 17, 2013 after the jury had completed its job.

claim under *Cuyler*. However, this does not mean that the Sixth Amendment has no place in our consideration of the issues before us. The Court's interest in protecting Defendant's Sixth Amendment right to effective counsel at every stage of this criminal matter cannot be overstated. Defendant, in essence, asks the Court to adopt a per se rule that a *potential* conflict of interest discovered during the course of a criminal trial warrants a mistrial. We are satisfied that the law and the Rules of Professional Conduct do not require such a result. In this case, whether we use the Pennsylvania Rules of Professional Conduct or whether we apply a Sixth Amendment standard, the result is the same. Defendant has been unable to establish that an actual conflict of interest exists here. She also has been unable to demonstrate that the potential conflict presented by Phillips's prior assignment as an Assistant District Attorney ran afoul of any Pennsylvania Rule of Professional Conduct. Finally, she has been unable to show that her Sixth Amendment rights have been compromised in any way.

The Parties rely on multiple Pennsylvania Rules of Professional Conduct to advance their respective arguments. Defendant relies primarily on Rule 1.7(a). That Rule prohibits an attorney from representing a client "if the representation involves a concurrent conflict of interest." Pa. R. Prof. Conduct 1.7(a). A concurrent conflict of interest is found if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

*Id*. Defendant's argument falls under Rule 1.7(a)(2).[10] She contends that Phillips's previous representation of the Commonwealth of Pennsylvania in the Lassiter case created a significant risk that his representation of Defendant in this case would be materially limited by his

---

[10] As discussed hereinafter, Defendant's argument that Phillips's opposition to her Motion for Mistrial constitutes a "new conflict" falls under Rule 1.7(a)(1).

responsibilities to his former client. Defendant states that her attorney's "role in and loyalty to his former office creates a material limitation in his ability to be a zealous advocate on behalf of [her]." (Def.'s Mot. 3.) In other words, Defendant presumes that Phillips cannot provide her competent and diligent representation because "his ability to attack the Government's prosecution is limited" by such things as loyalty to his former client and a reluctance to expose deficiencies in his prior work product.

We are not persuaded that Phillips's brief assignment to the Anthony Mitchell prosecution could have limited, let alone *materially* limited, his ability to vigorously defend his client's interests. Phillips was assigned the case for a total of nine days. During that time, he reviewed no discovery, interviewed no witnesses, made no court appearances, filed no motions, and did not discuss the case with anyone. He took no action on the file whatsoever. His role was so minor that he did not even recall being assigned the file. Defendant has not presented any evidence that Phillips obtained confidential information about the Lassiter murder prosecution, or that possession of such information compromised his ability to represent Defendant at trial.

Defendant's contention that the Assignment Memo contained confidential information is misguided. The Assignment Memo was a template used by the Philadelphia District Attorney's office for every case assignment in that office. It does not contain information about the murder investigation or about the prosecution generally. The only case-specific information about the Mitchell prosecution found in the Assignment Memo is the case caption and the date of the pretrial conference. We also reject the suggestion that the task items listed in the Assignment Memo constitute confidential information since they disclose prosecution strategies for the District Attorney's Office. There is nothing about these task items that relate specifically to the

13

facts alleged in the case, the victim, or the defendants charged with the murder. Moreover, Phillips never performed any of these tasks.

We also decline Defendant's invitation to presume that Phillips had access to privileged information simply because he was assigned the *Mitchell* case. In support of this argument, Defendant relies on the Third Circuit case *United States v. Provenzano*, 620 F.2d 985, 1105 (3d Cir. 1980). In *Provenzano*, which involved a multi-defendant criminal RICO conspiracy, the disqualification of the attorney for one of the defendants was upheld because the attorney had previously represented the Government's main witness during the witness' prior murder trial. *Id.* at 989, 1104-05. The Court affirmed the district court's conclusion that disqualification was proper, even in the absence of any factual findings by the district court that the attorney in fact possessed confidential information, noting that access to privileged information could be presumed since the district court "could not actually inquire about the matter without thereby himself destroying the confidences." *Id.* at 1005. *Provenzano* does not support Defendant's argument. Here, the Court was able to elicit information about Phillips's former assignment without destroying any confidences. Based on the testimony presented at the June 17th hearing, we are satisfied that no confidential information was accessed by Phillips during his prior assignment, and thus, there was no risk that Phillips would compromise his duty of loyalty to Defendant.

This is not a case where an attorney was put in a precarious position to cross-examine a former client serving as a Government witness. In such cases, a conflict is clearly more apparent. The attorney may be limited in certain areas of questioning because those areas could reveal confidences learned from the prior representation. *See, e.g.*, *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999) (recognizing that "conflicts of interest arise whenever an attorney's

loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties") (internal quotation marks and citations omitted); *Provenzano*, 620 F.2d at 1005 (concluding that the disqualification of the defendant's attorney was proper because the attorney had previously represented the Government's main witness in a murder trial and possession of confidential information was presumed). Phillips was very briefly assigned to prosecute the co-defendant of Defendant's brother for a murder in which Defendant is not alleged to be involved in any way. Phillips was not in possession of any information, confidential or otherwise, and thus could not have felt constrained in his questioning of witnesses during the trial.[11]

Phillips's prior assignment to the Lassiter murder case also does not present a conflict under Rule 1.11. That Rule specifically addresses conflicts that arise when an attorney was or currently is employed for a governmental agency, such as a District Attorney's Office. The Rule provides that:

(a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
. . .
(2) shall not otherwise represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent to the representation.

