**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
(Philadelphia)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

---

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO ALLOW TELEPHONE
AND IN-PERSON CONTACT WITH INVESTIGATORS AND MITIGATION
SPECIALISTS**

---

On February 7, 2022, Mr. Savage filed a motion requesting several modifications to his SAMs, similar to what this Court had previously ordered prior to his 2013 trial, so that his appointed attorneys could effectively investigate and prepare a motion pursuant to 28 U.S.C. § 2255 that has a looming statutory deadline. Doc. 1724. Some six weeks later, following a defense request for a status hearing on that motion, the government submitted a response in which it objects to any modification of the SAMs.

Many of the allegations and arguments advanced by the government are the same as those previously considered and rejected by the Court when it ordered the SAMs modification in 2012. The new arguments advanced in the government's Response are no better. This Court has the authority to effectuate its own appointment order and modify the SAMs to remove unreasonable and unnecessary restrictions that impede the defense, and it should do so in this case.

1

**I.     This Court is the proper venue to hear a request to modify SAMs to effectuate this Court's order of appointment and ensure counsel can effectively investigate and prepare Mr. Savage's 28 U.S.C. § 2255 motion.**

The government now insists that this Court has no authority to modify Mr. Savage's SAMs. Because Mr. Savage is a "sentenced prisoner" who is confined at the ADX facility in Florence, Colorado, the government's latest position is that his motion should be brought in a District Court in Colorado. *See* Doc. 1726, pg. 10-11.[1]

This Court, however, has already determined that it may modify the SAMs insofar as their restrictions affect Mr. Savage's counsel and investigators, and consequently the Court's "ability to manage these criminal proceedings." Doc. 162, pg. 13. Nothing relevant has changed since that decision. As noted by the government at the time of the Court's prior modification, Mr. Savage already was a "sentenced prisoner" and had been committed to the ADX facility in 2007 following his drug conspiracy conviction. Doc. 146, pg. 6. Moreover, Mr. Savage's current § 2255 proceeding is not a new and separate matter but a "continuation of [his] criminal case." *United States. v. Thomas*, 713 F.3d 165, 171 (3rd Cir. 2013). Just as the Court previously recognized that SAMs modifications could be considered when the "complaints implicate regulations that affect his ability to prepare his defense in this criminal action" (Doc. 359, pg. 6, fn. 7), the Court may now modify SAMs insofar as they place unreasonable burdens on the attorneys it already has appointed to investigate and prepare the § 2255 motion in the same criminal action. *See United States v. Mikhel*, 552 F.3d 961, 963 (9th Cir. 2009) (holding that a court, even in a post-conviction

---

[1] By contrast, in Mr. Savage's separate civil litigation, filed by different, pro bono counsel, the government has not claimed in its Motion to Dismiss that the District Court for the District of Columbia is an improper venue or that Mr. Savage's SAMs challenge must be filed in Colorado. *See* ECF 14 in *Savage v. United States Dept. of Justice*, 1:21-01057-CKK (D.D.C).

appellate context, has the "inherent power" to modify SAMs insofar as necessary to "regulate practice in a particular case.").

The government's suggestion that this Court is powerless to act because Mr. Savage has not yet filed his § 2255 motion is specious. *See* Doc. 1726, pg. 10. As a practical matter, it would do Mr. Savage no good to file a motion to remove impediments to the investigation and preparation of such a motion after the motion was already filed. The Supreme Court has appreciated this reality for nearly three decades, holding that a "post-conviction proceeding," for purposes of the statutes affording habeas petitioners the right to resources for effective representation, "is commenced by the filing of a death row defendant's motion requesting the appointment of counsel for his federal habeas corpus proceeding." *McFarland v. Scott*, 512 U.S. 849, 856-57 (1994). "[T]he right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition," *Id.* at 855. This Court, accordingly, has the power and responsibility to effectuate Mr. Savage's right to counsel by removing unreasonable obstacles unilaterally imposed by the government.

Nor can it be seriously argued that the District of Colorado (or any other district court) is better situated to hear Mr. Savage's motion than this Court. The motion pertains to an appointment order entered by this Court, in connection with § 2255 proceedings already underway in this Court, and pertains to the ongoing investigative needs in a complex capital case brought and tried in this same jurisdiction. Conversely, the District Court of Colorado's connection to the ADX prison is irrelevant because the restrictions at issue in the Motion are not imposed by that facility. This Court is the appropriate venue for this motion.

