**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
(Philadelphia)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MOTION FOR EXCULPATORY AND IMPEACHMENT INFORMATION**

---

Kaboni Savage, a federal prisoner under sentence of death, through undersigned counsel, and pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, respectfully moves this Court to order disclosure of exculpatory and impeachment information from the Government pursuant to its continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*. 405 U.S. 150 (1972).  The requested information is essential to guarantee Mr. Savage a full and fair opportunity to raise any and all cognizable claims under 28 U.S.C. § 2255 concerning his conviction and sentence.  The grounds for this request are set forth below.

I.      **The Government's Disclosure Obligations**

Disclosure of exculpatory and impeachment information is part of the constitutional guarantee of a fair trial.  *Brady*, 373 U.S. at 87; *Giglio* 405 U.S. at 154.  The law requires the disclosure of such information when it is "material" to guilt or punishment.  *Brady*, 373 U.S. at

1

87; *Giglio* 405 U.S. at 154.[1]  Because *Brady* and *Giglio* impose constitutional obligations on the prosecution, *Brady* and *Giglio* material must be disclosed regardless of whether the defendant makes an explicit request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Recognizing that it is sometimes difficult to assess the materiality of evidence, the Supreme Court has counseled that prosecutors should err on the side of disclosure. *Kyles*, 514 U.S. at 439. *See also United States v. Agurs*, 427 U.S. 97, 108 (1976) ("The prudent prosecutor will resolve doubtful questions in favor of disclosure."). Accordingly, the Government has an affirmative duty to search for, learn of, and disclose exculpatory and impeachment information in the possession of the members of the prosecution team, which includes federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant. *Kyles*, 514 U.S. at 437-38. Where an investigation involves multiple prosecutorial and/or law enforcement offices, the duty to disclose extends to exculpatory and impeachment information in their collective possession. *United States v. Risha*, 445 F.3d 298 (3rd Cir. 2006).

---

[1] Withheld exculpatory and impeachment information requires reversal on appeal or post-conviction if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). To satisfy the "reasonable probability standard," there must be "a probability sufficient to undermine confidence in the outcome." *Id*. A defendant need not show that an acquittal would have necessarily resulted with the disclosure of the withheld evidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Significantly, the materiality of the suppressed evidence must be considered collectively, rather than item by item. *Id*. at 435-36 ("One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."). For this reason, there is no minimum threshold requirement for the *disclosure* of favorable or impeaching evidence, despite the minimum threshold required for reversal based on a *Brady* violation.

Consistent with these constitutional obligations, the Department of Justice's United States Attorney's Manual ("USAM") requires prosecutors to "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." USAM § 9-5001 (B)(1). Further responding to several high-profile cases involving *Brady* violations and related prosecutorial misconduct where courts sanctioned prosecutors and/or dismissed cases altogether, [2] the Department of Justice issued three memos on January 4, 2010, through then-Deputy Attorney General David Ogden. The Ogden memos included "Guidance for Prosecutors Regarding Criminal Discovery" ("Guidance Memo") and related training initiatives that outlined "a methodical approach to consideration of discovery obligations that prosecutors should follow in every case to avoid lapses that can result in consequences adverse to the Department's pursuit of Justice." [3] Concurrent with issuance of the Guidance Memo, the Deputy Attorney General directed all United States Attorney's Offices to develop a discovery policy with which prosecutors in each respective office must comply, and that reflects circuit and district court precedent and local rules and practices.

On October 15, 2010, the United States Attorney's Office for the Eastern District of Pennsylvania set forth its criminal discovery policy in a memorandum issued pursuant to the Deputy Attorney General's directive. *See* October 15, 2010, Memorandum from U.S. Attorney Zane David

---

[2] *See, e.g.*, Special Counsel Report to Hon. Emmet G. Sullivan of Investigation Conducted Pursuant to Court's Order, April 7, 2009 (documenting Government's failure to comply with *Brady* and *Giglio* obligations in prosecution of Senator Ted Stevens) (available at https://s3.amazonaws.com/s3.documentcloud.org/documents/325801/court-report-on-stevens-ethics-case.pdf (last visited 11/10/22)).

[3] Available at: http://www.justice.gov/dag/memorandum-department-prosecutors (last visited 11/10/2022).

Memeger (hereinafter, "Memeger memo").[4] The memo sets forth a "preferred process" that "will be appropriate in virtually every case our office brings."  Memeger memo at p. 1-2.  The memo was in effect throughout Mr. Savage's trial and pretrial period and appears to represent the current policy of the U.S. Attorney's Office.

