## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 07-550** |
| **v.** | : | |
| **KABONI SAVAGE** | : | |
| | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT KABONI SAVAGE'S MOTION FOR EXCULPATORY AND IMPEACHMENT INFORMATION

The United States of America, by and through its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and David E. Troyer, Assistant U.S. Attorney for the district, files this response to the defendant Kaboni Savage's "motion for exculpatory and impeachment information" (Dk. #1735), in furtherance of which response it sets forth the following:

Savage has filed a pleading styled "motion for exculpatory and impeachment information," which mostly seeks an order compelling the government to comply with its Constitutional obligations, including its continuing obligations to disclose exculpatory and materially favorable evidence, as well as to disclose any impeachment production of materials he claims are exculpatory or materially favorable to him. The government, which is well aware of its obligations, has complied with its obligations, and will continue to do so. Thus, Savage's motion should be denied as moot.

Defendant Kaboni Savage is on federal death row, having been convicted and sentenced to death in 2013 for twelve murders he committed in this case. The Third Circuit Court of Appeals affirmed his convictions and sentences, and denied his request for an en banc

rehearing. Savage's subsequent petition for writ of certiorari was denied by the Supreme Court. Savage has not yet filed a motion for post-conviction relief under 28 U.S.C. § 2255.

Savage spends the majority of his 8 ½ page motion reminding the government of its statutory and Constitutional obligations, as well as recounting both Department of Justice discovery policies and those of the U.S. Attorney's Office for the Eastern District of Pennsylvania. The undersigned, who was lead counsel for the government during the investigation, trial, and appeal of this matter, is well aware of the government's obligations, and of the policies of his Office and of the Department. The undersigned has served as a prosecutor for 40 years, and has served his current office for the last eleven years as both the Discovery Coordinator and Giglio Requesting Official. As such, the undersigned trains all Assistant U.S. Attorneys in his Office regarding discovery, and participates in discovery training for the Department of Justice. Indeed, the very office policies Savage cites have either been written, edited, and/or updated by undersigned counsel.

The gathering, compilation, production, and timing of disclosures for discovery, *Brady, Giglio*, and *Jencks* materials in this case was a sizable task – one taken very seriously by government counsel. It was also a subject that was frequently discussed and litigated, and closely monitored by this Court, throughout the proceedings. In fulfilling its obligations, government counsel undertook comprehensive file reviews of all FBI and Philadelphia Police homicide files related to this case. Every document, note, or item that could arguably be considered to comprise either discovery, *Brady* material*, Giglio* material, or *Jencks* material, was disclosed to counsel. Those file reviews included confidential informant files. In virtually every occasion in which an informant referenced a potential witness, that document was redacted and disclosed, even in cases where the information had no apparent relevance to the witness' testimony, as well as cases where

general statements were made concerning facts that are not in dispute (e.g., that a person is a drug dealer).

As to the murder cases, all of which began as investigations by local police authorities, the government retrieved, scanned, and disclosed every slip of paper contained in the files. Of course, these items were redacted to exclude information that cannot legally be disclosed (e.g., Social Security numbers), as well as personal contact information (e.g., specific addresses and telephone numbers of civilians) that would endanger people. The government, in an effort to be thorough, also met with Philadelphia Police supervisors, to conduct a comprehensive review of each investigation, to determine what other materials might exist that were not in the files. After that review, more items were obtained, all of which were disclosed to defense counsel in supplemental discovery. Likewise, information was sought and obtained from the Philadelphia District Attorney's Office, which information was also disclosed.

*Jencks* material, the early disclosure of which was fervently sought by defense counsel, was provided long before trial. Many items, including all *Jencks* material disclosed in the 2005 trial, were disclosed almost immediately after indictment; thus, defense counsel had those for years prior to trial. Many other items constituting *Jencks* material were also disclosed at an early date. With the Court's concurrence, the government delayed production of the remaining *Jencks* material, mostly comprised of reports of interviews and grand jury testimony, until July and September of 2012, to avoid exposing witnesses to potential danger. Defense counsel thus had all of this information months before any evidence was presented at trial, which began in February 2013.

It is particularly odd that Savage now makes a request for *Giglio* material. *Giglio* material is impeachment material. As such, it applies only to witnesses called by the

government to testify. It was provided well before trial in this case, as to all testifying witnesses, as well as to several people whom the government anticipated calling, but ultimately did not call, to testify. Currently, there is no hearing or trial pending in this matter; indeed, Savage has not yet even filed a petition seeking such a hearing. Thus, it is at this point presumptuous of Savage to assume that a hearing will occur, much less to speculate as to what witnesses, if any, the government may then intend to call at such a hearing. *If* there is a hearing, and *if* the government calls witnesses at that hearing, then the government will supply *Giglio* material, *if* any exists, and *if* that material has not already been disclosed.

