**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MOTION FOR LIMITED DISCLOSURE OF JUROR IDENTITIES
AND LEAVE TO CONTACT JURORS**

---

Counsel for Kaboni Savage, pursuant to the First, Fifth, Sixth, and Eighth Amendments to the United States Constitution, respectfully move this Honorable Court to lift its anonymous jury order and provide counsel the identities of the petit jurors and permit counsel to contact and interview the jurors in this case. Counsel seeks a limiting protective order authorizing disclosure to the habeas defense team only, not to Mr. Savage himself or any co-defendants. This information is necessary to ensure the defense can fully identify and timely raise all cognizable claims under 28 U.S.C § 2255. The grounds for this request are set forth below.

> **A.    The defense is unable to conduct any juror investigation because there is a jury anonymity order and this jurisdiction requires leave of Court before counsel can interview jurors.**

The names and other identifying details of all jurors and prospective jurors were not revealed to the defense or prosecution at the time of Mr. Savage's capital trial. (*See* Doc. 602). In pre-trial litigation the government sought an anonymous jury for two reasons: (1) to protect the jurors' ability to judge the case fairly and impartially, which the government argued was at risk

1

due to the nature of the charges and the public and media attention expected at trial; and (2) to protect the jurors' safety due to allegations of violence and threats by the defendants. (*See* Doc. 441). Mr. Savage's trial attorneys did not oppose the anonymous jury and further requested that the Court fully sequester the jury. (*See* Doc. 479). The Court denied the sequestration request, but granted the government's anonymity request. (Doc. 601, 602). To date, the names and other identifying details of the jurors have not been revealed to any party.

The Local Rules require leave of court before counsel can contact jurors. Local Rule 24.1(c) of the Local Rules of the United States District Court for the Eastern District of Pennsylvania. However, at the conclusion of the two capital sentencing trials in this case, this Court discharged the jury, instructing them that "[a]t this point, you are free to talk to anybody about this case, and it is entirely up to you. If you choose to talk to anyone, you certainly may. If you choose not to talk to anyone, you certainly may, also." (Trial Tr. 6/13/13, p. 5-6). This instruction notwithstanding, counsel seeks explicit permission from this Court to conduct juror interviews in addition to the limited disclosure of the jurors' identities.

> **B.     Absent the requested relief, Mr. Savage will be prevented from having a full and fair opportunity for meaningful post-conviction review of a potential constitutional claim that has been the basis for relief in other capital 2255 cases.**

The "touchstone of a fair trial is an impartial trier of fact." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). And the "right to an impartial jury is nowhere as precious as when a defendant is on trial for his life." *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013). Juror bias and misconduct in violation of the Fifth, Sixth, and Eighth Amendments cannot

be uncovered and subjected to meaningful post-conviction review absent investigation.[1] For example, post-verdict investigation can reveal juror misrepresentations during voir dire, requiring reversal of convictions and sentences. *See*, *e.g.*, *United States v. Fell*, 2014 WL 971745, *1–4 (D. Vt. Mar. 12, 2014) (habeas investigation in federal capital case revealed multiple juror lies during voir dire, jurors' undisclosed prior convictions, and other misconduct); *Dryer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) (conviction reversed in death penalty case where habeas investigation revealed juror misrepresentations during voir dire). Post-verdict investigation can also reveal unconstitutional external influences on the jury. *See*, *e.g.*, *Parker v. Gladden*, 385 U.S. 363, 365-66 (1966) (bailiff told jury defendant was guilty); *United States v. Maree*, 934 F.2d 196, 201 (9th Cir. 1991) (juror's verdict influenced by discussion of case with non-jurors). It can also reveal other kinds of juror misconduct and improper influence. *See*, *e.g.*, *Barnes v. Joyner*, 751 F.3d 229, 247 (4th Cir. 2014) (jurors' use of religious texts and consultation with minister during deliberations revealed in post-trial investigation). Evidence of juror misconduct during trial, or of external information and influences on the jury during deliberations is by its nature only available post-verdict.

Further, because Mr. Savage's trial counsel agreed to an anonymous jury, a post-verdict investigation is necessary to evaluate a deficient performance claim under the Sixth Amendment.

