**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | **CAPITAL CASE** |
| **Defendant.** | ) | |

**MOTION FOR ORDER TO PERMIT DEFENSE COUNSEL TO VIEW FILES
AT THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE**

Kaboni Savage, through undersigned counsel, and pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Habeas Rule 6"), and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, respectfully requests an order from this Court granting defense counsel access to homicide case files at the Philadelphia District Attorney's Office ("DAO"). Counsel seeks to review a limited set of files that directly relate to Mr. Savage's federal convictions. For the reasons stated below, this Court should issue an order permitting undersigned counsel to view these files.

**I.      The DAO has an Open-File Discovery process already in place and has agreed to comply with an order from this Court.**

Prior to filing Mr. Savage's Motion to Vacate, undersigned counsel requested to view select homicide files through the DAO's established Open-File Discovery

1

policy. *See* Ex.1 (1/29/23 Letter to DAO); Ex.3 (DAO Open-File Discovery Policy).[1] The letter set out the specific reasons each homicide was directly relevant to Mr. Savage's convictions and death sentences notwithstanding his status as a federal prisoner:

1. All DAO files and the PPD H-file relating to the murder of Kenneth Lassiter (charged under the RICO indictment).

2. All DAO files and the PPD H-file relating to the murder of Mansur Abdullah aka Shafiq aka Shafeeq aka Robert Yates (charged under the RICO indictment).

3. All DAO files and the PPD H-file relating to the murder of Ronald Walston, aka Pumpkin (at Mr. Savage's federal capital trial, the government alleged that Carlton Brown's murder (charges in the federal indictment) was motive/retaliation for Walston's murder).

4. All DAO files and the PPD H-file relating to the murder of Carlton Brown, aka Mohammed aka Charlton Brown (charged under the RICO indictment).

5. All DAO files and the PPD H-file relating to the murder of Mustafa Bey (the prosecution alleged that Bey was killed in an attempt to shoot Mr. Savage's co-defendant turned cooperator Lamont Lewis in retaliation for the Brown murder).[2]

6. All DAO files and the PPD H-file relating to the murder of Barry Parker (charged under the RICO indictment).

7. All DAO files and the PPD H-file relating to the murder of Tyrone Toliver (charged under the RICO indictment).

---

[1] Undersigned counsel prioritized this request for access given the number of homicides that directly bear on Mr. Savage's convictions and sentences. Undersigned counsel Bailey knows from first-hand experience that the DAO's Open-File review is a highly monitored, multi-step process; counsel are not permitted to scan or make their own copies of any documents or even to take notes. Requested papers are first reviewed by the DAO, properly redacted and copies are produced to counsel at a later date. Counsel are required to adhere to strict rules about confidentiality and potential future disclosure, including disclosure to their clients.

[2] Although not charged as a VICAR count, Bey's death was charged as overt act 24 to the RICO conspiracy charged in Count 1 of Mr. Savage's indictment.

8. All DAO files and the PPD H-file relating to the murder of Kareen Bluntly aka Brian Pride aka Bryant Pride (Bluntly was a crucial informant for the government against Mr. Savage).

9. All DAO files and the PPD H-file relating to the murder of Tybius Flowers (charged under the RICO indictment).

10. All DAO files and the PPD H-file relating to the deaths of Marcella Coleman, Sean Rodriguez, Tameka Nash, Khadijah Nash, Damir Jenkins and Tajh Porchea (charged under the RICO indictment).

*See* Ex.1. The DAO, through Assistant District Attorney Katherine Ernst, responded that though counsel's request did not "fall under" its policy because the DAO was not a named Respondent in Mr. Savage's habeas case, it would "of course" comply with "any court order you obtain." *See* Ex.2 (K. Ernst Email to K. Bailey). Because a mechanism already exists for undersigned counsel to undertake review these highly relevant files and because the DAO has offered to comply with an order from this Court, an order should issue.

## II.     Good cause exists for defense counsel to view the files.

In addition to the clear relevance of these files to Mr. Savage's homicide convictions, good cause is also established when this Court considers the constitutional guarantees of Equal Protection, Due Process and the policy considerations underlying the habeas discovery rules.

