**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | **CAPITAL CASE** |
| **Defendant.** | ) | |

---

**REPLY TO RESPONSE TO MOTION FOR ORDER
TO PERMIT DEFENSE COUNSEL TO VIEW FILES**

---

Kaboni Savage, through undersigned counsel, respectfully presents this Reply in support of his request for an order from this Court granting defense counsel access to homicide case files at the Philadelphia District Attorney's Office ("DAO").

This request is specific and straightforward, creates no work for the United States Attorney's Office, and is supported by good cause. There is ample evidence that the DAO's pre-trial production of homicide file material was incomplete, and the DAO has already said it will not oppose an Order granting counsel the opportunity to view their files. The government's objections to this simple request ignore Mr. Savage's good cause and constitutional arguments, and instead accuse him of delay; but there is no reason to believe this request would cause any undue delay. For these reasons, described more fully in this Reply, this Court should grant the requested Order.

1

## I.    The government fails to meaningfully address the arguments in the Motion.

As has been the case with the last several filings by the government, the opposition consists mostly of complaints about "delay" and unsupported attacks on the merits of Mr. Savage's § 2255 proceedings (assertions which the government was already making before any § 2255 motion was filed, *see, e.g.,* Doc. 1742 at 2). The government ignores many of the arguments set forth in support of the Motion, including the constitutional guarantees of equal protection and due process, and the need for heightened reliability in capital cases. *See* Doc. 1749 ("Motion") at 5-10.

What little authority the government does cite is old and irrelevant to the issue of Rule 6 discovery in capital post-conviction cases. *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985), is a non-capital direct appeal case involving the denial of a remand. *United States v. Ramos*, 27 F.3d 65, 71 (3rd Cir. 1994), also a non-capital direct appeal, concerns relief sought for evidence already destroyed by the government, rather than a request for evidence that remains in the possession of a prosecutor's office. *United States v. American Radiator & Standard Sanitary Corp.,* 433 F.2d 174, 201-203 (3rd Cir. 1970), is yet another non-capital direct appeal concerning the denial of relief based on evidence that *was* disclosed after trial, reviewed by the Court, and determined to be not exculpatory.

The government's reliance on *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987) (another non-capital case on direct appeal) is particularly misplaced. That case concerned an undisclosed confidential CYS file of a minor child, not prosecutorial files subject to an open file review policy, but the Supreme Court nonetheless held that

Ritchie *was entitled* to have the file reviewed by the trial court. *Id*. at 61 ("We agree that Ritchie is entitled to know whether the CYS file contains information that may have changed the outcome of his trial had it been disclosed.").

The government's complaint that Mr. Savage has already received pre-trial discovery, (Doc. 1749 ("Response") at 5), demonstrates a misapprehension of the nature of these proceedings, where additional fact development is an important and often essential part of the process. This is particularly true when, as here, the constitutional effectiveness of the attorneys responsible for seeking pre-trial discovery is a central issue presented and explained at numerous points within the § 2255 motion. As this Court has explained

> Section 2255 claims are collateral appeals of *federal* court convictions. Consequently, there is no state court review before a federal court hears the habeas petition. In other words, the federal district court is the first collateral review court. Because of this, a petitioner will not have had a chance to develop a fact record before his or her case is heard in federal court. Section 2255 recognizes this reality and consequently sets forth a *generous standard* for when federal courts should hold an evidentiary hearing in section 2255 cases.

*Brown v. Garman*, No. CV 16-872, 2017 WL 5885659, at fn.2 (E.D. Pa. Nov. 28, 2017) (citations omitted; italics in original).

The "good cause" standard for invoking discovery, similarly, is "relatively generous." *See Miller v. French*, 530 U.S. 327, 340 (2000) (citing and agreeing with the government's characterization of this standard of review in a different context). Here, the government disputes the truth of the allegations in the § 2255 motion, and claims that the discovery requests are speculative. But the Supreme Court unanimously reversed the denial of a defendant's post-conviction discovery requests

under Rule 6 in a case where the requests were based entirely on a "theory" that was "quite speculative," and where the Court acknowledged "difficulties of proof." *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). Complaints about the merits of Mr. Savage's allegations are at best premature, as a defendant need only present "specific allegations" to show that he could be entitled to relief "if the facts are fully developed." *Id*. at 909, *citing Harris v. Nelson*, 394 U.S. 286 at 300 (1969). And *Bracy* was a non-capital case. "[M]ore liberal discovery is appropriate in capital cases where the stakes for prisoners are so high." *Payne v. Bell,* 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000).

