**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| | ) | |
| **Defendant.** | ) | **Death Penalty Case** |

---

**MOTION FOR DISCOVERY RELATING TO CLAIMS INVOLVING MR. SAVAGE'S PURPORTED "FUTURE DANGEROUSNESS"**

---

Kaboni Savage, through undersigned counsel, and pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Habeas Rule 6"), and the Fifth, Sixth, and Eighth Amendments to the United States Constitution, respectfully moves this Honorable Court for authorization to conduct discovery. This motion requests discovery related to Mr. Savage's claims 5D, 18D, 18E, and 18F, as pled in Section V of his § 2255 Motion. *See* Doc. 1746 at 222-251. Mr. Savage intends to file additional discovery requests and will identify the relevant claims and sections of the § 2255 Motion within each subsequent filing.

**I.     The Court Has the Authority to Allow Discovery to Support the Claims in Mr. Savage's § 2255 Motion.**

Mr. Savage respectfully moves the Court to authorize him to conduct discovery for records and evidence where such disclosure is necessary for the full development and presentation of claims challenging his conviction and death sentences pursuant to 28 U.S.C. § 2255. Habeas Rule 6 states that a judge "may, for good cause, authorize a party to conduct discovery under the Federal

Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Habeas Rule 6(a). Habeas Rule 6 incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his] claims, including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, 394 U.S. 286, 298 (1969). *See also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same); Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").[1]

The policies favoring discovery are even stronger in capital cases than in noncapital ones because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Because habeas corpus discovery is designed to aid courts in determining the validity of the movant's claims, it is indispensable to the reliability of habeas corpus proceedings in capital cases. For this reason, liberal use of discovery is appropriate in such cases. *See Bracy v. Gramley*, 520 U.S. 899, 904-09 (1997) (denial of capital habeas corpus petitioner's discovery request abused district court's discretion); *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims."); *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) ("more liberal discovery is appropriate in capital cases where the stakes for

---

[1] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

prisoners are so high"); *United States ex rel. Brisbon v. Gilmore*, 1997 U.S. Dist. LEXIS 8314, at *8 (N.D. Ill. June 10, 1997) ("The Court agrees that, in light of the heavy burden Brisbon bears in petitioning for habeas relief from his death sentence, potentially corroborating evidence constitutes good cause for limited discovery"). Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded under the circumstances. Rule 6 Permits Wide-Ranging Forms of Discovery.

This Court's authority to grant discovery is also far-reaching; it encompasses, at a minimum, the mechanisms proscribed by the Federal Rules of Criminal Procedure and Civil Procedure. *See* Habeas Rule 6(a). This Court's broad discretion includes authorizing the issuance of subpoenas to produce documents, information or objects. *See, e.g., Payne v. Bell*, 89 F. Supp. 2d 967, 970, 971-76 (W.D. Tenn. 2000) (granting petitioner's requests to serve interrogatories on state, obtain documents in state's possession, and depose assistant district attorney: "Once good cause is shown [under Habeas Rule 6(a)], a habeas petitioner may avail himself of the discovery procedures permitted by the Federal Rules of Civil Procedure, including the use of interrogatories, depositions, document requests, and requests for tangible evidence."); *O'Neal v. Lampert*, 199 F.Supp.2d 1064, 1065 (D. Or. 2002) (granting motion for subpoenas to produce records under Habeas Rule 6); *In re Braxton*, 258 F.3d 250, 255 (4th Cir. 2001) (noting that district court granted petitioner's motion under Habeas Rule 6 for state production of physical evidence for purposes of DNA retesting); *Warden v. Gall,* 865 F.2d 786, 787 (6th Cir. 1989) (state police crime lab ordered to produce laboratory and field notes, and other physical items); *Ross v. Kemp*, 785 F.2d 1467, 1469, 1478-79 (11th Cir. 1986) (subpoenas issued to clerk of jury commission); *Rice v. Black*, 112 F.R.D. 620, 625-26 (D. Neb. 1986) (granting motion for discovery of FBI records of audiotape

analysis).[2] Courts may also invoke their inherent supervisory powers to grant still more process to litigants where no rule or statute expressly prohibits it. *See Dietz v. Bouldin*, 579 U.S. 40, 45-46 (2016).

