# Exhibit

# A



**U. S. Department of Justice**
Federal Bureau of Prisons

## INSTITUTION SUPPLEMENT

OPI:       Unit Management
NUMBER:    FLM 5321.07(3)G
DATE:      March 15, 2011

# Special Security Unit (H-Unit)

//s//
*Approved:*   *Blake R. Davis, Warden*
              ADX Florence

I.   **PURPOSE AND SCOPE:** To establish operational guidelines for the Special Security Unit (H-Unit).

II.  **DIRECTIVES AFFECTED:**

A.   **Directives Rescinded:** FLM 5321.07(3)F, Special Security Unit Program (H-Unit), dated November 17, 2009.

B.   **Standards Referenced:** American Correctional Association 4th Edition Standards for Adult Correctional Institution: None

III. **GENERAL PROCEDURES:** H-Unit ordinarily houses those inmates who have Special Administrative Measures (SAM), pursuant to 28 C.F.R. §§ 501.2 or 501.3. Prior to arrival in the unit, the unit team will review the SAM and reason(s) for placement at the ADX to determine quarters assignment. **All staff shall strictly adhere to restrictions outlined in the SAM when managing these inmates.**

A.   The unit manager shall develop, implement, and maintain an Admission and Orientation Program (A&O) for all inmates assigned to the unit. Inmates will be provided an Admission and Orientation Handbook during the intake screening process. During A&O, staff will take the opportunity to introduce policy and procedures unique to the unit and will reinforce Bureau rules and regulations. Staff expectations will be discussed with special emphasis given to clear conduct, respect toward staff and inmates, personal property, and sanitation. If appropriate, the SAM will be

Ex. A

reviewed with the inmate.

**B.**   An annual review of each inmate's SAM will be conducted four months prior to the expiration of the SAM. Approximately 120 days prior to the expiration of the SAM, staff will obtain and document any comments and suggestions concerning possible renewal and/or modifications to the SAM from the inmate and staff, using the format on Attachments A & B. Approximately 90 days prior to the expiration of the SAM, the unit team and the Federal Bureau of Investigation's (FBI) case agent assigned to the inmate's case will meet with the inmate. During this meeting, the inmate may provide information concerning possible renewal and/or modification of the SAM and discuss any other issues concerning the SAM. The information obtained from the meeting with the inmate, along with the inmate's written comments and the memorandum summarizing the discussion with the inmate, will be forwarded through Legal Services, to the Warden, the appropriate United States Attorney's Office, the FBI or other relevant law enforcement agency, the Office of Enforcement Operations in the criminal division of the United States Department of Justice, and the Office of General Counsel for review. The unit team will document the meeting in the Inmate Activity Record, located in section 2 of the inmate's Central File.

**C.**   **Inmate Discipline** - Inmates placed on Administrative Detention (A/D) or Disciplinary Segregation (D/S) status will be appropriately housed within the unit. The unit manager has the authority to designate any cell in the unit as A/D or D/S status, as is appropriate.

**D.**   **Education** - The Supervisor of Education, or his/her designee, will serve as a member of the unit team and assist inmates in their academic endeavors.

**E.**   **Work Assignments** - Performance pay allocation in H-Unit supports four (4) orderly positions, which will be assigned by the unit manager.

**F.**   **Recreation** - Inmates, except those in D/S, are provided a minimum of ten (10) hours of out-of-cell recreation per week. Those inmates in D/S are provided a minimum of five (5) hours of out-of-cell recreation per week. All out-of-cell recreation will occur within the unit, in one of the single occupancy recreation areas. There will be occasions when institution emergencies/priorities or adverse weather interferes with the institution recreation schedule. On those rare occasions, the following procedures apply:

1.   The Operations Lieutenant has designated authority to cancel recreation due to an institution emergency/priority or adverse weather.

2.   The unit officers will ensure any lost recreation time is clearly noted

---

FLM 5321.07(3)G          Special Security Unit Program (H-Unit)          Page 2

in the unit log and this information relayed to the unit manager for monitoring.

   **3.**  An inmate will be returned to his cell, upon his request, to use the restroom. Anyone returning to their cell voluntarily terminates the remainder of his recreation period.

**G.**  **Legal Activities** - The unit team is responsible for all legal matters in the unit, i.e., visiting, telephone calls, and legal property. The unit team, with assistance of staff from SIS, will coordinate and handle the storage and issuance of legal property. The legal reference materials, books, pamphlets, etc. are supplied by the Education Department upon receipt of an "Inmate Request to Staff Member" (cop-out). Information relating to assistance, research, and preparation of legal documents will be done in accordance with the Institution Supplement for Inmate Legal Activities, in compliance with the inmate's SAM. The unit team, with the assistance of staff from Legal Services and SIS, will also coordinate and handle all legal visitation and legal telephone calls. These visits will ordinarily occur between the hours of 8 a.m. and 3 p.m., Mondays, Tuesdays, or Wednesdays, except Federal holidays. Visits for times other than the above shall be referred to the Warden for approval.

