**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIM. NO. 07-550** |
| KABONI SAVAGE | : | |

**ORDER**

AND NOW, this       day of                  , 2023, upon consideration of the

defendant's Motion for an Order for Discovery Regarding Future Dangerousness, and the

Government's Response thereto, it is ORDERED that the defendant's motion is DENIED.

BY THE COURT:

_____
HON. R. BARCLAY SURRICK
*Senior Judge, United States District Court*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

                :         **CRIM. NO. 07-550**

KABONI SAVAGE            :

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT SAVAGE'S MOTION FOR DISCOVERY REGARDING FUTURE DANGEROUSNESS

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and David E. Troyer, Assistant United States Attorney for the district, respectfully files this Response in Opposition to the Defendant's Motion for Discovery Regarding Future Dangerousness (Dk. No. 1752), and requests that the Court deny the defendant's motion. In support of this response, the government represents as follows:

Defendant Kaboni Savage has filed the latest in what he promises will be a series of motions for discovery relating to his 2255 petition; this one asking for discovery related to his unfounded claims regarding the evidence presented by the government at trial regarding Savage's future dangerousness. His claims are frivolous and so is his motion. Moreover, they are part of a transparent strategy to (1) unnecessarily delay proceedings; and (2) improperly re-litigate the entire case. Thus, the motion should be summarily denied.

Savage seeks discovery in support of a 715-page motion he has filed in this case under 28 U.S.C. § 2255, which motion presents scores of objections to his conviction and sentence, and approximately 150 separate claims. Although the government will respond to that pleading in due course, these claims are all without merit, and many are entirely frivolous, and even rely on

false statements of fact. It is apparent, as the government will explain, that the extraordinary length and breadth of the motion does not reasonably seek to correct legal error, but rather is presented in service of the goal of delay that has long animated the defense filings in this case.

The requests for additional discovery appears based on that same goal. But in this case, during the prosecution itself, the government already exhaustively presented discovery regarding the items found in Savage's FDC cell. Likewise, the government has provided to all defense counsel and members of the defense team, as required, every Special Administrative Measures (SAMs) directive issued by the Attorney General. Indeed, as the SAMs come up for annual review, counsel frequently make submissions of their own in an attempt to prevent a renewal of the SAMs, which submissions are considered by the Department of Justice. Counsel knows this. Yet, they persist in this fallacious argument that the SAMs are entirely controlled by the U.S. Attorney's Office, which is simply not true, notwithstanding Savage's offering of a solitary snippet of testimony from a BOP Attorney who is not part of the decision-making process.

Future Dangerousness

Savage is correct that the government argued the non-statutory aggravating factor that Savage presented a risk of future dangerousness, in favor of seeking a death sentence. The evidence of future dangerousness was overwhelming, and largely consisted of the many cell bug recordings in which Savage vowed to kill more witnesses, their mothers, and their children. In large part, Savage put himself on death row through the statements he made, which consisted in part of the following:

"The fight don't stop till the casket drop." GX 1-L202-2.

"No witness, no crime." GX 1-232-1.

3

"By time of trial, everybody be dead . . . and we just getting started. The night's still young." GX 1-L3-1.

"Everybody gotta pay. Their kids, their Moms, nobody gets a pass." GX 1-L986.

"Nobody wants to be in that next house – when it's burning." GX 1-987-4.

"As long as I'm alive, I'm a get 'em." GX 1-L987-5.

Savage's current motion, however, focuses on two much less significant pieces of evidence discussed during the penalty phase: (1) evidence that Savage once possessed contraband BOP materials regarding other inmates; and (2) evidence that Savage would not necessarily spend his remaining years, if sentenced to life, in a jail cell under SAMs restrictions. Both items are conclusively true, beyond dispute, and require no further discovery.

Savage's Prison Contraband And Illicit Phone Calls

Savage had U.S. Bureau of Prisons papers showing where certain prisoners were housed. He was not permitted to have such papers. This evidence was fully documented and testimony of it properly admitted. Specifically, on March 7, 2011, 27 pages of "Sentry CIM clearance and separatee data" were found in Savage's cell at FDC-Philadelphia. These were provided in discovery well in advance of trial. See Discovery Batch #6/Disk 1/FBI 302s and Documents/82681 Vol. 18, item #11, provided on July 29, 2011. There were no "false impressions" created, and no Due Process violation. His claim that the government withheld these items from discovery is specious and conclusively proven false by the record.

