**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA           :           CRIMINAL NO. 07-550

v.                                 :

KABONI SAVAGE                      :

### ORDER

AND NOW, this        day of November, 2023, upon consideration of the motion of the government and any response from the defendant, the Court finds that by filing his motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, the defendant has waived his attorney-client privilege, work-product immunity, and any right to confidentiality to the extent necessary for his former counsel to respond to the allegations in his pending 2255 motion alleging ineffective assistance of trial counsel, learned counsel, and appellate counsel.

Accordingly, it is hereby ORDERED that:

1.      Trial counsel, learned counsel, and appellate counsel may discuss with the government their communications with Kaboni Savage insofar as they relate to (i) the issues that Savage raised in his motion under 28 U.S.C. §2255, and (ii) claims that trial counsel, learned counsel, and appellate counsel provided ineffective assistance. Trial counsel, learned counsel, and appellate counsel are likewise authorized to testify at any hearing, if necessary, and to provide affidavits if requested, as to such matters.

2.      This Court's prior order granting the sealing of Kaboni Savage's 2255 petition, made at his own request, does not limit government counsel in sharing that petition or its exhibits with prior defense counsel.

1

3.      To the extent that trial counsel, learned counsel, or appellate counsel believe it necessary to obtain further guidance regarding the scope of the disclosures contemplated by paragraphs 1 and 2 above, they may make an *ex parte* application to the Court for clarification.

BY THE COURT:

_____
HON. R. BARCLAY SURRICK
*Senior United States District Judge*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-550** |
| **v.** | : | |
| **KABONI SAVAGE** | : | |

**GOVERNMENT'S MOTION TO ESTABLISH THE WAIVER OF ATTORNEY-CLIENT
PRIVILEGE AND TO DIRECT THE PROVISION OF INFORMATION RELEVANT TO
THE DEFENDANT'S PENDING § 2255 MOTION**

The United States of America, through its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and David E. Troyer, Assistant U.S. Attorney, hereby moves the Court for an order establishing that the defendant has waived his attorney-client privilege, work product immunity, and confidentiality, to the extent necessary for his previous counsel to respond to the allegations in his pending 2255 motion, and to direct counsel's response to those allegations. In support of this motion, the government states the following:

1.      On May 9, 2012, a grand jury returned a 17-count fourth superseding indictment, charging this defendant with one count of racketeering conspiracy, 12 counts of murder in aid of racketeering, one count of retaliating against a witness by murder, and one count of using fire in the commission of a felony.1 Thirteen of these counts were capital counts, for which the Attorney General directed the government to seek the death penalty.

2.      On September 26, 2012, a jury trial commenced on the fourth superseding indictment. The trial jury was sworn on February 4, 2013.

---

1  Also charged, in Count 8, was witness tampering as to the Tybius Flowers murder, which count was later dismissed upon motion of the government.

3.      On May 13, 2013, the defendant was found guilty of all charges (Counts 1 through 7 and 9 through 17) in the fourth superseding indictment.

4.      On May 31, 2013, the defendant was sentenced by the jury to death on all 13 capital counts. On June 3, 2013, this Court formally imposed sentence. The defendant appealed, and separate counsel were appointed to represent him on his direct appeal.

5.      On August 11, 2020, the Third Circuit Court of Appeal affirmed the defendant's convictions and sentences, including all 13 death sentences. *United States v. Savage*, 970 F.3d 217 (3d Cir. 2020). On October 30, 2020, the Third Circuit denied Savage's petition for rehearing en banc.

6.      On March 29, 2021, the Supreme Court denied Savage's petition for writ of certiorari. Again, separate counsel were appointed to represent the defendant for the purpose of pursuing post-conviction relief.

