**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. R. Barclay Surrick** |
| | ) | |
| **Defendant.** | ) | **Death Penalty Case** |

**RESPONSE TO GOVERNMENT'S MOTION TO ESTABLISH THE WAIVER OF
ATTORNEY-CLIENT PRIVILEGE AND TO DIRECT THE PROVISION OF
INFORMATION RELEVANT TO THE DEFENDANT'S PENDING § 2255 MOTION**

Kaboni Savage, through undersigned counsel, respectfully opposes the Government's

Motion to Establish the Waiver of Attorney-Client Privilege and to Direct the Provision of

Information Relevant to the Defendant's Pending § 2255 Motion. Doc. 1755. This response is

based on the points and authorities set forth below, as well as all prior pleadings in this case.

## I.   Introduction

In this capital case, the government sought to interview and obtain information from Mr.

Savage's former defense counsel without first seeking permission from this Court. Former counsel

declined to be questioned by the government, citing their ethical responsibilities. The government

now asks the Court to contravene an ABA Formal Opinion and the Pennsylvania Rules of

1

Professional Conduct and issue an order that would permit or perhaps force[1] Mr. Savage's counsel to engage in private conversations and share information with the government, outside the supervision of this Court.

The Court should deny this broad and improper request. As recognized by Mr. Savage's former counsel, by the ABA, and by numerous courts (including this Court), the extra-judicial contact sought by the government would be unethical. The government's request is also premature. The government has no right to demand interviews and documents outside of the discovery process contemplated for § 2255 proceedings and prior to filing a response to Mr. Savage's § 2255 motion.

The government also admits that when it engaged prior counsel, it contravened the Court's protective order by providing former counsel copies of Mr. Savage's § 2255 Motion. It now seeks retroactive permission to do what it already did. This request, too, should be denied.

II.     **This Court should follow the American Bar Association guidance, consistent with the weight of judicial authority, and hold that ineffective assistance of counsel claims do not authorize attorneys to divulge information relating to the representation to prosecutors outside of judicial supervision.**

A.     **Background**

On May 15, 2023, Mr. Savage filed a § 2255 Motion to Vacate raising numerous claims for relief, including claims of ineffective assistance involving his former trial and appellate

---

[1] Exactly what the government wants is unclear because the requested relief differs throughout its pleadings. At the beginning of its motion, the government asks for an order to "direct counsel's response" to "the allegations in his pending 2255 motion". Doc. 1755 at 3. Yet, in conclusion, it asks the Court to "permit" the government to interview counsel and to "further direct each counsel to provide documentation to government counsel, as requested." *Id.* at 17. The government's proposed order, however, states that former counsel "may" discuss with the government their communications with Mr. Savage. *Id.* at 1. As explained *infra*, any of these communications would be improper. Given the importance of the interests at stake here, the vagueness of the government's request is another reason why it should be denied.

attorneys. He has since filed several motions for discovery to further develop his claims, which the government has vociferously opposed.  *See* Doc. 1749-1754.

The government now represents that, at some point since the filing of Mr. Savage's § 2255 motion, it contacted three of Mr. Savage's former attorneys (Christopher Hoey, William Purpura, and now-Judge Timothy Sullivan), and claims that those attorneys initially stated they would be "available and willing to speak with the government counsel in preparation of a response and in anticipation of a hearing." Doc. 1755 at 3.  Notwithstanding the fact it was sealed by court order, the government also provided copies of Mr. Savage's § 2255 motion to former counsel. The government states that when it recently sought to schedule interviews with these attorneys, however, they either did not respond or declined to be questioned.  Doc. 1755 at 3-4.

The government complains that former counsels' decision not to divulge information resulted from communications from post-conviction counsel.[2] However, the government concedes that Attorney Purpura stated he also had independently reviewed both the Pennsylvania Rules of

---

[2] Without knowing what they entailed, the government several times insinuates that these communications were improper or even "an egregious violation of ethical rules." *See* Doc. 1755 at 6, 18. To support this accusation, it offers a single, inapposite civil case involving a media shield law where depositions already were underway. *Id.* at 18. The government does not recognize the fundamental difference between a lay "witness" and an attorney who has a continuing duty of loyalty to her former client. Moreover, current counsel for Mr. Savage has a *duty* to convey the assertion of those various privileges and duties, as only Mr. Savage can ever waive them. There is nothing untoward about undersigned counsel discussing the attorney-client privilege or continuing ethical duties with former counsel. *See* PRPC Preamble (12) ("Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.")

Professional Conduct and ABA Model Opinion 10-456 and determined that he should not participate in an interview. Doc. 1755 at 4.[3]

Only now that it has been rebuffed does the government reveal these communications to habeas counsel or the Court, demanding an order that would endorse—if not require[4]—prior counsel to participate in off-the-record interviews with the government, outside the presence of Mr. Savage's counsel and without any court supervision, so that the government may obtain information about their representation and communications with Mr. Savage, which the government will then seek to use against him in a response to his § 2255 motion.

