# Exhibit

# B

**DECLARATION OF JEFFREY MARTIN**

The undersigned, Jeffrey Martin, declares as follows:

1. My name is Jeffrey O'Neal Martin. I am over the age of majority and provide this affidavit voluntarily and based on my personal knowledge, education, and experience.
2. I hold a Bachelor's degree in Mathematics and Economics from Vanderbilt University and a Master's degree in Economics from the University of Chicago.
3. I am employed as a consultant on statistical issues, a consultant on actuarial issues, and as a consultant to political campaigns. I have been qualified as an expert on statistical issues in Federal Courts and State Courts.
4. Since 1997, I have been involved in cases involving challenges to the jury lists in Federal and State Courts. I have worked on over 50 cases in Federal Courts.
5. I have been asked by counsel, Bridget Kennedy, to review the data the Court granted access to in its Order (Document 1137, filed 3/5/13) in this case, United States v. Kaboni Savage, Case No. 07CR550, and the construction and demographics of the jury list that was used to select jurors in this case.

THE LIMITED DATA SUPPLIED IN THIS CASE ALERTS TO THE UNDER-REPRESENTATION OF BLACK OR AFRICAN-AMERICAN PERSONS

6. I have reviewed the limited data that was supplied for the analysis of the representativeness of the jury lists used in this case.
7. The data included the Jury Plan (Plan for the Random Selection of Grand and Petit Jurors, Amended December 4th, 2009) and several "Source List Race/Gender Report" summaries generated from the district's jury management system.
8. The limited data showed an under-representation of Black or African-American persons.
9. Dr. Beveridge reaches essentially the same statistics as I do (Document 869-2 Filed 12/31/12).
10. The under-representation of Black or African-American persons shown in the limited summary information provided would alert statisticians that a fuller analysis of the representativeness of the jury list and process is warranted.
11. The use of limited data is unusual in my experience.
12. The use of limited data is problematic in that fundamental and representativeness issues cannot be analyzed.
13. The Order granting discovery information (Document 1137 Filed 03/05/13) that is standardly supplied in other cases allows verification and analysis of fundamental issues such as whether the correct jury list was used, whether the jury list includes the jurors selected, whether some jurors were selected from previous or other jury lists, whether the jury list represents the geographic makeup of the district, whether the creation of the Master Jury Wheel is random, and whether the selection of jurors is random.

Page 1

14. The discovery information granted and standardly supplied in other cases allows the statistical analysis of the representativeness of the jury list such as verification of demographic statistics, systematic factors affecting the demographics of the jury list, and whether the demographics of the draws from the jury list reflect ongoing under-representation of distinctive groups.

## THE RESOURCES TO ANALYZE THE DATA REQUESTED WERE AVAILABLE

15. The issue of whether juries are representative has existed for many years.   The case law goes back many years as well.
16. The Memorandum from Judge Surrick (Document 1136 Filed 03/05/13) references cases that have dealt with the representativeness of jury lists.
17. Likewise, there have been resources to produce statistical analyses to address the challenges.
18. Dr. Beveridge was an available resource for such statistical analyses.
19. My experience and availability for such statistical analyses go back to the year 1997.
20. Likewise, the discovery information granted in the Order granting discovery information (Document 1137 Filed 03/05/13) reflects both an understanding of the data required for an analysis of the representativeness of the jury list as well as the availability of resources to analyze the data.

## THE JURY DATA GRANTED FOR THIS CASE

21. I have reviewed the Order granting discovery information (Document 1137 Filed 03/05/13) which includes seven different categories of data relating to the trial jury that was drawn in this case.
22. The seven categories contain information that is standardly requested to analyze the representativeness of any jury list.
23. Each of the items is useful in the analysis of the representativeness of any jury list.
24. My experience includes using each of the items to complete analyses of the representativeness of jury lists in federal courts.
25. The items in the Order would identify whether the data files and documents are indeed the materials used to summon the actual jurors in this case.  For example, the persons identified in item g (jurors appearing) should include the actual jurors in this case.
26. The items in the Order would allow verification that the information is internally consistent.  For example, the persons identified in item a (Master lists), item c (Qualified lists), item f (jurors summoned), and item g (jurors appearing) should be consistent and that each item is a subset of the preceding item.
27. The items in the Order would allow for the statistical analysis of representativeness, starting with the summary calculations in the Court's previously supplied "Source List Race/Gender Report" summaries and verified by statistical analysis of data files such as item a (Master lists) and item c (Qualified lists).

28. The items in the Order would identify systematic factors for any under-representation found for a distinctive group in the statistical analysis of representativeness.  For example, item b (undeliverable questionnaires), item d (undeliverable summons), and e (excuses) could systematically cause an under-representation of a distinctive group.

29. The items in the Order would identify historical trends and constants which become a systematic factor over time.  For example, the statistical analysis of item c (Qualified lists) would show if any under-representation has existed over time.

## THE PROTECTION OF PERSONAL INFORMATION

30. There are standard procedures to protect the personal information supplied in the data in the Order.

31. Some of the items such as the previously supplied "Source List Race/Gender Report" summaries include no personal information.

32. The Order granting discovery information (Document 1137 Filed 03/05/13) addresses the protection of personal information with "Social security numbers and other information not relevant to Defendant's expert's analysis will be removed from the lists".

33. Information such as item a (Master lists) is standardly supplied with the Juror or Participant Number randomly generated by the Clerk instead of the name and address. In this way, no person can be identified.  The Jury or Participant Number can be used to track and access demographic information throughout the jury service process without revealing the identity of the person.

34. Other information can be redacted as necessary or only provided for review in the Clerk's office.

35. More comprehensively and commonly, a protective order can be implemented that protects the personal information provided in the discovery information.  In my experience, protective orders have been carefully followed. I would scrupulously follow any protective order.

36. I frequently handle similar sensitive information. If the Court chose not to limit my access to any identifying information, I would anonymize all data so no personal identifiers would be revealed to other people or in court filings.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 9th day of February 2024

_____Jeffrey Martin

Page 3