Pa. R. Prof. Conduct 1.11(a)(2). The Rule explicitly requires the former client's consent only when the attorney "participated personally and substantially" in the matter assigned to him or her while serving in a public capacity. Thus, in order to find that Phillips violated the Rule, we must

---

[11] We also reject Defendant's argument that "the passage of time" or Phillips's "lack of memory can [not] cure [the] conflict of interest." (Def.'s Br. 5-6.) The cases that Defendant relies upon do not support her argument. (*See id.*) They have no application to the facts presented here. In any event, Defendant has not shown, nor could she show, that Phillips labored under a conflict of interest during his representation of her in this case.

15

conclude that his involvement with the Lassiter murder prosecution was personal and substantial. As set forth above, this was simply not the case.

In addition, Phillips has not violated Rule 1.9, which deals with an attorney's duties to former clients. Rule 1.9(a) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially similar matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Pa. R. Prof. Conduct 1.9(a). This Rule is intended to protect Phillips's former client—the Commonwealth of Pennsylvania—and not his current client—Defendant. In any event, we are satisfied that Phillips's was not in violation of this Rule. The Comments to the Rule shed some light on the scope of what constitutes a "matter" for purposes of finding whether representation is adverse. Comment 2 states that "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Pa. R. Prof. Conduct 1.9 Comment 2. As explained above, Phillips had virtually no involvement in the state court Lassiter murder prosecution.

Phillips's prior assignment while serving as an Assistant District Attorney and his representation of Defendant in the instant case have not violated any Pennsylvania Rule of Professional Conduct. Phillips provided competent and conflict-free representation to Defendant both prior to and during the trial. Defendant's request for a mistrial must be denied.

We reach the same result using a Sixth Amendment framework. Defendant fails to demonstrate how she was in any way prejudiced by the alleged conflict of interest. She has not pointed to any evidence that Phillips's ability to represent her was compromised in any way by his prior assignment. Such a failure is fatal to her claim that a mistrial is justified under the Sixth

16

Amendment.  *See United States v. Capozzi*, 204 F. App'x 996, 996-97 (2d Cir. 2006) (concluding that the district court did not err in denying the defendant a mistrial based on his attorney's conflict of interest because "conflict was not a reason why the trial lawyer chose, or did not choose, to pursue certain defense strategies or tactics").  At best, Phillips's brief assignment constituted a potential or hypothetical conflict that did not limit his ability to provide diligent representation to his client.  Such a potential conflict is not sufficient to warrant a mistrial in the absence of a showing of prejudice.  *See United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003) (concluding that a potential conflict is not sufficient to justify a mistrial, but that the defendant must instead point to specific instances in the record showing inconsistent and impaired interests caused by the attorney's representation).  *Cf. Zellner v. Rubacky*, 987 F. Supp. 406, 408 (E.D. Pa. 1997) (explaining that a potential conflict of interest is not sufficient to justify disqualification, and that only when "the potential claims are such that their existence affects the adequacy of representation" should the representation be disallowed).  Defendant's Sixth Amendment rights were not jeopardized.

        2.     *The "New Conflict"*

Finally, Defendant argues that Phillips labored under a conflict of interest when he filed an opposition brief to her Motion for Mistrial and thereby took a position adverse to hers. Defendant contends that Phillips violated both his duty of loyalty and Rule 1.7(a)(1) at the moment he formed the intent to oppose the motion, and failed to withdraw as her counsel.  Rule 1.7(a)(1) states that a lawyer shall refrain from representing a client "if the representation of one client will be directly adverse to another client."  Pa. R. Prof. Conduct 1.7(a)(1).  Defendant suggests that Phillips's conduct in contesting the Motion was directly adverse to his client,

Defendant. Defendant cites to no authority suggesting that Rule 1.7(a) is implicated when an attorney attempts to defend against attacks to his professional and ethical reputation.

In addition to the ethical obligations that he owed to his client, Phillips's also owed a duty of candor to this Court. *See* Pa. R. Prof. Conduct 3.3(a)(1). At the hearing, Phillips stated that he opposed the Motion because he felt that it was his responsibility to correct a factual misrepresentation, namely, that he had obtained confidential information about the Lassiter matter while serving as an Assistant District Attorney, when in fact he had not. We find that Phillips did not violate any ethical or professional rules. Moreover, Defendant has failed to demonstrate how she was prejudiced at trial as a result of the alleged new conflict, which arose after the trial concluded. Defendant's request for a mistrial must be denied. However, we recognize that, as a result of Defendant's request for a mistrial, the attorney-client relationship between Phillips and Defendant may have been damaged. As a result, we will appoint new counsel to represent Defendant, along with Ms. Whalen, for sentencing and appeal, if she makes such a request.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion for a Hearing and Findings Regarding Mr. Chris Phillips's Prior Employment and His Current Representation of Defendant Kidada Savage will be granted, and Defendant Kidada Savage's Motion for Mistrial will be denied.

An appropriate Order will follow.

**BY THE COURT:**

*/s/R. Barclay Surrick*
**U.S. District Judge**