//

//

//

3

**II.     The ongoing litigation in the District of Columbia is irrelevant to these proceedings.**

The government now claims that Mr. Savage's motion should not be heard because his ongoing civil lawsuit is both "duplicative" of the motion and an "end run" in the event that civil lawsuit is dismissed. Doc. 1726, pg. 11. These complaints are meritless.

Mr. Savage's § 2255 counsel do not represent Mr. Savage in the D.C. civil litigation, which was filed by separate pro bono counsel before they were appointed to this case.[2] A glance at the civil complaint reveals that the issues raised and relief sought in that matter are entirely separate from what is sought in the instant motion. In the civil case, Mr. Savage's pro bono attorneys allege the SAMs prohibitions on his personal contacts violate his constitutional rights of free speech and association, and specifically seek to add a number of persons to his list of approved contacts. *See Savage v. United States Dept. of Justice*, 1:21-01057-CKK (D.D.C), Doc. 1, pgs. 21-22. The lawsuit does not address restrictions on his counsel or investigators in connection with his § 2255 proceedings. By the same token, the instant motion has nothing to do with Mr. Savage's personal contact list or his conditions of confinement.

The cases cited by the government, then, which concern a court's ability to dismiss "identical complaints" filed in different jurisdictions or lawsuits involving the "same claims" are inapposite. Doc. 1726, pgs. 11, 12. Mr. Savage has every right to seek redress for his conditions of confinement, which involve extraordinary and virtually unprecedented SAMs-based limitations on his contact with the outside world. His choice to do so does not obviate his equally important right to receive effective representation in the § 2255 proceeding commenced in this Court.

---

[2] Nor does it appear that Attorney Troyer or anyone from the U.S. Attorney's Office for the Eastern District of Pennsylvania is litigating the civil matter; instead, the government is represented by a separate team of attorneys from the District of Columbia.

**III.     Mr. Savage does not need to "exhaust" his claims via the BOP's grievance procedures.**

The government continues to argue that the Court cannot hear Mr. Savage's claims because he has not exhausted his administrative remedies in the BOP, as purportedly required by the Prison Litigation Reform Act ("PLRA"). Doc.1726, pg. 12. This Court has already considered and rejected this argument.

In 2012, this Court determined, consistent with the weight of authority, that Mr. Savage's pre-trial motions to alleviate the SAMs restrictions affecting his access to his legal team in his criminal case were not "actions" within the meaning of the PLRA, and thus not subject to the exhaustion requirement. Doc. 162, pgs. 5-10. *See also* Doc. 359, pg. 6, fn. 7 ("Because Defendant's complaints implicate regulations that affect his ability to prepare his defense in this criminal action, he need not have exhausted his administrative remedies prior to raising these concerns to the Court."). Not only does the government's Response gloss over this Court's ruling concerning the PLRA, it presents no argument why the result should be different now with respect to the § 2255 proceedings commenced in this Court, which are a continuation of those criminal proceedings, and where the need for effective investigation and communication is every bit as great. *See McFarland v. Scott*, 512 U.S. at 855 ("The services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified.").

Developments since the Court's 2012 decision modifying the SAMs have demonstrated that exhaustion via BOP remedies is not only unnecessary in this context, but that such remedies are not "available" to Mr. Savage at all within the meaning of the PLRA. The government's own BOP expert in the penalty phase of Mr. Savage's trial acknowledged that only the Attorney General, and not the BOP, can lift the SAMs restrictions. *See* TT 5/29/13, pg. 65 ("Q: The Bureau

marches to the bear of the AG's drum, correct? A: Correct."). *See also Mohammed v. Holder*, 47 F. Supp. 3d. 1236, 1241 (D. Col. 2014) (federal district court finding after hearing that the BOP's internal proceedings were not relevant to an administrative review of a SAMs decision because "it was not the BOP that made the decisions to implement the SAMs that are challenged.") Further, under the Supreme Court's now-governing precedent, the BOP's administrative procedures are not "capable of use" to remedy SAMs issues and are thus not "available" to Mr. Savage for purposes of the PLRA, even if he technically retains the ability to pursue them. *Ross v. Blake*, 578 U.S. 632, 643 (2016).[3] Requiring Mr. Savage to pursue administrative remedies through three levels of BOP administrative review, none of which possess the power to modify his SAMs, would consign him to a "dead end." *Ross v. Blake*, 578 U.S. at 643. And the time spent in doing so would effectively make it impossible for him to receive timely relief before his statutory deadline this fall. This motion is the only means by which Mr. Savage can obtain swift and effective relief.