The memo states that "[w]e should take a broad view of exculpatory material" even "if its materiality is dubious."  Memeger memo at p. 3.  Citing USAM § 9-5001, the memo further states that prosecutors should disclose evidence "inconsistent" with any element of a charged crime, even if the prosecutor doesn't believe it would make a difference between conviction and acquittal.  *Id*. at p. 3-4.  Furthermore, the memo acknowledges USAM § 9-5001 "makes clear" that disclosure is not limited to evidence the prosecutor believes is admissible.  *Id*. at p. 4.  The memorandum notes it is "critical to maintain a record of what is produced to defense counsel." *Id*. at p. 5. Discovery letters should contain an index, and the memorandum suggests prosecutors keep a second electronic or paper copy of the disclosed materials. *Id*.

The memo also addresses several categories of materials that must be provided:

Agent rough notes:  *Brady* and *Giglio* material in rough notes must be produced even if it is not in the final report, and that such notes are *Giglio* material if there are "important inconsistencies" between them and the report.  Memeger memo at p. 4.  Notes for "key witnesses" should be reviewed by the AUSA or the recording agent.

Disclosures by witnesses during trial preparation:  Information provided by witnesses during their trial preparation must be disclosed if inconsistent with earlier statements or if they provide

---

[4]Available at:
https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/pae_discovery_policy.pdf (last visited 11/10/2022).

otherwise unknown information about criminal activity or impeachment material. Memeger memo at p. 4-5.

Agent and officer personnel files: federal agents must inform the prosecutor of any "potential impeachment information" before providing a sworn statement or testimony.  Memeger memo at p. 5 (citing USAM § 9-5001).  With respect to local police departments, the AUSA is responsible for obtaining a list of Internal Affairs investigations for each police officer witness to determine whether there is material that must be disclosed.  *Id*. at p. 5-6.

"The duty to disclose is ongoing."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987).  "[A]fter a conviction the prosecutor . . . is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction."   *Imbler v.Pachtman*, 424 U.S. 409, 427 n.25 (1976) (citing ABA CODE OF PROFESSIONAL RESPONSIBILITY § EC 7-13 (1969); ABA STANDARDS FOR CRIMINAL JUSTICE, PROSECUTION AND DEFENSE FUNCTION § 3.11 (1971)); *see also Banks v. Dretke*, 540 U.S. 668 (2004).

### II.    Request for Exculpatory and Impeachment Information

Consistent with the Government's continuing constitutional obligation to disclose exculpatory and impeachment information, the undersigned respectfully requests that the Government conduct a review of the entire law enforcement file and the files of related cases, including that of any federal, state, or local agency that participated in the investigation and prosecution(s) of Kaboni Savage, and disclose any exculpatory or impeachment information, including the following:

1. Any information that is inconsistent with any element of any crime of which Mr. Savage was convicted, including but not limited to mens rea.

2. Any information that establishes a recognized affirmative defense to any crime of which Mr. Savage was convicted.

3. Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any element of any crime charged.

4. Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any statutory intent factor under 18 U.S.C. § 3591(a)(2)(A)-(D).

5. Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any statutory or non-statutory aggravating factors, including but not limited to the issue of future dangerousness.

6. Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to rebut any statutory or non-statutory mitigating factors.

7. Any information that tends to establish a statutory or non-statutory mitigating factor, including but not limited to any of the mitigating factors actually presented by the defense at trial.

8. Any information that would tend to prove or reveal a bias or motive of any Government witness who testified at the trial or before the Grand Jury.

9. Any information of any arrests, pending cases, and criminal convictions in this or any jurisdiction (state or federal) of any witness whom the Government called at trial or before the Grand Jury.

10. Any information of any suspected wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal) of any witness whom the Government called at trial or before the Grand Jury.

11. Any potential *Giglio* information relating to non-law enforcement trial and/or Grand Jury witnesses and Fed. R. Evid. 806 declarants, including but not limited to:
    a. Prior inconsistent statements, including inconsistent attorney proffers;
    b. Statements or reports reflecting witness statement variations, including statements made during trial preparation meetings with witnesses;
    c. Benefits provided to witnesses, including:
        i. Dropped or reduced charges;
        ii. Immunity;
        iii. Expectations of downward departures or motions for reductions of sentence;
        iv. Assistance in a federal, state, or local criminal proceeding;
        v. Considerations regarding forfeiture of assets;
        vi. Stays of deportation or other immigration status considerations;
        vii. S-Visas;
        viii. Monetary benefits;
        ix. Non-prosecution agreements;

      x. Letters to other law enforcement officials (e.g., state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf;

      xi. Relocation assistance;

      xii. Consideration or benefits to culpable or at risk third-parties

d. Other known conditions that could affect the witness's bias such as:

      i. Animosity toward Mr. Savage;

      ii. Animosity toward a group of which Mr. Savage is a member or with which he is affiliated;

      iii. Relationship with the victims;

      iv. Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor)

e. Prior acts under Fed. R. Evid. 608;

f. Prior convictions under Fed. R. Evid. 609;

g. Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events.

12. Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to any witness that the Government called at trial, or any witness called before a federal grand jury, by any agent or employee of the Government or by any state law enforcement or prosecutorial agency working or cooperating with the Government.

13. A full and complete statement of all promises, considerations, rewards, or inducements made by the Government, its prosecutors, agents, or agencies to induce or encourage any individual's trial or grand jury testimony, cooperation, or provision of information, wherein the Government has agreed, either with the individual, their counsel, agent or representative, to any of the following:

a. not to prosecute said person for any crime or crimes;

b. not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;

c. to provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

d. to recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;

e. to comply with any prior agreements although said witness may have previously violated a part of their agreement;

f. to recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

g. to recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

h. to recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

i. to seal any plea or plea agreement of that person;

    j. to provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person.

14. Any payments that were made to any witnesses.

15. Any potential *Giglio* information relating to law enforcement trial and/or grand jury witnesses.

16. Any exculpatory or impeachment information obtained from witnesses who testified at the trial and/or Grand Jury.

17. Any exculpatory or impeachment information obtained from non-testifying witnesses.

18. Any exculpatory or impeachment information obtained from any confidential informant, confidential witness, confidential human source and/or confidential source.

19. Any exculpatory or impeachment information contained in case-related communications that occurred: (a) among prosecutors and/or federal, state, or local agents/officers; (b) between prosecutors and/or federal, state, or local agents/officers and witnesses and/or victims; and/or (c) between victim-witness coordinators and witnesses and/or victims, including but not limited to:
    a. communications concerning the reasons a witness would not be called to testify at the trial;
    b. communications concerning any discussion not to conduct further interviews with any witnesses.

20. Any exculpatory or impeachment information contained in communications related to Mr. Savage's Special Administrative Measures (SAMs) including but not limited to communications amongst (a) prosecutors in the U.S. Attorney's Office; (b) prosecutors or officials within the Office of Enforcement Operations or elsewhere in the Department of Justice; (c) officials within the Bureau of Prisons (BOP) and/or (d) federal agents, particularly those relevant to the following subjects:
    a. Mr. Savage's potential for future dangerousness;
    b. The level of deference afforded to recommendations made by the local U.S. Attorney's Office and/or the case agent by the Department of Justice;
    c. The likelihood that Mr. Savage's SAMs restrictions would be reduced or eliminated at any point in the future

21. Any exculpatory or impeachment information concerning any forensic tests, examinations, evaluations, reports, and/or conclusions drawn from them that were presented at trial, including but not limited to any information that tends to show that the testing procedures and analysis used in this case have ever been performed inadequately or imperfectly in any other case.

22. Any exculpatory or impeachment information concerning decisions made by the prosecution and/or federal, state, or local agents/officers not to conduct particular forensic

tests, examinations, or evaluations, including but not limited to the decision not to conduct further forensic/chemical testing.

23. Any exculpatory or impeachment information in the possession of the Bureau of Prisons (BOP) relevant to Mr. Savage's potential for future dangerousness, including but not limited to information regarding a BOP internal investigation of Mr. Savage's alleged possession of separatee data on March 18, 2011.

24. Any exculpatory or impeachment information obtained from third parties.

25. Any exculpatory or impeachment information known to any federal, state, or local agency that assisted in the investigation and/or prosecution(s) of Kaboni Savage.

## CONCLUSION

Mr. Savage respectfully requests that this Honorable Court grant the foregoing Motion and order the Government to disclose any and all exculpatory and impeachment information related to the investigation and prosecution of Kaboni Savage in this case.

Respectfully submitted,

*(s)Ryan Norwood*

Ryan Norwood
NH Bar 15604

*(s) Kathryn Bailey*

Kathryn Bailey
PA ID 308242

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
kara_bailey@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

9

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*(s) Ryan Norwood*

Ryan Norwood
NH Bar 15604
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
(412) 644-6565

ATTORNEY FOR KABONI SAVAGE