Discussion

The government is required to disclose evidence that is favorable to the accused and material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Impeachment evidence, as to testifying witnesses, must also be disclosed. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The government acknowledges that exculpatory (*Brady*) material retains its character as such, and is subject to disclosure, regardless of the form or source of that material, be it from a testifying or non-testifying witness. However, the same cannot be said of impeachment (*Giglio*) material which, it is well established, applies only to testifying witnesses, as one cannot impeach someone whose testimony is not offered. *United States v. Rodriguez*, 489 Fed. App'x 528 (3rd Cir. 2012); *United States v. Calderon*, 2016 WL 3854228 (1st Cir. July 15, 2016); *United States v. MacLloyd*, 2013 WL 1607367 (6th Cir. 2013) (unpub.); *United States v. Johnson*, 581 F.3d 320, 331 (6th Cir. 2009); *United States v. Miller*, 2016 WL 1408102 at *4 (D. N.J. Apr. 11, 2016); *United States v. Mayers*, 2017 WL 823292 at *2 (W.D. Wash. Mar. 2, 2017); *United States v. Thomas*, 2016 WL 6948444 at *4 (C.D. Ill. Nov. 28, 2016); *United States v. Shayota*, 2016 WL 6093237 at *2, 4-7 (N.D. Cal. Oct. 19, 2016); *United States v. Moran*, 2016

4

WL 554818 (D. Minn. Feb. 11, 2016). Savage improperly lumps together these two distinct concepts of *Brady* and *Giglio* material, in requesting "(a)ny exculpatory or impeachment material obtained from non-testifying witnesses." Motion, p. 8, item 17. Simply said, there is no impeachment material for one who does not testify, and whose testimony is otherwise not offered.

Before a *Brady* violation may occur, the evidence in question must also constitute evidence "material either to guilt or to punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985), quoting *Brady*, 373 U.S. at 87. The test for materiality is whether there is a reasonable probability that the evidence in question would affect the outcome of the trial. *See Kyles v. Whitley*, 514 U.S. 419, 433-37 (1995) (framing the inquiry as whether "there is a reasonable probability that if this evidence, viewed collectively, had been turned over to the defense, the outcome would have been different."). The "mere possibility" that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

It remains that "(t)here is no general constitutional right to discovery and *Brady* did not create one. . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), *quoting Wardius v. Oregon*, 412 U.S. 470, 474 (1973). Moreover, *Brady* "is a disclosure rule not a discovery rule." *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996). A defendant cannot simply request "discovery material under *Brady* 'without even a hint that impeaching material was contained therein.'" *United States v. Romo*, 914 F.2d 889, 898-99 (7th Cir. 1990).

Defendant Savage makes only the barest representation that the materials he requests are "exculpatory." In the absence of a showing by the defendant that *Brady* material has not been disclosed, "the prosecutor's decision on disclosure is final. Defense counsel has no

constitutional right to conduct his own search of the [government's] files to argue relevance." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).

The government has already provided beyond that to which the defendant is entitled. The government is not required to chase down decades of records and reports of people and places with no conceivable relevance to the instant prosecution. The government is also not required to conduct defense counsel's investigation for them. The government also cannot suppress evidence it does not possess. *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003). Furthermore, the government is not responsible for procuring the seemingly endless shopping list of materials sought by the defendant. It is a "well-established principle that 'the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.'" *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005), *quoting United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984). Said otherwise, "*Brady* ... does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002).

<u>CONCLUSION</u>

The relief sought by defendant Savage should be denied as moot. The government has far exceeded its discovery and Constitutional obligations in this case. Similarly, we are aware of, and have complied with, our obligations under *Brady* and its progeny. We fully intend to continue complying with all of our ongoing production obligations. To the extent that Savage's requests exceed the boundaries of *Brady* material, we also suggest that his motion be denied.

WHEREFORE, the United States respectfully requests that this Court enter an

Order denying the defendant's motion for exculpatory and impeachment material, as moot.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

_s/ David E. Troyer_
David E. Troyer
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that this pleading was electronically filed, and was thus served on

this the 30th day of November, 2022, upon defense counsel:

Ryan Norwood, Esquire
Assistant Federal Defender
ryan_norwood@fd.org
Attorney for Kaboni Savage

_s/ David E. Troyer_
David E. Troyer
Assistant United States Attorney