Other jurisdictions, including those with federal capital cases, routinely permit post-verdict juror investigation, including interviews. *See*, *e.g., United States v. Gabrion*, I 99-CR-0076-RI IB-

---

[1] Like all other members of the public, Mr. Savage and his defense team also have a First Amendment right to the jurors' identifying information. *See United States v. Wecht*, 537 F.3d 222, 229 (3d. Cir. 2008) ("Knowledge of jurors' identities aids public review by enabling the public to verify the impartiality of key participants in the administration of justice.") (citation omitted).

3

1 (W.D. Mich.) (jurisdiction lacks local rule prohibiting juror contact); *United States v. Duncan*, 2:07-CR-00023-EJL-1 (D. Idaho) (same); *United States v. Wilson*, 1:04-CR-01016 (E.D. NY) (same); *United States v Rodriguez*, 2:04-CR-00055-RRE-1 (D. ND) (same); *United States v. Roof*, 2:15-CR-00472-RMG (D. SC) (same); *United States v. Fields*, 6:01-CR-00164-WSS-1 (W.D. Tex.) (same). Completely preventing the defense from investigating touchstone constitutional claims of juror bias or misconduct would violate equal protection where other, similarly situated federally-convicted capital defendants have been able to conduct such investigation. *See id*. *See also Fell*, 2014 WL 971745 (D. Vt.); *Sampson*, 724 F.3d 150. Further, the disparate ability to investigate these constitutional issues violates the Eighth Amendment's guarantee that the death penalty is not administered in an "arbitrary and capricious" manner. *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980). Thus, this Court should permit juror investigation to ensure the fair and equal administration of the law.

Finally, juror investigation is an expected and necessary requirement for the effective representation of capital clients in federal habeas proceedings. *See McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (federal habeas counsel "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition").[2] *See also* 18 U.S.C. §599(f) (recognizing that investigation funding is reasonably necessary during post-conviction proceedings). Current counsel is required to "continue an aggressive investigation of all aspects of [Mr. Savage's] case." ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (2003), 10.15.1(E)(4). "[C]ounsel

---

[2] Diligence also matters with respect to post-conviction jury interviews where, like other witnesses, jurors' memories can fade with time and still other jurors pass away. Here, at least four of the seated jurors are now over 70 years old.

4

investigating a capital case should be particularly alert to the possibility that . . . one or more jurors were unqualified to sit at either phase of the trial and make every effort to develop the relevant facts, whether by interviewing jurors or otherwise[.]" *Id*. at Guideline 10.10.2, commentary fn. 260. "Such inquiries can be 'critical in discovering constitutional errors.'" *Id*. (quoting Hertz & Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, 489 n.40 (4th ed. 2001)).

For all of these reasons, this Court should issue an order permitting habeas counsel to interview the jurors in this case.

Apart from contacting and interviewing jurors, investigation into the constitutionality of a trial includes searching publicly-available information about jurors, including their social media and blog posts.[3] *See*, *e.g.*, D.C. Bar Ethics Committee, *Ethics Opinion 371: Social Media II: Use of Social Media in Providing Legal Services*, D.C. Bar, § III(D) (2016) ("Competent and zealous representation…may require investigation of relevant information from social media sites of jurors"). It includes searching courts and databases for public information such as undisclosed prior criminal convictions. *See*, *e.g.*, *Fell*, 2014 WL 97145, at *1-2 (post-verdict investigation revealed juror's undisclosed prior convictions).

Reviewing jurors' publicly-available information on the Internet has become a vital tool in protecting Sixth Amendment rights. The information jurors reveal on public social media posts and blogs have established constitutional violations, such as lies during voir dire*, see, e.g., Sluss v. Comm*., 381 S.W.3d 215, 223–24 (Ky. 2012), racial animus, *see*, *e.g.*, *United States v. Brooks*,

---

[3] For this reason, the requests for leave to contact the jurors and to partially lift the anonymity order are distinct—even if this Court denies leave to contact the jurors there are still constitutionally-valid reasons to lift the anonymity order to allow the legal team to investigate potential constitutional violations based on publicly-available information about the jurors.