Habeas Rule 6 states that a Court "may authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Habeas Rule 6(a). Habeas Rule 6 incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, 394 U.S. 286,

3

298 (1969). *See also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same); Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").[3]

The policies favoring discovery are even stronger in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Because Habeas Rule 6 is designed to aid courts in determining the validity of the movant's claims, discovery is indispensable to this Court's assessment of the constitutional reliability of Mr. Savage's convictions and death sentences. For this reason, liberal use of discovery is appropriate in capital cases. *See Bracy v. Gramley*, 520 U.S. 899, 904-09 (1997) (denial of capital habeas corpus petitioner's discovery request abused district court's discretion); *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims."); *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) ("more liberal discovery is appropriate in capital cases where the stakes for prisoners are so high"); *United States ex rel. Brisbon v. Gilmore*, 1997 U.S. Dist.

---

[3] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

LEXIS 8314, at *8 (N.D. Ill. June 10, 1997) ("The Court agrees that, in light of the heavy burden Brisbon bears in petitioning for habeas relief from his death sentence, potentially corroborating evidence constitutes good cause for limited discovery"). *See also, McFarlane v. Gillis*, 2007 WL 4373065, n.2 (E.D.Pa. Dec. 13, 2007) (this Court emphasizing the expansive discretion afforded to district courts in deciding the types and methods of discovery under Habeas Rule 6 even in a non-capital case).

### A.     The constitutional guarantees of Equal Protection and Due Process establish good cause.

The DAO enacted its Open-File Discovery policy in 2020, granting "all criminal defendants" access to all investigative files irrespective of the perceived materiality of the evidence. *See* Ex.3. The only reason proffered by the DAO that Mr. Savage is not similarly—and automatically—entitled to review the investigative files underlying his death sentences under this policy is that the DAO is not a "named Respondent" in his habeas action. *See* Ex.2. Yet, the Third Circuit Court of Appeals has rejected this type of formalistic distinction in the context of *Brady* disclosures and the truth-seeking obligations of prosecutors, rationales specifically cited by the DAO policy.[4] *See United States v. Risha*, 445 F.3d 298, 305-06 (3d Cir. 2006) (citations omitted) ("imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process"); *United States v. Perdomo*,

---

[4] *See* Ex.3 (DAO citing, *inter alia,* "fairness," "error reduction" and "the pursuit of truth" as rationales and goals of its OFD policy.)

929 F.2d 967, 971 (3d Cir. 1991) (reiterating that the focus of *Brady* is on the prosecution team, which includes both investigative and prosecutorial personnel and that the "availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state").

As this Court knows, the VICAR homicide counts in this capital case were inextricably tied to Pennsylvania law and rested on evidence gathered and developed by state authorities over the course of more than a decade. Dozens of police officers testified against Mr. Savage, and pretrial motions cited extensively to the corresponding state prosecutions to supplement arguments both for and against the existence of the alleged conspiracy. That Mr. Savage's capital convictions were the result of a joint effort by state and federal authorities is a conclusion that cannot be credibly disputed. *See Ake v. Oklahoma*, 470 U.S. 68, 76 (1985) (when a State exacts its power on "an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense" under the Fourteenth Amendment.) That the DAO channeled its resources and power here into the hands of the U.S. Attorney's Office does not change the reality that the power of the Commonwealth was leveraged to put Mr. Savage to death.

To be sure, the DAO already has offered its full compliance with an order from this Court; it did not dispute the relevancy of any of the requested files to Mr. Savage's capital convictions. If denied access to the DAO and homicide investigation files, Mr. Savage will be the only Philadelphia criminal defendant under a sentence of death

who will be denied permission to review the investigative files undergirding his death sentences. As explained below, many of these capital defendants have successfully petitioned for the vacating of their death sentences pursuant to Open-File Discovery procedures that revealed substantial *Brady* violations. *See Roper v. Weaver,* 550 U.S. 598, 601-02 (2007) (per curiam) ("we find it appropriate to exercise our discretion to prevent these virtually identically situated litigants from being treated in a needlessly disparate manner…"). As a death-sentenced person, Mr. Savage should have—at a minimum—equal access to these files. *See Woodson*, 428 U.S. at 305.

**B.     The need for heightened reliability in capital cases establishes good cause.**

Mr. Savage was charged and convicted of twelve homicides, each of which began as a state-level case and was investigated by state agencies. *See* Doc. 480 (Counts 2-7, 10-15). Many of these state homicide investigations lasted years; and the DAO formally tried Mr. Savage for one of these homicides and prosecuted Mr. Savage's federal co-defendants and alleged co-conspirators in other state trials.