While Mr. Savage is not seeking any undue delay in these proceedings, the government's apparent attempts to rush the disposition of Mr. Savage's claims ignores both the relevant legal standards and the reality that these capital § 2255 proceedings are complex matters where it will necessarily take time to properly develop facts and resolve disputes. Federal courts have recognized as much in other capital § 2255 cases. *See*, *e.g.*, *United States v. Umana*, 3:16-cv-00057-RJC (W.D.N.C) (Doc. 30, Order dated 9/6/16) (agreeing with defendant that planned discovery motions should be resolved prior to the filing of responsive pleadings by the government); *United States v. Lawrence*, 2:05-cr-00011-MHW-CMV (S.D. Ohio) (Doc. 371, Order dated 7/14/17) (staying proceeding until the resolution of a pending Freedom of Information Act lawsuit).

The government made the decision to bring this leviathan capital indictment, where it leveraged over a decade's worth of state-developed evidence to secure multiple death sentences. The government's attempts to fast track the disposition of

4

this case ignores the careful review process established by Congress, and would invite error that would have the effect of prolonging a just resolution of this case.

**II.    The DAO's Open-File policy itself—afforded to every other Philadelphia capital defendant—constitutes good cause, and would not unduly burden the government or delay the case.**

Mr. Savage's prosecution resulted from a joint state-federal investigation, in which the state police and DAO investigated the numerous murders that are relevant to Mr. Savage's case.

As laid out in the Motion, the DAO now has a policy in place that grants criminal defendants access to all their investigative files. While the DAO has proffered that Mr. Savage is not automatically entitled to avail himself of this policy because they are not named respondents in this federal case, it has confirmed it will comply with an Order permitting defense counsel to view select homicide files under its existing review framework where Mr. Savage is under thirteen sentences of death. The government's decision to bring Mr. Savage's case in federal court should not deprive him of a review process that he would otherwise be entitled to use. See Doc. 1749 at 5-7. This review process, moreover, requires no effort or expenditure on the part of the United States Attorney's Office. Should the requested files contain facts relevant to Mr. Savage's claims, all parties—including the government, whose duty is to seek justice over victory—has an interest in uncovering it before the finality of execution cannot be undone. If no material information is found, the review process will assist in streamlining Mr. Savage's motion and preserve judicial resources.

In opposition to the Motion, the government's Response offers its familiar

refrain of "delay." Notwithstanding the misunderstanding of § 2255 proceedings reflected in such complaints explained above, the government does not offer any specifics as to how counsel's expeditious efforts to undertake this available, standardized review process would delay these proceedings. If granted this Order, counsel would seek to view the files as soon as permitted by the DAO.[1] Because there is no reason to believe this review would cause undue delay and this Order would place no burden at all on the United States Attorney's Office, this Court should grant the Motion.

### III. The Motion identified the precise files the defense is seeking, and provided examples demonstrating that these files were not fully produced in discovery by the DAO.

Contrary to the government's arguments, the Motion set forth the precise discovery Mr. Savage seeks: review of fifteen DAO homicide files, pursuant to the DAO's current open-file policy, and under the DAO's established procedures for such review. *See* Doc. 1750 at 3-4 (arguing the Motion is "speculative"). Mr. Savage maintains that the due process, equal protection, and fundamental fairness principles discussed above and in his Motion provide sufficient good cause to grant him review of the H-files in the same manner that similarly-situated defendants in state court would have. However, he has also demonstrated good cause through the specific examples of missing, relevant, exculpatory H-file evidence referenced in both this

---

[1] Undersigned counsel Bailey knows from firsthand experience in a capital case involving five distinct homicides that the turnaround time between review and production of documents is a matter of months.

6

Motion and his § 2255 motion, collected below. *See* Motion at 7-8; Doc. 1746 at 300-01, 319-20, 336-38, 359-63, 392-97, 409-11, 436-40.