## II.    Mr. Savage Has Good Cause for Discovery Relating to Claims Involving his Purported Future Dangerousness.

In seeking thirteen death sentences against Mr. Savage, the government explicitly argued as a non-statutory aggravating circumstance that he presented a risk of future dangerousness. Doc. 1434 (Special Verdict Form for Penalty Phase). As alleged in Section V of the § 2255 motion, the government was able to convince the jury of Mr. Savage's dangerousness by misleading the jury about both the nature of his future confinement and his conduct while held in pre-trial custody. *See* Doc. 1746 at 222-243.

"[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrates that he is entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 529 U.S. at 909-08 (1997), *citing Harris*, 394 U.S. at 300.  On the face of his claims and as laid out below, Mr. Savage has established good cause that the government has evidence within its possession that will demonstrate that the prosecution relied on false evidence and arguments to obtain death sentences against Mr. Savage and that he is entitled to relief on his claims concerning "future dangerousness."

---

[2] *See also Keeney v. Tamayo-Reyes*, 504 U.S. 1, 14-15 (1992) (O'Connor, J., dissenting) ("once a claim is properly before the district court ... a habeas petitioner [should be treated] ... like any civil litigant" for purposes of "right to a hearing [or, presumably, any other fact-development procedure] where [the procedure] is necessary to prove the facts supporting his claim").

A.      **Discovery regarding the SAMs renewal process for Mr. Savage**

At the penalty phase, the government insisted that it could not ensure Mr. Savage would remain confined indefinitely on the H-Unit at the ADX prison, the maximally secure unit where he had been held until the time of his capital indictment. Although Mr. Savage's Special Administrative Measures (SAMs) would ensure his initial placement on H-unit the government's corrections expert testified that the SAMs would be reviewed annually by the Attorney General and were "not rubber stamped." Doc. 1746 at 225. Notwithstanding the U.S. Attorney's own view that Mr. Savage would always be dangerous, *see* 5/29/13 TT 128-129, 137-139, the prosecution argued it was likely, and indeed inevitable, that Mr. Savage nonetheless would be removed from SAMs and released from H-Unit into general population within the Bureau of Prisons ("BOP"), where he would be free to harm others. Doc. 1746 at 225-226. When Mr. Savage challenged these arguments on appeal, the Third Circuit reasoned that they "accurately summarized and fairly characterized information before the jury." *United States v. Savage*, 970 F.3d 217, 294 (3d Cir. 2020).

But as alleged in Claims 18D, 18E, and 18FI, the information the government put before the jury was false and misleading. At a recent federal capital trial, a BOP attorney who was also a former ADX warden testified that the decision to keep a prisoner under SAMs restrictions effectively remains under the control of the local U.S. Attorney. In fact, in more than twenty years, the government has never lifted a SAMs designation and allowed a prisoner to be released from H-Unit over the objection of the local U.S. Attorney. Doc. 1746 at 227-228 (citing 2023 testimony of Chris Synsvoll in *United States v. Saipov*, 17-cr-722 (S.D.N.Y.). The Attorney General's Office of Enforcement Operations ("OEO"), the office nominally in charge of issuing SAMs, "does not conduct any independent investigation" of SAMs requests and has "never rejected a

recommendation by the FBI for approval of a renewal or modification of SAMs for any inmate." *Mohammed v. Holder*, 47 F. Supp. 3d 1236, 1243-44 & n.7 (D. Col. 2014). Consistent with these officials' testimony, Mr. Savage himself has remained under SAMs and in H-Unit for over a decade since his convictions, with essentially no change in his restrictions.  Until 2021, the stated justification for the SAMs continued to be based on Mr. Savage's conduct prior to his 2013 trial. Doc. 1746 at 228-229.