**H.**  **Religious Programs** - Full time institution chaplains shall provide for religious needs of inmates. Chaplains shall visit the unit on a regular basis and be available at additional times on an "as needed" basis.

**I.**  **Non-Legal Communication (Mail, Telephone, and Visits)**

   **1.**  All non-legal communication will be provided in accordance with the inmates' respective SAM.

   **2.**  The SIS technicians will search, collect, and deliver all mail. Inmates are required to pay for postage unless they are without funds. An inmate without funds for the purposes of postage is defined as an inmate without sufficient commissary balance to purchase a paste stamp sufficient for first-class, one-ounce domestic mailing or postage for half-ounce international air mail for an inmate whose community ties require such foreign correspondence.

   **3.**  Inmates will be permitted a minimum of two 15-minute non-legal telephone calls per month. All non-legal telephone calls shall be:

      **a.**  Contemporaneously monitored by the FBI.

      **b.**  Contemporaneously recorded.

---

Ex. A

**4.**    Ordinarily, the non-legal visiting hours are 8 a.m. to 3 p.m., Mondays, Tuesdays, and Wednesdays and will not occur on Federal holidays.  Ordinarily, only one inmate from the unit will be permitted in the visiting room at a time.    All non-legal visits shall be:

    **a.**    Contemporaneously monitored by the FBI.

    **b.**    Contemporaneously recorded.

    **c.**    Supervised by Correctional Services staff.

**J.**    **Commissary** - Inmates in H-Unit are permitted to purchase commissary once a week.  Commissary slips are distributed to the inmates weekly and must be submitted to the Officer-In-Charge prior to 8 p.m. on Monday.  The unit lieutenant reviews the commissary slips prior to being submitted to the Commissary.  Commissary items will ordinarily be delivered on Tuesday.

**K.**    **Barber Services** - Haircuts are provided to the inmates monthly.  Inmates will be notified when the barber is expected in the unit.  Inmates must provide an "Inmate Request To Staff Member" to the Officer-In-Charge no less than twenty-four (24) hours prior to the date the barber is scheduled to cut hair.  Ordinarily, inmates will not receive a haircut unless they have submitted an "Inmate Request To Staff Member."  Exceptions will be approved by the unit lieutenant.

**L.**    Personal property is limited to those articles listed in the local Institution Supplement on Inmate Personal Property.  It is the inmate's responsibility to maintain his property in accordance with local guidelines.  Excess property is considered contraband and will be confiscated regardless of whether or not the items were purchased through authorized means, e.g., commissary.  Staff will attempt to resolve any incoming property issues during the unit A&O process.

**M.**    Inmates in Phases One and Two of the Special Security Unit Program will consume their meals in their cells.  Inmates in Phase Three of the Special Security Unit Program will consume a minimum of one meal on the range.

**N.**    Showers are located on the ranges.  The inmates will receive a minimum of three showers per week.

## IV.    SPECIAL SECURITY UNIT PROGRAM (PROGRAM)

### A.    PURPOSE & SCOPE

**1.**    At the discretion of the Program's Screening Committee, as inmates in H-Unit demonstrate periods of clear and positive

Ex. A

institutional adjustment, they may receive increased privileges.

2.  The Program is a three-phase program. The types of privileges afforded to these inmates are determined by the phase. The three phases and corresponding privileges are as follows:

    a.  **Phase One** - This phase is the baseline phase of the program. An inmate in this phase may be permitted two non-legal telephone calls per month; restricted access to art and hobby craft items; access to a restricted commissary list; and escorted shower time on their respective range three times each week.

    b.  **Phase Two** - An inmate in this phase may be permitted three non-legal telephone calls per month; access to an expanded commissary list; access to expanded art and hobby craft items; and unescorted shower time on their respective range five times a week.

    c.  **Phase Three** - The advancement of an inmate to this phase may be contingent upon a modification being made to the inmate's SAM. An inmate in this phase may be permitted four non-legal telephone calls per month; to consume a minimum of one meal on the range with up to three other inmates; continued access to the expanded art and hobby craft items; access to a further expanded commissary list; and out-of-cell recreation on the range with up to three other inmates. Out-of-cell recreation will include the use of the outdoor, single occupancy recreation areas and unit range. The inmate will be allowed on the range for a minimum of one and one-half hours each day. The inmate may shower at any time he is on the range.

3.  Every inmate housed in H-Unit has the opportunity to demonstrate he may be afforded additional privileges.

4.  An inmate's advancement to the next phase of the Program is a classification decision as to whether the inmate can function with additional privileges without: posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety.

5.  If the Program's Screening Committee determines additional time is needed to assess an inmate's compliant behavior to ensure that, when placed in the next phase, the inmate will not: pose a risk to institution security and good order; pose a risk to the safety and security of staff, inmates or others, including the inmate himself;

and/or pose a risk to public safety with the additional privileges, the inmate's advancement to another phase of the Program may be deferred.