Likewise, Savage's use of the FDC legal line to call civilian friends in unrecorded illicit contacts was well documented. He subverted SAMs restrictions by compromising an FDC guard, in order to use an unrecorded, unmonitored legal line to call friends and associates, including Kenneth Tuck, who had just gone to trial in state court as a murder defendant. GX 1202 and

4

1203, admitted on 5/21/13. There is no need for further litigation or discovery as to this conclusively proven fact.

The Special Administrative Measures (SAMs), Once Again

Savage began his penalty phase presentation with the claim that, if the jury would sentence Savage to a life sentence, he would spend the rest of his life in a concrete box. The government understandably elicited testimony to rebut that bold and mostly untrue statement, as there is no guarantee that Savage will be confined to ADX, let alone SAMs for the remainder of his life. Savage now accuses the government of "misleading" the jury, making the bold claim that the Assistant U.S. Attorneys somehow know, and even control, how Savage is housed and whether Savage will ever be released from SAMs restrictions. This claim is ludicrous.

As defense counsel well knows, SAMs restrictions are subject to renewal annually. In fact, they can be altered or amended more often as needed (and indeed, they have been). Counsel knows this because they receive an annual SAMs directive and must sign acknowledgments of those SAMs restrictions. They also well know that SAMs are not issued by U.S. Attorneys or Assistant U.S. Attorneys; rather, they are issued by someone designated on behalf of the Attorney General, after input from law enforcement agencies, the prosecutors, defense counsel, the Bureau of Prisons, and the Department of Justice's Office of Enforcement Operations. Even the inmate himself is invited to make a submission. Defense counsel know this because defense counsel frequently make requests for amendments as well as annual requests for the SAMs to not be renewed. These are all facts beyond dispute, and not requiring further discovery.

Savage now hangs his entire argument on one small snippet of recent testimony, in an unrelated case, from one BOP Attorney, taken out of context, in which that attorney perhaps

5

inartfully suggested that the process is controlled by the local U.S. Attorney. Based on this alone, Savage now seeks a plethora of memoranda and emails between prosecutors and other Justice Department officials. That request is unsupportable and, frankly, ridiculous.

At this point, even if taken at face value, Savage's request for discovery cannot be seen as anything more than a fishing expedition. Even describing the request as speculative is charitable. In any event, counsel has no need for, nor entitlement to, the items he now seeks, as they would not further the goals of Savage's 2255 petition.

Savage's motion underscores the recklessness and lack of fidelity to the truth that permeates his 2255 motion, making reckless allegations against the prosecutors, this Court, and his previous counsel. Some of those factual allegations are entirely fabricated, exceeding the boundaries of professionalism and ethical practice. Lacking any factual foundation, defense counsel should not now be permitted to go on some unlimited treasure hunt in search of material that does not exist, in order to justify unfounded claims and accusations.

Savage cites select portions of Rule 6 for Section 2255 Proceedings. However, Rule 6 makes it clear that "leave of court" is required for discovery: "A judge may, for good cause, authorize a party to conduct discovery . . . ." Rule 6(a). The Rule further states, "A party requesting discovery must provide reasons for the request. The request must also . . . specify any requested documents." Rule 6(b). Savage fails to show such a need.

There is simply no entitlement to discovery in this situation. It is settled that "mere speculation that a government file may contain *Brady v. Maryland* material is not sufficient to require a remand for an in camera inspection." *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985). "Unless defense counsel becomes aware that other exculpatory evidence was

withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final."

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (footnote omitted). *See also United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994); *United States v. American Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir. 1970) (defendant is not entitled to search government's files for *Brady* material simply on speculation that such material may exist). Savage's selected citation to Habeas Rule 6 is unavailing, as that rule states that a court "*may* authorize a party to conduct discovery," requires the defendant to submit "*reasons*" that establish "*good cause*" in order to obtain "*leave of court*" for discovery (emphasis added). Savage has utterly failed to satisfy those requirements.

Discovery has already been liberally given in this case at the pre-trial stage. Discovery at this stage of the proceedings is not a matter of right or entitlement. Indeed, there must be a showing of a need for particular information, and Savage plainly fails to make such a required showing. For these reasons, the motion for discovery should be summarily denied.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


_s/ David E. Troyer_                    /
DAVID E. TROYER
Assistant United States Attorney
Chief, Narcotics & Organized Crime

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed via ECF and via electronic mail, and was thus served on defense counsel:

Bridget L. Kennedy, Esquire
Assistant Federal Defender
bridget_kennedy@fd.org

Kathryn Bailey, Esquire
Assistant Federal Defender
kara_bailey@fd.org
Attorneys for Kaboni Savage

*s/ David E. Troyer                    /*
DAVID E. TROYER
Assistant United States Attorney

Date:  August 28, 2023