7.      On May 15, 2023, the defendant filed a petition under 28 U.S.C. § 2255. That petition is 715 pages long, and is appended by 399 separate exhibits. Post-conviction counsel moved to have the petition and exhibits filed under seal, citing sensitive medical, psychological, and family matters raised in the petition, and other unspecified "privacy interests," which motion this Court granted. Nothing in the motion to seal addressed, or sought to exclude. any discussions between government counsel and trial counsel, learned counsel, or appellate counsel

8.      The 2255 petition alleges 31 "claims," appended to which are 399 exhibits, Motion at pp. 9-24, which claims post-conviction counsel divide into five separate genres of claims: (1) "denial of right to counsel" (Claims 1-4); (2) "ineffective assistance of trial counsel" (Claims 5-15); (3) "ineffective assistance of appellate counsel" (Claim 16); (4) "prosecutorial misconduct" (Claims 17-25); and (5) "other constitutional or statutory violations" (Claims 26-

2

31). Eleven of these claims contain multiple sub-claims, resulting in a total of approximately 161 claims. In addition to claims of ineffective assistance of counsel, Savage's post-conviction attorneys also make baseless claims of government misconduct in the form of *Brady*, *Giglio*, and discovery violations, judicial error, and other alleged violations of Constitutional rights, all of which can be conclusively proven to be false. Indeed, many consist of nothing more than pure fantasy on the part of the authors.

9.      Although no order has yet been entered directing the government to respond, government counsel has been diligently working on a response. Because many of the claims allege ineffective assistance of counsel, the government reached out to trial counsel (Messrs. Hoey, Sullivan, and Purpura), provided them a copy of the 2255 petition, and asked if they would be available and willing to speak to government counsel in preparation of a response and in anticipation of a hearing. All three (Messrs. Hoey and Purpura directly, and Judge Sullivan via his clerk) indicated they would be willing to do so.

10.      On October 20, 2023, undersigned government counsel sent an email to former trial counsel for the purpose of scheduling meetings and interviews with them in order to address the issues raised in the petition.

11.      On October 23, 2023, undersigned government counsel was informed, first from Mr. Purpura and then from Judge Sullivan's clerk, that they had been contacted by post-conviction counsel and were instructed to not speak to government counsel.[2] They both indicated that post-conviction counsel told them that (1) defendant Savage was not waiving his

---

2 Mr. Hoey has not yet responded to government counsel's request of October 20, 2023. Government counsel has not yet reached out to appellate counsel, as it is not clear that appellate counsel's testimony would be needed.

attorney-client privilege, (2) any discussion between trial counsel and government counsel would violate ethics rules, and (3) any discussion between trial counsel and government counsel would be a violation of the sealing order. All three such assertions are false and devoid of any legal basis. Moreover, instructions by post-conviction counsel to any witness advising that witness to not speak to government counsel would itself appear to run afoul of ethics rules. Mr. Purpura also added that, upon review of the Pennsylvania Rules of Professional Conduce and the ABA Model Rules of Professional Conduct, Formal Opinion 10-456, highlighted in a letter to him from post-conviction counsel, he would not be able to speak to government counsel without a court order.

12.     As a result of the above, the defendant's trial counsel have refused to meet with government counsel or discuss the case without an order from the Court.  In the absence of the ability to interview former counsel, the government cannot develop, and inform the Court about, the factual bases of its opposition to the motion.

13.     By virtue of having asserted the constitutional ineffectiveness of his prior counsel, the defendant has waived the attorney-client privilege, any work product protections, and the confidentiality of his former lawyers with regard to the topics he has placed in issue.

14.     Thus, the government requests that this Court enter an order permitting trial counsel, learned counsel, and appellate counsel to speak with the government, and to provide any supporting documentation, so that all counsel can address Savage's claims, and so the court can reach, a full and fair determination of the defendant's claims for relief. The government also requests that this Court enter a finding that neither the disclosure of the 2255 petition to trial counsel nor the discussion of the issues and claims raised therein constitutes a violation of the

4

Court's prior sealing order, as the people to whom these matters are discussed and disclosed are counsel of record.3

## Memorandum of Law

Citing, in part, ABA Formal opinion 10-456, the defendant's former attorneys have refused to meet with government counsel or discuss the case without an order from this Court. In the absence of the ability to interview former counsel, the government cannot fully develop and inform the Court about the bases of its opposition to the motion. The government thus files this motion to authorize former counsel to speak with the government, so that all counsel can address, and the Court can reach, a full and fair determination of the defendant's claims.