**B.      Former counsel correctly have determined that they should not submit to unmonitored questioning by the government.**

Mr. Savage's trial attorneys know that ineffective assistance of counsel claims percolate in post-conviction proceedings and that such claims would be forthcoming in a capital case of this magnitude. Since the government already has provided them with the sealed § 2255 Motion, trial counsel also presumably are familiar with the precise claims Mr. Savage has raised. Even so, they correctly have declined to interview with the prosecutors seeking to execute their former client.

Prior counsel have a continuing duty of confidentiality under Pennsylvania Rule of Professional Conduct (PRPC) 1.6.  This duty is not limited to matters communicated in confidence

---

[3] Indeed, the federal district court in which Mr. Purpura primarily practices also adheres to ABA Formal Op. 10-456. *See, e.g., Steele v. United States,* 321 F. Supp. 3d 584, 589 (D. Md. 2018) ("While West claims that she "had to give this information" to the Government by virtue of Steele's § 2255 petition, *see* ECF No. 688 at 140–46, she is plainly incorrect…West's actions may have been in violation of the duty of confidentiality and the attorney-client privilege, and they color West's subsequent testimony as impetuous and self-serving.")

[4] See footnote 1, *supra*.

by the client, but broadly encompasses any "information related to representation of a client" which may not be disclosed without the client's "informed consent." PRPC 1.6(a).  This duty did not terminate when their representation ended. "A lawyer who has formerly represented a client in matter . . . shall not thereafter use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known." PRPC 1.9(c)(1). PRPC 1.6(c) states several circumstances where an attorney may reveal such information.  As is relevant here, the rule states:

> [a] lawyer may reveal such information to the extent that the lawyer reasonably believes *necessary* . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceedings against the lawyer based upon conduct in which the lawyer was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

PRPC 1.6(c)(4) (emphasis added).

Pennsylvania's Rules of Professional Conduct are based on the American Bar Association's Model Rules of Professional Conduct (*hereinafter,* ABA Model Rules), and the PRPC's relevant rules on confidentiality are identical to the ABA Model Rules. *Compare* PRPC 1.6(a) 1.6(c)(4) *with* ABA Model Rule 1.6(a) and 1.6(b)(5); *see also* PRPC Preamble [20].

The United States Supreme Court and lower courts regularly turn to and rely upon the American Bar Association's guidance on attorney performance standards, particularly counsel's compliance with the elevated duties owed to clients facing or under a sentence of death. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citing *Strickland*); *Rompilla v. Beard*, 545 U.S.

374, 387 (2005)[5]; *Outten v. Kearney*, 464 F.3d 401, 418 (3d Cir. 2006); *Hall v. Beard,* 55 F. Supp. 3d 618, 657 (E.D. Pa. 2014); *Morris v. Beard*, No. CIV.A. 01-3070, 2007 WL 1795689, at *17 (E.D. Pa. June 20, 2007), *aff'd,* 633 F.3d 185 (3d Cir. 2011). This Court also explicitly respects the American Bar Association's regulation of attorney misconduct. *See* E.D. Pa. LCvR XI (D) (directing Clerk to "promptly notify" the American Bar Association of "any order imposing public discipline upon any attorney admitted to practice before this court.")

In 2010, the ABA's Standing Committee on Ethics and Professional Responsibility issued a formal opinion on the application of these rules to the precise situation involved here: "whether a criminal defense lawyer whose former client claims that the lawyer provided constitutionally ineffective assistance of counsel may, without the former client's informed consent, disclose confidential information to government lawyers prior to any proceeding on the defendant's claim in order to help the prosecution establish that the lawyer's representation was competent." ABA Formal Opinion 10-456, at 1.

In its carefully reasoned, five-page opinion, the ABA explained why such contacts would almost never be permitted by the rules. The ABA, of course, did not prohibit former counsel from disclosing protected information "in a deposition, a hearing, or other formal judicial proceeding" with respect to an ineffectiveness claim, so long as "the court requires the lawyer to do so after adjudicating any claims or privilege or other objections raised by the client or former client." ABA Formal Opinion 10-456 at 2.  But it does not follow that a lawyer is entitled to disclose such

---

[5] Mr. Wiggins was convicted of capital murder in Maryland and Mr. Rompilla was convicted of capital murder in Pennsylvania, the same jurisdictions in which Mssrs. Hoey, Purpura and Sullivan are licensed to practice law.

information "outside the context of a formal proceeding," where the former client lacks the opportunity to raise objections that can be adjudicated by the Court. *Id*.

The ABA further explained why the exceptions in Model Rule 1.6(b)(5), *accord* PRPC 1.6(c)(4), do not apply to this situation. The "self-defense exception," allowing a lawyer to reveal information "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceedings against the lawyer based upon conduct in which the lawyer was involved," is inapplicable because a post-conviction motion is neither a criminal charge nor a civil claim raised against former counsel, nor is it a "legal controversy" between the client and former counsel.  ABA Formal Opinion 10-456 at 3-4.