**IV.    Prior bad acts do not justify restricting current counsel's ability to effectively investigate and prepare Mr. Savage's § 2255 Motion.**

The offenses underlying Mr. Savage's convictions are undoubtedly serious. But these acts, of which the Court was aware when it first modified the SAMs in 2012, are now some two decades old. They certainly do not justify the continued imposition of restrictions on Mr. Savage's legal team that this Court has already determined to be irrational. *See* Doc. 359, pg. 15.

---

[3] The government also asserts Mr. Savage, apparently apart from BOP administrative remedies, "has the right to give input every year as to his SAMs restrictions, and yet, every year he has declined to do so." Doc. 1726, pg. 17. But that was precisely what Mr. Savage's § 2255 counsel sought to do when they raised their concerns with the SAMs legal restrictions with Mr. Troyer in 2021. *See* Doc. 1724 pgs. 8-11. As noted, the defense was initially told these concerns would be forwarded to the OEO, and later informed via the 2022 SAMs that these concerns were not considered because they were not raised through the BOP administrative process. Doc. 1724, pgs. 12-13.

The government now seeks to obfuscate the matter by reciting various instances of bad behavior allegedly committed over the past 20 years. *See* Doc. 1726, pgs. 3-10. Since the government has had Mr. Savage under near-constant monitoring during this period, it should have no problem documenting and relating any behavior relevant to defending its restrictions on his legal team. Yet the government's list is padded with any number of irrelevant and outdated complaints, ranging from bad language Mr. Savage purportedly directed to prosecutors during trial, to the conduct of his co-defendants and their representatives. The government makes no effort to link any of these alleged acts to the SAMs restrictions at issue in this motion.

The government continues to add insinuation to its claims about Mr. Savage's communications via the legal phone line in FDC Philadelphia in 2012, claiming that he "corrupted" a guard to speak with "criminal associates." Doc. 1726, pg. 7. According to the testimony at trial, however, the problem was that the FDC was "really was not capable of handling a SAMs inmate," and evidently failed to verify that his legal calls went to his legal team, as specifically required by the SAMs. *See* TT 5/21/13, pgs. 146, 196 (Testimony of Kevin Lewis). *See also* Doc. 137 (2009 DOJ Memorandum Extending SAMs), Ex. D, pg. 5. And there was no evidence that these calls, several of which went to his mother who was dying of cancer, were made for any illegal purpose. TT 5/21/13, pgs.180-193. Nor does the government allege that this phone misuse was in any way enabled by the SAMs modifications this Court had previously ordered or that any such issues have arisen over the past nine years at the ADX facility, which has proved more than capable of enforcing the SAMs restrictions.

To the contrary, the government recently conceded that Mr. Savage has been "compliant" with the SAMs at the ADX facility since 2015. *See* 2022 SAMs (filed under seal), pg. 5. Yet, in its Response, the government now lists a total of three incidents of bad behavior at ADX allegedly

involving Mr. Savage since his sentence in 2013. Doc. 1726, pgs. 7-8. One of these incidents—sourced to a New York tabloid—apparently is based on a rambling letter written by a mentally ill terrorist and was not confirmed by a BOP investigation. 2022 SAMs, pg. 5. The other two are entirely unsubstantiated incidents where Mr. Savage supposedly directed abusive language towards ADX employees.[4] Notwithstanding that these matters are disputed, they are irrelevant to the legal restrictions at issue in the instant motion. Whether or not Mr. Savage has been a model prisoner, he is entitled to a legal team that can effectively investigate and prepare his § 2255 motion.

**V.      The current SAMs restrictions unreasonably inhibit Mr. Savage's legal team.**

The government suggests that Mr. Savage's legal team is not impaired by the SAMs restrictions because he has a "veritable army" of lawyers at his disposal. Doc. 1726, pg. 16.