987 F.3d 593, 605 (6th Cir. 2021), improper contact with outside parties during trial or deliberations, *see*, *e.g.*, *Commonwealth v. Morrison*, 97 Mass. App. Ct. 731 (Mass. App. Ct. 2020), exposure to improper outside influence, *see*, *e.g.*, *United States v. Zimny*, 846 F.3d 458, 467–69 (1st Cir. 2017), undisclosed connections with parties or witnesses, *see*, *e.g.*, *State v. Dellinger*, 225 W.Va. 736, 738–40 (W. Va. 2010), and secret details about the jury deliberations in violation of instructions, *see*, *e.g.*, *Dimas-Martinez v. State*, 385 S.W.3d 238, 246–49 (Ark. 2011).

The need to gather such information is even more important when the jurors were anonymous at trial, because, as the Third Circuit has recognized, anonymous juries are *more* likely to withhold information in voir dire than jurors whose identities are revealed to the parties and the public. *See In re Globe Newspaper Co.*, 920 F.3d 88, 94 (1st Cir.1990) ("Public knowledge of juror identities could also deter intentional misrepresentation at voir dire."). Further, the jurors in this case were instructed to remain anonymous, making it unlikely that any juror would violate their instruction to remain anonymous and would come forward with information about misconduct or outside influence in their deliberations. *See*, *e.g.*, Juror Questionnaire, p. 2-3.

For all of these reasons, Mr. Savage's post-conviction counsel should be permitted to investigate publicly-available information about the jurors, including any of their publicly-made comments.

**C.    Any proffered reasons to maintain juror anonymity can be adequately addressed with a protective order.**

The defense seeks to have juror identify information revealed only to Mr. Savage's legal team, under a protective order that would prohibit Mr. Savage from learning any identifying information about the jurors whatsoever. Such protective agreements are common in the disclosure of sensitive pre-trial information, and such an order here would alleviate any remaining concerns

about juror safety.[4] *See*, *e.g.*, *United States v. Carr*, 2016 WL 1158327 (W.D.N.Y. Mar. 23, 2016) (issuing a protective order that certain discovery material would be "for defense counsel's eyes only"); *United States v. Frazier*, 2020 WL 1820104, *1 (M.D. Tenn. Apr. 10, 2020) (citing cases where courts revealed juror identities to counsel only and not defendants).

Further, the jurors sat in this trial over nine years ago. The questions of whether a jury should remain anonymous through trial and whether a jury should remain anonymous after trial are distinct, and raise different balancing-test concerns. *See United States v. Wecht*, 537 F.3d 222, 239 (3d. Cir. 2008) (quoting *In re Globe Newspaper Co.*, 920 F.3d at 91 ("stronger reasons to withhold juror names and addresses will often exist *during* trial than *after* a verdict is rendered") (emphases in original)). There are no remaining concerns that revealing the juror identities will impact their ability to judge the case fairly and impartially, since their role judging the case is long over. The only remaining question for this Court is whether there are concerns about juror safety that outweigh Mr. Savage's constitutional rights.

The government's original motion for juror anonymity relied on allegations of violence and threats to witnesses and connections to organized crime. (Doc. 441). All of those allegations are now ten-to-twenty years old. The government itself claims that the "Kaboni Savage Organization" has ceased to exist for more than a decade. (*See* 2022 SAMs, p. 2 (filed under seal as Ex. B in Doc. 1724-1).) Additionally, Mr. Savage has been under restrictive Special Administrative Measures (SAMs) since 2007. Other than communications with his attorneys, all of Mr. Savage's communications are monitored and reviewed by the government. Any lingering concerns that Mr. Savage would pose a risk to the former jurors in this case are relieved by the

---

[4] A proposed order is attached.

severe restrictions on his ability to communicate with the outside world, which effectively prevent him from posing any kind of threat.

**D.     Conclusion**

For the above reasons, counsel for Mr. Savage requests that the Court lift its September 14, 2012, order prohibiting the parties from learning the names or identifying information of the jurors, and permit limited disclosure to defense counsel under a protective order. Counsel further requests that this Court permit the defense team to interview the jurors from this case.

Respectfully submitted,

***/s/ Bridget L. Kennedy***
Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
bridget_kennedy@fd.org
614-469-4141

***/s/ Ryan Norwood***
Ryan Norwood
NH Bar 15604
***/s/ Kathryn Bailey***
Kathryn Bailey
PA ID 308242

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
kara_bailey@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
bridget_kennedy@fd.org
614-469-4141

ATTORNEY FOR KABONI SAVAGE

1