To be sure, the government reviewed and turned over select documents from state files regarding the charged murders before Mr. Savage's trial. (*See* Ex.4 (Oct. 19, 2009, discovery letter for Batch 2); Ex.5 (July 29, 2011, discovery letter for Batch 6)). Though the government maintained it had turned over every page of the files it had *viewed* in the murder cases, it also recognized that "it was apparent…that there were some things that should be in those files, but perhaps were not." 12/17/12 TT 172; Doc. 795, at 3-4. Indeed, the material turned over by the United States Attorney's Office on its face does not appear to be the complete investigative or DAO files for

7

these homicides. *See, e.g.*, Doc. 1746 at 300-01 (explaining that while there are clearly two cell phones on Abdullah's body in crime scene photos, there is no documentation of those phones or any related investigation in pre-trial discovery, among other indications of missing evidence); *id.* at 319-20 (highlighting, among other things, the lack of any autopsy photos from the Toliver case); *see also id.* at 336-38, 359-63, 392-97, 409-11, 436-40.

Counsel for Mr. Savage is willing to do what remains of this review—safeguarding against any omissions flowing from "discretionary disclosure decisions" made by the DAO and/or the government in this enormous case, which involved multiple homicides and thousands of discovery documents. Particularly where Mr. Savage was sentenced to death pursuant to the testimony of highly interested cooperating witnesses, this Court should issue an order granting defense counsel permission to view these files for potential exculpatory or impeachment material.[5]

Indeed, the DAO's open-file process and separate internal reviews by the DAO's Conviction Integrity Unit have revealed suppressed *Brady* evidence in multiple capital cases in recent years, even where the prosecution for years—and even decades—had maintained that it was meeting its obligations under *Brady* and had produced other types of discovery.

---

[5] The DAO's *Brady* policy also mandates that all potential *Brady* material be turned over even after a defendant has been convicted. *See* Ex.3.

In the Lavar Brown case, post-conviction file review revealed that a witness initially implicated someone else, and then both the witness and the interviewing detective lied about the initial implication in trial. *See* Samantha Melamed, *Philly DA: Evidence hidden in 2003 case*, THE PHILADELPHIA INQUIRER, Nov. 15, 2021, at B1 (attached as Ex.6). Importantly, the file review in that case included internal communications revealing the deception. *Id.*[6]

Still other capital cases have been reversed after DAO file reviews. *See*, *e.g.*, Samantha Melamed, *Justice…Three decades late*, PHILADELPHIA DAILY NEWS, Dec. 2, 2021, at A5 (describing the reversals of co-defendants Troy Coulston and Christopher Williams after the Conviction Integrity Unit's post-conviction review of the case file) (attached as Ex.7). *See also Lazar v. Pennsylvania*, 2023 WL 2382812, *10-13 (E.D. Pa. March 6, 2023) (reversing non-capital conviction on post-conviction review due to suppression of multiple pieces of exculpatory evidence).

Especially where documents turned over prior to Mr. Savage's capital trial did not contain the type of documents discovered in these capital cases, and where the U.S. Attorney's Office represented that it turned over only the select material it received from the state files, undersigned counsel should be permitted to review the DAO files for *Brady* material at no additional burden or cost to the United States

---

[6] The OFD process in the Lavar Brown case also revealed certain suspect "policies" at play at the DAO in the 1990s and 2000s, including the routine non-disclosure of prior inconsistent statements by cooperating witnesses. Such suppression would be undeniably material in Mr. Savage's case.

Attorney's Office. Mr. Savage has twelve death sentences; review of these files is necessary to ensure their reliability and that none were achieved through unconstitutional means.

## III. CONCLUSION

WHEREFORE, Kaboni Savage respectfully requests that this Court grant this Motion and provide an order granting counsel permission to view the requested files.

Respectfully submitted,

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
CA ID 253416
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 W. Broad Street, Suite 1020
Columbus OH 43215
(614) 469-4141
bridget_kennedy@fd.org

*s/ Kathryn Bailey*
Kathryn Bailey
PA ID 308242

*s/ Ryan Norwood*
Ryan Norwood
NH Bar 15604

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
kara_bailey@fd.org
ryan_norwood@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

/s/ Bridget L. Kennedy

Bridget L. Kennedy
CA ID 253416

Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 W. Broad Street, Suite 1020
Columbus OH 43215
(614) 469-4141
Bridget_Kennedy@fd.org

ATTORNEY FOR KABONI SAVAGE