- **Autopsy photos, crime scene photos, and physical evidence, including the decedent's clothing, from the scene of Tyrone Toliver's homicide.** This evidence would be expected in a homicide investigative file and was never turned over. Mr. Savage argues in his § 2255 motion that Eugene Coleman shot Toliver, and made related *Brady* and IAC claims. Counsel expects this evidence to be exculpatory and relevant to these claims, and referenced this missing material in the Motion and § 2255. *See* Doc. 1746 at 319-20; Motion at 8.

- **Evidence related to the cell phone decedent Carlton Brown had on his person at the time of his death, including notes or reports generated from law enforcement's review of the phone.** This is relevant to Mr. Savage's claims that Lamont Lewis's testimony about Brown's murder was incorrect, including who Brown was speaking with before his death. Yet no evidence from Brown's cell phone was turned over, and counsel referenced this missing evidence in the Motion and § 2255. *See* Doc. 1746 at 361-62; Motion at 8.

- **Any notes or report from a 2003 interview with a witness named in Mr. Savage's § 2255 Motion at pages 300-301.** This witness says he was interviewed in 2003 by law enforcement and denied his involvement in the Mansur Abdullah homicide, in contradiction to Eugene Coleman's testimony at Mr. Savage's trial. Any record of this interview supports Mr. Savage's *Brady* and IAC claims, and counsel referenced this missing evidence in the Motion and § 2255. *See* Doc. 1746 at 300-01; Motion at 8.

- **Evidence related to the two cell phones decedent Mansur Abdullah had on his person at the time of his death, including any notes or reports generated from review of the contents of the phone.** These records would reveal who Abdullah was talking with the day of his murder and what time he last used his cell phone. This evidence is relevant to show Eugene Coleman's testimony about the details of Abdullah's murder was incorrect, including that Abdullah was alive and using his phone after the time that Coleman claimed to have seen his dead body, and support Mr. Savage's *Brady* and IAC claims. No evidence related to these phones was turned over pre-trial, and both the Motion and the § 2255 refer to this missing evidence. *See* Doc. 1746 at 301-02; Motion at 8.

- **Evidence leading the Philadelphia Police to clear Ronald Walston's murder pursuant to a different theory than the one**

**presented at Mr. Savage's trial.** A Philadelphia Police report said that Carlton Brown shot and killed Ronald Walston because of a debt owed to "another male (Kaboni SAVAGE[])." Doc. 1747, Ex. 64. This conclusion by the Philadelphia Police is directly contradictory to the theory advanced by the government in Mr. Savage's trial. At trial, the government did not say that Walston owed Mr. Savage money or that Mr. Savage was involved in Walston's death; instead they said Mr. Savage and Walston were close friends and that Mr. Savage ordered *Brown*'s murder as retaliation for Walston's death. Evidence in either Brown or Walston's H-files should explain how Philadelphia Police came to this contrary conclusion, and would thus support Mr. Savage's § 2255 *Brady*, IAC, and related claims on Brown's murder conviction. No such evidence has been turned over, and the Motion and § 2255 referenced this missing evidence. *See* Doc. 1746 at 362; Motion at 8.

In addition to the examples of missing material cited in both the Motion and the § 2255, there is ample evidence of other missing homicide investigative material that Mr. Savage provides here in response to the government's allegations that he is engaging in an unlimited treasure hunt rather than a precise, targeted search for relevant evidence.

- **Autopsy photos from the homicides of Kenneth Lassiter and Carlton Brown.** Autopsy photos are expected in an investigative file, were not turned over pre-trial, and are relevant to challenges to the sentencing aggravating factors.

- **Reports, notes, or recordings from interviews law enforcement conducted at Hilltop Auto—Mansur Abdullah's place of employment—on September 26, 2000.** A Philadelphia Police report references these interviews but no further information was turned over in pre-trial discovery. These interviews were conducted weeks after Abdullah's death and would certainly be expected to be found in the investigative file. These interviews may contain information about third party suspects and further information about Abdullah's robbery that preceded his death which would support Mr. Savage's IAC and *Brady* claims related to this count.

- **A copy of Abdullah's Nextel phone records.** A report says that law enforcement obtained this report from Abdullah's employer but no further information about this report was turned over in discovery. Just like the evidence from law enforcement's review of Abdullah's cell

phones, this evidence would be relevant to Mr. Savage's IAC and *Brady* claims on this count.