Regulations concerning the SAMs process require communication between multiple government agencies, which the government should still have in its possession. Under the relevant procedures, the requesting agency—which in Mr. Savage's case is the local U.S. Attorney's Office—must submit a "letter or memorandum" to the Attorney General setting forth the justification for the SAMs, the special restrictions requested, and the justification for each. *See* USDOJ Justice Manual, § 9-24.100(A). This correspondence is forwarded to the OEO, which is then supposed to obtain information about the inmate from the BOP and a "statement of concurrence with or objection to the proposed" SAMs from "the FBI or other involved law enforcement agency." § 9-24.100(B-D). The OEO then prepares a "decision memorandum" for the Criminal Division of the DOJ, discussing the request and including a recommendation, § 9-24.100(E), and the Criminal Division prepares a memorandum to the BOP setting out the SAMs. § 9-24.100(F); *see also* Doc. 1724, Exs. A & B. Requests for renewal "will be handled similarly to initial requests," requiring another memorandum from the requesting agency that "should state whether the circumstances identified in the last request to the Attorney General for special administrative measures have changed and, if so, what changes are recommended either to tighten up or loosen the restrictions," and which is forwarded to the OEO and Criminal Division as noted above. § 9-24.200.

The BOP also has procedures governing the information and recommendations it provides regarding SAMs renewal. Approximately 120 days before the expiration of the SAMs, "staff will obtain and document any comments and suggestions concerning possible renewal and/or modifications to the SAM from the inmate and staff." *See* Special Security Unit Program Supplemental Regulation FLM 5321.07(3)(G), dated March 15, 2011 pg. 2 (attached as Ex. A).[3] The BOP's unit team and FBI case agent are supposed to meet with the inmate 90 days before the expiration. *Id.* The BOP is to forward the information it obtains to other parties, including "the appropriate United States Attorney's Office, the FBI or other relevant law enforcement agency, and the Officer of Enforcement Operations." *Id.*; *see also id.*, attachments A&B (forms used for reporting information regarding SAMs renewal).

Especially given the contrary testimony presented regarding the operation of the SAMs renewal in the Saipov trial, Mr. Savage requests that the Court order the government to provide all documentation and communications in its possession regarding the institution and renewal of his SAMs since 2007. *See Lopez v. Beard,* No. CV 04-4181, 2019 WL 2162300, at *3 (E.D. Pa. May 16, 2019) (granting discovery under Rule 6 where government witnesses' testimony was "inconsistent" and "ambiguous"). This communication is relevant to show whether the process for continuing SAMs is truly independent of the U.S. Attorney's wishes. The chain of memoranda from the U.S. Attorney to the Criminal Division would tend to show, for example, whether the SAMs restrictions and continuations initially sought by the U.S. Attorney are meaningfully

---

[3] Although this regulation has been reissued since 2011 with some changes, the attached regulation was operative throughout much of the time period relevant to this motion. Moreover, the relevant language in the regulation cited herein has remained substantially the same at least through 2019, the date of the last revision that counsel is aware of.

questioned or modified at any point in the process. The recent testimony of Mr. Synsvoll and the unyielding renewals of SAMs restrictions on Mr. Savage since the trial both provide at least "good cause" to believe this documentation will further support Mr. Savage's claims that the government failed to provide exculpatory evidence regarding the issue of future dangerousness, and in fact relied upon false and misleading information to secure Mr. Savage's thirteen death sentences, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, 153 (1972), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

**B.    BOP records and other documentation regarding the 2011 unauthorized paperwork and 2012 phone incidents at FDC Philadelphia**

The government's future dangerousness arguments also relied on incidents during Mr. Savage's pretrial custody, one involving Mr. Savage's possession of unauthorized paperwork in March 2011, and another involving unauthorized phone calls in 2012. Doc. 1746 at 232-238, 238-243. With respect to both incidents, the government did not merely cite them as examples of rule-breaking, but affirmatively told the jury that (a) Mr. Savage had somehow "compromised" prison staff (Doc. 1746 at 235, 237, 241) and (b) Mr. Savage was actively engaged in plans to commit additional crimes, including the murder of witnesses. *Id.* at 235-37, 240-41.

As explained in the § 2255 Motion, the available record does not support the government's inflammatory representations to the jury. Neither the trial record nor the record available to counsel contains the actual paperwork Mr. Savage was alleged to have possessed in March 2011, the descriptions of it in the available record are unclear, and a charge that Mr. Savage had stolen this paperwork was determined unfounded by the BOP. Doc. 1746 at 232-33. Through its misleading cross-examination of unprepared defense experts, however, the government suggested that Mr. Savage had stolen information that would help him to locate and harm people who were testifying against him at his trial. *Id.* at 234-36. Likewise, while evidence showed that Mr. Savage was

misusing legal phone calls to speak with his family and friends in 2012, it did not show that he had used these calls for any illegal purpose or that any prison staff were "compromised", as opposed to being negligent in allowing him to do so. *Id.* at 240.