**B.    REFERRAL & ELIGIBILITY FACTORS** - The unit team will review each inmate to determine eligibility for consideration for advancement to the next phase of the Program. The review will be conducted in connection with regularly scheduled Program Reviews. These meetings are generally referred to as "team" and the inmate is present. These meetings are held at least once every six months. Team meetings give staff and inmates the opportunity to discuss issues in an open format. This is the inmate's opportunity for individual attention and he is encouraged to ask questions and discuss concerns about his advancement in the Program.

1.    **Eligibility** - Ordinarily, an inmate must meet the following factors to be eligible for consideration for advancement to the next phase of the Program:

a.    A minimum of 12 months clear conduct while housed in the unit, in the respective phase.

b.    Active participation in and completion of all programs recommended by the unit team;

c.    Positive behavior and respectful conduct towards staff and other inmates;

d.    Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation, etc.

2.    **Referral** - The inmates who the unit team determines are eligible for advancement to the next phase will be referred to the Program's Screening Committee for consideration.

**C.    REVIEW PROCEDURE**

1.    The Program's Screening Committee (Committee) will review each inmate referred by the unit team to determine whether the inmate can function successfully with additional privileges without: posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety.

2.    The determinations made by the Committee are made on a case-by-case basis.

3.    Eligibility for consideration does not equate to appropriateness for advancement to the next phase of the Program.

FLM 5321.07(3)G          Special Security Unit Program (H-Unit)          Page 6

4.  The advancement of an inmate to Phase Three of the Program may be contingent upon a modification being made to the inmate's SAM.

5.  The composition of the Committee will ordinarily consist of the Warden, Associate Warden, Captain, Special Investigative Agent, Case Management Coordinator, Unit Manager, Psychologist, and Supervisory Attorney.

6.  The factors the Committee may consider when determining whether the inmate can safely function with additional privileges without: posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety, include, but are not limited to:

    a.  The inmate's conduct while housed at the ADX;

    b.  The inmate's participation in and completion of programs recommended by the unit team while housed at the ADX;

    c.  The inmate's behavior and conduct towards, and interaction with, staff and other inmates while at the ADX;

    d.  The inmate's overall institution adjustment, personal hygiene, and cell sanitation while at the ADX;

    e.  The reason(s) the inmate was designated to the ADX;

    f.  The inmate's criminal history;

    g.  The inmate's involvement with criminal organizations, if any, and the potential safety and security threat(s) implicated by such involvement;

    h.  The inmate's overall adjustment during his history of confinement;

    i.  The institution's safety and security needs, including the safety and security of staff;

    j.  The safety and security needs of the inmate;

    k.  The safety and security needs of other inmates;

    l.  The safety and security needs of the public;

**m.**    Any other relevant factor(s).

7.    The review by the Committee is not a hearing.  The inmate is not entitled to be present, to have counsel, or to call witnesses. As mentioned, the inmate may present issues concerning his advancement during his Program Reviews.  This is the inmate's opportunity for individual attention and he is encouraged to ask questions and discuss concerns.

8.    The final decision regarding advancement to the next phase of the program is made by the Warden.

9.    The unit manager will inform each inmate of the decision.  If the inmate is denied advancement to the next phase of the Program, the applicable Associate Warden will notify the inmate in writing. The notification will include the following:

    **a.**    The reason(s) for the denial, unless it is determined that the release of this information could pose a threat to individual safety, or institutional security, in which case that limited information may be withheld; and

    **b.**    The inmate may appeal the decision through the Federal Bureau of Prisons' Administrative Remedy Program.

10.    The denial of an inmate for advancement to the next phase of the Program does not preclude the Committee from exercising its discretion to reach a different conclusion at a future review. Provided the inmate meets the eligibility factors, the unit team will recommend the inmate for review and the inmate will be reviewed by the Committee at least every six months.

## D.    REMOVAL

1.    Inmates may be removed from any phase of the Program for the following reasons:

    **a.**    If the inmate is found guilty of committing prohibited acts by the UDC or DHO;

    **b.**    If the inmate can no longer safely function with additional privileges without: posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety, based on the factors set forth in Part C.6 above.

2.    The final decision regarding removal of an inmate from any phase

of the Program is made by the appropriate Associate Warden.

3.  The circumstances may require the inmate to be immediately removed from the particular phase of the Program.

4.  If an inmate is removed from any phase of the Program, a recommendation will be made by the unit team as to which preceding phase the inmate should be placed. The determination will be made on a case-by-case basis. However, inmates who are removed from a phase and found guilty by the DHO for greatest severity level incident reports (100 series) or high severity level incident reports (200 series) will be removed from the phase of the Program and subsequently assigned to Phase One.