## I.    BY CHALLENGING THE EFFECTIVENESS OF HIS COUNSEL'S PERFORMANCE, SAVAGE HAS WAIVED PRIVILEGE AND CONFIDENTIALITY.

The government requests that the Court enter an order finding that the defendant has waived his attorney-client privilege with respect to matters relevant to the ineffective assistance claims. The law in this area is clear. By presenting a claim of ineffective assistance of counsel, the defendant has waived the attorney-client privilege with respect to any communication relevant to the claim. The Supreme Court established this rule long ago, in *Hunt v. Blackburn*, 128 U.S. 464, 470-71 (1888), stating, "When Mrs. Blackburn entered upon a line of defence

---

3  Indeed, attorneys Hoey and Purpura are still on the list of attorneys permitted to contact and communicate with Savage while under Special Administrative Measures (SAMs) restrictions, and Mr. Purpura has an up-to-date 2023 SAM affirmation on file. All counsel remain on ecf notifications for court filings in this case. Moreover, the sealing of the 2255 petition, while unnecessary and not based on any valid legal basis, was agreed to as an accommodation, based on the contention that the petition contains medical, psychological, and family-related claims that Savage and his family might find embarrassing. It was not meant to be both a sword and a shield, and certainly cannot be used to prevent the government from responding to the 2255 petition.

which involved what transpired between herself and Mr. Weatherford [her attorney], and respecting which she testified, she waived her right to object to his giving his own account of the matter." *Id*.

In its landmark decision in *Strickland v. Washington*, 466 U.S. 668 (1984), defining the parameters of an ineffective assistance claim, the Supreme Court recognized this reality, stating, "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Id.* at 691.

The Third Circuit has confirmed that a party waives the privilege by putting his attorney's advice in issue through a claim or defense, stating, "Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 864 (3d Cir. 1994). The Pennsylvania Rules of Professional Conduct are consistent with this principle, providing in Rule 1.6:

(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

. . . .

> (4) to establish a claim or defense on behalf of the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based on conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." Pa. R. Prof. Conduct 1.6(c)(4).

Id. Comment 14 to the Rule further explains:

> (W)here a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a

6

defense. The same is true with respect to a claim involving the conduct or representation of a former client.

Id., Comment 14.

Accordingly, every court to consider the matter has held that where, as here, a habeas petitioner asserts ineffective assistance of counsel, the privilege is then waived with regard to matters relevant to the claim. *See, e.g., Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) ("where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue."); *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) ("A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. . . . Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived."); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001); *United States v. Rishell,* 2002 WL

7

4638 at *7 n.18 (E.D. Pa. 2001) (Padova, J.); *United States v. McQuilken,* 2000 WL 1222151 at *3 (E.D. Pa. 2000) (Katz, J.).

A review of district court cases within the Third Circuit reveals a plethora of cases finding a waiver of the attorney-client privilege upon the filing of a 2255 petition alleging ineffective assistance of counsel. *United States v. Galletta*, 2023 WL 4565477 at *14 (E.D. Pa. July 17, 2023) (Smith, J.); *Brodie v. United States*, 2022 WL 2753457 (D. N.J. July 13, 2022); *Lacerda v. United States*, 2022 WL 2168244 at *1 (D. N.J. June 16, 2022), citing *Bittaker*, 331 F.3d at 716; *United States v. Rice*, 2020 WL 4015354 at *2-3 (M.D. Pa. July 16, 2020); *United States v. Boyle*, 2018 WL 6505526 at *3 (E.D. Pa. Dec. 11, 2018) (Bartle, J.); *Jones v. United States*, 2018 WL 429227 at *2-3 (D. N.J. Jan. 16, 2018); *United States v. Rishell,* 2002 WL 4638 at *7 n.18 (E.D. Pa. 2001) (Padova, J.); *United States v. McQuilken,* 2000 WL 1222151 at *3 (E.D. Pa. 2000) (Katz, J.).