Regarding the provision allowing a lawyer to "respond to allegations in any proceeding concerning the lawyer's representation of the client," the ABA focused on the requirement that the lawyer must reasonably believe such response is "necessary." An attorney, as such, may not "disclose all information relating to the representation" but only that information which "must be disclosed to avoid adverse legal consequences." ABA Formal Opinion 10-456 at 4. As the ABA explained,

> Permitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding. Disclosure of such information might prejudice the defendant in the event of a retrial. Further, allowing criminal defense lawyers voluntarily to assist law enforcement authorities by providing them with protected client information might potentially chill some future defendants from fully confiding in their lawyers.

7

ABA Model Opinion 10-486 at 4-5. The ABA was clear: "[a]gainst this background, it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable." *Id.* at 6. The ABA did not deny that a lawyer might have legitimate concerns about their professional reputation and accordingly believe it to be important to share information so that a court may fairly adjudicate a claim of ineffective assistance. *Id.* But "[t]his concern can almost always be addressed by disclosing relevant information in a setting subject to judicial supervision." *Id.* After all, "[i]n the generation since *Strickland*, the normal practice has been that trial lawyers do not disclose client confidences to the prosecution outside of court-supervised proceedings. There is no published evidence establishing that court resolutions have been prejudiced when the prosecution has not received counsel's information outside the proceeding. Thus, it will be extremely difficult for defense counsel to conclude that there is a reasonable need in self-defense to disclose client confidences to the prosecutor outside any court-supervised setting." *Id.*

The ABA's concerns about unnecessary disclosures are directly applicable to the unfettered contact with Mr. Savage's prior counsel the government now demands. Although Mr. Savage believes further discovery and an evidentiary hearing is necessary to fairly adjudicate the numerous claims in his motion, the Court has yet to make any determinations as to which of Mr. Savage's claims require additional fact-development. In this context, Mr. Savage's prior counsel cannot reasonably believe that unsupervised communication with the government is currently "necessary" to defend their interests. *See* ABA Formal Opinion 10-456 at 5 (noting that if any IAC claims are

dismissed on legal grounds, "the lawyer's self-defense interests are served without the need ever to disclose protected information.").[6]

Mr. Savage's § 2255 motion, moreover, is not limited to claims of ineffective assistance. He raises, for example, claims of government misconduct and violations of *Brady v. Maryland*, 373 U.S. 83 (1963), claims which the government is equally intent on investigating and refuting. But nothing in PRPC/ABA Model Rule 1.6 would authorize former counsel to assist in the government's investigation of such claims, which do not put their representation or advice at issue. *See In Re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (reversing a finding of implied waiver of attorney-client privilege against a client who raised a claim of actual innocence, when the claim "put neither the performance of his attorney nor the content of their confidential communications before the court."). The government's broad request for a waiver and the right to interview former counsel, however, makes no distinction between claims, seeks authorization to discuss any "issue" in Mr. Savage's 718-page Motion and proffers no limitations on what information the government might seek. *See* Doc. 1755 at 1 (government's proposed order authorizing disclosure of prior counsel's communications with Mr. Savage relating to "(i) the issues that Savage raised in his motion under 28 U.S.C. §2255, **and** (ii) claims that trial counsel, learned counsel, and appellate counsel provided ineffective assistance.") (emphasis added).

---

[6] A few months ago, the government asserted that "all" claims in Mr. Savage's Motion are "without merit," and called many "entirely frivolous." Doc. 1750 at 2. If the government is to be believed, there would be no need for prior counsel to speak with the government to defend themselves against such claims, or any need for the government to interview them prior to filing a response. This month, however, the government requires boundaryless access to counsel "in anticipation of a hearing." Doc. 1755 at 5. The government's opportunistic positions on Mr. Savage's claims to both block discovery for Mr. Savage but then secretly (and prematurely) obtain it for itself should be rejected.

The government purports to take offense that ABA Formal Opinion 10-456 underrates the "integrity" of former counsel, who it insists should be trusted to make ethical judgments about what they can and cannot disclose.[7] Doc. 1755 at 10-11. But this argument misses that former counsel have *already made* that judgment and informed the government they do not wish to speak with them. Doc. 1755 at 3-4. The government is asking the Court to interfere with that professional judgement and to override leading ethical guidance upon which they correctly rely. The Court should deny this extraordinary request, which is contrary to authority cited within their own motion. *See Lacerda v. United States*, 2022 WL 2168244 at *3 (D. N.J. 2022) (denying government's motion to order interview with former counsel who had declined to speak with them); *Brodie v. United States*, 2022 WL 2753457 at *2 (D. N.J. 2022) (denying government's motion to affirmatively order prior counsel to meet with government and provide them documents and an affidavit).

**C.  Numerous jurisdictions have agreed with the principle of ABA Formal Opinion 10-456 and barred the government from interviewing former counsel.**

The government complains at length about ABA Formal Opinion 10-456 insofar as it presents an obstacle to their wish for unfettered access to defense counsel. But contrary to the suggestion in the Motion, numerous courts and jurisdictions have agreed with the principle of the Formal Opinion both before and after the Opinion was adopted.