First, this complaint is misleading. The thirty-five persons cited in the Response (Doc. 1726, pg. 14) apparently includes every person on every prior legal team who has ever been cleared pursuant to any version of the SAMs.[5] Most of these persons have nothing to do with, and are unable to have anything to do with, the instant § 2255 proceedings. *See* Doc. 1718-1, pg. 3 (motion to withdraw filed by Mr. Savage's appellate counsel, noting they are unable to represent him in § 2255 proceedings where their own effectiveness might be at issue). Mr. Savage's § 2255 lawyers

---

[4] Notably, although the more recent of these two incidents purportedly happened in July of 2021, the government mentions it nowhere in the 2022 SAMs memo, which was specifically written to justify the continuation of all Mr. Savage's SAMs restrictions.

[5] Members of Mr. Savage's defense teams are required to provide their names and personal information to the government, per the SAMs. The purpose of this disclosure is to facilitate the initial clearance of those individuals for SAMs purposes, not to perpetuate investigation into their character in case-related litigation well after they have been cleared, *see* Doc. 1726, pg. 18, much less to springboard complaints about the purported size, resources, or tactics of the defense team in such litigation.

cannot as a matter of law expect these other lawyers to supervise and accompany their investigators on visits with their client when a large part of undersigned counsel's duties is to undertake a review of prior counsel's performance.[6]

Second, the government's complaints about the size of Mr. Savage's legal team are unseemly. The government is seeking to kill Mr. Savage. An effective defense in this exceedingly complex matter requires a legal team of experienced lawyers and professionals. If the government were required to provide the defense with a parallel list of all the prosecutors, paralegals, FBI agents, and other professionals who have been involved in its 20-year effort to execute Mr. Savage, it would undoubtedly include far more than 35 names. The prosecution's resources, time and experience with this case dwarf what is available to Mr. Savage's newly appointed § 2255 team. Fundamentally, though, the government has no standing to comment on the composition or coordination of Mr. Savage's legal team.

As argued and not rebutted by the government, Mr. Savage's counsel currently are immersed in numerous tasks, not the least of which is the collection, organization, and review of an enormous record consisting not only of the trial record but the extensive files of prior counsel, whose effectiveness will be central to the issues raised in the § 2255 motion. The requirement that an attorney travel cross-country to accompany an investigator on *every* visit with Mr. Savage (and be physically present with an investigator for every phone call) takes time from these essential tasks and imposes a "significant burden" on counsel, no matter how large the legal team. *Mikhel,*

---

[6] Attorney Madeline Cohen, the Colorado-based attorney volunteered by the government in its Response (Doc. 1726, pg. 17) to supervise § 2255 legal visits, is a member of the appellate team and is ethically unable to travel with investigators or otherwise participate in a § 2255 investigation.

552 F.3d at 964. The government's cited authority, by contrast, are district court decisions in New York non-capital cases where the defendant was incarcerated in the same city as the lawyers and the Court. *United States. v. Kassir*, 2008 WL 2695307 at *4 (S.D.N.Y. 2008)[7]; *United States v. Hashmi*, 621 F. Supp 2d 76 (S.D.N.Y. 2008); *compare* Doc. 1726, pg. 17 (government acknowledging that "many of [Mr. Savage's] attorneys are based far from Colorado"). As this Court has already determined in the pre-trial context, (when Mr. Savage was incarcerated much closer to his lawyers than he is now), the investigator restrictions are an unnecessary and significant burden with no rational justification. Doc. 359, pg. 14 (citing *Mikhel*).

**VI.    There continues to be no rational basis for the SAMs limitations on investigator communications with and concerning Mr. Savage.**

Insofar as its Response addresses the merits of the requested SAMs modifications, the government largely repeats its 2012 argument, in which it casts general, unsubstantiated aspersions on defense investigators, and suggests that these professionals will pass along secret messages from Mr. Savage to other persons in his criminal organization. Doc. 1726, pgs. 17-19. The Court has already considered and rejected this argument, finding no reason to believe an investigator is more likely to be "duped" by Mr. Savage than an attorney. Doc. 359, pg. 15. This logic should apply equally to the restrictions applied to in-person visit, phone contacts, and third-party communications challenged in this Motion.