- **A copy of the video taken at the Abdullah homicide crime scene.** The Philadelphia Police crime scene report described "A video recording was made while at the scene. A copy will be kept with the file." This video was not turned over in pre-trial discovery. This video is relevant to Mr. Savage's IAC and *Brady* claims related to this count, including that an expert like John Paolucci could have proven the government's evidence on this count was forensically unlikely or impossible.

- **Any responses from the tip line and $100,000 reward offered for information about the Coleman house fire, published by the Citizens Crime Commission of the Philadelphia Police Department.** There was undoubtedly responses to this poster and offer of reward money, but no information from this tip line was turned over in the pre-trial discovery from State files. This information would normally be found within the H-files for the fire victims. Any information provided to the tip line tending to show an alternative suspect was involved is exculpatory and relevant to Mr. Savage's IAC and *Brady* claims for each of the arson counts.

The sheer fact that so many of these H-files are missing basic investigative material is good cause to permit review of all relevant H-files. *See* 12/17/12 TT 172 (AUSA Troyer stating to this Court "it was apparent…that there were some things that should be in those files, but perhaps were not"). *See, e.g., United States v. Hayat,* 2017 U.S. Dist. LEXIS 129133, *14-16 (E.D. Ca. Aug. 14, 2017) (finding good cause in § 2255 on IAC and *Brady* claims where evidence relating to the government's case at trial "exists and was not produced to petitioner" and where "a logical inference" supports that other relevant information "should be available"). The missing information here raises serious questions about what else, unknown to the defense, may exist in the DAO files—including material never even reviewed for relevancy by the United States Attorney's Office due to the DAO's former disclosure policies. The only way to resolve the import of these many missing items is to review the files—

particularly since the DAO is willing to grant full, open-file access pursuant to their current policy with a court order.

There is evidence that incomplete H-file production was the norm in the DAO at the relevant time. *See* Motion at 8-9. What the Response dismisses as "a couple anecdotal examples of unrelated cases in which exculpatory material emerged at a late date," (Response at 3), are instead bonafide examples of why the representations of the DAO leadership in the 1990s and 2000s—the same leadership whose production the government now invokes as foolproof—cannot be relied upon.

Further, what a trial prosecutor considers "relevant" to secure a conviction often does not encompass all documents that are material to the defense or subsequent claims of ineffective assistance of counsel. The DAO Policy specifically cites this prosecutorial snow-blindness as a concern favoring Open-File Discovery. *See* Motion Ex. 3 at 3 ("*Error Reduction:* Because OFD requires full disclosure without regard to materiality, prosecutors are not faced with the kind of discretionary disclosures that can result in inadvertent or erroneous evidentiary suppression.") The potential for inadvertent and erroneous suppressions increases in complex prosecutions. Instead of addressing this risk in a federal capital prosecution involving a RICO conspiracy, six different homicidal events spanning eight years and countless police officers and state prosecutors, AUSA Troyer, as most prosecutors do, equates the instant Motion as a personal attack on his diligence.

The heightened reliability sought here however is not necessarily an indictment of Mr. Troyer; the reality is that the federal government cannot make

reliable representations about the content, breadth, and availability of various homicide files possessed, developed, and tried by various personnel at the DAO in the 1990s and early 2000s; it can only aver that it reviewed what was made available to the federal government. Even then, no government can ever guarantee that it did not commit inadvertent or erroneous non-disclosures, especially in a case of this size.

Counsel for Mr. Savage is not obliged to take the prosecutor's word that "everything" was reviewed in exchange for justifiable discovery under Rule 6 in a capital case. This is certainly the case where the government's Response raises the real possibility that it never reviewed the homicide files of Walston, Bluntly, or Bey *at all. See* Response at 3-4. Indeed, counsel for the government—while maintaining that he personally reviewed every single item there was to review—still found it necessary to suggest that the files as they exist today might be unreliable. *See* Response at 4 ("Given that the homicide files now being sought are from murders committed between 1998 and 2004, the availability and present integrity of those files is anything but certain.").

Where these still-missing items are undeniably relevant to Mr. Savage's capital convictions, sentences and §2255 claims, the Court should permit his counsel to utilize the DAO Open-File Discovery process to possibly locate this evidence.