Mr. Savage requests additional information within the government's possession that will further support his claim. He seeks a memo and copy of the twenty-seven pages of "unauthorized" paperwork which were forwarded to the FBI and are described in 302 Report dated April 1, 2011. Doc. 1747 (Ex. 287). He seeks documentation of an internal investigation of the incident, which the same 302 states the BOP would be conducting. *Id.* Similarly, he seeks all documentation of BOP investigation regarding the 2012 misuse of legal phone calls, which upon information and belief also were the focus of a BOP internal investigation. Even on the existing record, Mr. Savage has established that the government's arguments at trial were misleading. Good cause exists that these records will contain additional evidence showing that the government failed to provide exculpatory evidence, and in fact relied upon false and misleading information to secure death sentences, in violation of *Brady, Giglio.* and *Napue*.

### III.   Requested Discovery

For the reasons stated above, Mr. Savage specifically requests this Court enter an order for the government to provide the following information:

    a. All initial and annual communications regarding the imposition and renewal of Mr. Savage's Special Administrative Measures (SAMs) from 2007 to the present;

    b. All records, investigation, and documentation pertaining to Incident Report #2138854 which occurred on or about March 17, 2011, at FDC Philadelphia involving Mr. Savage; and,

    c. All records, investigation, and documentation pertaining to 2012 incidents of phone misuse at FDC Philadelphia involving Mr. Savage.

These records should include, but not be limited to:

9

1. Memoranda and other communications from the U.S. Attorney's Office for the Eastern District of Pennsylvania (USAO) requesting the imposition and continuation of SAMs, including the restrictions sought and the justifications for them;

2. Memoranda and other communications from the FBI regarding their position on the imposition and renewal of SAMs;

3. Memoranda and other communications from the OEO in the Department of Justice to the USAO, the FBI, and the Criminal Division of the DOJ regarding the imposition and renewal of the SAMs;

4. Memoranda and communications from the Criminal Division of the DOJ to other government agencies, including the BOP, concerning the imposition and renewal of the SAMs;

5. Memoranda and other communications from the ADX Unit Manager through the Associate Warden regarding the Review of the SAMs (*see* Special Security Unit Program Supplemental Regulation FLM 5321.07(3)G, Attachment A);

6. Renewal of Special Administration Measures yearly Inmate Statements (*see* FLM 5321.07(3)G, Attachment B);

7. Inmate Activity Record, located in Section 2 of Mr. Savage's inmate Central File, documenting the SAMs annual review meeting;

8. Documents maintained in the SENTRY database including, but not limited to, After Action Review Reports; Mass Interview forms; and Board of Inquiry Reports; Administrative Remedies documentation and summaries, including, all BP-9, BP-10, and BP-11's filed by Mr. Savage; a copy of the Incident Report, BPS288.052, BP-A0288; Discipline Hearing Officer Report, BP-A0304; Notice of Discipline Hearing before the DHO, BP-A0294, P-S94.052; CIM Clearance and Separatee data sheets; and a copy of telephone monitoring logs;

9. All documents, including the tape recordings of any hearings, related to any BOP disciplinary or administrative proceedings involving inmates or staff regarding the referenced incidents;

10. Any and all documents created and maintained by the Special Investigative Section ("SIS") database known as TRUINTEL, including, without limitation, the materials

required by the SIS Inmate Investigation File Check List such as inmate profiles, inmate incident reports, reports of the incident, including any paper archive files;

11. All information contained within the Automated Information Management System (AIMS) regarding the referenced incidents;

12. Any and all correspondence, emails within the GROUPWISE system, handwritten notes, memoranda, written reports, or other documented communication between or among the BOP personnel, SIS staff, FBI personnel, and/or DOJ Personnel regarding the referenced incidents;

13. The full log of Mr. Savage's phone calls and any recordings located in the TRUVIEW database regarding the 2011 and 2012 above-referenced incidents;

14. The Roster/Overtime Program documentation showing which staff were augmented at the Facility and what positions they worked with respect to the above referenced incidents; and

15. With respect to Incident Report #2138854, the twenty-seven pages of paperwork purportedly found in Mr. Savage's possession in March 2011, a memorandum concerning this incident written by Officer Bittner at or about this time, and any internal investigation of the matter, as described in an April 1, 2011 302 Report included as Ex. 287 to the § 2255 Motion (Doc. 1747).