5.  The inmate will receive written notice that he is being removed from a phase of the Program. The notice will contain the reason(s) for removal, unless it is determined that the release of this information could pose a threat to individual safety or institutional security, in which case that limited information may be withheld. The notice will also include the recommendation of the unit team. The inmate will have the opportunity to submit a written statement for consideration regarding whether his removal from the phase of Program is warranted and the recommendation of the unit team.

6.  The inmate will receive written notice of the decision. The written notice will include the reason(s) for the decision, unless it is determined that the release of this information could pose a threat to individual safety or institutional security, in which case that limited information may be withheld. The notice will also notify the inmate that he may appeal the decision through the Federal Bureau of Prisons' Administrative Remedy Program.

**DISTRIBUTION:**

**Directives Libraries**
**AFGE**



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
☒ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

*Florence, CO 81226*

Date

MEMORANDUM FOR    ALL CONCERNED

FROM:    Unit Manager

THROUGH:    Associate Warden

SUBJECT:    **Review of Special Administrative Measures (SAM) Inmate, Register Number**

The SAM for the above referenced inmate is set for renewal/expiration on or about _____. Please find attached a copy of the inmate's SAM and his input concerning renewal/expiration/modification of his SAM. Please review the attached material and provide any comments or recommendations in the section provided.

| | |
|---|---|
| Unit Manager | Comments |
| SIA | Comments |
| Captain | Comments |
| AW | Comments |
| AW | Comments |
| AW | Comments |
| Warden | Comments |

FLM 5321.07(3)G    Special Security Unit Program (H-Unit)    Attachment A

Ex. A

## RENEWAL OF SPECIAL ADMINISTRATIVE MEASURES (SAM)
## INMATE STATEMENT

Inmate Name: _____     Register Number: _____
Housing Unit: _____     Cell Number: _____

Date of Last SAM Renewal/Modification: _____

The Special Administrative Measures (SAM) implemented in your case, are set for expiration/renewal on or about _____.    Please provide any comments and/or recommendations concerning your SAM's possible renewal. **You are not limited to the section provided. You may attach continuation pages and documentation you want considered.** Your input will be forwarded to the Office of Enforcement Operations, United States Attorney's Office, and _____ (indicate FBI or ATF) for review and consideration in determining whether your SAM should be renewed and/or modified.

**Inmate Statement:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

FLM 5321.07(3)G        Special Security Unit Program (H-Unit)        Attachment B

Ex. A

# Exhibit
# B

## OFFICE OF THE FEDERAL PUBLIC DEFENDER
## SOUTHERN DISTRICT OF OHIO

**Capital Habeas Unit**
10 West Broad Street, Suite 1020
Columbus, OH  43215

Deborah L. Williams
Federal Public Defender

Phone: (614)469-2999
Toll Free: (877)217-4835
Fax: (614)469-5999

April 20, 2022

USP Florence – ADMAX
U.S. Penitentiary
PO Box 8500
Florence, CO 81226
ATTN:  Custodian of Records

Re:     Record Request for Kaboni W. Savage – Register# 58232-066

Dear Sir/Madam:

We represent Mr. Kaboni Savage in his federal habeas corpus proceedings. Mr. Savage currently is on death row in Florence, Colorado. I have enclosed a copy of the Order from the United States District Court for the Eastern District of Pennsylvania appointing my office—along with the Federal Public Defender for the Western District of Pennsylvania—as counsel for Mr. Savage.

I write to request all records pertaining to Mr. Savage in the possession of the BOP. Mr. Savage has been in BOP custody since 2003, including the Federal Detention Center in Philadelphia, the Metropolitan Correctional Center in New York City, USP Lewisburg, USP Atlanta, and ADX. These records should include, but not be limited to:

1.  Central File and Penitentiary Packet including sentence data, custody and classification records, progress reports, and transfer documents;

2.  Inmate quarters history including housing placement and history, Segregated Housing Unit placement history and housing reviews;

3.  Inmate Profile including any information pertaining to interest group management, and SIS security documentation;

4.  Central Inmate management information including separation notices;

April 19, 2022
Page 2

5. Disciplinary records including conduct/incident reports, hearing notes, and sanction reports;

6. Visitation history including legal and non-legal visitation logs/sign-in sheets, all versions of approved visitor lists (legal and non-legal), all requests for visitation and denials of visitation;

7. Inmate phone account history, including call details, requests to add telephone numbers, approved phone number lists, denial slips, any transcripts or recordings of phone calls;

8. Programming records including educational history, testing (psychological or placement), programming certificates, admittance to programming, requests for programming and denials of programming;

9. All inmate Administrative Remedy reports including all BP-9's, BP-10's and BP-11's filed by Mr. Savage;

10. Medical records including but not limited to treatment history, diagnoses, treatment plans, attending physician notes, prescriptions, testing and outcomes, x-rays, urine tests, CAT scans, skeletal surveys, surgical records, chart notes, medical records obtained from another treatment provider or any contact with hospital or medical staff;

11. Psychological records including psychological or psychiatric notes, interview notes, recommendations, treatment plans, medication history, evaluations and any records received from outside treatment providers;

12. All inmate records maintained within PARACON, SENTRY and TRUINTEL databases; and

13. All records maintained by your institution regarding Mr. Savage, including records received by your facility from previous terms of incarceration.