The Tenth Circuit stated, as "ample, unanimous federal authority on point," that the law is clear that, when a defendant in a criminal case files a motion attacking the effectiveness of his prior attorney's representation, he necessarily waives the attorney-client privilege with respect to those aspects of his former attorney's representation relevant to prove or disprove his claim. *Pinson*, 584 F.3d at 977-78 ("[w]hen a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."); *In re Lott*, 424 F.3d 446 (6th Cir. 2005); *Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001); *Tasby v. United States*, 504 F.2d 332 (8th Cir. 1976); *Laughner*, 373 F.2d at 327.

8

The rationale for this clear rule, often called the "fairness principle," is that by injecting questions about his lawyer's performance into the case, the defendant has foreclosed himself from withholding information relating to those same aspects of his lawyer's representation. "The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Giordano v. United States*, 2011 WL 1831578, *2 (D. Conn. 2011), *citing Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992). This implied waiver is limited by the same fairness principles that gave rise to its creation in the first place. Thus, the waiver is not absolute, but applies only to the extent that it is "needed to litigate the claim of ineffective assistance of counsel in federal court." *Bittaker*, 331 F.3d at 722.

The defendant's implied waiver "applies equally to the work product privilege, a complementary rule that protects many of the same interests." *Bittaker*, 331 F.3d at 722 n.6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)); *accord, Owens v. Office of Dist. Attorney for Eighteenth Judicial Dist.*, 896 F.Supp.2d 1003, 1015 & n.8 (D. Colo. 2012); *Barrett v. United States*, 2009 WL 2982670 at *5 (E.D. Okla. 2009) ("[T]his Court finds Petitioner has impliedly waived his attorney client and/or work product privileges but this waiver is limited to claims of ineffective assistance of counsel claims as raised in the § 2255 motion.").[4]

---

[4] Indeed, defendant could not properly object to the disclosure of his former counsels' work product. "[T]he protection stemming from the work product doctrine belongs to the professional, rather than the client." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994). *Accord, Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011) ("Distinct from the attorney-client privilege, the work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation.")(citing *Hickman v. Taylor*, 329 U.S. 495, 509–14 (1947)).

ABA Formal Opinion 10-456 does not add any impediment to the release of information from the defendant's former counsel. As an initial matter, that opinion, like all ABA opinions, is "not binding authority on this court." *Dunlap v. United States*, 2011 WL 2693915 at *1, n.4 (D. S.C. 2011), *citing Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.,* 213 F.R.D. 422, 430 (D. Kan. 2003). Moreover, even if ABA opinions were binding, a court order directing compliance would fulfill any obligations that former counsel might have under that opinion. *Dunlap*, 2011 WL 2693915 at *1, n.4*; Rudaj v. United States*, 2011 WL 2610544 at *1, *3 (S.D.N.Y. 2011); *Belcher v. United States*, 2012 WL 5386564 at *2 (S.D. W. Va. 2012).

More fundamentally, however, ABA Opinion 10-456 at once underrates the integrity of the counsel appearing before this Court, and undervalues the interests of justice served by the fairness principle. Although ABA Opinion 10-456 recognizes that a claim of ineffective assistance of counsel operates as a waiver of privilege with regard to matters relevant to the defendant's claim, it nonetheless insists that lawyers whose actions are called into question may not respond absent direction from the court.[5] The ABA commentary implies that former counsel