---

[7] The government's prosecutor has not always held such a high view of trial counsel. *See*, *e.g.*, Trial Tr. 3/27/2013 at 62-67 (Mr. Troyer accusing Mr. Hoey of "repeatedly" misrepresenting discovery matters to the jury, either "reckless[ly]" or "flat out lying"); Trial Tr. 2/20/2013 at 218-19 (Mr. Troyer accusing Mr. Hoey of making "ridiculous" and "insane" arguments at trial); Doc. 854 at 1-2 (Mr. Troyer stating he is "suspicious" that Mr. Savage's defense attorneys were intentionally lying in order to "justify a barrage" of new motions before trial). *See also* Sealed Tr. 10/14/2011 at 26-27.

This Court considered Formal Opinion 10-456 in *United States v. Boyle*, 2018 WL 6505526 (E.D. Pa. 2018).  There, like here, the defendant filed a § 2255 motion raising IAC claims and the government then sought an order declaring the attorney-client privilege waived, noting that it wished to speak with former counsel to assist in their preparation of a response. *Id*. at *1.  This Court denied the motion. While agreeing that Mr. Boyle had waived the privilege by raising the IAC claims, the Court recognized that the government's attempt to obtain information from former counsel was at best premature, as it had yet to be determined whether the "motion can be resolved on the existing record without resorting to the introduction of new evidence that would otherwise be protected by the attorney-client privilege." *Id*. at *3. This Court ordered government counsel to read ABA Model Opinion 10-456 and directed the government to file a response to the § 2255 motion, stating the issues raised in the government's motion would be reviewed *after* the Court's review of the pleadings.[8] *Id*.

Other federal courts have invoked Model Rule 10-456 to deny prosecution requests to obtain information from former counsel in post-conviction proceedings absent judicial supervision. *See, e.g.*, *Hicks v. United States,* 2010 WL 5441679 at *5 (S.D.W.V. 2010) (denying government's motion to have former counsel provide information to them, ruling that they must first file a response to § 2255 motion and that if necessary the court would "supervise[] . . . limited but necessary disclosure of privileged communications"); *Hudson v. United States*, 2011 WL 3667602 at *4 (S.D.W.V. 2011) (denying government's request to speak with former counsel outside the

---

[8] The government cites *Boyle* as a case "finding a waiver of the attorney-client privilege upon the filing of a 2255 petition alleging ineffective assistance of counsel" without noting that this Court in *Boyle* denied the government's motion seeking a finding of waiver and denied the specific relief the same United States Attorney's Office seeks here. *See* Doc. 1755 at 8.

presence of the Court and defendant, and instead directing counsel to submit an affidavit addressing three specific topics, and further ordering that the information in the affidavit could not be used outside the proceeding). The Southern District of West Virginia, indeed, has explicitly barred former counsel from speaking informally with the government in a post-conviction case. *Daugherty v. Dingus*, 2013 WL 1694878 at *5 (S.D.W.V. 2013).

This practice is consistent with other jurisdictions that, even before ABA Formal Opinion 10-456 was published, prohibited former counsel from interviewing with the government in post-conviction proceedings. *See State v. Buckner*, 527 S.E.2d 307, 314 (N.C. 2000) (finding error where trial court ordered former counsel to engage in *ex parte* interview with prosecutor); *Virginia State Bar Comm. On Legal Ethics, Formal Op. 1859* (2012) (concluding a lawyer should refrain from revealing information learned during the representation of a former client unless "under judicial supervision in a formal proceeding, after a full determination of what information should be revealed, and without the danger of revealing more information than would be permitted ... "); *Utah State Bar Ethics Advisory Committee Op. 05-01,* ¶ 2 (April 28, 2005) ("Absent a court order requiring the attorney's testimony, and notwithstanding a subpoena served on the attorney by the prosecution, the attorney may not divulge any attorney-client information, either to the prosecution or in open court.").

The government's motion assumes an entitlement to conduct *ex parte* witness interviews at their convenience.  But no such right exists in criminal cases for the government or the defendant before a trial, much less to aid a party in the preparation of a pleading. As the government has previously noted in this case:

> "No witness is obligated to honor a defendant's request for an interview." *United States v. Fischel*, 686 F.2d 1082, 1092 (5th Cir. 1982). "A witness in a criminal case has the right to refuse to be interviewed, and a defendant's rights are not violated when a witness decides not to talk." *United States v. Fred*, 2006 WL

4079619 (D. N.M., December 4, 2006), quoting *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985).