The government's attempt to resurrect its losing argument should be unavailing for several reasons. First, ten years have now passed. Mr. Savage's criminal organization, per the

---

[7] With respect to Mr. Savage's other pending motion concerning the sealing of his SAMs documents (*see* Doc. 1725, to which the government has yet to respond), it might also be noted that the district court in *Kassir* prints the defendant's SAMs restrictions in full within the text of its decision, which is available on Westlaw. *See id.,* 2008 WL 2695307 at *6-22.

government's own description, no longer exists. *See* 2022 SAMs, pg. 2 (stating the "Kaboni Savage Organization" operated between 1997-2010). Second, the government does not allege that the Court's prior modification allowing investigators to meet directly with Mr. Savage led to any problems whatsoever. Third, despite being provided names and identifying information for the three specific professionals who would be affected by the modifications, and despite the government's evident background research on those persons (*see* Doc. 1726, pg. 18), the government does not identify a single security-related concern with any of the three professionals.

The government introduces a straw man by asserting that Mr. Savage has no constitutional right to meet with his investigators alone. Doc. 1726, pg. 17. Regardless of whether such a free-standing right exists, the relevant question, under the *Turner v. Safely* 482 U.S. 78 (1987) and *Jones v. Brown* 461 F.3d 353 (3rd Cir. 2006) standard previously applied by this Court, is whether the government's restrictions are reasonable. Doc. 359, pg. 7. As this Court has already noted, the government's restrictions on investigators fail the first part of the inquiry because they lack even a "rational relationship" to a "legitimate penological concern." Doc. 359, pg. 17. As such, the Court need not even inquire into the 4-part *Turner/Jones* balancing test, which the government's unreasonable restrictions could not meet anyway. Doc. 1724, pgs. 23-24.

Finally, the government blanketly asserts that investigation is less important now than in the trial context because "[t]he preparation of a 28 U.S.C. § 2255 has more to do with the record in the case than with interviewing witnesses and the defendant." Doc. 1726, pg. 20. Nothing could be farther from the truth. In fact, record-based claims – that is, claims that were or could have been raised on direct appeal – are generally barred in collateral § 2255 proceedings. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").

11

Effective representation in § 2255 proceedings accordingly demands the development of claims outside the record. As the Supreme Court has recognized, development of such claims requires investigators and investigation. *See, e.g., Martinez v. Ryan*, 566 U.S. 1 at 11 (2012) ("Claims of ineffective assistance at trial often require investigative work…"); *McFarland v. Scott*, 512 U.S. at 855 ("The services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified."); *see also Mikhel,* 552 F.3d at 964 (recognizing the importance of investigators even in a direct appeal context). Just as it has no basis to challenge the composition and coordination of the § 2255 team, the government need not offer its unresearched opinion on what effective habeas representation entails.

**VII.    The SAMs can be modified to permit 3-way calls.**

The SAMs, as interpreted by both the U.S. Attorney's office and ADX, specifically prohibit Mr. Savage from participating 3-way calls from the prison, even if all participating persons are members of his legal team and declare their presence before the start of the call. The government asserts the request to modify this SAMs prohibition is improper because it violates a national BOP policy that purportedly prohibits all three-way calls involving inmates, whether or not they are subject to SAMs restrictions. Doc. 1726, pg. 20.

If such a firm BOP policy really did exist, that would beg the question of why a specific SAMs prohibition was necessary at all. Mr. Savage's § 2255 counsel all have dealt with the BOP in other contexts, and are not aware of any such policy, at least insofar as it pertains to pre-arranged, verified calls involving prisoners and members of their legal teams. Indeed, at least one commonly exercised exception is evident in this case—the government routinely monitors Mr. Savage's personal calls by having its own agent(s) on another (third) line.

12

The instant request, in any event, is to modify the SAMs, which the BOP has specifically cited to counsel as the basis for the call prohibition. Whether or not some independent BOP policy would also prevent 3-way calls under these circumstances is, at the very least, a matter in dispute, and should not prevent the Court from entering a proper and necessary modification of the SAMs.

<b>CONCLUSION</b>

The SAMs restrictions at issue in this Motion and Reply are just as unreasonable as those previously modified by this Court, and the need for modification to allow the effective investigation of Mr. Savage's ongoing criminal case is just as great, if not greater given the quickly expiring statute of limitations period. This Court should grant the motion, or at least schedule a hearing on the matter.

Respectfully submitted,

*/s/ Ryan Norwood*
Ryan Norwood
NH Bar 15604

*/s/ Kathryn Bailey*
Kathryn Bailey
PA ID 308242

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
kara_bailey@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*/s/ Ryan Norwood*

Ryan Norwood
NH Bar 15604
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
(412) 644-6565

ATTORNEY FOR KABONI SAVAGE

1