**IV.    The government's insistence that the defense team "does not need" information regarding "unrelated" murders that the government nonetheless invoked as overt acts in its own indictment is precisely why the requested review is warranted.**

The Motion seeks access to files for three homicides for which Mr. Savage was not convicted of a VICAR count: Ronald Walston, Mustafa Bey, and Kareem Bluntly.

These homicides are not "unrelated" as the government claims; indeed the government's belief that these homicides are unrelated calls into question whether there was *any* review of these files pre-trial. *See* Response at 3-4. Certainly these H-files were not turned over to the defense pre-trial.

Relevancy and good cause are not limited to the H-files for convicted VICAR counts, these three files are relevant to various counts of conviction, and may contain material, exculpatory evidence. *See*, *e.g.*, *United States v. Smith*, 2:02-cr-00172 (E.D. Pa.) (Doc. 2492, Order dated 5/23/13) (finding good cause and granting wholesale production of an H-file in § 2255 proceedings where a state-investigated homicide preceded § 924(c) conviction).

First, Ronald Walston's homicide is inseparable from Carlton Brown's murder, charged in Count Four. *See* Doc. 480 at 41. At trial, the government charged and argued that Brown killed Walston and that Brown was then murdered in retaliation. *Id*. at 12. Mr. Savage argued in his § 2255 motion that others had a motive to kill Walston and that the government's theory was incorrect, and raised a *Brady* claim on this basis. Doc. 1746 at 359-364. Counsel expects that this file will provide exculpatory evidence including evidence of other suspects in Walston's murder which is material and exculpatory.

Second, although the government did not charge Mr. Savage with a VICAR count for Mustafa Bey's death, it did charge him with the homicide as an overt act to Count One in the indictment. *See* Doc. 480 at 13. Mr. Savage was entitled to all evidence against him on that charged count and has alleged that his counsel was

12

ineffective for failing to fully investigate this count and the existence of the conspiracy. Further, Lamont Lewis testified extensively about this murder at trial and Mr. Savage has alleged that counsel was ineffective for not asking for a limiting instruction on the admissibility of this testimony. Doc. 1746 at 347, fn. 116; 362-363. The evidence in this file is relevant to those claims.

Third, Kareem Bluntly is intimately connected to this case. The government alleged that Bluntly, who is mentioned 10 times in the indictment, personally committed two of the VICAR murders it charged to Mr. Savage. Had he not been killed, Bluntly would have been a key witness in every single charge brought in this case. In his § 2255 motion, Mr. Savage alleged that his counsel was ineffective for failing to properly investigate and challenge these allegations. *Id.* at 285-296. Further, Mr. Savage alleged that the government suppressed evidence surrounding Bluntly and presented false evidence through a Philadelphia Police Officer about their ability to arrest Bluntly for Toliver's murder. *Id.* at 320-322; 612-614. The H-file about Bluntly's murder will likely contain evidence relevant to those claims.

The relevancy of these three H-files cannot reasonably be disputed. Counsel sought the opportunity to review these files through the DAO, and like the H-files for the VICAR counts of conviction, the DAO said they would comply with an Order from this Court granting counsel access to these files. This Court should grant Mr. Savage's request for an Order to review each of the files requested in the Motion.

## V.      Conclusion

WHEREFORE, Kaboni Savage respectfully requests that this Court grant his

Motion and provide an order granting counsel permission to view the requested files.

Respectfully submitted,

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
CA ID 253416
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 W. Broad Street, Suite 1020
Columbus OH 43215
(614) 469-4141
bridget_kennedy@fd.org

*s/ Kathryn Bailey*
Kathryn Bailey
PA ID 308242

*s/ Ryan Norwood*
Ryan Norwood
NH Bar 15604

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
kara_bailey@fd.org
ryan_norwood@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply was filed electronically through the

ECF system and notice sent to counsel of record for all parties on this date.

/s/ *Bridget L. Kennedy*

Bridget L. Kennedy
CA ID 253416

Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 W. Broad Street, Suite 1020
Columbus OH 43215
(614) 469-4141
Bridget_Kennedy@fd.org

ATTORNEY FOR KABONI SAVAGE