IV.   **Mr. Savage's counsel has made diligent efforts to obtain the discovery sought by other means.**

On April 20, 2022, over a year before filing the § 2255 motion, Mr. Savage's counsel sent a letter to the BOP requesting a number of specific items. *See* 4/20/22 letter, attached as Ex. B. This request included much of the documentation now sought within the instant motion, including Mr. Savage's central file, his "Central Inmate Management information including separatee data," his disciplinary records and administrative remedy reports, his inmate phone account history, and

11

"[a]ll inmate phone records maintained within PARACON, SENTRY, and TRUINTEL databases." Ex. B at 1-2. [4]

In response, the BOP stated that Mr. Savage would need to pursue such requests via a Freedom of Information Act (FOIA) request. Counsel submitted a FOIA request on June 27, 2022, making the same requests submitted in their April 2022 letter and seeking expedited processing. The BOP responded to the request on July 19, 2022, stating the request would be expedited and "processed as soon as practicable," which "may take up to six months." Ex. C, attached.

As of the date of this filing, counsel has yet to receive a complete response to the FOIA request. On August 17, 2022, the BOP provided fourteen pages of documentation, including Mr. Savage's sentence computation, his judgment and commitment orders, his fingerprints, and mug shot. This response did not address the other specific items sought in the FOIA requests. Before filing the instant motion, counsel followed up with the BOP regarding the original request. Counsel also submitted more specific requests mirroring the precise information sought within this motion. Although the BOP has responded that it would expedite this request as well, given the lack of production to date counsel cannot predict when they might obtain the information sought herein via a FOIA request.

Counsel also sought to obtain this documentation from the prosecution. On July 19, 2022, counsel sent a letter to the AUSA of record requesting several specific items. The first two requests,

---

[4] As noted in the § 2255 motion, trial counsel obtained a BOP central file for Mr. Savage in October 2012. Doc. 1746 at 243; *see also* Ex. 283 to Doc. 1747 (containing records for this file). However, this central file does not include the specific information sought within the instant motion, because (a) much of the information sought is not kept within the inmate file and/or (b) the file provided to trial counsel predates many of the requests made herein, including the post-2012 SAMs related communication and documentation relating to the 2012 phone incident, which the government purportedly did not discover until after the file was provided to trial counsel.

on the first page of the letter, asked the USAO to provide (1) "communication involving the SAMs imposed and regularly renewed on Mr. Savage" involving the USAO, FBI, and OEO, and (2) "evidence relevant to Mr. Savage's alleged possession of separatee data in March 2011," specifically directing the government to the relevant 302 report. Ex. D,[5] attached. Counsel never received a response to this letter, despite a follow up inquiry in March of 2023. Counsel also included these requests within the Motion for Exculpatory and Impeachment Information filed on November 18, 2022. *See* Doc. 1735 at 8-9 (requests #20 and #23). The prosecution still did not address these requests within its general opposition to that Motion. *See* Doc. 1736.

Counsel have thus far been unable to obtain the materials sought in support of Mr. Savage's "future dangerousness" habeas claims despite their diligent efforts. Contrary to the government's repeated complaints in these proceedings, counsel are not making discovery requests for purposes of "delay." To the contrary, counsel seeks to expedite the necessary factual development of meritorious § 2255 claims, facts they have been unable to obtain by other diligent means.

---

[5] A portion of this letter referred to various grand jury testimony transcripts, that portion of the letter is not relevant to this motion and has been redacted from the exhibit out of an abundance of caution.

## CONCLUSION

WHEREFORE, Kaboni Savage respectfully requests that this Honorable Court grant the

foregoing Motion and order that the government provide the materials requested therein.

Respectfully submitted,

*/s/ Kathryn Bailey*

Kathryn Bailey
PA ID 308242
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
kara_bailey@fd.org
(412) 644-6565

Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
Bridget_kennedy@fd.org
(614) 469-4141

ATTORNEYS FOR KABONI SAVAGE

14

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*/s/ Bridget L. Kennedy*

Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
Bridget_kennedy@fd.org
(614) 469-4141

ATTORNEY FOR KABONI SAVAGE

1