Ex. B

April 19, 2022
Page 2

To assist you in locating these records, Mr. Savage's **Register# 58232-066,** his birthdate is **1/1/1975** and the associated Social Security number is **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**.

Mr. Savage has signed an authorization for the release of all BOP records, which I have enclosed, along with a Certification of Identity as required by the Bureau of Prisons.

If records are located, please indicate the name of your agency's custodian of records, as it may be necessary to have the authenticity of the documents verified. **Also, please certify the records as a complete and accurate copy of the originals.** If you do not have a standard method for doing so, please use the enclosed form.

If there is a cost for providing these records, please notify me in advance. Because Mr. Savage is indigent and because my office operates under the United States Courts, I kindly request a fee waiver or reduction.

Please send the records to:

>  **Office of the Federal Public Defender**
>  **Southern District of Ohio**
>  **ATTN:  Taunya Batista, Mitigation Specialist**
>  **10 West Broad Street, Suite 1020**
>  **Columbus, Ohio 43215**

Alternatively, the records can be emailed to me at Taunya_Batista@fd.org.

Thank you very much for your assistance in this important matter. If you have any questions, please do not hesitate to contact me at my direct number below.

Sincerely,

Taunya Batista
Mitigation Specialist
Capital Habeas Unit
(614) 469-4140
Taunya_Batista@fd.org

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:07-cr-00550-RBS |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KABONI SAVAGE, | ) | Hon. R. Barclay Surrick |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## ORDER

AND NOW, this 3rd day of September, 2021, upon consideration of Kaboni Savage's

*Motion for Appointment of Counsel*, it is hereby

ORDERED as follows:

1. Kaboni Savage's motion is GRANTED.

2. The Federal Public Defender's Office for the Western District of Pennsylvania and the Federal Public Defender's Office for the Southern District of Ohio are hereby appointed to represent defendant Kaboni Savage in post-conviction proceedings, including the preparation of a motion under 28 U.S.C. § 2255.

Honorable R. Barclay Surrick
United States District Judge

Ex. B

DOJ Form 361-Certification of Identity

## Certification of Identity

**Privacy Act Statement.** In accordance with 28 CFR Section 166.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of US Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(I)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, US Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103?0016), Washington, DC 20503.

Full Name of Requester _____ Kaboni W. Savage

Current Address _PO Box 8500, Florence, CO 81226_

Date of Birth _____ 1/1/1975 _____ Place of Birth _____ Philadelphia, PA

Social Security Number _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_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5000.

Signature _Kaboni Savage_ _____ Date _1-19-22_

## Optional: Authorization to Release Information to Another Person (or organization)

(This portion is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person or organization.)

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_Office of the Federal Public Defender for the Southern District of Ohio, 10 W. Broad Street, Ste 1020, Columbus, OH 43215_

**Print or Type Name (and Organization, if applicable)**

1. Name of individual who is the subject of the record sought.
2. Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
3. Signature of individual who is the subject of the record sought.

FORM DOJ-361,
USNCB Website
Version, Original
form approved
OMB No. 1103-
0016

*last updated: 05/14/07*
*usdoj/usnch/lds*

file:///H|/DOJ%20Form%20361-Certification%20of%20Identity.htm (1 of 2)2/21/2008 2:25:33 PM

Ex. B

# FEDERAL PUBLIC DEFENDER
## SOUTHERN DISTRICT OF OHIO

*Website: www.fpd-ohs.org*

| Chiquita Center | One Columbus | Fifth Third Center |
|---|---|---|
| 250 East 5th Street, Suite 350 | 10 West Broad Street, Suite 1020 | One South Main Street, Suite 490 |
| Cincinnati, Ohio 45202 | Columbus, Ohio 43215 | Dayton, Ohio 45402 |
| Tel: (513) 929-4834 | Tel: (614) 469-2999 | Tel: (937) 225-7687 |
| Fax: (513) 929-4842 | Fax: (614) 462-5999 | Fax: (937) 225-7688 |

## AUTHORIZATION TO RELEASE MEDICAL/PSYCHOLOGICAL INFORMATION

To:  USP Florence - ADX          Re:  Kaboni W. Savage
     US Penitentiary            DOB:  1/1/1975
     PO Box 8500                SSN:  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
     Florence, CO 81226         Date:  April 20, 2022

I hereby authorize the use or disclosure of my health information as described below.  The above-listed individual or organization is authorized to make the disclosure.

I expressly authorize and request the above-named medical and/or mental health provider, in compliance with HIPPA and 45 CFR Section 164.508, to disclose my full and complete protected health information contained in my medical/psychological records maintained by said provider to the Office of the Federal Public Defender, Southern District of Ohio, Capital Habeas Unit.