---

[5]  Formal Opinion 10-456 actually suggests that lawyers may only respond in the presence of active judicial supervision, such as by testimony under oath. However, federal judicial opinions have rejected this view out of hand, frequently directing former counsel to respond by way of affidavit or even informal interview with the government. *Dunlap*, 2011 WL 2693915 at *1, n.4 (rejecting Opinion 10-456 and ordering former counsel to file affidavit); *Giordano v. United States*, 2011 WL 1831578 at *3 (D. Conn. 2011) (acknowledging Opinion 10-456, but ordering former counsel to be interviewed by the government); *Rudaj v. United States*, 2011 WL 2610544 at *1 (S.D.N.Y. 2011) (citing Opinion 10-456 and ordering former counsel to file affidavit); *Belcher v. United States*, 2012 WL 5386564 at *3 (S.D. W.Va. 2012) (citing Opinion 10-456 and ordering former counsel to file an affidavit); *Talouzi v. United States*, 2012 WL 3778848 at*2-3 (S.D. W.Va. 2012) (citing Opinion 10-456 and ordering former counsel to file an affidavit);
   Other courts, without citing Opinion 10-456, have likewise required former counsel to prepare affidavits or engage in informal discussions with the government. *Dible v. United States*, 2010 WL 2652202 at *2 (N.D. Iowa 2010) (former counsel ordered to cooperate with government and provide information, documents and/or affidavit); *Hayes v. United States*, 2009 WL 2071244 at

cannot be trusted to determine what disclosures are genuinely needed to respond to the claims of ineffective assistance. In making this argument, however, the ABA ignores that fact that counsel are frequently called upon to make precisely these kinds of judgments. Whether compiling privilege logs, or making strategic disclosures of harmful information to "take out the sting," defense counsel are often called upon to judge the probative value of a piece of evidence against the boundaries of a privilege. Given the universally accepted doctrine of implied waiver, the disclosures called for in response to a section 2255 motion are, by definition, of non-privileged material. Thus, the same counsel who zealously guarded a defendant's privileged material during the course of the representation, is more than competent to determine which non-privileged but confidential material needs to be disclosed to ensure a full and fair airing of the claims. *See Giordano*, 2011 WL 1831578 at *3 ("Thus, it will largely be left up to Mr. Giordano's former counsel and the Government to determine whether particular information has or has not been waived.").[6]

Likewise, the ABA's suggestion that defense counsel's self-interest in establishing the facts underlying a claim of ineffective assistance will unduly color counsel's professional judgment does a disservice to the integrity of counsel who are not only officers of the Court, but who stand subject to an overriding obligation to selflessly place their clients' interests above their own. Indeed, defense counsel are universally trusted to subordinate their far more direct financial interests to their clients' needs when they are directing the course of the defense.

---

*1 (E.D. Mo. 2009) (former counsel ordered to provide information to Assistant U.S. Attorney); *United States v. Lossia*, 2008 WL 192274 (E.D. Mich. 2008) (ordering that government is permitted to interview former counsel).

[6] Should former counsel have any doubt about how far the defendant's waivers of confidentiality and privilege extend, they may seek clarification from this Court *ex parte*.

As unseemly as the ABA's denigration of the reliability of the members of the defense bar may be, its refusal to recognize the important interests served by prompt disclosure threatens far greater harm. According to the ABA, limiting disclosure of non-privileged material to a testimonial setting adequately protects the judicial process by assuring that the required information is ultimately provided to the decisionmaker. This conclusion rests on the unstated premise that all habeas cases in which former counsel's evidence would be helpful will entail a testimonial hearing. This premise fails for reasons both legal and practical.

The federal rules governing the resolution of habeas cases explicitly contemplate that affidavits will be submitted and considered in resolving the Section 2255 motion. *See* Rule 7(a) of Rules Governing Section 2255 Cases; *Dunlap*, 2011 WL 2693915 at *1, n.4. The federal courts resolve tens of thousands of habeas and Section 2255 cases each year. *Giordano*, 2011 WL 1831578 at *3. As the Supreme Court has instructed, the availability of affidavits, along with other procedural devices, renders even habeas allegations that are not facially without merit subject to disposition without the necessity of a hearing. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). The ABA would strip this Court of the authority granted it by the Rules and the Supreme Court if Opinion 10-456 were followed, as virtually every case would require an adjudicative hearing, for only then would the former counsel's information become known.