Doc. 880 at 2 (opposing Kidada Savage's motion to interview witnesses prior to trial, including Eugene Coleman and Lamont Lewis (Doc. 779)). This is even more true in the post-conviction context with former counsel who owe continuing duties of loyalty and confidentiality to their former clients. *See* ABA Formal Opinion 10-456 (observing it is "highly unusual for a trial lawyer accused of providing ineffective representation to assist the prosecution in advance of testifying or otherwise submitting evidence in a judicial proceeding."). *See also Commonwealth v. King*, 212 A.3d 507, 513 (Pa. 2019) (in first-degree murder case, upholding postconviction court's order precluding the prosecution from privately interviewing trial counsel in advance of a hearing where trial counsel was unwilling to help his former client but was "agreeable to providing pertinent (and perhaps impertinent) information to the Commonwealth.") [9]

---

[9] Nowhere does the government acknowledge that Mr. Savage's trial counsel also owe him a continued duty of loyalty. *See generally* Doc. 1755. *But see* ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003), Guideline 10.13 "The Duty to Facilitate the Work of Successor Counsel" (prior members of the defense team "have a continuing duty to safeguard the interests of the client and should cooperate fully with successor counsel. This duty includes…(D) cooperating with such professionally appropriate legal strategies as may be chosen by successor counsel."); *see also* Comment to 10.13 (noting that subsection D remains true "even when (as is commonly the case) successor counsel are investigating or asserting a claim that prior counsel was ineffective") (citing David M. Siegel, *My Reputation or Your Liberty (or Your Life): The Ethical Obligations of Criminal Defense Counsel in Postconviction Proceedings*, 23 J. LEGAL PROF. 85, 90-91 (1998/1999) ("While any criminal defense lawyer whose client is convicted is subject to the possibility of a claim for ineffective assistance, lawyers in capital cases are virtually guaranteed such claims.")). *See* PRPC 1.8 (Comment) ("Use of information relating to the representation to the disadvantage of the client violates the duty of loyalty."); PRPC 6.2 (Comment) ("An appointment lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality").

The government cites cases finding a waiver of attorney-client privilege when a defendant places their attorney's advice or representation at issue.  But the government's generic explanatory parentheticals mask that, in many of these cases, the issue of waiver arose at the time of, and/or with respect to, the attorney's *testimony at a hearing*. *See Laughner v. United States,* 373 F.2d 326, 327 (5th Cir. 1967) (privilege deemed properly waived when attorney testified at hearing to resolve § 2255 motion); *Tasby v. United States,* 504 F.2d 332 (8th Cir. 1974) (same); *United States v. Galletta*, 2023 WL 4565477 at *14 (E.D. Pa. 2023) (determining waiver of privilege for purpose of attorney testimony at scheduled evidentiary hearing); *United States v. Rishell*, 2002 WL 4638 at *6-7, 11 (E.D. Pa. 2001) (adjudicating IAC claims based on existing record and credibility findings after considering attorney's testimony at a hearing); *United States v. McQuilken*, 2000 WL 1222151 at *1-2 (E.D. Pa. 2000) (same). *See also United States v. Pinho at *5*, 2003 WL 25772423 (E.D. Pa. 2003) (Surrick, J) (granting motion in limine permitting government to question defendant's counsel at retrial when defendant had placed their advice at issue through his testimony at his first trial, while cautioning that "we will not permit the Government to use this waiver as a fishing expedition into all of Defendant's confidential communications with her attorney during their relationship"); *Waitkus v. Mauet*, 757 P.2d 615, 616 (Ariz. Ct. App. 1988) (reversing trial court's order for former counsel to compel pre-hearing disclosure notwithstanding waiver of privilege, ruling that "[a]t most, case law would permit the questioning of an attorney at the evidentiary hearing to determine the validity of a defendant's ineffective assistance claim"); *Wimer v. United States* 2015 WL 4429225 (N.D. W.V. 2014) (noting that government could not question former attorney because they had declined to do so under ABA Formal Opinion 10-456, and accordingly determining that an evidentiary hearing was necessary to resolve IAC issues); *Gooden v. United States* 2014 WL 1600584 (N.D. W.V. 2014) (same). These cases do not support

the government's demand to privately question former counsel, and impliedly reject the notion that such interviews (or any other form of pre-hearing discovery) are necessary for the government to adequately respond to allegations of ineffective assistance.

In those cases where information is needed prior to a hearing, Rule 6 of the Rules Governing § 2255 Proceedings provide a means to do so. If a party makes a showing of "good cause," the court may authorize discovery under the rules of Federal Rule or Civil or Criminal Procedure. *See* Rule 6(a) & (b). These mechanisms include depositions, *see* Rule 6(c); *Lacerda v. United States*, 2022 WL 2168244 (noting, in light of former counsel's decision not to speak with the prosecutor, that the "parties may apply the Court for formal discovery, including the taking of depositions), and interrogatories, *see United States v. Jack*, 2013 WL 12329174 (D.N.M. 2013) (granting government's motion for discovery under Rule 6(b) and authorizing them to serve interrogatories to former counsel). The unsupervised *ex parte* interviews sought by the government, however, are not a valid means of discovery under the Civil or Criminal Rules.