### Persons/Organizations Authorized to Receive/Use

### PHI

The Office of the Federal Public Defender, Southern District of Ohio, Capital Habeas Unit.

### Purpose

I acknowledge and understand that the release of my medical/psychiatric/psychological records is for the purpose of the Office of the Federal Public Defender, Southern District of Ohio's representation.

### Protected Health Information

- All medical records, meaning every page in my record, including but not limited to office notes, face sheets, history and physical, consultation notes, inpatient, outpatient and emergency room treatment, all clinical charts, reports, order sheets, progress notes nurse's notes, social worker records, clinic records, treatment plans, admission records, discharge summaries, requests for and reports of consultations, documents, correspondence, test results, statements, questionnaires/histories, correspondence, photographs, videotapes, telephone messages, and records received by other medical providers.

- All physical, occupational and rehab requests, consultations and progress notes.

AUTHORIZATION TO RELEASE INFORMATION                                    1

Ex. B

- All disability, Medicaid or Medicare records including claim forms and record of denial of benefits.

- All employment, personnel or wage records.

- All autopsy, laboratory, histology, cytology, pathology, immunohistochemistry records and specimens; radiology records and films including CT scan, MRI, MRA, EMG, bone scan, myleogram, nerve conduction study, echocardiogram and cardiac catheterization results, videos/CDs/films/reels and reports.

- All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.

- All billing records including all statements, insurance claim forms, itemized bills, and records of billing to third party payers and payment or denial of benefits.

I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, and treatment for alcohol or drug abuse. I authorize the release or disclosure of this type of information.

This authorization is given in compliance with the federal consent requirements for release of alcohol and substance abuse records of 42 CFR 2.31, the restrictions of which have been specifically considered and expressly waived.

This information may be disclosed to and used by the following individual or organization:
Name: ___Office of the Federal Public Defender_____
Address: ___10 W. Broad Street, Suite 1020, Columbus, Ohio, 43215_____

I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provided my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire on the following date, event, or condition: _____. If I fail to specify an expiration date, event, or condition, this authorization will expire in two years.

I understand that the entity or person releasing records will not condition treatment, payment, enrollment or eligibility for benefits on the execution of this Authorization. I understand that the information used or disclosed as a result of this Authorization may be subject to redisclosure by the person or entity receiving such information, and thus no longer protected by the federal privacy regulations.

I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed, as provide in CFR 164.524. I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact my HIM director or privacy officer.

**AUTHORIZATION TO RELEASE INFORMATION**

2

Ex. B

Any facsimile, copy or photocopy of the authorization shall authorize you to release the records requested herein.  This authorization shall be in force and effect until two years from date of execution at which time this authorization expires.

_Kaboni Savage_

Signature of Patient  or Legal Representative

_12-9-21_

Date

Signature of Witness

If Signed by Legal Representative,
Relationship to Patient

AUTHORIZATION TO RELEASE MEDICAL INFORMATION                    3

## OFFICE OF THE FEDERAL PUBLIC DEFENDER
## SOUTHERN DISTRICT OF OHIO
**Capital Habeas Unit**
10 West Broad Street, Suite 1020
Columbus, OH 43215

**Deborah L. Williams**
**Federal Public Defender**

Phone: **(614) 469-299**
Toll Free: **(877) 217-4835**
Fax: **(614) 469-5999**

## AUTHORIZATION TO RELEASE INFORMATION

To: __USP Florence - ADX__      Re: __Kaboni W. Savage__
    __US Penitentiary__         DOB: __1/1/1975__
    __PO Box 8500__             SSN: __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__
    __Florence, CO 81226__      Date: __April 20, 2022__

You are hereby authorized to release to the Office of the Federal Public Defender all records or other documents currently in your possession. Their representative may examine and make copies of all of my medical records; psychological records; hospital records; Social Security records; financial records, including IRS tax returns; social service agency records; school records, including but not limited to teacher evaluations, grades, raw test data, evaluations of raw test data, intelligence testing records, counseling records, and health records; juvenile court records; foster care records; military records; prison, jail, and other federal, state, or local incarceration records; criminal case records, including but not limited to attorney and investigation files; court records; FBI and other federal, state, or local law enforcement records; medical records; psychotherapy records; birth or death certificates; or any other records he/she may deem necessary in his/her work on my behalf. You are authorized to discuss these records and any other matters concerning me with said representative and are asked to assist him/her on the current investigation.

This authorization includes release of information concerning background, testing, and treatment of drug and alcohol abuse, drug-related conditions, alcoholism, psychiatric/psychological conditions, Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC), and/or tests for antibodies to the AIDS virus (HIV).

AUTHORIZATION TO RELEASE INFORMATION                                    1

Ex. B

I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the entity or person responsible for disclosure. I understand the revocation will not apply to information that has already been released in response to this authorization. Unless otherwise revoked, this authorization will expire on the following date, event, or condition: _____.