At the same time that the ABA seeks to impose on this Court a duty to hold a multiplicity of unnecessary hearings, it would also require that those hearings be unduly prolonged. If followed, Opinion 10-456 would mandate that government counsel conduct the questioning of the defendant's former attorney without knowing what that lawyer had to say. Not only would this transform Section 2255 hearings from limited proceedings targeted at specified factual issues

12

into virtual depositions, used to explore the nuances of the former attorney's representation. Even then, there would be no guarantee that pertinent information, critical to this Court's just resolution of the issues, would not be neglected because counsel simply did not know to ask the right question.

These practical considerations have led district courts across the country to reject the strictures suggested by Opinion 10-456. For example, in *Dunlap*, the petitioner opposed the government's motion seeking to compel the defendant's former counsel to submit an affidavit addressing the defendant's claims of ineffective assistance of counsel. *Dunlap*, 2011 WL 2693915 at *1. Relying on Opinion 10-456, the defendant argued that his former counsel should only provide information at an evidentiary hearing. *Id*. The district court found Opinion 10-456 unconvincing for several reasons, including the fact that affidavits are far less cumbersome than testimonial hearings.  *Id*. at n.4.

Likewise, although citing Opinion 10-456, the district court in *Giordano* concluded that "[i]t would be highly impractical to require federal district court judges in each and every one of those cases to directly supervise every interaction between the Government and the attorney who allegedly provided ineffective assistance to his former client." *Giordano*, 2011 WL 1831578 at *3. Holding that it would not be the first, the court expressed the view that "no federal court has ever required that Government counsel's interview with a prisoner's former counsel in the context of an ineffective assistance of counsel claim be on-the-record." *Id*. *See also Talouzi v. United States*, 2012 WL 3778848 at *2 (S.D. W. Va. 2012) (ordering defendant's former counsel to discuss allegations of ineffectiveness with the government despite Opinion 10-456).[7]

---

[7] Although issued prior to Opinion 10-456, other district court opinions have recognized the

As these courts have recognized, the interests of judicial economy, as well the integrity of the fact-finding process, demand that the government as well as the defendant have access to all information pertinent to the claims of ineffectiveness of counsel. Most ineffectiveness claims have a factual as well as a purely legal dimension. As a consequence, the court's ability to render a complete decision is enhanced when both advocates have access to the relevant underlying facts. However, even with respect to those claims that fail as a matter of law, a former counsel's information may still be important. The government is entitled to present any legitimate arguments in opposition to a defendant's ineffectiveness claim, just as a court is entitled to decide a claim on any of multiple available grounds. Indeed, what might be a conclusive legal argument today might be rendered irrelevant by subsequent developments in the case law. Neither the parties nor the Court should be required to await multiple rounds of discovery in order to finally resolve a claim of ineffectiveness when all relevant information can and should be turned over to the government in a single round. Having chosen to attack the propriety of all of his former counsels' performance, Savage cannot stand in the way of a full and fair development of the factual record. As the Supreme Court recognized, an "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

---

strong practical interest in making former counsel available to the government for interview. *Hayes v. United States*, 2009 WL 2071244 (E.D. Mo. 2009) ("the only way the government can respond to them (and the court can decide them) is to find out what counsel says about these same communications."); *United States v. Lossia*, 2008 WL 192274 (E.D. Mich. 2008) (acknowledging government's need for information and permitting former counsel to be interviewed by the government).

II.   **DEFENDANT'S SECTION 2255 MOTION HAS CALLED INTO QUESTION
THE EFFECTIVENESS OF HIS FORMER COUNSEL'S REPRESENTATION.**

Savage's many allegations call directly into question the competence of former counsel, and the contents of that counsel's communications with the defendant. Because the defendant's waiver of his right to collateral review is a threshold issue, in order to provide the Court with a complete response to the defendant's pending Section 2255 motion, the government needs to interview his former counsel.