The government also cites orders that direct former counsel to file affidavits or declarations with the Court, a procedure vastly different than the unsupervised access to counsel the government, Mr. Savage's adversary in pursuit of his execution, seeks here. In those cases, courts have imposed various safeguards to control former counsel's disclosure of protected information. For example, courts have directed counsel to file statements directly with the court, have specified that counsel shall "disclose only that information reasonably necessary to ensure the fairness of the proceedings," and have made clear that the waiver and disclosure is limited to the claims raised in the § 2255 proceedings. *See, e.g.*, *Belcher v. United States*, 2012 WL 5386564 (S.D. W.V.

15

2012).[10] *See also United States v. Pinson*, 584 F.3d 972, 979 (10th Cir. 2009) (approving the filing of an affidavit by former counsel, while finding the "the potential scope and lack of specificity in the district court's order in this case a bit troubling," and observing it should be more "narrowly tailored."); *Whitmore v. United States*, 2023 WL 167518, at *1-2 (S.D.N.Y. 2023) (requiring defendant to submit a waiver of attorney-client privilege and notice of informed consent before directing counsel to submit declaration to court).[11]

Even courts that have expressed reservations about ABA Formal Opinion 10-456 have held that affidavits filed with the Court, rather than *ex parte* interviews, are the appropriate means of obtaining pre-hearing information from former counsel when necessary. *See United States v. Rice*, 2020 WL 4015354 at *3-4 (M.D. Pa. 2020) (expressing disagreement with the Formal Opinion's interpretation of the Model Rule but nonetheless issuing a protective order and directing affidavits from former counsel as the proper "method of disclosure"); *Dunlap v. United States*, 2011 WL 2693915 at *2 (D. S.C. 2011) (same). In capital cases, courts have been particularly careful when directing such affidavits, requiring that they initially be sent *in camera* to the Court and post-

---

[10] The government maintains another decision from the same district, *Talouzi v. United States*, 2012 WL 3778848 at *2 (S.D. W.V. 2012) orders "defendant's former counsel to discuss allegations of ineffectiveness with the government despite Opinion 10-456." But a review of the decision does not support this claim; like numerous other standard orders from that district, *Talouzi* directs trial counsel to file an affidavit directly with court. *Id.* at *3; *see also Hudson v. United States*, 2011 WL 3667602 at *4 (S.D.W.V. 2011) (denying government's request to speak with former counsel outside the presence of the Court and defendant, and instead directing counsel to submit an affidavit addressing three specific topics).

[11] The government cites an earlier case from the Southern District of New York, *Radaj v. United States,* 2011 WL 2610544 at *1 (S.D.N.Y. 2011), where the Court had directed former counsel to submit an affidavit to the U.S. Attorney. The Southern District of New York appears to have since recognized the importance of the additional safeguards as required in *Whitmore. See also Minaya v. United States,* 2022 WL 5135082 at *1 (S.D.N.Y. 2022) (imposing same safeguards as *Whitmore*).

16

conviction counsel, so that counsel has an opportunity to submit and have resolved objections to their contents before the government can see them.[12] *See Jackson v. United States,* 1:09-cv-1039-RC, Doc. 72 (Order filed March 2, 2011); *Nelson v United States*, 2010 WL 3398791 (W.D. Mo. 2010) ; *see also Johnson v. Alabama*, 256 F.3d. 1156, 1168 (11th Cir. 2001) (noting that § 2254 petitioner's former counsel were directed to file under seal materials concerning their communications with their former client); Pa. Bar Assoc. Comm. On L. Ethics & Prof'l Responsibility, Ethics Op. Inquiry 2002-72 (2002) (advising that under PRCP 1.6, any client files in the possession of an attorney relevant to IAC claims raised in §2255 proceedings should be subject to *in camera* review to ensure the confidentiality of the information prior to any disclosure.)

The government cites to only a handful of district court orders that would permit the government to conduct unsupervised interviews and/or obtain information from former counsel, and those cases are of questionable value for multiple reasons.  First, most of them pre-date ABA Formal Opinion 10-456. *See Hayes v. United States,* 2009 WL 2071244 (E.D. Mo. 2009); *United States v. Lossia*, 2008 WL 192274 (E.D. Mich. 2008). The government likewise relies upon *Dible v. United States*, 2010 WL 2652202 (N.D. Iowa 2010), issued shortly before Formal Opinion 10-456 was published, where former counsel was ordered to "cooperate" with the government.  But a subsequent order addressing the same situation by the same judge in the same court relied upon the since-issued Formal Opinion and instead ordered that former counsel submit an affidavit with the Court. *Kluge v. United States*, 2013 WL 4779187 at *3 (N.D. Iowa 2013).

---

[12] Although the government's proposed order would allow former counsel to seek a ruling from the Court about the "scope of disclosures" allowed, it would allow no role for Mr. Savage in the process. Doc. 1755 at 2 (proposed order). As recognized by the cases cited *supra*, there is no valid reason to exclude the former client who holds the privilege and would be harmed by any improper disclosure.