If I fail to specify an expiration date, event, or condition, this authorization will expire in two years.

I understand that the information used or disclosed as a result of this Authorization may be subject to redisclosure by the person or entity receiving such information, and thus no longer protected by the federal privacy regulations.

I understand that authorizing the disclosure of this information is voluntary. I can refuse to sign this authorization. I understand I may inspect or copy the information to be used or disclosed, as provide in CFR 164-524. I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules.

Any facsimile, copy or photocopy of the authorization shall authorize you to release the records requested herein. This authorization shall be in force and effect until two years from date of execution at which time this authorization expires.

_____
Signature

WITNESS:

_____

_____
12-9-21
Date

**AUTHORIZATION TO RELEASE INFORMATION**                                                                    2

Ex. B

# CERTIFICATION OF RECORDS

Organization: _____

Re: _____

I certify that the records provided by my organization are, to the best of my knowledge:

- true and accurate copies of the originals,
- complete copies of all available material.

Sincerely,

(signature) _____ (date) ____/____/_____

(print name) _____

(position) _____

Ex. B

# Exhibit C



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_North Central Region_
_North Central Regional Office_
_Kansas City, KS  66101_

July 19, 2022

Taunya Batista
Federal Public Defender - Southern District of Ohio
10 West Broad Street
Suite 1020
Columbus, OH  43215                    Request Number: 2022-04465

Dear  Requester:

The Federal Bureau of Prisons (BOP) received the above-referenced Freedom of Information Act (FOIA) request wherein you seek expedited processing for records pertaining to Savage, Kaboni #58232-066.

The Department of Justice requires all requests for records be processed on a first-in, first-out basis. The four exceptions to this requirement are: "(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information; (iii) The loss of substantial due process rights; or (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e).

Your request meets the requirement to be processed on an expedited basis and will be expedited to the best of our ability. This request will be placed on the processing track ahead of other requests and processed as soon as practicable. Processing this request may take up to six months.

If you have any questions, please contact the undersigned or BOP's FOIA Public Liaison, Mr. Eugene Baime, at320 First Street NW, Room 924, Washington, DC 20534; ogc_efoia@bop.gov; or 202-616-7750 (phone). You can also check the status of your request online at http://www.bop.gov/PublicInfo/execute/foia.

Sincerely,

Mary A. Noland
Regional Counsel

Ex. C

# Exhibit

# D

# Federal Public Defender

### WESTERN DISTRICT OF PENNSYLVANIA

**Lisa B. Freeland**
*Federal Public Defender*

**Kirk J. Henderson**
*Supervisory Assistant
Federal Public Defender*

CAPITAL HABEAS UNIT
1001 LIBERTY AVENUE
SUITE 1500
PITTSBURGH,  PENNSYLVANIA 15222
phone: (412) 644-6565
fax: (412) 355-2505
website:  *http://paw.fd.org*

**Kathryn Bailey
Marshall Dayan
Ryan Norwood**

*Assistant Federal Public Defenders*

July 19, 2022

David E. Troyer, Assistant United States Attorney
Chief, Government Fraud, Healthcare Fraud, and Environmental Crimes
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

   Re: *United States v. Kaboni Savage*, 2:07-CR-00550-RBS

Dear Mr. Troyer:

   I am writing to request materials relevant to our investigation and preparation of Mr. Savage's 2255 motion. I have several specific requests based on our ongoing investigation and review of the record.

   First, I request that you provide government communication involving the Special Administrative Measures (SAMs) imposed and regularly renewed on Mr. Savage, including records of all communication between the U.S. Attorney's Office, FBI, and Office of Enforcement Operations (OEO) in the Department of Justice.  Insofar as there is any work product objection, I note the government placed this matter an issue at the sentencing trial by arguing Mr. Savage presented a risk of future dangerousness, and by specifically contending that the continuing imposition of the SAMs restrictions was uncertain and unpredictable.

   Second, I request you provide evidence relevant to Mr. Savage's alleged possession of CIM separatee data at FDC Philadelphia in March 2011, an incident which the government claimed at trial was evidence of his future dangerousness.  I would specifically direct you to a 302 of a 3/18/11 investigation, transcribed on 4/11/01, in which the BOP regional counsel Henry Sadowski informs Agent Lewis that the BOP would be conducting an internal investigation of the incident. We request all documentation of that investigation, which do not appear to be in Mr. Savage's BOP file or the discovery we have obtained from prior counsel.