The Court cannot determine whether Savage's trial counsel were ineffective without hearing from them about the nature and extent of their investigation, their strategic decisions in which witnesses and what evidence to present, and what strategies to employ in defending the case and in attempting to mitigate the substantial evidence in the penalty phase. The Court certainly cannot reach a fair determination of these issues without hearing from counsel.

Likewise, the government cannot state its position and defend these scurrilous accusations without consulting with counsel. Many of the issues Savage now raises deal with allegations of what trial counsel and learned counsel did or did not know, and did or did not do, as well as what witnesses were or were not interviewed. These are matters that are inherently outside the knowledge of government counsel, although the reasons for strategic decisions in many of these cases seems apparent.

It is unfair to the Court, the government, and the public in general to allow Savage to lob baseless allegations and then block any defense to them and any fair adjudication of them. Indeed, were he be allowed to do so, there is literally no conviction or sentence that could ever stand.

15

## III.    THE SEALING ORDER IS INAPPLICABLE.

Assuming that the account of trial counsel is true, post-conviction counsel's citing to the sealing order in this case, in an attempt to block communications between trial counsel and the government, is an abhorrent and disingenuous argument that teeters on the brink of an ethical violation. Savage sought an order to seal his 2255 petition and exhibits, arguing that the petition and exhibits contained materials dealing with medical, psychological, and family matters that could be embarrassing to Savage and his family. While viewing sealing as unnecessary, the government did not oppose the motion out of courtesy to Savage and his counsel. However, such a sealing order was not directed to the government's discussions with witnesses, particularly *counsel of record* in this case. Had that been the nature and intent of the motion and order, then the government would clearly have opposed it, and this Court would surely have denied it.

Simply put, post-conviction counsel cannot use a sealing order as a sword, instead of a shield. It simply defies logic to contend that prior counsel cannot be advised of the many claims made against them alleging ineffective assistance of counsel. This is particularly so in this case, where the allegations are so extreme so as to depict trial counsel, learned counsel, and appellate counsel as bumbling buffoons who did little to nothing right in this case. In fact, nothing could be further from the truth. Trial counsel, learned counsel, and appellate counsel were experienced, seasoned professionals who vigorously defended Savage, as this Court undoubtedly observed.

Government counsel sincerely hopes that post-conviction counsel did not go so far as to instruct trial counsel to not speak to government counsel. If so, this would be an egregious violation of ethical rules of which every lawyer must be aware. *See, e.g., Wabote v. Ude*, 2022 WL 684844 (E.D. Pa. Mar. 8, 2022) (Leeson, J.).

16

## IV.   CONCLUSION

To respond to the defendant's claims of ineffectiveness against his former trial counsel, learned counsel, and appellate counsel, the government needs to learn those facts uniquely within the scope of their knowledge. For these reasons, the government requests that the Court permit it to interview them, and that the Court further direct each counsel to provide documentation to government counsel, as requested, in response to each of the claims of ineffective assistance of counsel.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s David E. Troyer*
DAVID E. TROYER
Assistant United States Attorney
Chief, Narcotics & Organized Crime
Eastern District of Pennsylvania

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's

Motion for an Order to establish the waiver of privilege and to direct the provision of

information relevant to the defendant's pending 2255 motion has been served via electronic court

filing (ecf), upon counsel for defendant listed below:

Ryan Norwood, Esquire
Kathryn Bailey, Esquire
Assistant Federal Defenders
Western District of Pennsylvania
ryan_norwood@fd.org
kara_bailey@fd.org

Bridget L. Kennedy, Esquire
Natalie Olmstead, Esquire
Assistant Federal Defenders
Southern District of Ohio
bridget_kennedy@fd.org
Natalie_olmstead@fd.org

Attorneys for Kaboni Savage

*s/ David E. Troyer*
David E. Troyer
Assistant United States Attorney

Date: November 2, 2023