*Giordano v. United States,* 2011 WL 1831578, (D.Conn. 2011), appears to be the only case the government cites where a court specifically rejected Formal Opinion 10-456 and allowed former counsel to privately meet with the government.[13] But the reasoning of *Giordano* is unpersuasive, as the Court there seemed principally concerned with the purported impracticality of having to "directly supervise" interactions between former counsel and the government in thousands of § 2255 cases. *Id.* at *3. *See* Jenning C. Newmark, *The Lawyer's Prisoner's Dilemma: Duty and Self-Defense in Postconviction Ineffectiveness Claims*, 79 Fordham L. Rev. 699 (Nov. 2010) ("Courts that permit defense counsel to provide substantial assistance to the prosecution . . . do not base these decisions on actual ethical considerations; rather, they subordinate these considerations to address prosecutorial and judicial convenience."). If there is any case where convenience should not be prioritized over safeguarding rights, it should be the only capital § 2255 proceeding in this Circuit.[14] *Giordano*'s reasoning, in any event, ignores that numerous courts, as cited *supra*, have found that such interactions are not necessary in the first place, and that other means are available to ensure the Court has the information it needs to resolve a claim of ineffective assistance.

---

[13] Courts also have rejected ABA Formal Opinion 10-456 for reasons that are unapplicable to Mr. Savage's case. *See, e.g.*, *United States v. Straker*, 258 F.Supp.3d 151, 156-57 (D.D.C. 2017) (declining to follow ABA Model Rule 10-456 because the controlling ethical rules and opinions in the jurisdiction differed from the ABA's rules).

[14] Extreme caution in this case is also warranted due to its size and the rarity of a learned capital counsel voluntarily leaving a capital trial after it had begun. As noted by the Third Circuit Court of Appeals, Mr. Savage's months-long trial was a "complex death penalty prosecution involving conduct that extended over more than a decade and involved twelve murders." *United States v. Savage,* 970 F.3d 217, 246 (3d Cir. 2020). The discovery was "gargantuan" and the considerable delay in appointing Mr. Purpura caused the Court of Appeals "pause." *Id*. Especially where the substitution of learned counsel concerned private communications between this Court, Mr. Purpura and now-Judge Sullivan, sworn proceedings should be the only appropriate method of inquiry.

Finally, *Giordano* and the other cases cited by the government do not appear to involve former counsel who have already informed the government that they do not wish to speak with them. *See Giordano,*_at *4 ("so long as Mr. Giordano's former counsel is willing to be interviewed"), Insofar as *Giordano* (like the government's motion) relies on the "experience" of former counsel to safeguard the defendant's rights, 2011 WL 1831578 at *3, counsel's thoughtful refusal not to participate should be respected and counsel left undisturbed.

### D.    The government's request to obtain information also is premature.

For the reasons stated *supra,* there is no situation in which the prosecutor's motion to question former counsel short of court supervision should be granted. But the Court should also hold that the government's motion is premature. Mr. Savage has yet to file an amended Motion, the government has not yet been ordered to file a Response, and Mr. Savage has not filed a Reply to that Response. In short, there are numerous steps of litigation ahead before this Court can begin to determine which of Mr. Savage's claims will proceed to an evidentiary hearing. As this Court recognized in *Boyle,* decisions about what, if any, information from prior counsel should be shared prior to any hearing, and how it should be shared, should be reserved until after the Court has had the opportunity to review both the Motion *and* its responsive pleadings. 2018 WL 6505526 at *3; *see also* Rule 4 & 5 of the Rules Governing § 2255 Proceedings (contemplating the Court will undertake an initial review and then direct and Answer and Reply to the Motion). The purpose of such pleadings, after all, is to help the Court resolve which facts and issues are in dispute, and consequently determine what further steps are needed to resolve the motion.

The government complains about the supposed unfairness of having to file a Response without having access to all of the information it would like. Doc. 1755 at 15. But the government's position is not any different than any other litigant who is expected to answer allegations in a

complaint before discovery is conducted. *See* Fed. Rule of Civil Pro. 12(a)(1)(A)(i) (ordinarily requiring a defendant to answer a complaint within 21 days). Nor for that matter does it put them in a different position than Mr. Savage, who had to file his § 2255 motion without any access to court ordered discovery, or even portions of the trial discovery that the government refused to reproduce to newly appointed habeas counsel. See e.g. Doc. 1746 at 436-438. *See also United States v. Johnson*, 2017 WL 3034928 at \*2 (W.D. Pa. 2017) (denying pre-motion discovery request because "[w]ithout a pending § 2255 motion, the court cannot determine if good cause exists to allow Johnson to conduct discovery."); *United States ex rel. Nunes v. Nelson*, 467 F.2d 1380 (9th Cir. 1972) ("Appellant is not entitled to a discovery order to aid in the preparation of some future habeas corpus petition."); *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1106-07 (9th Cir. 1996) ("[P]re-petition discovery is impermissible…").

The Court should not permit the government to evade the normal discovery process because it feels that it is inconvenient (*see* Doc. 1755 at 14), particularly when Mr. Savage filed his primary pleading to first establish good cause and already has filed a number of formal discovery requests currently pending before the Court. *See, e.g.*, Doc. 1749, 1752. The Court should deny the government's motion pending the filing of responsive pleadings.