Third, I request that you provide or help us locate a number of trial exhibits that we have been unable to locate in the file we received. We did find correspondence in the file between you and Barry Fisher dated December 20, 2017 about post-trial disclosure of trial exhibits. At that time, you noted that you were unable to find Government's Exhibits 109, 110, 111, 115, 193, 834, and 835. Please send me any of those that have been located. You also indicated that certain exhibits are boxes of raw telephone data that are too voluminous to copy—Exhibits 166 and 167. However, I require a copy of this material. We are unable to locate material meeting these exhibit descriptions in the pre-trial discovery; if this was turned over pre-trial please let me know in which discovery batch so that I can locate it. If it was not turned over pre-trial and you are unable to copy it, I can arrange for someone to take a portable scanner to the file location to scan it. Please let me know what method is preferable for you. Additionally, you indicated in the December 20, 2017 disclosure that you were not providing copies of some exhibits that were not introduced at trial. I am requesting copies of those documents, which include the following:

- Ex. 107 "'Lil Sis' paper w/ phone number (1B119)"
- Ex. 159 "Kaboni Savage prison mail (1B123)"
- Ex. 160 "Northington prison mail (1B121)"
- Ex. 161 "Dawud Bey prison mail (1B122)"
- Ex. 168 "Off. J. Silva report re '93 Olds"
- Ex. 170 "Lab Reports"
- Ex. 202 "Receipt for returned property: GMC van"
- Ex. 214 "BRT tax records for 1805 Tulpehocken Street"
- Ex. 239 "Kidada letter of 2/14/05"
- Ex. 214 "Inmate calling list for Kaboni Savage 3/25/01"
- Ex. 242 "Bail Receipt for Kaboni Savage 8/21/01"
- Ex. 243 "Letter—Rashaan Wright to Kaboni Savage 11/9/03"
- Ex. 244 "Letter—Ryan Welch to Kaboni Savage 1/10/04"
- Ex. 245 "2 Letters—Ossie Davis to Kaboni Savage 12/4/03 and 1/24/04"
- Ex. 247 "Letter—Richard Hewlett to Kaboni Savage 11/13/03"
- Ex. 249 "Letter—Dawud Bey to Kaboni Savage 6/3/03"
- Ex. 328 "P/R #2128955"
- Ex. 329 "P/R #2121244"
- Ex. 330 "Off. R. Rivera report"
- Ex. 608 "FIU report re guns and FCCs (P/O/ Flade)"
- Ex. 633 "P/R for gun clip (J. Burns)"
- Ex. 650 "Off. E. Colon report"
- Ex. 833 "Letters from P. Norvil (1B138)"
- Ex. 838 "Magnuson hand-drawn pie chart"
- Ex. 839 "Magnuson hand-drawn baseball diamond chart"

- Ex. 840 "Report re 718 Butler St. seizure"
- Ex. 850 "Last page of E. Coleman 10-13-04 statement"
- Ex. 964 "First superseding indictment of L. Lewis"
- Ex. 975 "Inventory of Pacifica"
- Ex. 1000 "Larry Harcum PSR"
- Ex. 1002 "Maggie Jimenez written statement"
- Ex. 1005 "Larry Harcum U.S. Navy records"
- Ex. 1006 "FBI 302 report re Harcum 4/13 interviews"
- Ex. 1007 "10/10/06 interview report of Harcum in Chester County"
- Ex. 1009 "Khalisa Henry twitter printout"

If these exhibits were already provided in pre-trial discovery, please identify the discovery batch so we can locate them.



Finally, I note the government has a continuing obligation to produce all exculpatory evidence in its possession that is favorable to the defendant regarding both the issue of guilt/innocence and the sentencing determination. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) ("the duty to disclose is ongoing"); *Imbler v.Pachtman*, 424 U.S. 409, 427 n.25 (1976) ("[A]fter a conviction the prosecutor . . . is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction.") (citing ABA CODE OF PROFESSIONAL RESPONSIBILITY § EC 7-13 (1969); ABA STANDARDS FOR CRIMINAL JUSTICE, PROSECUTION AND DEFENSE FUNCTION § 3.11 (1971)). To the extent the government is in possession of exculpatory evidence not yet disclosed, Mr. Savage is entitled to this evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States,* 405 U.S. 150, 153-56 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Kyles v. Whitley*, 514 U.S.419, 437 (1995); *Banks v. Dretke*, 540 U.S. 668 (2004).  "[T]he individual prosecutor has a

duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles* at 437. Where an investigation involves multiple prosecutorial and/or law enforcement offices, the duty to disclose extends to exculpatory information in the possession of any of the offices. *United States v. Risha*, 445 F.3d 298 (3d Cir. 2006).

As such, and to the extent any specific request is necessary for such evidence, I request you provide any evidence in the government's possession that has not been disclosed and that is material to the issues of Mr. Savage's guilt/innocence or his sentencing determination (including, for example, Mr. Savage's future dangerousness). This request includes evidence the government, or anyone acting on the government's behalf, has obtained since Mr. Savage's conviction.

I appreciate your attention to these matters. Please note that this is not an exhaustive or final list of requests regarding this enormous case in which our investigation is still ongoing.


Sincerely,

*Ryan Norwood*

Ryan Norwood
Assistant Federal Public Defender
Western District of Pennsylvania
412-644-6565

Ex. D