**E.** **The government's unilateral sharing of the sealed § 2255 Motion with prior counsel weighs in favor of future judicial supervision.**

With the government's agreement, this Court entered a temporary protective order sealing Mr. Savage's soon to be filed § 2255 Motion and all supporting documents. Doc. 1745. This sealing order remains in effect and prohibits the parties from sharing the sealed motion outside of their respective legal teams. The defense has observed that restriction. The government, however, reveals in its motion that it already has provided the sealed motion to Mr. Savage's prior trial counsel and now asks that this Court retroactively sanction its actions. Doc. 1755 at 3, 1.

The government first posits that it was acceptable to share the sealed order because trial counsel are "counsel of record," noting that attorneys Hoey and Purpura are approved as SAMs contacts and are still on the list of persons receiving ECF notifications in this case but without noting that neither circumstance applies to Judge Sullivan, with whom the government also shared the pleading. Doc. 1755 at 5, n.3. Firstly, the SAMs are controlled exclusively by the government; if the government believes or has knowledge that prior counsel still enjoys privileged contact with Mr. Savage, the government should not be approaching them as "witnesses" in the first instance. Second, ECF notifications in this case are sent to dozens of lawyers, many of whom no longer practice criminal law and others who plainly have no current involvement with this case. To be sure, prior counsel do not enjoy ECF permissions to view protected documents. Hoey, Purpura and Judge Sullivan clearly no longer represent Mr. Savage in these proceedings, and the government's excuse should not be seriously entertained.

The government also misrepresents the basis for the assented-to sealing motion, claiming that Mr. Savage "sought an order to seal his § 2255 petition and exhibits, arguing that the petition and exhibits contained materials dealing with medical, psychological, and family matters that could be embarrassing to Savage and his family." Doc. 1755 at 16.  But counsel for Mr. Savage didn't represent this was the reason for the motion to seal in either their communications with the government or the motion itself. *See* Doc. 1744 at 5-6 (Unopposed Sealing Motion) (outlining for this Court (a) the presence of numerous already-sealed documents and transcripts in the case, such as those relating to the anonymous jury and (b) the fact that the Motion would refer to subjects that

21

the *government* might consider sensitive and might want to be sealed.)[15] It cannot be reasonably

disputed that at the government consistently has demonstrated a high level of sensitivity to the

public availability of information in this case; for example, it recently objected to the public filing

of Mr. Savage's SAMs restrictions, notwithstanding that such SAMs restrictions have previously

been filed on the public docket in this and in other cases. *See* Doc. 1725.

The government's post-hoc issues with the sealing order are not properly before this Court

and are intended to detract from its violation. If the government believed that the Motion needed

to be shared with other parties to facilitate its investigation, it could and should have sought an

appropriate order to do so. *See Jackson v. United States*, 09cv1039, Doc. 59 (E.D. Tex. Jan. 12,

2011) (government moving for limited disclosure order to share pleading with prior counsel where

§ 2255 Motion was sealed in a capital case). Even without a sealing order in place, the government

should not have sought to speak with former counsel without at least seeking permission from the

Court, as was done in numerous cases cited in its own motion.  *See e.g. Boyle*, 2018 WL 6505526

at *1;[16] *Giordano*, 2011 WL 1831578 at *1; *Belcher*, 2012 WL 5286564 at *1.

---

[15] Indeed, the filed § 2255 petition has an entire set of claims addressing the SAMs restrictions and numerous other claims relating to potentially sensitive topics, including the government's fact investigation, the conditions of Mr. Savage's confinement, the voir dire of the anonymous jury, sensitive mitigation and witness information, and the Court's CJA records. *See, e.g.,* Doc. 1744 at 222-232, 243-250.

[16] In *Boyle*, the U.S. Attorney for the Eastern District of Pennsylvania acknowledged that the government "needs" a determination from the Court of attorney-client privilege "in order to permit" former counsel to speak with them.  *See* 2:16-cr-271-HB (Doc. 42 at 3). Notably, the motion does not indicate that the government had already attempted to contact former counsel and does not assert that permission was needed simply because former counsel had declined to speak with them. The Court denied the Motion even without a Response from Mr. Boyle.

The Court should not reward the government's behavior and should deny its motion. When the Court determines that certain testimony is needed from formal counsel in the context of a judicially supervised proceeding, it can easily enter an appropriate order so that prior counsel may have access to any needed materials.

**CONCLUSION**

WHEREFORE, Kaboni Savage respectfully requests that this Honorable Court deny the government's motion.

Respectfully submitted,


*/s/ Kathryn Bailey*

Kathryn Bailey
PA ID 308242
Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
kara_bailey@fd.org
(412) 644-6565
*/s/ Bridget L. Kennedy*

Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
Bridget_kennedy@fd.org
(614) 469-4141


ATTORNEYS FOR KABONI SAVAGE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*/s/Kathryn Bailey*

Kathryn Bailey
PA ID 308242
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
kara_bailey@fd.org

(412) 644-6565

ATTORNEY FOR KABONI SAVAGE

1